UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

|  |  |
|---|---|
| JOHN DOES 1 THROUGH 10,<br><br>  Plaintiffs,<br><br>  v.<br><br>DEBORAH HAALAND, ANA VIOLETA NAVARRO FLORES, ELIZABETH WARREN, MAGGIE HABERMAN, KATHY GRIFFIN, MATTHEW JOHN DOWD, REZA ASLAN, KEVIN M. KRUSE, JEFFREY SHAUN KING, ADAM EDELEN, CLARA JEFFERY, and JODI JACOBSON,<br><br>  Defendants. | No. 2:19-cv-00117-WOB-CJS |

## DEFENDANT SENATOR ELIZABETH WARREN'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Daniel J. Canon, PSC (Ky. 92048)
1205 E. Washington St, Suite 111
Louisville, KY 40206
dan@dancanonlaw.com

*Counsel for Defendant, Senator Elizabeth Warren*

Marc E. Elias*
Email: melias@perkinscoie.com
Uzoma N. Nkwonta*
Email: unkwonta@perkinscoie.com
John M. Geise*
Email: jgeise@perkinscoie.com
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959

*Counsel for Defendant, Senator Elizabeth Warren*
*Pro Hac Vice Application Pending*

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................... 1

II.    BACKGROUND ............................................................................................ 3

       A.   Plaintiffs' Confrontation with Native American Elder and Activist Nathan Phillips at the Lincoln Memorial, Including their Use of the "Tomahawk Chop," Went Viral. ............................................................................ 3

       B.   Senator Warren's Official Senate Account Published a Tweet About Plaintiffs' Confrontation With Mr. Phillips. ...................................... 4

III.   STANDARD OF REVIEW ............................................................................ 5

       A.   Motion to Dismiss for Lack of Personal Jurisdiction ........................... 5

       B.   Motion to Dismiss for Failure to State a Claim .................................... 5

IV.    ARGUMENT ................................................................................................. 6

       A.   The Court Lacks Personal Jurisdiction Over Senator Warren. .............. 6

            1.   Kentucky's Long-arm Statute Does Not Authorize the Court to Exercise Personal Jurisdiction Over Senator Warren in this Lawsuit. ....................................................................................... 7

            2.   Exercising Jurisdiction Over Senator Warren Would Violate the Federal Due Process Clause. ...................................................... 9

       B.   Plaintiffs Fail to State a Claim Against Senator Warren For Defamation. .......... 11

            1.   Senator Warren's Tweet Was Neither "About" Nor "Concerning" Any Individual Plaintiff. ........................................................ 12

            2.   Senator Warren's Tweet Is Not Defamatory Per Se, and Plaintiffs Fail to Plead Special Damages. ............................................... 13

            3.   Senator Warren's Tweet Is Not Actionable Because It Expressed an Opinion About a Matter of Public Concern. ......................... 15

       C.   The First Amendment Bars Plaintiffs' Claims for Intrusion Upon Seclusion and Negligent Infliction of Emotional Distress. ................. 17

       D.   Plaintiffs' Allegations Fail to State Claims For Intrusion Upon Seclusion and Negligent Infliction of Emotional Distress. ................. 18

       E.   Plaintiffs' Lawsuit Asserts Claims Against Senator Warren For Acts Committed in Her Official Capacity, But Fails to Identify Any Applicable Waiver of Sovereign Immunity. ........................................ 21

V.     CONCLUSION ............................................................................................ 23

# TABLE OF AUTHORITIES

**CASES**

*Advanced Solutions Life Sciences, LLC v. BioBots, Inc.*,
No. 3:16-cv-00709, 2017 WL 2114969 (W.D. Ky May 12, 2017) .........................................10

*AlixPartners, LLP v. Brewington*,
836 F.3d 543 (6th Cir. 2016) ...................................................................................................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................................5, 20

*Auto Channel, Inc. v. Speedvision Network, LLC*,
995 F. Supp. 761 (W.D. Ky. 1997)...........................................................................................5

*Bassett v. NCAA*,
528 F.3d 426 (6th Cir. 2008) ...................................................................................................4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................................5

*Blakely v. United States*,
276 F.3d 853 (6th Cir. 2002) .................................................................................................22

*Caesars Riverboat Casino, LLC v. Beach*,
336 S.W.3d 51 (Ky. 2011)....................................................................................................7, 8

*Carter v. Paschall Truck Lines, Inc.*,
No. 5:18-CV-041-TBR, 2019 WL 2290513 (W.D. Ky. 2019)..............................................6, 8

*Clark v. Viacom Int'l Inc.*,
617 F. App'x 495 (6th Cir. 2015) .........................................................................................15

*Cole v. Mileti*,
133 F.3d 433 (6th Cir. 1998) ...................................................................................................9

*CompuServe, Inc. v. Patterson*,
89 F.3d 1257 (6th Cir. 1996) ...................................................................................................5

*Compuware Corp. v. Moody's Inv'rs Servs., Inc.*,
499 F.3d 520 (6th Cir. 2007) .................................................................................................15

*Conley v. Gibson*,
355 U.S. 41 (1957)....................................................................................................................5

*Connick v. Myers*,
    461 U.S. 138 (1983)..................................................................................................17

*De Masi v. Schumer*,
    608 F. Supp. 2d 516 (S.D.N.Y. 2009)......................................................................22

*Dermody v. Presbyterian Church (U.S.A.)*,
    530 S.W.3d 467 (Ky. Ct. App. 2017) ...............................................................13, 14

*Disabled Am. Veterans, Dep't of Ky., Inc. v. Crabb*,
    182 S.W.3d 541 (Ky. Ct. App. 2005) .......................................................................13

*Dukes v. Mid-E. Athletic Conference*,
    213 F. Supp. 3d 887 (W.D. Ky. 2016).....................................................................19

*Ford v. RDI/Caesars Riverboat Casino, LLC*,
    503 F. Supp. 2d 839 (W.D. Ky. 2017)...................................................................9, 10

*Frascatore v. Blake*,
    344 F. Supp. 3d 481 (S.D.N.Y. 2018).....................................................................15

*Gritton v. Disponett*,
    332 F. App'x 232 (6th Cir. 2009) ...............................................................................3

*Guangzhou Consortium Display Prod. Co., Ltd. v. PNC Bank, Nat'l Assoc.*,
    924 F. Supp. 2d 800 (E.D. Ky 2013) ..........................................................................7

*Hall v. Rag-O-Rama, LLC*,
    359 F. Supp. 3d 499 (E.D. Ky. 2019) .........................................................................6

*Howard v. Spradlin*,
    562 S.W.3d 281 (Ky. Ct. App. 2018) .......................................................................21

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945).....................................................................................................3, 9

*Jackson v. Professional Radiology, Inc.*,
    864 F.3d 463 (6th Cir. 2017) ......................................................................................5

*Kentucky Fried Chicken, Inc. v. Sanders*,
    563 S.W.2d 8 (Ky. 1978) ...........................................................................................12

*Keyter v. McCain*,
    207 F. App'x 801 (9th Cir. 2006) .............................................................................21

*Lassiter v. Lassiter*,
    456 F. Supp. 2d 876 (E.D. Ky. 2006) ................................................................16, 17

*Lewis v. B & R Corp.*,
    56 S.W.3d 432 (Ky. Ct. App. 2001) ................................................................20

*Lexmark Intern., Inc. v. Laserland, Inc.*,
    304 F. Supp. 2d 913 (E.D. Ky 2004) ...............................................................10

*Loftus v. Nazari*,
    21 F. Supp. 3d 849 (E.D. Ky 2014) .................................................................15

*Louisville Times v. Stivers*,
    68 S.W.2d 411 (Ky. 1934) ...............................................................................12

*McKenzie v. Allconnect, Inc.*,
    369 F. Supp. 3d 810 (E.D. Ky. 2019) ..............................................................18

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990) ......................................................................................11, 16

*Modern Holdings, LLC v. Corning Inc.*,
    No. 13-405-GFVT, 2015 WL 1481457 (E.D. Ky. 2015) .................................19

*Moore v. City of Harriman*,
    272 F.3d 769 (6th Cir. 2001) ...........................................................................21

*Muniz-Muniz v. U.S. Border Patrol*,
    741 F.3d 668 (6th Cir. 2013) ...........................................................................21

*Neogen Corp. v. Neo Gen Screening, Inc.*,
    282 F.3d 883 (6th Cir. 2002) .............................................................................5

*O'Brien v. Williamson Daily News*,
    735 F. Supp. 218 (E.D. Ky. 1990), *aff'd*, 931 F.2d 893 (6th Cir. 1991)................12

*Operation Rescue Nat. v. US*,
    975 F. Supp. 92 (1997) ....................................................................................22

*Osborne v. Keeny*,
    399 S.W.3d 1 (Ky. 2012) .................................................................................19

*Packingham v. North Carolina*,
    137 S. Ct. 1730 (2017).....................................................................................18

*Pearce v. Whitenack*,
    440 S.W.3d 392 (Ky. Ct. App. 2014) ..............................................................19

*Pelfrey v. Chambers*,
    43 F.3d 1034 (6th Cir. 1995) ...........................................................................21

*Perkins v. Bennett*,
No. 3:13-CV-695, 2013 WL 6002761 (W.D. Ky. Nov. 12, 2013)...........................................7

*Reed v. Gulf Coast Enterprises*,
No. 3:15-CV-00295-JHM, 2016 WL 79998 (W.D. Ky. 2016).................................................20

*Reetz v. United States*,
224 F.3d 794 (6th Cir. 2000) ........................................................................................22

*Reynolds v. Int'l Amateur Athletic Fed'n*,
23 F.3d 1110 (6th Cir. 1994) ........................................................................................10

*Sandmann v. WP Co. LLC*,
No. 2:19-00019 (WOB-CJS), 2019 WL 3409881, (E.D. Ky. 2019) ............................. passim

*Seaton v. TripAdvisor LLC*,
728 F.3d 592 (6th Cir. 2013) ........................................................................................16

*Snyder v. Phelps*,
562 U.S. 443 (2011)..............................................................................................17, 18

*Stanley Warranty, LLC v. Universal Adm'rs Serv., Inc.*,
No. 3:13--513-JGH, 2014 WL 4805669 (W.D. Ky. 2014)......................................................7

*Stringer v. Wal-Mart Stores, Inc.*,
151 S.W.3d 781 (Ky. 2004), *overruled on other grounds by Toler*, 458
S.W.3d 276.................................................................................................................11

*Sweetgreen, Inc. v. Sweat Leaf, Inc.*,
882 F. Supp. 2d 1 (D.D.C. 2012) ...................................................................................10

*Tackett v. M & G Polymers, USA, LLC*,
561 F.3d 478 (6th Cir. 2009) ..........................................................................................5

*Toler v. Sud-Chemie, Inc.*,
458 S.W.3d 276 (Ky. 2014)......................................................................................11, 15

*Torres v. CBS News*,
854 F. Supp. 245 (S.D.N.Y. 1994) .................................................................................22

*Williams v. U.S.*,
71 F.3d 502 (5th Cir. 1995) ..........................................................................................22

*Yancey v. Hamilton*,
786 S.W.2d 854 (Ky. 1989).........................................................................................16

**STATUTES**

Ky. Rev. Stat. Ann. § 454.210(2)(a) (2019) ...............................................................6, 7, 8

Ky. Rev. Stat. Ann. § 454.210(2)(b) (2019) ................................................................7

**OTHER AUTHORITIES**

First Amendment ................................................................................... passim

Fed. R. Civ. P. 9(a) ................................................................................21

Fed R. Civ. P. 12(b)(6)..........................................................................4, 5

Restatement (Second) of Torts..............................................................12, 18

# I. INTRODUCTION

Plaintiffs in this lawsuit are unnamed students from Covington Catholic High School ("Covington"), who traveled to Washington, D.C. to attend the March for Life and found themselves embroiled in a public and highly-publicized confrontation in front of the Lincoln Memorial with individuals from nearby groups, including Native American elder and activist Nathan Phillips. The confrontation between Phillips and the Covington students was recorded and published online, and generated significant public interest along with a wide range of opinions. Plaintiffs acknowledge that "some of the students joined Phillips," as he beat on a drum, by making "tomahawk chop" gestures, which they suggest cannot not be considered taunting or offensive because they "mirrored the sports chant of the Florida State Seminoles and Atlanta Braves." Putting aside the fact that the students were not attending a sporting event[1] and Plaintiffs have not explained why a Native American elder spurred the students to engage in tomahawk chops, others, including Mr. Phillips, disagreed (sometimes publicly) with the students' one-sided narrative. In response, Plaintiffs filed this action for defamation and other ancillary torts against a select group of public figures, including Defendant, Senator Elizabeth Warren, for comments made on Twitter regarding the widely publicized confrontation.

---

[1] Even at sporting events, such conduct has been criticized as offensive to Native Americans. *See, e.g.*, *Ending the Era of Harmful "Indian" Mascots,* NATIONAL CONGRESS OF AMERICAN INDIANS, http://www.ncai.org/proudtobe (last visited Sept. 4, 2019); Robert Silverman, *The History of the Covington MAGA Teens' Racist 'Tomahawk Chop,'* DAILY BEAST, (Jan 23, 2019, 6:29 AM), https://www.thedailybeast.com/the-history-of-the-covington-maga-teens-racist-tomahawk-chop?ref=scroll; Amanda Blackhorse, *Fake Chiefs, Headdresses and the Tomahawk Chop Must Go,* Indian Country Today (Dec. 15, 2014), https://newsmaven.io/indiancountrytoday/archive/blackhorse-fake-chiefs-headdresses-and-the-tomahawk-chop-must-go-tvxNzd0eOEqk4xkJRnllVg/; Terence Moore, *Please, Somebody Stop Atlanta Braves Fans From Chopping and Chanting,* FORBES (Oct. 9, 2018, 9:15 AM), https://www.forbes.com/sites/terencemoore/2018/10/09/please-somebody-stop-atlanta-braves-folks-from-chopping-and-chanting/#47363a2a45d9.

The problem with Plaintiffs' lawsuit against Senator Warren is that it attempts to resolve, through litigation, a difference of opinion that both the First Amendment and Kentucky law afford complete protection. Senator Warren's official Senate Twitter account issued the following tweet that is the subject of all claims against her: "Omaha elder and Vietnam War veteran Nathan Phillips endured hateful taunts with dignity and strength, then urged us all to do better. Listen to his words," followed by a link to a Splinter News post covering the incident. The tweet did not identify any of the Plaintiffs, nor did it misstate any facts, as is required to state a claim for defamation in Kentucky. It simply expressed an opinion on a matter of public concern, based on widely-circulated recordings and news reports that are readily available for anyone to review and form their own conclusions. While Plaintiffs are free to disagree with Senator Warren and anyone else who adopts similar views, both federal and state law make clear that the legal system is not the appropriate forum to settle their differences of opinion.

An even bigger problem for Plaintiffs' claims is their complete disregard of the limits on the Court's jurisdiction. For one, Senator Warren, a Massachusetts citizen who has no legally-relevant contacts with Kentucky, cannot be haled into a Kentucky court over a tweet that was published online and made accessible to anyone who visits her page. An internet or Twitter post by itself is insufficient to establish personal jurisdiction, and Plaintiffs fail to identify any other contacts with Kentucky that would allow a court to exercise coercive power over an out-of-state defendant. The Court also lacks subject matter jurisdiction to adjudicate Plaintiffs' tort claims, which all arise out of the same tweet, issued from Senator Warren's official Senate account, and are based on acts committed within the scope of her official duties. The doctrine of sovereign immunity bars claims against the United States, including its federal officers in their official

2

capacities, unless the plaintiff identifies an applicable waiver. Plaintiffs' Complaint, however, makes no allegation that would allow the Court to infer that any waiver applies.

This is not the first time that a Covington student has attempted to enlist the Court to punish those whom they believe advanced an unfair portrayal of the events that transpired on the steps of the Lincoln Memorial. This Court recently dismissed another Covington student's defamation lawsuit, in *Sandmann v. WP Co. LLC*, No. 2:19-00019 (WOB-CJS), 2019 WL 3409881 (E.D. Ky. 2019), which suffered from many of the same defects presented in Plaintiffs' Complaint. What that decision and long-standing precedents confirm is that Plaintiffs cannot simply litigate their way out of unfavorable coverage or negative publicity. Their confrontation with Mr. Phillips was recorded, widely-reported, and went viral. And the public is entitled to form their own opinions about what transpired that day. Plaintiffs' dispute with Senator Warren's position has no place in this or any other court.

## II. BACKGROUND[2]

### A.   Plaintiffs' Confrontation with Native American Elder and Activist Nathan Phillips at the Lincoln Memorial, Including their Use of the "Tomahawk Chop," Went Viral.

On Friday, January 18, 2019, Plaintiffs traveled to Washington, D.C. with a group of their peers from Covington Catholic High School in Park Hills, Kentucky to attend the March for Life, which claims to be the largest anti-abortion demonstration in the world.[3]  Pls.' Am. Compl. ("Am. Compl.") ¶ 15, ECF No. 1-1 at 51-103. After the event, Plaintiffs went sightseeing and the group reconvened near the Lincoln Memorial on the National Mall, a popular site both for tourists and

---

[2] For this motion only, Senator Warren treats all well-pleaded factual allegations as true. *See, e.g.*, *Gritton v. Disponett*, 332 F. App'x 232, 236 (6th Cir. 2009) (noting on a 12(b)(6) motion, a court should "accept all . . . factual allegations as true" but need not accept "the bare assertion of legal conclusions as enough" nor "accept as true . . . unwarranted factual inferences") (citations omitted).

[3] *See* March for Life, *About the March for Life*, https://marchforlife.org/about-us/.

for engaging in political demonstrations. *Id.* ¶ 16. At some point during their time at the Lincoln Memorial, Plaintiffs claim that they were approached by Nathan Phillips, a Native American elder and activist. *Id.* ¶ 17. Plaintiffs allege that Mr. Phillips "beat on a drum," while Covington High School students joined in with "tomahawk chop[s]." *Id.* ¶ 18.

Plaintiffs' interaction with Mr. Phillips inspired extensive public commentary nationwide, including on social media. *See id.* ¶ 18. According to Plaintiffs' Complaint, at least six prominent personalities with collectively upwards of 3.5 million followers tweeted about the interaction between Plaintiffs and Mr. Phillips between 10:30 a.m. on the morning of Saturday, January 19, 2019, and 7:30 p.m. that evening. *Id.* ¶¶ 46, 57, 95, 149.

**B.      Senator Warren's Official Senate Account Published a Tweet About Plaintiffs' Confrontation With Mr. Phillips.**

Defendant, Senator Elizabeth Warren, is the senior United States Senator from, and a resident of, Massachusetts. *Id.* ¶¶ 5, 29. On Saturday, January 19, 2019 at 7:15 p.m., Senator Warren's official Senate Twitter account @SenWarren published the following message: "Omaha elder and Vietnam War veteran Nathan Phillips endured hateful taunts with dignity and strength, then urged us all to do better. Listen to his words . . . ." *See id.* ¶ 29, Ex. I.[4] Senator Warren's tweet linked to a video from Twitter Account @splinter_news which included an interview with Mr. Phillips describing his hope for the future of the country interspersed with text and footage of his

---

[4] While Plaintiffs Amended Complaint asserts that Senator Warren's tweet came from her official campaign Twitter account, @ewarren, *see* Am. Compl. ¶ 84, that is incorrect. Plaintiffs attached and incorporated the tweet in question into their Amended Complaint at Exhibit I, which confirms that the tweet in question came from Senator Warren's official Senate Twitter account @senwarren. *See id.*, Ex. I.

confrontation with Covington High School students on the steps of the Lincoln Memorial on January 18, 2019.[5]

### III.     STANDARD OF REVIEW

#### A.     Motion to Dismiss for Lack of Personal Jurisdiction

Plaintiffs who file a lawsuit against an out-of-state defendant bear the burden of establishing personal jurisdiction and must make a prima facie showing that their claims are properly before the court. *See CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996); *Auto Channel, Inc. v. Speedvision Network, LLC,* 995 F. Supp. 761, 763 (W.D. Ky. 1997). To meet this burden, Plaintiffs must "establish[] with reasonable particularity sufficient contacts between [the non-resident defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir. 2002) (citing *Provident Nat'l Bank v. California Fed. Savings & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir. 1987)).

#### B.     Motion to Dismiss for Failure to State a Claim

While a court considering a Rule 12(b)(6) motion to dismiss should presume that all well-pleaded material allegations of the Complaint are true, *see Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009), the court need not accept as true legal conclusions or unwarranted factual inferences, *Jackson v. Professional Radiology*, *Inc.*, 864 F.3d 463, 466 (6th Cir. 2017). Moreover, "a plaintiff's obligation to provide the grounds of his entitlement to relief

---

[5] Since Senator Warren's tweet, which is attached as an exhibit to Plaintiffs' Complaint, linked to this video and it is central to Plaintiffs' claims, the Court may consider the video in ruling on a motion to dismiss under Fed R. Civ. P. 12(b)(6). *See Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (noting in reviewing a motion to dismiss, the Court "may consider the Complaint and any exhibits attached thereto . . . so long as they are referred to in the Complaint and are central to the claims contained therein"). The video is available at @splinter_news, TWITTER, (Jan. 19, 2019, 6:18 PM), https://twitter.com/splinter_news/status/1086764784706560001.

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Taken together, then, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" in order to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).[6]

## IV.    ARGUMENT

### A.    The Court Lacks Personal Jurisdiction Over Senator Warren.

Both Kentucky law and the United States Constitution's Due Process Clause cabin this Court's authority to inflict coercive power on foreign defendants: a court can only exercise personal jurisdiction over an out-of-state defendant to the extent permitted by the forum state's long-arm statute, and only if it comports with federal due process rights. *See*, *e.g.*, *Carter v. Paschall Truck Lines, Inc.*, No. 5:18-CV-041-TBR, 2019 WL 2290513, at *4 (W.D. Ky. 2019). Because the Kentucky Supreme Court has held that the State's long-arm statute does not reach the outer limits of the Due Process Clause, this Court's jurisdictional analysis must follow two steps: (1) determine whether Kentucky's long-arm statute authorizes jurisdiction and (2) determine whether the court's exercise of jurisdiction comports with federal due process rights. *Hall v. Rag-O-Rama, LLC*, 359 F. Supp. 3d 499, 505 (E.D. Ky. 2019).

The Plaintiffs here cannot meet their burden of establishing personal jurisdiction. *See AlixPartners*, *LLP v. Brewington,* 836 F.3d 543, 548 (6th Cir. 2016). Neither the state's long-arm statute nor the federal due process requirements allows Plaintiffs to hale Senator Warren—a resident of Massachusetts, Am. Compl. ¶¶ 5, 29—into a Kentucky court over litigation arising

---

[6] Not only do Plaintiffs fail to meet this requirement, the legal defects in their claims foreclose relief under any set of facts that they may plead alternatively in support of their lawsuit, which would warrant dismissal even under the pre-*Twombly* standard. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

entirely from a Twitter post, while failing to identify any other purposeful contact or activity by Senator Warren in the state of Kentucky.

### 1. Kentucky's Long-arm Statute Does Not Authorize the Court to Exercise Personal Jurisdiction Over Senator Warren in this Lawsuit.

Plaintiffs' lawsuit does not meet the requirements of Kentucky's long-arm statute because Senator Warren has no legally-relevant contacts within the state. Ky. Rev. Stat. Ann. § 454.210(2)(a) (2019). Kentucky law enumerates nine categories of conduct that may subject a non-resident to personal jurisdiction in the state, as long as the plaintiff's claim "arises from" those activities. Ky. Rev. Stat. Ann. § 454.210(2)(b) (2019); *see Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51,. 56 (Ky. 2011) ("[N]on-resident defendants whose activities fall outside the criteria of K.R.S. § 454.210 may not be subjected to long-arm jurisdiction."). Reading the Amended Complaint in the light most favorable to Plaintiffs, however, only two of the nine enumerated categories bear any possible relation to Plaintiffs' claims:

(3) Causing tortious injury by an act or omission in this Commonwealth; [or]

(4) Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth[.]

Ky. Rev. Stat. Ann. § 454.210(2)(a)(3), (4) (2019). A claim does not "arise from" the categories of conduct listed above unless there is a "reasonable and direct nexus" between the act that caused the injury and the defendant's in-state activities. *Stanley Warranty, LLC v. Universal Adm'rs Serv., Inc.*, No. 3:13--513-JGH, 2014 WL 4805669, at *4 (W.D. Ky. 2014) (quotations omitted).

Plaintiffs' claims against Senator Warren center on a single tweet that was neither an "act" nor "omission" occurring in this state. Ky. Rev. Stat. Ann. § 454.210 (2)(a)(3). Courts in Kentucky have repeatedly held that an out-of-state defendant does not commit an "act or omission in this Commonwealth" simply by "sending a tortious communication into the state." *Stanley*, 2014 WL

4805669, at *5 (holding the court lacked personal jurisdiction over defendant sued for allegedly sending defamatory communications about the Kentucky plaintiff from defendants' New Jersey home because defendant did not commit "acts or omissions" in Kentucky); *Perkins v. Bennett*, No. 3:13-CV-695, 2013 WL 6002761, at *6 (W.D. Ky. Nov. 12, 2013) (holding the court lacked jurisdiction over out-of-state defendant for alleged tortious acts of fraud and misrepresentation committed via email and telephone); *Guangzhou Consortium Display Prod. Co., Ltd. v. PNC Bank, Nat'l Assoc.*, 924 F. Supp. 2d 800, 810 (E.D. Ky 2013) ("[L]ong distance contract negotiations by phone 'strike us as precisely the sort of random, fortuitous, and attenuated contacts that the *Burger King* Court rejected as a basis for haling non-resident defendants into foreign jurisdictions."). As these decisions demonstrate, even telephone and email communications are insufficient to establish personal jurisdiction, much less a Twitter post that at best *indirectly* references a Kentucky citizen and comments on events that took place outside of Kentucky.

Nor can Plaintiffs point to any other conduct that would bring Senator Warren within Kentucky's long-arm statute. Plaintiffs make no allegation, beyond the Twitter post, to suggest that Senator Warren maintains any other legally-relevant contacts in this forum, and even if they did, they would fail the second part of the long-arm statute's inquiry, which requires that Plaintiffs' claims *arise from* the enumerated activities that form the basis of the court's jurisdiction. Ky. Rev. Stat. Ann. § 454.210(2)(a)(4); *see also Carter*, 2019 WL 2290513, at *3. The Kentucky Supreme Court's ruling in *Caesars* is instructive. In that case, the plaintiff, a Kentucky resident, sued a casino in Indiana for injuries she suffered in a slip and fall accident. 336 S.W.3d at 59. The plaintiff argued that section (2)(a)(4) of Kentucky's long-arm statute was satisfied because the casino advertised "extensively" in Kentucky, which contributed to her presence at the casino on the day of her injury. *Id.* The Kentucky Supreme Court rejected her argument and explained that "the

statutory foundation for the assertion of long-arm jurisdiction must be the source of the plaintiff's cause of action." *Id.* In other words, the Court found that the link between the defendant's contacts in Kentucky (as demonstrated by extensive advertising) and her slip and fall injury was "far too attenuated" to establish personal jurisdiction. *Id.* Here, too, Senator Warren's tweet, concerning the highly-publicized confrontation between the Covington students and Phillips, is unrelated to any of the activities set forth in Kentucky's long-arm statute, and, thus, Kentucky law provides no basis for establishing personal jurisdiction.

### 2. Exercising Jurisdiction Over Senator Warren Would Violate the Federal Due Process Clause.

Not only do Plaintiffs' claims fall outside the bounds of Kentucky's long-arm statute,[7] their inability to demonstrate any legally-relevant contacts between Senator Warren and the Commonwealth means that the federal Due Process Clause also precludes this Court from exercising personal jurisdiction.

The threshold question before the Court is whether the defendant has "sufficient minimum contacts" such that haling the defendant into a Kentucky court would not "offend traditional notions of fair play and substantial justice." *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). This "minimum contacts" requirement can be established through either specific or general jurisdiction. Specific jurisdiction exists only when: (1) the nonresident defendant purposefully availed herself of acting in the forum state or causing a consequence in the forum state; (2) the cause of action arises from the defendant's activities in the state; and (3) the acts of the defendant or consequences caused by the defendant have a connection with the forum

---

[7] As noted in section IV.A.1 above, Kentucky's long-arm statute does not reach the outer limits of the Due Process Clause, and the failure to establish jurisdiction under the long-arm statute is dispositive. Nonetheless, Senator Warren includes this discussion of the federal due process requirements to demonstrate that Plaintiffs' attempt to sue the Senator in Kentucky lacks any basis under state or federal law.

9

that is substantial enough to make the exercise of jurisdiction over the defendant reasonable. *Cole v. Mileti,* 133 F.3d 433, 436 (6th Cir. 1998). General jurisdiction, on the other hand, requires contacts between the defendant and the forum that are continuous and systematic in nature such that the defendant "should reasonably expect to be required to defend actions in the courts of that state." *Ford v. RDI/Caesars Riverboat Casino*, *LLC*, 503 F. Supp. 2d 839, 843 (W.D. Ky 2017) (internal quotation marks omitted). The burden of establishing general jurisdiction, however, "is quite high and generally requires the existence of an office in the forum state or other physical presence." *Id* (internal quotation marks omitted).

Neither form of personal jurisdiction—specific or general—exists here, as it is well settled that publishing even allegedly-defamatory information online, in a way that is accessible to anyone on the internet, is insufficient to demonstrate the type of "purposeful availment" that comports with the federal Due Process Clause. A website, by its nature, can be accessed anywhere, even internationally. To suggest here that a defendant's presence on Twitter, particularly when discussing a topic that is trending around the country, is sufficient to establish personal jurisdiction in Kentucky would effectively "eviscerate the personal jurisdiction requirements as they currently exist." *Lexmark Intern., Inc. v. Laserland, Inc.*, 304 F. Supp. 2d 913, 918 (E.D. Ky 2004) (internal quotation marks omitted); *Advanced Solutions Life Sciences, LLC v. BioBots, Inc.*, No. 3:16-cv-00709, 2017 WL 2114969, at *5 (W.D. Ky May 12, 2017) (holding "the level of contact with a state that occurs simply from the fact of the website's availability on the Internet is . . . 'attenuated' . . . [and] falls short of purposeful availment") (citations and quotation marks omitted); *Sweetgreen, Inc. v. Sweat Leaf, Inc.*, 882 F. Supp. 2d 1, 5 (D.D.C. 2012) (holding defendant's Facebook pages and Twitter accounts were passive and did not provide a basis for personal jurisdiction).

10

The context of the alleged communication further discredits any attempt to establish personal jurisdiction. The tweet at issue made no explicit reference to any Kentucky citizen, but instead focused on Mr. Phillips and his words, and it concerned activities that occurred in Washington, D.C., not Kentucky. *See Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1120 (6th Cir. 1994) (finding allegedly defamatory press release about Ohio plaintiff did not create personal jurisdiction in Ohio). In short, Plaintiffs have made no allegation that Senator Warren conducts any activities in Kentucky, much less that their claims "arise from" in-state activities. Nor could they; a Twitter post by itself is an insufficient basis to hale an out-of-state defendant into a Kentucky court. Plaintiffs' claims against Senator Warren should be dismissed for lack of personal jurisdiction.

## B.    Plaintiffs Fail to State a Claim Against Senator Warren For Defamation.

Senator Warren's views on the Lincoln Memorial confrontation, as expressed in her official Senate account tweet, are not actionable in Kentucky (or anywhere else in the country) because both state and federal law foreclose the use of litigation to resolve differences in public opinion. Under Kentucky law, a cognizable claim for defamation must allege: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276, 282 (Ky. 2014). This standard, like all state defamation laws, must be read in tandem with the First Amendment's protection of speech, particularly for matters of public concern. *See, e.g.*, *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 14 (1990). Because the allegedly defamatory tweet makes no reference to any Plaintiff, and asserts a matter of opinion

11

that, even accepting Plaintiffs' allegations, cannot be considered false, Plaintiffs have failed to state a claim for defamation.

### 1.   Senator Warren's Tweet Was Neither "About" Nor "Concerning" Any Individual Plaintiff.

Kentucky defamation law provides a tort remedy only for claims by individuals, and requires that the allegedly defamatory statement be "about" or "concerning" an individual, rather than a group. *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2004), *overruled on other grounds by Toler*, 458 S.W.3d 276. Thus, when "defamatory statements are made against an aggregate body of persons, an individual member not specially imputed or designated cannot maintain an action." *Louisville Times v. Stivers*, 68 S.W.2d 411, 412 (Ky. 1934); *see also* Restatement (Second) of Torts § 564A cmt. a (1997) ("No action lies for the publication of defamatory words concerning a large group or class of persons."). For an individual to maintain an action for defamation based on such comments, "the statement must be applicable to every member of the class, and if the words used contain no reflection upon any particular individual, no averment can make them defamatory." *Kentucky Fried Chicken, Inc. v. Sanders*, 563 S.W.2d 8, 9 (Ky. 1978).

Senator Warren's tweet makes no reference to any individual Plaintiff, but merely states that Mr. Phillips "endured hateful taunts," Am. Compl. Ex. I. Even read in the light most generous to Plaintiffs, the closest they come to identifying a statement about an individual is to allege that Senator Warren's tweet "*implied . . . that the kids* interrupted an indigenous march . . . ," *id*. ¶ 84, (emphasis added), which at best implicates (but still does not defame) all Covington students present at the Lincoln Memorial. The same is true of the video linked in Senator Warren's tweet, which only refers to "high schoolers," the "chanting crowd," and "that mass of young men." *Supra* note 5. In other words, the tweet not only fails to identify a single Plaintiff, but even its so-called

implied meaning (as interpreted in the Complaint) is far too vague and generalized to state a defamation claim for any individual. *See Sandmann*, 2019 WL 3409881, at \*6-7; *see also*, *e.g.*, *Kentucky Fried Chicken*, 563 S.W.2d at 9 (affirming holding that article making derogatory statements about KFC's gravy inactionable on claim for defamation because "nothing in the present article . . . identified" or made "direct reference to" plaintiff's particular restaurant); *Louisville Times*, 68 S.W.2d at 411-12 (holding statement that "Stivers clan" had been involved in "fist fights and gun battles" was directed towards a group or class and hence not actionable as a matter of law); *O'Brien v. Williamson Daily News*, 735 F. Supp. 218, 220 (E.D. Ky. 1990) (dismissing defamation claims of teachers not identified in article mentioning "teachers having affairs with students" because the article referred to "no identifiable group member and does not impugn the reputation of any specific member"), *aff'd*, 931 F.2d 893 (6th Cir. 1991). Consistent with long-standing Kentucky law rejecting claims for generalized group-defamation—and this Court's recent decision in *Sandmann* rejecting similar claims based on generalized statements about Covington students—this Court should dismiss Plaintiffs' defamation claims against Senator Warren. *See Sandmann*, 2019 WL 3409881, at \*6-7.

### 2. Senator Warren's Tweet Is Not Defamatory Per Se, and Plaintiffs Fail to Plead Special Damages.

Plaintiffs do not rely on the "four corners" of Senator Warren's tweet to support their claims; rather they have asked the Court to infer defamatory meaning based on extrinsic facts, all while ignoring the heightened pleading requirements that accompany their claims of defamation by innuendo—also known as libel per quod. *See Dermody v. Presbyterian Church (U.S.A.)*, 530 S.W.3d 467, 475 (Ky. Ct. App. 2017). A challenged statement is considered libel per se if the words, on their face, "expose the plaintiff to public hatred, ridicule, contempt or disgrace, or . . . induce an evil opinion of him in the minds of right-thinking people . . . ." *Disabled Am. Veterans,*

*Dep't of Ky., Inc. v. Crabb*, 182 S.W.3d 541, 547 (Ky. Ct. App. 2005). Claims that require the court to focus not on the actual words written in the challenged statement, but on extrinsic facts that explain or give context to its meaning are considered libel per quod. *Id*. In determining whether a statement is defamatory per se or per quod, "**courts must stay within the four corners of the written communication**." *Sandmann*, 2019 WL 3409881, at *9.

The distinction between libel per se and per quod is important here because a complaint that asserts the latter (as Plaintiffs do) must also plead special damages (which Plaintiffs do not). *See Dermody*, 530 S.W.3d at 475. Plaintiffs simply conclude that Senator Warren's and all co-Defendants' tweets are "defamatory per se" and "libelous on their face without resort to additional facts," Am. Compl. ¶ 183, even though they cannot point to a single word or phrase from the challenged tweet that either identifies or defames them. Their specific allegations against Senator Warren are particularly revealing: Plaintiffs claim that the Senator "omitted true facts" and "implied . . . that the kids interrupted an indigenous march," "surrounded" Nathan Phillips "in a threatening manner, and taunted him . . . with chants of 'build the wall.'" *Id*. ¶ 29. None of these statements appeared in Senator Warren's tweet, which cannot convey such meaning without the extrinsic "facts" Plaintiffs cite to support their claim.

Plaintiffs' assumption that their allegations present a case of libel per se is therefore incorrect, *id*. ¶ 183, and their failure to plead special damages is fatal to their claim. The Complaint alleges only the types of general damages "for public embarrassment and humiliation [and] adverse effects on . . . future employment prospects and career, and . . . for adverse effect on . . . future earnings and financial stability" that the Kentucky Court of Appeals has found insufficient to support a claim for libel per quod. *Dermody*, 530 S.W.3d at 475; *see also* Am. Compl. ¶ 183. And while Plaintiffs vaguely reference increased costs of security from social media threats,

endangered college admission prospects, and limited future earnings, Am. Compl. ¶ 86, these allegations are no different from the general damages that the court rejected in *Dermody*, nor do they have any connection to Senator Warren's tweet, which appeared online only after the Covington students' confrontation with Phillips had gone viral and did not identify any of the Plaintiffs. The Complaint thus fails to state a claim for either defamation per se or per quod against Senator Warren.

### 3. Senator Warren's Tweet Is Not Actionable Because It Expressed an Opinion About a Matter of Public Concern.

Senator Warren's statement that "Nathan Phillips endured hateful taunts with dignity and strength, then urged us all to do better" is not capable of being defamatory because it conveys an opinion that is not provably false and is protected by the First Amendment. The first element of defamation under Kentucky law requires the challenged statement to be objectively false. *Toler*, 458 S.W.3d at 282. State defamation laws, however, also operate within established constitutional safeguards, and they must be interpreted in conjunction with First Amendment protections. Accordingly, this Court and the Sixth Circuit have recognized that "[s]tatements of pure opinion, hyperbole, or rhetorical exaggeration will receive First Amendment protection." *Loftus v. Nazari*, 21 F. Supp. 3d 849, 853 (E.D. Ky 2014); *see also Clark v. Viacom Int'l Inc.*, 617 F. App'x 495, 508 (6th Cir. 2015) ("[L]oose, figurative, or hyperbolic language or a statement of opinion that does not reasonably imply a false assertion of fact . . . may not form the basis of a state-law defamation claim.") (citations omitted). Taken together, any cause of action for defamation must be limited to statements that "make[] an assertion of fact—that is, an assertion that is capable of being proved objectively incorrect," *id.*, or otherwise "connote[] actual, objectively verifiable facts." *Compuware Corp. v. Moody's Inv'rs Servs., Inc.*, 499 F.3d 520, 529 (6th Cir. 2007).

Plaintiffs' disagreement with Senator Warren's tweet is directed not toward any factual statement, but rather the opinion that Nathan Phillips "endured hateful taunts." Am. Compl. ¶ 84. While the Complaint fails to explain how merely describing actions as "hateful" can be a verifiable or provably false statement, the context in which the statement was made—including the facts supplied by Plaintiffs' own allegations—firmly establish that the Senator's tweet is not actionable. *See also*, *e.g.*, *Frascatore v. Blake*, 344 F. Supp. 3d 481, 498 (S.D.N.Y. 2018) (holding statement that individual "experienced the effects of racism firsthand . . . [was] a non-actionable statement of opinion"). Plaintiffs acknowledge, for instance, that students from Covington made "tomahawk chop" gestures while Phillips, a Native American elder, beat on a drum. Am. Compl. ¶ 18. Even if the students were mimicking the Florida State Seminoles and Atlanta Braves chants as they allege, *id.*, it is neither a provably false nor verifiable statement to describe such actions as offensive taunts, as others have, whether at a sporting event or on the steps of the Lincoln Memorial in front of Native American activists. Moreover, the phrase "hateful taunt" is an example of "loose, figurative," "rhetorical hyperbole," that is not "susceptible of being proved true or false." *Milkovich*, 497 U.S. at 17, 21; *see also Seaton v. TripAdvisor LLC*, 728 F.3d 592, 597 (6th Cir. 2013); *Sandmann*, 2019 WL 3409881, at *7 (holding terms such as "ugly," "taunting," and "disrespect" to be examples of loose, figurative, rhetorical hyperbole protected by the First Amendment).

In addition to the First Amendment protections implicated by the Senator's tweet, Kentucky law confers an absolute privilege to statements of pure opinion, which "occurs where the commentator states the facts on which the opinion is based, or where both parties to the communication know or assume the exclusive facts on which the comment is clearly based." *Yancey v. Hamilton*, 786 S.W.2d 854, 857 (Ky. 1989). So even assuming a statement of opinion

may create a defamatory communication, that statement is not actionable unless "it implies the allegation of *undisclosed* defamatory facts as the basis of the opinion." *Lassiter v. Lassiter*, 456 F. Supp. 2d 876, 881 (E.D. Ky. 2006). In *Lassiter*, for instance, this Court held that a book passage accusing the plaintiff of adultery "fit the definition of 'pure opinion,'" which is "absolutely protected" under Kentucky law because the book disclosed the facts upon which the author relied. *Id.* at 882. Here, too, Senator Warren commented on an interview (and accompanying video) that was linked in her tweet, and Plaintiffs acknowledge that the confrontation between the Covington students and Phillips was recorded and published online on January 19, 2019. Am. Compl. ¶ 20. In other words, the opinion expressed in Senator Warren's tweet is plainly not actionable because "*[t]he facts on which she based the conclusion were disclosed*" and readily available to the public. *Lassiter*, 456 F. Supp. 2d at 882 (emphasis in original). The readers of the tweet are "in as good a position as the author to judge whether the conclusion she reached—[that Mr. Phillips endured hateful taunts with dignity and strength]—was correct." *Id.* What Plaintiffs have alleged is not defamation, but rather a difference of opinion that cannot be resolved through litigation.

**C.    The First Amendment Bars Plaintiffs' Claims for Intrusion Upon Seclusion and Negligent Infliction of Emotional Distress.**

Plaintiffs' remaining claims against Senator Warren, for intrusion upon seclusion and negligent infliction of emotional distress, are also foreclosed by the First Amendment because the challenged tweet addressed a matter of public concern, in a public place. This type of speech "occupies the highest rung of the hierarchy of First Amendment values and is entitled to special protection." *Connick v. Myers*, 461 U.S. 138, 145 (1983) (internal quotation marks omitted).

In *Snyder v. Phelps*, 562 U.S. 443 (2011), the Supreme Court defined the scope of constitutional protections for speech relating to matters of public concern in determining that the First Amendment shielded members of the Westboro Baptist Church from tort liability—including

17

claims for intentional infliction of emotional distress and intrusion upon seclusion—for picketing at a military funeral. *Id*. at 448-50. The Court found that the Westboro Baptist Church's protests occurred "at a public place on a matter of public concern," and held that the protesters' speech was entitled to special protection under the First Amendment; as such, the jury verdicts for intentional infliction of emotional distress and intrusion upon seclusion were set aside. *Id*. at 459-460. "If there is a bedrock principle underlying the First Amendment, it is that government may not prohibit the expression of an idea" just because others may "find[] the idea itself offensive or disagreeable." *Id*. at 458.

There is no dispute that the challenged tweet involved a matter of public concern, and this Court has recognized as much. *See Sandmann*, 2019 WL 3409881, at *4 (noting the confrontation between Mr. Phillips and the Covington High School Students "is inherently a matter of public concern"). Nor is there any question that Senator Warren's speech occurred in a public place. The Supreme Court has described the internet (including social media platforms such as Twitter) as one of "the most important places (in a spatial sense) for the exchange of views," *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017), and has analogized the internet to the "essential venues for public gatherings" of streets and parks, *id.* Senator Warren's tweet is thus entitled to the same special protections afforded to speech in *Snyder*, and, accordingly, Plaintiffs' claims for intrusion upon seclusion and negligent infliction of emotional distress must be dismissed.

## D.    Plaintiffs' Allegations Fail to State Claims For Intrusion Upon Seclusion and Negligent Infliction of Emotional Distress.

Even assuming the First Amendment permitted Plaintiffs to recover tort damages for statements of opinion on matters of public concern, their Complaint fails to state a claim under Kentucky law for intrusion upon seclusion or negligent infliction of emotional distress.

18

Kentucky courts follow the Restatement (Second) of Torts on claims of intrusion upon seclusion, and require Plaintiffs to demonstrate: "(1) an intentional intrusion by the defendant, (2) into a matter that the plaintiff has a right to keep private, and (3) which is highly offensive to a reasonable person." *McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810, 819 (E.D. Ky. 2019). As the Kentucky Court of Appeals has noted, the comments to this section of the Restatement are "instructive" in understanding the parameters of the claim, and those comments make clear that liability is limited to instances "when [the defendant] has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." *Pearce v. Whitenack*, 440 S.W.3d 392, 401 (Ky. Ct. App. 2014) (quoting Restatement (Second) of Torts § 652B cmt. c (1977)) (quotation marks omitted) (emphasis in original). There is no liability, however, "for observing [a plaintiff] or even taking his photograph while he is walking on the public highway, since he is not then in seclusion, and his appearance is public and open to the public eye." *Id.* Or, more simply, "[a] plaintiff cannot show that the defendant intruded into his or her private affairs for events that occurred while he or she appeared in public and expected to interact with others." *Dukes v. Mid-E. Athletic Conference*, 213 F. Supp. 3d 887, 892 (W.D. Ky. 2016). Plaintiffs' claim for intrusion upon seclusion fails on its face because Senator Warren's tweet commented on Plaintiffs' actions, which occurred in a public place (on the steps of the Lincoln Memorial), and was recorded and distributed online. Any commentary on such widely publicized activities cannot form the basis of liability.

Nor can Plaintiffs state a claim for negligent infliction of emotional distress based on the allegations in the Complaint. As a threshold matter, Kentucky law requires Plaintiffs to establish the basic elements of negligence: "(1) the defendant owed a duty of care to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and

the plaintiff's injury." *Modern Holdings, LLC v. Corning Inc.*, No. 13-405-GFVT, 2015 WL 1481457, at *16 (E.D. Ky. 2015) (quoting *Osborne v. Keeny*, 399 S.W.3d 1, 17 (Ky. 2012)). In addition, the plaintiff must show that she has suffered a "'serious' or 'severe' emotional injury," *Osborne*, 399 S.W.3d at 17; one that "a reasonable person, normally constituted, would not be expected to endure . . . ." *Id.* "Distress that does not significantly affect the plaintiff's everyday life or require significant treatment will not suffice." *Id.* Furthermore, "where only one reasonable conclusion can be reached, a court may decide the issue of causation as a matter of law." *Lewis v. B & R Corp.*, 56 S.W.3d 432, 438 (Ky. Ct. App. 2001).

Here, too, Plaintiffs' claims fail because they have not alleged *any* injury that directly or proximately resulted from Senator Warren's tweet, much less a serious or severe emotional injury. First, Plaintiffs' Complaint is bereft of any specific allegation that they or any of their "friends, family, [or] associates" actually saw Senator Warren's tweet before they suffered their alleged injuries, which is the *sine qua non* of causation for their emotional distress. *See* Am. Compl. ¶ 29. Instead, Plaintiffs repeat the same general, boilerplate allegations regarding Senator Warren's tweet that they recite for almost every single allegedly defamatory statement mentioned in their Complaint. Such conclusory allegations without supporting facts cannot survive a motion to dismiss. *Reed v. Gulf Coast Enterprises*, No. 3:15-CV-00295-JHM, 2016 WL 79998 (W.D. Ky. 2016). The Complaint also fails to allege, or provide any basis to conclude, that the individuals who allegedly subjected Plaintiffs to "death threats, hate mail, threatening phone calls, threatening emails, and other personal attacks" were spurred into action by Senator Warren's tweet, which, again, made no reference to any of the Plaintiffs individually. Plaintiffs' failure to identify *any* injury that resulted specifically from Senator Warren's tweet—as opposed to the extensive media coverage of, and public interest in, the students' confrontation with Phillips—falls well short of

20

their obligation to plead sufficient facts to support the elements of their claim. *See Iqbal*, 556 U.S. at 678.

Finally, even if Plaintiffs could plead both that a specific individual saw Senator Warren's tweet and issued "death threats, hate mail, threatening phone calls, threatening emails, and other personal attacks" in reaction to the tweet, their claim would still fail because each action or injury complained of required the intentional or criminal intervention of a third-party, breaking whatever weak causal link Plaintiffs allege, if any. *See, e.g.*, *Howard v. Spradlin*, 562 S.W.3d 281, 289 (Ky. Ct. App. 2018) (holding "the intervening and superseding intentional or criminal acts of the unknown third-party broke whatever weak chain of causation the [plaintiffs] could establish."). Thus, even in the improbable scenario just imagined, Senator Warren cannot be found liable for negligent infliction of emotional distress for issuing a tweet that did not identify any of the individual plaintiffs.

**E.     Plaintiffs' Lawsuit Asserts Claims Against Senator Warren For Acts Committed in Her Official Capacity, But Fails to Identify Any Applicable Waiver of Sovereign Immunity.**

The doctrine of sovereign immunity bars Plaintiffs' claims against Senator Warren because the United States, including its agencies and federal officers, "may not be sued without its consent." *Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668, 671 (6th Cir. 2013). While Plaintiffs do not indicate whether they assert claims against Senator Warren in her individual or official capacity, Sixth Circuit courts consider the "course of proceedings" in determining "the nature of the liability to be imposed." *Moore v. City of Harriman*, 272 F.3d 769, 773 (6th Cir. 2001); *see also Pelfrey v. Chambers*, 43 F.3d 1034, 1038 (6th Cir. 1995). Absent specific notice of the capacity in which federal officers are sued, the Sixth Circuit has "construe[d] an ambiguous complaint [to assert claims] against the officers in their official capacities." *Pelfrey*, 43 F.3d at

1038; *see also* Fed. R. Civ. P. 9(a) (requiring plaintiffs to plead capacity to be sued when necessary to demonstrate that the court has jurisdiction).

The inquiry here is straightforward because the Complaint makes clear that Plaintiffs have sued Senator Warren "based on acts or omissions within the scope of [her] federal office." *Keyter v. McCain*, 207 F. App'x 801, 802 (9th Cir. 2006) (rejecting argument that plaintiff sued federal official defendants in their personal capacities when allegations in the complaint indicated otherwise). Plaintiffs' allegations against Senator Warren point to a single tweet issued from her official Senate Twitter account, *see* Am. Compl., Ex. I, and as a federal official, "federal law defines the nature and contours of [Senator Warren's] . . . responsibilities," one of which is to communicate with constituents on matters of public concern. *Operation Rescue Nat. v. US*, 975 F. Supp. 92, 107 (1997). Indeed, courts have recognized repeatedly that Members of Congress are acting in their official capacity, under color of office when "communicat[ing] to constituents, either directly or by means of public media, on subjects of potential general interest to those constituents." *Torres v. CBS News*, 854 F. Supp. 245, 247 (S.D.N.Y. 1994); *see also Williams v. U.S.*, 71 F.3d 502, 507 (5th Cir. 1995) (noting that a "primary obligation of a Member of Congress in a representative democracy is to serve and respond to his or her constituents"); *Operation Rescue Nat.*, 975 F. Supp. at 107 (holding that comments made by Senator Kennedy at a press conference were within the scope of his responsibilities).

This Court lacks jurisdiction to adjudicate claims against Senator Warren in her official capacity unless Plaintiffs identify a waiver of sovereign immunity, yet the Complaint makes no such showing. *See Reetz v. United States*, 224 F.3d 794, 795 (6th Cir. 2000) ("If [plaintiff] cannot identify a waiver [of sovereign immunity], the claim must be dismissed on jurisdictional grounds."). This is not a defect that a simple amendment can fix either. Although the Federal Tort

Claims Act ("FTCA") waives sovereign immunity for certain tort claims, Plaintiffs must first exhaust administrative remedies in order to invoke its protections. *See*, *e.g.*, *Blakely v. United States*, 276 F.3d 853, 864 (6th Cir. 2002) (noting that the government waived sovereign immunity for claims under the FTCA "but only insofar as the plaintiff has exhausted his administrative remedies"). Specifically, the FTCA requires that a plaintiff first submit an administrative claim to the Office of the Senate Sergeant at Arms, which is charged with processing tort claims filed in the United States Senate. *De Masi v. Schumer*, 608 F. Supp. 2d 516, 525 (S.D.N.Y. 2009).

Because Plaintiffs neither allege that they have satisfied the requirements to invoke the FTCA's waiver of sovereign immunity, nor point to any other applicable waiver, the Court should dismiss Plaintiffs' claims against Senator Warren for lack of subject matter jurisdiction.

## V.   CONCLUSION

For the reasons stated herein, Senator Warren respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice.

September 4, 2019                          Respectfully submitted,

                                          /s/*Daniel J. Canon*
                                          Daniel J. Canon, PSC (Ky. 92048)
                                          1205 E. Washington St, Suite 111
                                          Louisville, KY 40206
                                          dan@dancanonlaw.com

                                          Marc E. Elias*
                                          Email: melias@perkinscoie.com
                                          Uzoma N. Nkwonta*
                                          Email: unkwonta@perkinscoie.com
                                          John M. Geise*
                                          Email: jgeise@perkinscoie.com
                                          PERKINS COIE LLP
                                          700 Thirteenth St., N.W., Suite 600
                                          Washington, D.C. 20005-3960
                                          Telephone: (202) 654-6200
                                          Facsimile: (202) 654-9959

                                          *Counsel for Defendant, Senator Elizabeth Warren*
                                          **Pro Hac Vice Application Pending*

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2019, I filed a copy of the foregoing Memorandum of Law in Support of Senator Warren's Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                          /s/ Daniel J. Canon
                                          Counsel for Defendant, Senator
                                          Elizabeth Warren

24