UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

*ELECTRONICALLY FILED*

| | |
|---|---|
| JOHN DOES 1-10, | |
| *Plaintiffs*, | |
| v. | No. 3:19-cv-117-WOB-CJS |
| CONGRESSWOMAN DEBRA HAALAND, et al., | |
| *Defendants*. | |

**MOTION TO DISMISS BY
DEFENDANTS JODI JACOBSON AND KEVIN KRUSE**

Jon L. Fleischaker
Michael P. Abate
Andrea Aikin
KAPLAN JOHNSON ABATE & BIRD LLP
710 W. Main St., 4th Floor
Louisville, KY 40202
jfleischaker@kaplanjohnsonlaw.com
mabate@kaplanjohnsonlaw.com
aaikin@kaplanjohnsonlaw.com
(502) 540-8280

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................................. ii

TABLE OF AUTHORITIES ......................................................................................................... iii

INTRODUCTION AND SUMMARY ........................................................................................ 1

STATEMENT OF FACTS ............................................................................................................. 3

STANDARD OF REVIEW ............................................................................................................ 5

ARGUMENT ................................................................................................................................... 5

I.  This Court Lacks Personal Jurisdiction Over Defendants Jacobson and Kruse. ..................... 5

   A.  Plaintiffs have Failed to Establish Personal Jurisdiction over Jacobson or Kruse under Kentucky's Long-Arm Statute. ................................................................. 6

   B.  Exercise of Judicial Authority in this Lawsuit Violates Jacobson's and Kruse's Due Process Rights. .......................................................................................... 8

II.  Plaintiffs' Attempt to Anonymously Litigate a Defamation Claim Violates the Rules of Civil Procedure, Prevents them from Stating a Claim, and Deprives Defendants of the Right to Defend Themselves. ............................................................... 9

   A.  Plaintiffs' Complaint Does Not Comply with Fed. R. Civ. P. 10(a) ............................ 9

   B.  Plaintiffs Cannot State a Claim for Relief Without Revealing Their Identities .......... 12

   C.  Defendants Have a Due Process Right to Defend Against Plaintiffs' Allegations but Cannot do So Without Knowing Their Identities. .............................. 13

III.  Plaintiffs' Defamation Claim Fails to State a Claim Upon Which Relief Can Be Granted. .... 13

   A.  Defendants' Statements Are Privileged Under the First Amendment ....................... 14

   B.  The Challenged Statements are Not "of" or "concerning" Plaintiffs ........................ 16

   C.  Defendants' Statements Do Not Rise to the Level of Libel *Per Se.* ........................... 18

   D.  Plaintiffs are Limited Purpose Public Figures but Have Not Alleged Actual Malice .................................................................................................. 20

   E.  Even if They are Private Figures, Plaintiffs Have Failed to Adequately Allege Falsity or Fault. ........................................................................................... 22

IV.  Plaintiffs' Remaining Tort Claims Fail as a Matter of Law ...................................................... 22

CONCLUSION ............................................................................................................................. 25

# TABLE OF AUTHORITIES

## CASES

*Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F. 3d 544 (6th Cir. 2007)................................5

*Archey v. AT&T Mobility, LLC*, 2017 WL 6614106 (E.D. Ky. Dec. 26, 2017) ......................................24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................5

*Bernard v. Fed. Nat. Mortg. Ass'n*, 587 Fed. App'x 266 (6th Cir. 2014) ........................................5

*Bird v. Parsons*, 289 F.3d 865 (6th Cir. 2002)................................................................................7

*Cadle Co. v. Schlichtmann*, 123 Fed. App'x 675 (6th Cir. 2005) ...............................................1, 8

*Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51 (Ky. 2011) ...........................................6

*Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630 (6th Cir. 2005) ...................................10, 13

*Clark v. Viacom Int'l Inc.*, 617 F. App'x 495 (6th Cir. 2015)....................................................20, 22

*Collins v. Carroll Cty. Sheriff Dep't*, No. 2017-CA-000662-MR, 2019 WL 413614
     (Ky. Ct. App. Feb. 1, 2019)..........................................................................................23-24

*Courier-Journal, Inc. v. Cabinet for Health and Family Services*, Civ. Action No. 11-CI-00141
     (Franklin Cir. Ct. Nov. 3, 2011) ....................................................................................10

*Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.*, 854 F.2d 802 (6th Cir. 1988)............................5

*Dermody v. Presbyterian Church (U.S.A.)*, 530 S.W.3d 467 (Ky. Ct. App. 2017)...................... 18, 20

*Disabled Am. Veterans, Dep't of Kentucky, Inc. v. Crabb*, 182 S.W.3d 541(Ky. Ct. App. 2005)..................20

*Doe v. Frank*, 951 F.2d 320 (11th Cir. 1992) ........................................................................9-10

*Doe v. Harlan Cty. Sch. Dist.*, 96 F. Supp. 2d 667 (E.D. Ky. 2000) ............................................10

*Doe v. Megless*, 654 F.3d 404 (3d Cir. 2011) ....................................................................9, 10, 11

*Doe v. Porter*, 370 F.3d 558 (6th Cir. 2004) ................................................................................11

*Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000) ...........................9, 10

*Does v. Shalushi*, 2010 WL 3037789 (E.D. Mich. July 30, 2010)..................................................11

*Estate of Rodriquez v. Drummond Co.*, 256 F. Supp. 2d 1250 (N.D. Ala. 2003) .........................11

*Gertz v. Robert Welch, Inc.,* 418 U.S. 323 (1974) ...................................................................20

*Higgins v. Kentucky Sports Radio, LLC,* 2019 WL 1290870
    (E.D. Ky. Mar. 20, 2019) (appeal pending) .......................................................... 22, 23

*Hinners v. Robey,* 336 S.W.3d 891 (Ky. 2011) ........................................................................8

*Howard v. Asset Acceptance, LLC,* 2013 WL 1760299 (E.D. Ky. Apr. 24, 2013)....................24

*International Shoe Co. v. Washington,* 326 U.S. 310 (1945) ....................................................8

*Kentucky Fried Chicken of Bowling Green, Inc. v. Sanders,* 563 S.W.2d 8, (Ky. 1978) ...............16-17

*Kerry Steel, Inc. v. Paragon Indus., Inc.,* 106 F.3d 147 (6th Cir. 1997) .............................5

*Lassiter v. Lassiter,* 456 F. Supp. 2d 876 (E.D. Ky. 2006) .................................................14

*Loftus v. Nazari,* 21 F. Supp.3d 849 (E.D. Ky. 2014) ........................................................14

*Louisville Times v. Stivers,* 68 S.W.2d 411 (Ky. 1934) .......................................................17

*McCall v. Courier-Journal & Louisville Times Co.,* 623 S.W.2d 882 (Ky. 1981) .................23

*Milkovich v. Lorain Journal Co.,* 497 U.S. 1 (1990)....................................................... 14, 19

*Nat'l Coll. of Kentucky, Inc. v. WAVE Holdings, LLC,*
    536 S.W.3d 218 (Ky. Ct. App. 2017) ....................................................... 12, 14, 15, 16

*O'Brien v. Williamson Daily News,* 735 F. Supp. 218, 220 (E.D. Ky. 1990),
    *aff'd,* 931 F.2d 893 (6th Cir. 1991) ...................................................................16

*Osborne v. Keeny,* 399 S.W.3d 1 (Ky. 2012) .................................................................24-25

*Packingham v. North Carolina,* 137 S. Ct. 1730 (2017) ............................................... 2, 11

*Palmer v. Alvarado,* 561 S.W.3d 367 (Ky. Ct. App. 2018), *review denied* (Dec. 5, 2018).....................15, 16

*Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767 (1986).......................................... 2, 22

*Reynolds v. Int'l Amateur Athlete Fed.,* 23 F.3d 1110 (6th Cir. 1994) .................................9

*Roche v. Home Depot U.S.A.,* 197 Fed. App'x 395 (6th Cir. 2006) ...................................18

*Sandmann v. WP Co. LLC,* 2019 WL 3409881 (E.D. Ky. July 26, 2019) ...................*Passim*

*Snyder v. Phelps,* 562 U.S. 443 (2011) ....................................................................... 2, 22

*Spectrum Scan, LLC v. AGM California,* 519 F. Supp. 2d 655 (W.D. Ky. 2007) ...................7

*Stringer v. Wal–Mart Stores, Inc.*, 151 S.W.3d 781 (Ky. 2004) ......................................20

*Theunissen v. Matthews*, 935 F.2d 1454 (6th Cir. 1991) .............................................5

*Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522 (6th Cir. 2014) ..............................2, 20

*Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276 (Ky. 2014) ....................................12, 18

*Unique Coupons, Inc. v. Northfield Corp.*, No. 99-cv-7445,
    2000 WL 631324 (N.D. Ill. May 16, 2000) .........................................19

*United States ex rel. Little v. Triumph Gear Sys., Inc.*,
    870 F.3d 1242, 1249 (10th Cir. 2017), *cert. denied,* 138 S. Ct. 1298 (2018) ..........................9

*United States v. Jones*, 565 U.S. 400 (2012) ................................................24

*Walden v. Fiore*, 571 U.S. 277 (2014) .......................................................8

*Webb v. Bob Smith Chevrolet, Inc.*, 2005 WL 2065237 (W.D. Ky. Aug.24, 2005) ......................24

*Weisbarth v. Geauga Park Dist.*, 499 F.3d 538 (6th Cir. 2007) ................................5

*Welch v. American Publ'g Co.*, 3 S.W.3d 724 (Ky. 1999) ...........................14, 23

*Wiles v. Ascom Transp. Sys., Inc.*, 478 F. App'x 283 (6th Cir. 2012) .........................24

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ...........................8

*Yancey v. Hamilton*, 786 S.W.2d 854 (Ky. 1989) ....................................14, 15

## STATUTES

KRS 454.210 .......................................................................7

KRS 454.210(2) ...................................................................6

KRS 454.210(2)(a) ................................................................7

## RULES

Fed. R. Civ. P. 10(a) .............................................................9

Fed. R. Civ. P. 8(a)(2) ...........................................................5

Ky. CR 10.01 ....................................................................10

Restatement (Second) of Torts §652B ...........................................24

**OTHER AUTHORITIES**

Jodi Jacobson, *White-Washing White Supremacy: Media Rushes to Excuse Covington Catholic Students*,
    Rewire.News (Jan. 22, 2019), https://rewire.news/article/2019/01/22/white-washing-white-
    supremacy-media-rushes-to-excuse-covington-catholic-students/ ................................................ 4, 15

Daniel Pulido, *Covington Catholic students in blackface at past basketball game*, YouTube
    (Jan. 21, 2019) https://www.youtube.com/watch?time_continue=29&v=OKJLe0L7Ktg ............18

Linds (@roflinds), Twitter (Jan. 21, 2019, 3:04pm)
    https://twitter.com/roflinds/status/1087486166939680768 ...............................................................15

Yashiya (@MeloStreetVybz), Twitter (Jan. 21, 2019, 7:16pm)
    https://twitter.com/MeloStreetVybz/status/1087549546404691969 ................................................15

## INTRODUCTION AND SUMMARY

Plaintiffs' scattershot complaint implausibly alleges that a collection of unaffiliated politicians, reporters, academics, commentators, and celebrities formed a "social media lynch mob" to destroy their reputations. Their complaint is unorthodox in numerous ways, each of which is an independent barrier to their recovery and provides a reason for this Court to dismiss their claims, as it did with the defamation claim that their fellow Covington Catholic student, Nicholas Sandmann, filed against the Washington Post. *See Sandmann v. WP Co. LLC*, 2019 WL 3409881 (E.D. Ky. July 26, 2019).

First, plaintiffs have improperly tried to bring Defendants Jodi Jacobson and Kevin Kruse to Kentucky to litigate over comments they made in other jurisdictions using social media platforms. But neither Kentucky's long-arm statute nor the Constitution's Due Process clause permits this Court to exercise jurisdiction over defendants for this kind of out-of-state conduct. That is true even though plaintiffs claim to have been injured here. As the Sixth Circuit has held, use of the Internet does not imply that a party consents to be a defendant in any forum where their online statements allegedly defame someone. *See, e.g., Cadle Co. v. Schlichtmann*, 123 Fed. App'x 675 (6th Cir. 2005).

Moreover, plaintiffs filed their defamation claim anonymously, without seeking leave of this Court—something that is not permitted by the Federal (or Kentucky) Rules of Civil Procedure. That odd strategic choice not only deprives this Court of jurisdiction but also prevents plaintiffs from even alleging the requisite elements of their claims. It also improperly inhibits defendants' ability to defend themselves.

On the merits, plaintiffs' claims fare no better. The statements by Defendants Jacobson and Kruse are constitutionally protected, as they are opinion statements on issues of public concern. No liability can attach to such statements under the First Amendment.

In addition, none of the defendants' statements are specifically "of and concerning" any of the plaintiffs—whoever they are. But that is a clear requirement of a defamation claim in Kentucky, as this Court recently held in dismissing Mr. Sandmann's similar action.

Plaintiffs' defamation claims fail for other reasons, too. Their conduct has made them limited purpose public figures, which requires them to allege actual malice in order to overcome a motion to dismiss. *See Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 527 (6th Cir. 2014). They have not even attempted to do so. Similarly, because defendants' statements were about matters of clear public concern (as this Court held in *Sandmann*), plaintiffs bear the additional burden of alleging both falsity and fault, even if they are only private figures. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986). Yet, once again, they have not even tried to meet that standard. Finally, even if plaintiffs had attempted to plead all the required elements of their defamation claims, those claims would fail because—as this Court held in *Sandmann*—the opinion and generalized hyperbole about which plaintiffs complain does not come close to alleging defamation *per se*. And because they, like Sandmann, do not even attempt to allege special damages from the allegedly defamatory statements, plaintiffs' claims must be dismissed.

Plaintiffs' other tort claims fail, too. States may not impose tort liability on speakers for discussing matters of public concern—including claims for intrusion into seclusion and infliction of emotional distress. *See Snyder v. Phelps*, 562 U.S. 443 (2011). Nor can plaintiffs meet the elements of either claim, as a matter of law.

Simply put, none of plaintiffs' claims is viable. Pleading-stage dismissal is required as a matter of law. It also is appropriate to ensure that litigants cannot use the courts to chill debate on the Internet and social media—the "modern public square," *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017)—about matters of appropriate public concern.

## STATEMENT OF FACTS

This Court is familiar with the underlying facts of this dispute. As the Court succinctly described in dismissing the defamation claims of Nicholas Sandmann, a Covington Catholic Student who (apparently[1]) is not a party to this case, "[t]his is a defamation action arising out of events that occurred in our nation's capital on January 19, 2019, among various groups who were exercising their rights to free assembly and speech. In this age of social media, the events quickly became the subject of posts, squares, tweets, online videos, and – pertinent here – statements published by major media outlets." *Sandmann*, 2019 WL 3409881, at *1.

While the *Sandmann* case concerned a single student who had been repeatedly identified online and in print, this case is a bit different. It is brought by ten anonymous plaintiffs, all of whom claim to be "students who, at all times pertinent, attend Covington Catholic High School." Amended Compl. ¶ 2. The plaintiffs "traveled by bus . . . to Washington D.C. to attend the March for Life" and, while there, took part in the events that are described in this Court's *Sandmann* opinion. *Id.* ¶¶ 15-18. Plaintiffs were part of a group of dozens of Covington Catholic students that attended the march, "accompanied by sixteen adults." *Sandmann*, 2019 WL 3409881, at *1.

Plaintiffs claim to be the victims of "a social media lynch mob . . . advanced by prominent politicians, journalists with big-pedigree publications, and social celebrities with large social media platforms and public followings." *Id.* ¶ 19. And, as relevant to this motion, plaintiffs allege that statements made by Defendants Jacobson and Kruse were defamatory *per se*, constitute intrusion into seclusion, and negligently inflicted emotional distress on them. *Id.* ¶¶ 33-34, 137-147, 171-182.

Ms. Jacobson is the President and Editor-in-Chief of *Rewire.News*, a nonprofit online publication devoted to evidence-based reporting on reproductive and sexual health, rights, and justice,

---

[1] As discussed in Part I of the Argument below, plaintiffs have improperly refused to disclose who they are. Defendants assume that Nicholas Sandmann, who has initiated several of his own lawsuits and is represented by different counsel, is not among them.

and the intersections of racial, environmental, immigration, and economic justice. In January 2019, Ms. Jacobson published an article entitled *White-Washing White Supremacy: Media Rushes to Excuse Covington Catholic Students*, available at https://rewire.news/article/2019/01/22/white-washing-white-supremacy-media-rushes-to-excuse-covington-catholic-students/.[2] That article is explicitly labeled as "Commentary" and includes Ms. Jacobson's opinions regarding the way the media covered the incident in question, including the decision by many reporters and media outlets to revise their initial coverage after a public relations firm apparently linked to Mr. Sandmann put forth a counter-narrative to the early coverage of the incident. Ms. Jacobson's article sets forth in detail the factual basis for the opinions she espoused, including by linking to video and photographs of the confrontation. The Amended Complaint does not challenge any other statement made by Ms. Jacobson.

Mr. Kruse is a Professor of History at Princeton University with several hundred thousand Twitter followers. In January 2019, Prof. Kruse participated in the public debate surrounding the incident on the national mall. Prof. Kruse's statement responded to an opinion expressed by journalist Jay Caruso, who tweeted: "What? The accusation was that this kid and his friends surrounded Phillips and got into his face, when in fact, it was Phillips who approached him and started banging a drum in his face. Come on, man." Prof. Kruse responded with a tweet that read, in its entirety: "No, the accusation was that this kid and his friends mocked an elderly Native American war veteran and, hey, they did. They also taunted women and shouted 'it's not rape if you enjoy it' but sure, they're the real victims. According to his PR firm anyway." Amended Compl., Exh. O. The Amended Complaint does not challenge any other statement made by Prof. Kruse.

---

[2] Although both the Complaint and Amended Complaint state that Ms. Jacobson's article is attached as an exhibit, neither document included a copy of the article.

## STANDARD OF REVIEW

Plaintiffs bear the burden of establishing personal jurisdiction over each defendant. *See Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F. 3d 544, 549 (6th Cir. 2007). To do so, plaintiffs must make a *prima facie* showing that each defendant is properly subject to the authority of this Court. *Id.*

Moreover, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). That requirement imposes a duty on plaintiffs to allege "either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir. 2007). Failure to allege a material element "justifies dismissal." *Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.*, 854 F.2d 802, 805 (6th Cir. 1988); *see also Bernard v. Fed. Nat. Mortg. Ass'n*, 587 Fed. App'x 266, 273 (6th Cir. 2014) ("[R]equiring plaintiff to allege all essential elements of her claim is not akin to subjecting her to a heightened pleading standard.").

## ARGUMENT

### I.   This Court Lacks Personal Jurisdiction Over Defendants Jacobson and Kruse.

A defendant may only be subjected to the jurisdiction of a forum if, through her contacts with that forum, she could reasonably anticipate being subject to its laws and jurisdiction. It is the plaintiff's burden to establish that a defendant is properly subject to the authority of the forum court the plaintiff has invoked. *See Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Here, plaintiffs have sued Jodi Jacobson, a Maryland resident, and Kevin Kruse, a New Jersey resident, in Kentucky. This court "may exercise personal jurisdiction over an out-of-state defendant only to the extent that a court of the forum state could do so." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 148 (6th Cir. 1997).

Under Kentucky law, jurisdiction over an out-of-state defendant must satisfy both Kentucky's long-arm statute and the due process clause of the Fourteenth Amendment to the U.S. Constitution. *See Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011).

Here, Plaintiffs have failed to establish that this Court has personal jurisdiction over these defendants under either criterion. Kentucky's long-arm statute, KRS 454.210, does not provide for jurisdiction when an out-of-state resident publishes an online article or posts a tweet about a Kentucky resident's participation in a public, political rally occurring Washington, D.C. While that alone is sufficient to require dismissal of the claims against Defendants Jacobson and Kruse for lack of personal jurisdiction, plaintiffs' Complaint also fails to establish the "minimum contacts" between these defendants and the forum necessary to satisfy the Constitution. Plaintiffs have made no effort to identify *any* contacts between either Jacobson or Kruse and the Commonwealth of Kentucky. Instead, Plaintiffs simply point to the harms they allegedly suffered in Kentucky. That is insufficient, as a matter of law, to support jurisdiction over Defendants Jacobson and Kruse.

### A. Plaintiffs have Failed to Establish Personal Jurisdiction over Jacobson or Kruse under Kentucky's Long-Arm Statute.

Kentucky's long-arm statute extends personal jurisdiction of the Kentucky courts to non-residents, provided that the non-resident's contacts or activities within the Commonwealth meet the specific parameters outlined in the statute, and that the plaintiff's claims arise from those contacts. *See Caesars Riverboat Casino*, 336 S.W.3d at 55. KRS 454.210(2), in relevant part, provides that a non-resident may be subject to the judicial authority of the Kentucky courts only if they have availed themselves of Kentucky law by:

1. Transacting any business in this Commonwealth;
   . . .

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other

persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth . . .

KRS 454.210(2)(a).

The publication of Jacobson's article and Kruse's tweet are not acts that occurred within the Commonwealth. Rather, those acts took place in Maryland and New Jersey, respectively, where the Defendants live and work. The mere fact that the article and tweet could be viewed by Kentucky residents on the Internet does not mean that they were published everywhere for purposes of the long-arm statute. *See, e.g., Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) ("[T]he fact that Dotster maintains a website that is accessible to anyone over the Internet is insufficient to justify general jurisdiction.").

The remaining provisions of KRS 454.210 are equally inapplicable to the allegations raised in plaintiffs' Complaint. Plaintiffs do not (and cannot) allege that either Jacobson or Kruse transacts business in Kentucky, solicits business in Kentucky, or derives substantial revenue from goods or services sold in Kentucky.

The only possible nexus between Defendants Jacobson and Kruse and the Commonwealth of Kentucky is that *plaintiffs* live in Kentucky and allegedly suffered harm here due to the publication of the Jacobson article and the Kruse tweet. This is insufficient to establish personal jurisdiction as a matter of law, based on the plain language of the long-arm statute as well as well-established judicial authority. *See, e.g., Spectrum Scan, LLC v. AGM California*, 519 F. Supp. 2d 655, 659 (W.D. Ky. 2007) (dismissing claim for lack personal jurisdiction when "Defendant may have committed an act that had a consequence in Kentucky, but it did not commit that act in Kentucky").

**B. Exercise of Judicial Authority in this Lawsuit Violates Jacobson's and Kruse's Due Process Rights.**

Even if a party's conduct falls within Kentucky's long-arm statute, a court cannot exercise jurisdiction over that defendant unless doing so would be consistent with the Due Process clause of the Fourteenth Amendment. *See Hinners v. Robey*, 336 S.W.3d 891, 897 (Ky. 2011). That constitutional provision restricts a state's authority to exercise judicial authority over a nonresident defendant. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). Such authority is only appropriate if the defendant has "minimum contacts" with the forum state "such that the maintenance of the suit does not offend the traditional notions of fair plan and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citations omitted). Minimum contacts cannot be established merely because plaintiff is a resident of the form state, or because plaintiff claims to have suffered injury in the forum. *Walden v. Fiore*, 571 U.S. 277, 290 (2014) ("[M]ere injury to a forum resident is not a sufficient connection to the forum."). Rather, the proper inquiry focuses on the defendant's contacts with the forum. *Id.*

Here, plaintiffs allege that Defendants Jacobson and Kruse posted defamatory statements on the Internet, which were available in Kentucky and pertained to residents of Kentucky. Under existing law, more is required to establish personal jurisdiction in a Kentucky forum. In *Cadle Co. v. Schlichtmann*, 123 Fed. App'x 675 (6th Cir. 2005), the Sixth Circuit considered this very issue and held that a federal court in Ohio could not exercise personal jurisdiction over a Massachusetts defendant based on allegedly defamatory statements posted on a website that happened to be available in Ohio. The Sixth Circuit noted that while the posts in question were about an Ohio resident, the content of those posts concerned activity outside of Ohio. *Id.* at 278. Furthermore, nothing on the website was directed at residents of Ohio or specifically targeted an Ohio audience. *Id.* The Court rejected out of hand the argument that availability of an online post within the forum state constitutes sufficient minimum

contacts: "The law does not require that people avoid using the internet altogether in order to avoid availing themselves of the laws of every state." *Id.*

The tweet published by Kruse and the opinion column published by Jacobson both commented on events that took place in Washington, D.C. as well as the nationwide media response to those events, and the subsequent backlash and conversations engendered by coverage of those events. As in *Cadle*, these statements are about the actions of Kentucky residents that took place outside the state of Kentucky. These defendants directed their comments to a national audience; they neither solicited nor targeted a Kentucky audience in favor of any other state.  Kentucky was not the focal point of the column or the tweet, and the fact that these Defendants might have foreseen that their comments about these events would be circulated in Kentucky is insufficient to create personal jurisdiction. *See Reynolds v. Int'l Amateur Athlete Fed.*, 23 F.3d 1110, 1120 (6th Cir. 1994) (no personal jurisdiction in Ohio based on press release issued about Ohio resident's activities outside the state).

II. **Plaintiffs' Attempt to Anonymously Litigate a Defamation Claim Violates the Rules of Civil Procedure, Prevents them from Stating a Claim, and Deprives Defendants of the Right to Defend Themselves.**

Even if this Court had jurisdiction over Defendants Jacobson and Kruse, it would be required to dismiss plaintiffs' complaint because they cannot litigate a defamation case anonymously. Indeed, plaintiffs' attempt to shield their identities fatally undermines their complaint in numerous ways.

A. **Plaintiffs' Complaint Does Not Comply with Fed. R. Civ. P. 10(a)**

First, Plaintiffs have failed to comply with Federal Rule of Civil Procedure 10(a), which states that every complaint "must name all the parties" to the action. Federal Courts have repeatedly held that anonymously filed complaints—like the one at issue here—fail to comply with this rule. *See, e.g., United States ex rel. Little v. Triumph Gear Sys., Inc.*, 870 F.3d 1242, 1249 (10th Cir. 2017), *cert. denied,* 138 S. Ct. 1298 (2018) ("The Federal Rules of Civil Procedure 'make no provision for suits by persons using fictitious names or for anonymous plaintiffs.'"); *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011)

9

("Rule 10(a) requires parties to a lawsuit to identify themselves in their respective pleadings."); *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000) (same); *Doe v. Frank*, 951 F.2d 320, 322 (11th Cir. 1992) (Rule 10(a) "protects the public's legitimate interest in knowing all of the facts involved, including the identities of the parties").[3]

As these cases recognize, "[l]awsuits are public events," *Frank*, 951 F.2d at 324, which implicate "the public's common law right of access to judicial proceedings," *Does I thru XXIII*, 214 F.3d at 1067. "A plaintiff should be permitted to proceed anonymously only in those exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *Frank*, 951 F.2d at 324; *see also Doe v. Harlan Cty. Sch. Dist.*, 96 F. Supp. 2d 667, 670 (E.D. Ky. 2000) (court considering request for plaintiff to proceed anonymously must weigh "(a) whether the plaintiffs seeking anonymity are suing to challenge governmental activity, (b) whether prosecution of the suit will compel the plaintiffs to disclose information 'of the utmost intimacy,' and (c) whether a child plaintiff is involved"). "The risk that a plaintiff may suffer some embarrassment is not enough." *Frank*, 951 F.2d at 324; *Megless*, 654 F.3d at 408 (same).

To be sure, there *is* a procedure for attempting to proceed anonymously. To do so, a party must seek a protective order to proceed anonymously at the time he files his complaint. *See Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 636 (6th Cir. 2005). "Failure to seek permission to proceed under a pseudonym is fatal to an anonymous plaintiff's case," however, because "'federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them.'" *Id.*

---

[3] The Kentucky Rules of Civil Procedure—under which this case was originally filed before removal—equally prohibit the filing of anonymous complaints. *See* Ky. CR 10.01; *Courier-Journal, Inc. v. Cabinet for Health and Family Services*, Civ. Action No. 11-CI-00141 (Franklin Cir. Ct. Nov. 3, 2011) (Shepherd, J.) (rejecting an anonymous party's attempt to intervene in an open records suit to assert an alleged privacy interest concerning public records documenting child abuse and neglect because "the Jane Does have no right to proceed anonymously" under Kentucky Civil Rules).

at 637 (quoting *Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989)). Thus, some courts have dismissed complaints filed anonymously for lack of jurisdiction. *See, e.g.*, *Estate of Rodriquez v. Drummond Co.*, 256 F. Supp. 2d 1250, 1257 (N.D. Ala. 2003). Others have refused to allow them to proceed unless the complaint is re-filed to name the anonymous plaintiffs. *See, e.g.*, *Does v. Shalushi*, 2010 WL 3037789, at *4 (E.D. Mich. July 30, 2010).

Anonymity is granted only in rare circumstances. As the Sixth Circuit has explained, courts may grant anonymity only where "a plaintiff's privacy interests substantially outweigh the presumption of open judicial proceedings." *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004). To determine whether that is the case, courts must consider:

> (1) whether the plaintiffs seeking anonymity are suing to challenge governmental activity; (2) whether prosecution of the suit will compel the plaintiffs to disclose information "of the utmost intimacy"; (3) whether the litigation compels plaintiffs to disclose an intention to violate the law, thereby risking criminal prosecution; and (4) whether the plaintiffs are children.

*Id.* (quoting *Doe v. Stegall*, 653 F.2d 180, 185–86 (5th Cir. 1981)). Here, the only factor that even arguably relates to this case is the plaintiffs' alleged age: they claim to be high school students, some of whom might be under 18. Each of the other factors cuts decisively against allowing them to proceed anonymously. They are challenging purely private activity, for which they seek monetary damages. The case involves actions and speech that took place in uniquely public fora—at a national monument and on social media, described by the Supreme Court as the "modern public square," *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017). And there is no suggestion that plaintiffs put themselves in any legal jeopardy by disclosing their identities; their conduct is entitled to First Amendment protection just as defendants' is (more on that below).

Simply put, the plaintiffs have invoked this Court's jurisdiction and ask it to award monetary damages against private parties. Having chosen to file their complaint, they must come forward and

name themselves. The parties and the public have a right to "know who is using their courts." *Megless*, 654 F.3d at 408 (quoting *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997)).

###### B.    Plaintiffs Cannot State a Claim for Relief Without Revealing Their Identities

Plaintiffs' attempt to anonymously litigate a *defamation* claim is particularly inappropriate. A plaintiff cannot even plead such a claim without identifying himself and the alleged harm to his reputation. As this Court recently held, to state a claim under Kentucky law, a plaintiff must allege "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Sandmann*, 2019 WL 3409881, at *3 (citing *Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 282 (Ky. 2014)).

Here, plaintiffs cannot even meet the first element of their claim. Without identifying themselves, there is no way to prove that the statements of the defendants were "of and concerning" the anonymous plaintiffs. Under Kentucky law, "'[w]hen the defamatory statement does not name the defamed person, that person *must prove* that the article refers to himself." *Nat'l Coll. of Kentucky, Inc. v. WAVE Holdings, LLC*, 536 S.W.3d 218, 223 (Ky. Ct. App. 2017) (quoting *E. W. Scripps Co. v. Cholmondelay*, 569 S.W.2d 700, 702 (Ky. App. 1978)) (emphasis added). Here, it will be impossible for plaintiffs to satisfy their burden to prove the allegedly defamatory statements refer to them when they refuse even to reveal their own identities.

Similarly, anonymous plaintiffs cannot prove any harm to their reputations—which is not merely an element of damages under Kentucky law but is in fact an element of the relevant tort. *Sandmann*, 2019 WL 3409881, at *3. Plaintiffs cannot plead the kind of harm required to state a valid claim without identifying who they are and how their *individual* reputations were damaged.

Given these obvious impediments to stating an anonymous defamation claim, it is unsurprising that Plaintiffs have not cited a single defamation case where a court allowed a plaintiff to proceed anonymously. Defendants have not located one either. And for good reason—these cases turn on the parties involved and the injuries they suffered, and simply cannot be litigated in a vacuum.

### C. Defendants Have a Due Process Right to Defend Against Plaintiffs' Allegations but Cannot do So Without Knowing Their Identities.

Finally, where a plaintiff seeks to litigate anonymously, "[i]t is also relevant to consider whether the defendants are being forced to proceed with insufficient information to present their arguments against the plaintiff's case." *Citizens for a Strong Ohio*, 123 Fed. App'x at 636 (citing *Porter*, 370 F.3d at 561). Here, that plainly is the case. Without knowing who the plaintiffs are, defendants cannot begin to conduct proper discovery into whether they suffered reputational harm. Nor can they ascertain how far plaintiffs injected themselves into the public debate over the incident on the national mall— for example, whether they commented on social media about the incident—which would further undermine their already untenable claim to "privacy." And they cannot begin to question the damages that plaintiffs have asserted in their complaint. Simply put, plaintiffs cannot defend themselves against an anonymous allegation of character assassination.

### III. Plaintiffs' Defamation Claim Fails to State a Claim Upon Which Relief Can Be Granted.

Entirely apart from these jurisdictional defects, plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted for many of the same reasons that this Court dismissed the claim of their classmate, Nicholas Sandmann. The allegedly defamatory statements are not "of and concerning" plaintiffs; the statements constitute protected opinion; and plaintiffs fail to allege special damages or libel *per se*. Moreover, plaintiffs fail to allege actual malice—a necessary element of the claim for "limited purpose public figures," like plaintiffs. And Plaintiffs similarly fail to allege either

falsity or fault, each of which is a required element in a defamation claim challenging speech on a matter of public concern.

### A.     Defendants' Statements Are Privileged Under the First Amendment

Even assuming it has jurisdiction, this Court need not reach the merits of plaintiffs' defamation claims because Defendants' statements were absolutely privileged under the First Amendment. As the Supreme Court has held, "a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990). That precisely describes the allegations against Defendants Jacobson and Kruse.

As this Court recently held, "[f]ew principles of law are as well-established as the rule that statements of opinion are not actionable in libel actions." *Sandmann*, 2019 WL 3409881, at *7; *see also Loftus v. Nazari*, 21 F. Supp.3d 849, 853-54 (E.D. Ky. 2014); *Lassiter v. Lassiter*, 456 F. Supp. 2d 876, 881-82 (E.D. Ky. 2006). Opinion statements are "absolutely privileged" under Kentucky law. *Yancey v. Hamilton*, 786 S.W.2d 854, 857 (Ky. 1989); *see also Nat'l Coll. of Kentucky, Inc. v. WAVE Holdings, LLC*, 536 S.W.3d 218, 222–23 (Ky. Ct. App. 2017). Such a statement exists "where the commentator states the facts on which the opinion is based, or where both parties to the communication know or assume the exclusive facts on which the comment is clearly based." *Yancey*, 786 S.W.2d at 857. Similarly, "statements which can be considered 'rhetorical hyperbole,' 'vigorous epithet,' and 'loose, figurative, or hyperbolic language' merit protection" under the First Amendment as well. *WAVE Holdings*, 536 S.W.3d at 223 (citing *Milkovich*, 497 U.S. at 17, 21).

The allegations against Defendants Jacobson and Kruse concern this very kind of opinion statement. Defendant Jacobson has been sued for writing *an opinion piece* for *Rewire.News*. The detailed piece sets forth the facts on which she relied in forming her opinions and then states what those opinions are; it is therefore constitutionally protected. *See, e.g.*, *Yancey*, 786 S.W.2d at 857.

14

None of the aspects of Ms. Jacobson's article about which plaintiffs complain are "provably false," as would be required to state a defamation claim. *See, e.g.*, *Sandmann*, 2019 WL 3409881, at *4; *Welch v. American Publ'g Co.*, 3 S.W.3d 724, 730 (Ky. 1999). For example, Plaintiffs accuse Ms. Jacobson—without actual quotation to her article—of claiming that the Covington Catholic students "harassed young women at the Memorial (claiming they chanted 'it's not rape if you enjoy it')." Amended Compl. ¶ 34. But that is not what her article actually says. Rather, Ms. Jacobson stated that "a group of them harassed a young woman before the incident with Phillips. And another suggested that rape 'is not rape if you enjoy it.'" *See* Jacobson Article (hyperlinks in the original).[4] This clearly constitutes a protected opinion—that the students harassed young women—based on source material (videos) that is linked in the article itself and available for all readers to view. That is not actionable. *See, e.g.*, *Yancey*, 786 S.W.2d at 857; *WAVE Holdings*, 536 S.W.3d at 223; *see also, e.g.*, *Palmer v. Alvarado*, 561 S.W.3d 367, 373 (Ky. Ct. App. 2018), *review denied* (Dec. 5, 2018) ("The statement that Dr. Alvarado is 'getting rich off addiction' is the type of opinion commentary protected by the First Amendment.").

Likewise, plaintiffs fault Ms. Jacobson for claiming that a group of students "ridiculed the native American elder for the purposes of harassment." Amended Compl. ¶ 34. Once again, this allegation does not actually quote Ms. Jacobson's article. But whatever characterization she gives to the students' behavior is clearly protected as opinion and supported by a detailed statement of the underlying facts. In fact, her article gives an almost minute-by-minute summary of the relevant parts of a nearly two-hour video of the confrontation. And any suggestion that some students ridiculed or harassed Mr. Phillips is obviously a subjective opinion. *See, e.g.*, *Sandmann*, 2019 WL 3409881, at *7, 11 (holding that similar characterizations in articles appearing in Washington Post constituted opinions and not objectively verifiable facts).

---

[4] Those videos may be found at https://twitter.com/roflinds/status/1087486166939680768 and https://twitter.com/MeloStreetVybz/status/1087549546404691969.

Finally, plaintiffs accuse Ms. Jacobson of "erroneously claim[ing] Covington Boys wore blackface to caricature black students." Amended Compl. ¶ 34. As an initial matter, Ms. Jacobson did not make this claim *about any of the plaintiffs*. Rather, in discussing the issue of race, she linked to a video and photos showing other Covington Catholic students with black makeup on their faces at sporting events *in 2012*. Those remarks did not concern *these* plaintiffs (whoever they are), who would have been in grade school then. And Ms. Jacobson's opinions are protected in any event; she provided factual context in the form of (linked) photos and videos and expressed her view that this conduct "caricature[ed] Black students on the opposing team." Jacobson Article. That, too, is the very kind of subjective opinion this Court found protected. *See, e.g.*, *Sandmann*, 2019 WL 3409881, at *7, 11.

Prof. Kruse, similarly, is entitled to constitutional protection for his opinions. Plaintiffs fault him for a two-sentence tweet that expresses his opinion on an issue of public importance. Prof. Kruse responded to an opinion expressed by journalist Jay Caruso, who tweeted: "What? The accusation was that this kid and his friends surrounded Phillips and got into his face, when in fact, it was Phillips who approached him and started banging a drum in his face. Come on, man." Prof. Kruse countered: "No, the accusation was that this kid and his friends mocked an elderly Native American war veteran and, hey, they did. They also taunted women and shouted 'it's not rape if you enjoy it' but sure, they're the real victims. According to his PR firm anyway." Amended Compl., Exh. O. Once again, this is a classic example of opinion. Prof. Kruse states the facts on which he relied and proceeds to offer a subjective opinion: that the students taunted Mr. Phillips and then claimed to be the victims. *See, e.g.*, *Sandmann*, 2019 WL 3409881, at *7, 11; *Palmer*, 561 S.W.3d at 373; *WAVE Holdings, LLC*, 536 S.W.3d at 223. Those characterizations are not provably false.

### B.     The Challenged Statements are Not "of" or "concerning" Plaintiffs

"[W]here defamatory statements are made against an aggregate body of persons, an individual member not specially imputed or designated cannot maintain an action." *Sandmann*, 2019 WL 3409881,

at *3 (citing *Louisville Times v. Stivers*, 68 S.W.2d 411, 412 (Ky. 1934)); *see also O'Brien v. Williamson Daily News*, 735 F. Supp. 218, 220 (E.D. Ky. 1990), *aff'd*, 931 F.2d 893 (6th Cir. 1991). If "the words used contain no reflection upon any particular individual, no averment can make them defamatory." *Kentucky Fried Chicken of Bowling Green, Inc. v. Sanders*, 563 S.W.2d 8, 9 (Ky. 1978). Plaintiffs' allegations against Defendants Jacobson and Kruse do not come close to being actionable under this standard.

Indeed, the way that plaintiffs pled this case makes it impossible for them to show that any of the allegedly defamatory statements were *about* these plaintiffs, individually. Plaintiffs refuse to reveal who they are, and therefore they cannot allege that any statement made about the Covington Catholic students was directed at them, personally.

Nor could they; the challenged statements by Defendants Jacobson and Kruse simply do not identify any particular plaintiff. Neither defendant references a single Covington Catholic student by name (aside from Ms. Jacobson's references to Nick Sandman, who is not a party to this case). That is fatal to these defamation claims. As this Court held in dismissing Sandmann's defamation suit, references to "'hat wearing teens'; 'the teens'; 'teens and other apparent participants'; 'A few people'; 'those who should listen most closely; and 'They' . . . . are not actionable because they are not about [a specific plaintiff]." *Sandmann*, 2019 WL 3409881, at *6; *see also O'Brien*, 735 F. Supp. at 220 (specific teacher could not sue over generic statement about group of teachers); *Sanders*, 563 S.W.2d at 9 (KFC franchise owner cannot sue concerning generic statement concerning quality of restaurant chain's products); *Stivers*, 68 S.W.2d at 411-12 (member of family could not sue about a statement made generically about the "Stivers clan"). By this same logic, Defendant Jacobson's use of generic terms such as "the boys," "Covington Catholic boys," and "the group of teens," and Prof. Kruse's use of "this kid and his friends" and "they," are simply not specific enough for any individual to claim that the statement defamed him.

It also must be noted—again—that one of the grounds on which plaintiffs challenge Ms. Jacobson's column did not refer to these plaintiffs even generically. Plaintiffs complain that Ms. Jacobson "erroneously claimed Covington Boys wore blackface to caricature black students." Amended Compl. ¶ 34. However, the relevant portion of her article makes clear she is not referring to the students who participated in the protest on the national mall. Instead, the column stated:

> Ironically, "racist" and "bigot" fit the actions of Covington Catholic students in *other public venues*. How else, for example to explain this video of boys *at a high school basketball game*, in full view of parents and coaches, wearing blackface and body paint, caricaturing Black students on the opposing team?

Jacobson Article (emphasis added; hyperlink in original).[5] This statement refers to events that happened at a basketball game involving Covington Catholic, not at the national mall. And the date on the linked video makes clear that game took place in 2012, long before any of these students would have been enrolled in the high school. So it *could not* have referred to them.

## C.   Defendants' Statements Do Not Rise to the Level of Libel *Per Se.*

Plaintiffs' defamation claims also fail because they do not rise to the level of defamation *per se*. Here, as in *Sandmann*, the plaintiffs elected not to plead any special damages as a result of defendants' allegedly libelous statements. Therefore, "'unless the publication may be considered as actionable per se,' the Court must dismiss the action." *Sandmann*, 2019 WL 3409881, at *9 (quoting *Hill v. Evans*, 258 S.W.2d 917, 918 (Ky. 1953)); *see also Dermody v. Presbyterian Church (U.S.A.)*, 530 S.W.3d 467, 475 (Ky. Ct. App. 2017).

Under Kentucky law, a statement is only libelous *per se* if it carries "a conclusive presumption of both malice and damage." *Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 282 (Ky. 2014), *as corrected* (Apr. 7, 2015). This occurs, for example, with statements that "tend to expose the plaintiff to public hatred, ridicule, contempt or disgrace" or "impugn one's competence, capacity, or fitness in the performance

---

[5] Video available at: https://www.youtube.com/watch?time_continue=29&v=OKJLe0L7Ktg.

of his profession." *Roche v. Home Depot U.S.A.*, 197 Fed. App'x 395, 398 (6th Cir. 2006) (discussing Kentucky law) (quotation marks and citations omitted). As in *Sandmann*, none of the statements that plaintiffs attribute to Defendants Jacobson and Kruse come close to meeting this standard.

With regard to Ms. Jacobson's article, plaintiffs attack only three things: her alleged statements that "Covington Boys wore blackface to caricature black students," "harassed young women at the Memorial (claiming they chanted 'it's not rape if you enjoy it')," and "ridiculed the native American elder for the purposes of harassment." Amended Compl. ¶ 34. The first allegation was not even about the plaintiffs and therefore cannot libel them at all—let alone *per se*. Moreover, none of the allegations are actual quotes from Ms. Jacobson's article but rather characterizations of its content. Libel *per se* cases cannot be built on paraphrases. *See, e.g.*, *Sandmann*, 2019 WL 3409881, at *9 (refusing to credit plaintiff's summary of the "gist" of a story that "is not supported by the plain language in the article, which states none of those things"); *see also Unique Coupons, Inc. v. Northfield Corp.*, No. 99-cv-7445, 2000 WL 631324, at *4 (N.D. Ill. May 16, 2000) ("Northfield's paraphrase of Unique's alleged statements, however, fails to state a cause of action for libel *per se*."). And even if these were quotations, saying that plaintiffs "caricature[d]," "harassed," and "ridiculed" someone does not rise to the level of defamation *per se. See, e.g.*, *Sandmann*, 2019 WL 3409881, at *9 ("[T]he adjectives 'jeering' and 'disrespectful' are subjective opinions . . . ."). It is, at most, rhetorical hyperbole—and therefore not actionable. *See, e.g.*, *Milkovich*, 497 U.S. at 17.

The allegations against Prof. Kruse similarly fail to allege defamation *per se*. Although plaintiffs actually quoted his tweet, the Amended Complaint did not identify a single word plaintiffs believe rises to the level of defamation *per se*. And for reasons just explained, it is not inherently defamatory to state that a group of students "mocked" Mr. Phillips, "taunted" young women, or tried to make themselves into "victims." Like the allegations against Ms. Jacobson, these statements are, at most,

subjective opinion and/or rhetorical hyperbole that cannot be proved false. *See, e.g.*, *Milkovich*, 497 U.S. at 17; *Sandmann*, 2019 WL 3409881, at *9.

It is no answer for plaintiffs to allege that defendants should have included other facts or context in their statements. In determining whether a statement is defamatory *per se*, a court "**must stay within the four corners of the written communication**," giving the words "their ordinary, natural meaning as defined by the average lay person" and "strip[ing] [the communication] of all innuendoes and explanations." *Sandmann*, 2019 WL 3409881, at *9 (quoting *Roche*, 197 Fed. App'x at 398 (emphasis in original)). Plaintiffs cannot infer a defamatory subtext in a *per se* defamation claim that does not exist on the face of the words spoken. But that is precisely what plaintiffs try to do here. And by doing so they have converted their claim into one for defamation *per quod*, which—as noted— fails as a matter of law because they did not even attempt to plead special damages. *Id.*; *see also Stringer v. Wal–Mart Stores, Inc.*, 151 S.W.3d 781, 794 (Ky. 2004); *Disabled Am. Veterans, Dep't of Kentucky, Inc. v. Crabb*, 182 S.W.3d 541, 547 (Ky. Ct. App. 2005). And, of course, such "innuendo . . . cannot enlarge or add to the sense or effect of the words charged to be libelous, or impute to them a meaning not warranted by the words themselves." *Dermody*, 530 S.W.3d at 475 (citation omitted).

**D.   Plaintiffs are Limited Purpose Public Figures but Have Not Alleged Actual Malice.**

Plaintiffs' defamation claims face additional hurdles because, on the facts of this case, they constitute limited purpose public figures. This status, originally recognized by the Supreme Court in *Gertz v. Robert Welch, Inc.*, attaches to anyone who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." 418 U.S. 323, 351 (1974). If that test is met, a defamation claim cannot succeed unless a plaintiff proves actual malice, *see Clark v. Viacom Int'l Inc.*, 617 F. App'x 495, 509 n.3 (6th Cir. 2015)—something plaintiffs do not even attempt to allege.

20

For a party to be a limited purpose public figure, "a 'public controversy' must exist." *Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 529 (6th Cir. 2014). If so, "the nature and extent of the individual's involvement in the controversy must be ascertained" to decide "whether the plaintiff voluntarily injected itself into the particular public controversy giving rise to the alleged defamation." *Id.* (quotation marks and citation omitted). That inquiry, in turn, requires courts to consider three factors: "first, the extent to which participation in the controversy is voluntary; second, the extent to which there is access to channels of effective communication in order to counteract false statements; and third, the prominence of the role played in the public controversy." *Id.* at 530.

Plaintiffs easily qualify as limited purpose public figures under this test. They voluntarily traveled to Washington, D.C. to participate in the public rally. While there, they willingly engaged in public chanting and shouting on the national mall that drew the public's attention. *See, e.g.*, Amended Compl. ¶ 18. Second, plaintiffs had access to methods of communication to counter any facts they believed false. They could have—indeed, may well have[6]—used social media to combat any assertions they believe were false. (For his part, Mr. Sandmann appeared on national television to discuss the incident, illustrating that the media was interested to hear the students' side of the story). And some Covington Catholic students even retained a public relations firm to tell their side of the story, as both Ms. Jacobson and Prof. Kruse noted. Finally, there can be no dispute that the plaintiffs were at the very center of the public controversy in question; again, that is why they have filed suit.

Because they have not alleged that Defendants Jacobson and Kruse acted with actual malice, their claims fail as a matter of law. Dismissal is required for this reason alone.

---

[6] To the extent that plaintiffs attempt to argue that evidence is lacking on this point, it is only further proof of the inappropriateness of their attempt to litigate this defamation case anonymously.

### E.   Even if They are Private Figures, Plaintiffs Have Failed to Adequately Allege Falsity or Fault.

Even if this Court concludes that plaintiffs are purely private figures, the Constitution still requires them to allege more than they have in order to proceed with their claims. This Court already has held that commentary and discussion about the confrontation at the center of this case "is inherently a matter of public concern." *Sandmann*, 2019 WL 3409881, at *4. That holding heightens the normal pleading standard that would otherwise apply in a private-figure defamation case. As the Supreme Court has held, where a private figure alleges defamation based on "newspaper articles [that] are of public concern . . . the common law's rule on falsity—that the defendant must bear the burden of proving truth—must . . . fall here to a constitutional requirement that the plaintiff bear the burden of showing falsity, as well as fault, before recovering damages." *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986); *see also Clark*, 617 Fed. App'x at 508-09 ("[T]he federal Constitution requires that a defamation plaintiff plead and prove that a statement on a matter of public concern or relating to a public figure is false.").

Here, plaintiffs have not attempted to plead falsity or fault in any serious way. They simply point to statements by Defendants Jacobson and Kruse that they believe defame them. But the Constitution prohibits a presumption of fault or injury—including those that attach to allegations of libel *per se*. Plaintiffs have not met the burden required to impose liability on speakers discussing matters of public concern.

## IV.   Plaintiffs' Remaining Tort Claims Fail as a Matter of Law

Plaintiffs' claims for intrusion upon seclusion and negligent infliction of emotional distress are equally meritless and must be dismissed. The most obvious basis for dismissal of these claims is set forth in the U.S. Supreme Court's opinion in *Snyder v. Phelps*, 562 U.S. 443 (2011). In that case, a plaintiff initially obtained a multi-million-dollar verdict against members of the Westboro Baptist Church, who had protested at the funeral of the plaintiff's son after his death in combat. The Supreme

Court overturned the verdict—including claims of intentional infliction of emotional distress and intrusion into seclusion—because speech made "at a public place on a matter of public concern . . . is entitled to 'special protection' under the First Amendment." 562 U.S. 443, 458 (2011). States are forbidden from punishing such speech in a courtroom, even in litigation between private parties.

A court in this district recently reached the exact same conclusion in *Higgins v. Kentucky Sports Radio, LLC*, 2019 WL 1290870 (E.D. Ky. Mar. 20, 2019) (appeal pending). There, a basketball referee attempted to sue a sports radio host over publicity concerning his performance in a NCAA tournament game involving the University of Kentucky. The court relied on the First Amendment (and *Snyder*) to dismiss all claims, including claims of intentional infliction of emotional distress and invasion of privacy. *Id.* at *5, 10-16. It held that "the conduct of the named Defendants involves speech concerning matters of public concern in public and allowing the claims in this action to move forward, even to discovery, would 'constitute a forbidden intrusion on the field of free expression.'" *Id.* at *16 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 285 (1964)); *see also Welch v. Am. Publ'g Co. of Kentucky*, 3 S.W.3d 724, 729 (Ky. 1999) ("Courts should take precautions to avoid the chilling effect on free speech that defamation lawsuits create."). The court also suggested that Sections 1 and 8 of the Kentucky Constitution could provide an additional bar to liability. *Higgins*, 2019 WL 1290870, at *16-17.

That same reasoning compels dismissal of plaintiffs' tort claims here. This Court has already held that news reporting concerning the incident at the heart of this case "is inherently a matter of public concern." *Sandmann*, 2019 WL 3409881, at *4. And there can be no dispute that the national mall is among the most quintessential public spaces for political action; that is precisely why plaintiffs went there for a political rally. Therefore, the First Amendment is a complete bar to plaintiffs' intrusion into seclusion and negligent infliction of emotional distress claims.

Moreover, the same First Amendment defenses to plaintiffs' defamation claims apply to his tort claims as well. As the Kentucky Supreme court has long held, "[t]he right of privacy does not prohibit: (1) any publication of a matter which is of public or general interest; (2) the publication of a matter which is a privileged communication according to libel and slander law; (3) statements which are oral; and (4) a publication which is true." *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 887 (Ky. 1981); *see also, e.g.*, *Collins v. Carroll Cty. Sheriff Dep't*, 2019 WL 413614, at *2 (Ky. Ct. App. Feb. 1, 2019) ("Collins's claims for intentional infliction of emotional distress and negligent infliction of emotional distress are subsumed by his claims for emotional damages arising from the alleged defamation." (citing *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. App. 1993)). For reasons explained above, Ms. Jacobson's opinion piece and Prof. Kruse's tweets are plainly privileged as a matter of defamation law because (among other reasons) they are opinion and concern limited purpose public figures, and plaintiffs' privacy-based claims fail for these very same reasons.

Finally, plaintiffs' privacy-based tort claims fail on the merits, too. To state a claim for "intrusion into seclusion," a plaintiff must show "(1) an intentional intrusion by the defendant, (2) into a matter that the plaintiff has a right to keep private, and (3) that the intrusion would be highly offensive to a reasonable person." *Wiles v. Ascom Transp. Sys., Inc.*, 478 Fed. App'x 283, 293–94 (6th Cir. 2012) (citing Restatement (Second) of Torts § 652B). Plaintiffs cannot meet any of these elements. Plaintiffs have no "'reasonable expectation of privacy in the subject information.'" *Howard v. Asset Acceptance, LLC*, 2013 WL 1760299, at *4 (E.D. Ky. Apr. 24, 2013) (quoting *Webb v. Bob Smith Chevrolet, Inc.*, 2005 WL 2065237, at *6 (W.D. Ky. Aug.24, 2005)). Nor would a reasonable person be highly offended by the fact that plaintiffs' conduct was the subject of vigorous public debate. After all, the events in question were uniquely public, occurring in the middle of the national mall at a place long reserved for public gathering and protest. *Cf., e.g.*, *United States v. Jones*, 565 U.S. 400, 412 (2012) ("[A]

24

person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." (quotation marks and citation omitted)).

"To state a claim for negligent infliction of emotional distress, a plaintiff must establish the basic elements of negligence: (1) the defendant owed a duty of care to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury." *Archey v. AT&T Mobility, LLC*, 2017 WL 6614106, at *3 (E.D. Ky. Dec. 26, 2017) (quotation marks and citations omitted). The plaintiff also must show "a 'serious' or 'severe' emotional injury." *Id.* "Distress that does not significantly affect the plaintiff's everyday life or require significant treatment will not suffice." *Id.* Here, plaintiffs have failed to plead anything approaching the elements of this tort. They have not identified a single, allegedly false assertion made by these defendants. Nor, for that matter, have they alleged any injury specifically traceable to these defendants' conduct, as opposed to the significant amount of online discussion of the incident on the national mall. That silence is fatal to their pleading because there can be no "enterprise liability" in defamation cases. Finally, plaintiffs have not alleged any specific injuries, let alone ones sufficiently severe to meet the test for an infliction of emotional distress tort.

## CONCLUSION

For the foregoing reasons, all claims against Defendants Jacobson and Kruse should be dismissed.

*s/ Michael P. Abate*
Jon L. Fleischaker
Michael P. Abate
Andrea Aikin
KAPLAN JOHNSON ABATE & BIRD LLP
710 W. Main St., 4th Floor
Louisville, KY 40202
jfleischaker@kaplanjohnsonlaw.com
mabate@kaplanjohnsonlaw.com
aaikin@kaplanjohnsonlaw.com
(502) 540-8280

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2019, I filed the foregoing Motion to Dismiss with the

Court using the Court's CM/ECF document filing system. All counsel of record are registered ECF

users.

In addition, undersigned counsel served this motion by U.S. Mail on the following parties, for

whom no counsel has yet appeared in this matter:

Kathy Griffin
11782 Southampton Ct.
Los Angeles, CA 90077-1360

Matthew John Dowd
307 W. Monroe St.,
Austin, TX 78704-3023

Reza Aslan
1954 Pinehurst Rd.
Los Angeles, CA 90068-3730

Jeffrey Shaun King
214 Duffield St.
Brooklyn, NY 11201-5339

Clara Jeffrey
3809 20th St., Apt. 305
San Francisco, CA 94114-3058

*s/ Michael P. Abate*
*Counsel for Defendants Jacobson and Kruse*
