UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

| | |
|---|---|
| JOHN DOES 1 THROUGH 10, | Case No. 2:19-CV-00117-WOB-CJS |
| Plaintiffs, | Judge William O. Bertelsman |
| v. | Magistrate Judge Candace J. Smith |
| DEBORAH HAALAND, et al. | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO WARREN'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, FAILURE TO STATE A CLAIM, AND LACK OF SUBJECT MATTER JURISDICTION** |
| Defendants. | |

The Plaintiffs, through counsel, respectfully submit the following Memorandum in Opposition to Defendant Warren's ("Warren") Motion to Dismiss. Warren claims as a United States Senator she is above the law, and above Kentucky state law. The law does not so hold. While the motion for remand should first be granted, and the motion to dismiss heard by the state court, should this court entertain the motion to dismiss, it too should be denied. Warren is subject to both the laws of Kentucky and the courts of Kentucky for her lies and libels about minor kids from Kentucky.

## I.      INTRODUCTION

Warren led a social media lynch mob against minors from Covington, Kentucky, using the worldwide internet to spread smears against them, triggering threats of violence against these minors. Plaintiffs brought suit in Kenton County, Kentucky state court. Warren removed it to this court. Warren now claims this court lacks personal jurisdiction over her, subject matter jurisdiction over the case, and cannot allow any Kentucky court to have any power over her in this matter. She is mistaken.

As the Supreme Court long ago established, a state enjoys personal jurisdiction over *any* defendant in a libel case where the subject of the defamation suffers injury in that state.  As for subject matter jurisdiction, Warren's argument is really one for remand back to state court, and not dismissal of the action in this court.

If the Court reaches the substantive law claims in the motion to dismiss, Warren's claims, at this pleading stage of the case, equally fail.  Kentucky law protects each of her citizens with the right to be free from unwarranted publicity, and the right to live without unwarranted interference.  Kentucky allows an expanded definition of defamation that protects Kentuckians from any statement that would tend to expose them to public hatred, ridicule, contempt or disgrace.  If multiple interpretations are possible, then the jury must decide if a statement is defamatory.  As the complaint details, the Warren's statements were identified by friends and acquaintances as concerning them individually (proven by the fact the statements led to personal threat against them individually), placed the Plaintiffs in a position of scorn or ridicule from within their community, caused economic special damages to the minors, placed their name in a false light, contorted and converted these minors' lives from private seclusion to public scorn, and inflicted real and severe emotional distress of the kind of scarring shock that lasts a lifetime for these minor children.

To that end, Warren is not afforded the protections from her office, nor is she a sovereign, when sued outside of her official capacity for speech that was not legislative in nature.  As federal courts decreed long ago:  "We reaffirm the common law rule and settled constitutional design that elected representatives must answer for libelous statements made outside the scope of their legislative duties." *Chastain v. Sundquist*, 833 F.2d 311 (D.C. Cir. 1987).  Senators are not above the law, nor above the courts of Kentucky for their lies and libels against Kentucky kids.

2

## II.     FACTUAL BACKGROUND

Plaintiffs filed their lawsuit on August 1, 2019.  On August 14, 2019, Plaintiffs filed an Amended Complaint (the "Amended Complaint"), alleging causes of action for defamation and several state law claims against all Defendants.  (Amended Complaint, attached as "Exhibit 2" and incorporated herein by reference.)   Plaintiffs are all minors attending the Covington Catholic School in Kentucky.  (Amended Complaint, ¶¶ 1-2.)

On August 28, 2019, Warren filed a Notice of Removal to the United States District Court for the Eastern District of Kentucky, Covington Division, claiming that the conduct alleged against her in the Amended Complaint qualified for removal under 28 U.S.C. § 1442(a).

On September 4, Warren filed a Motion to Dismiss to the United States District Court for the Eastern District of Kentucky, Covington Division, for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

Alternatively, Warren's motion moved this Court to dismiss Plaintiffs' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiffs have failed to state a claim for any of the causes of action that they allege.  Alternatively, Warren moved this Court pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss Plaintiffs' claims against her for lack of subject matter jurisdiction.

Plaintiffs responded on September 26 with a motion to remand back to Kenton County state court.

Plaintiffs' allegations against Warren involve published statements about the Plaintiffs' involvement in a claimed confrontation with a "Native American elder" and "Vietnam War veteran" named Nathan Phillips, taking place on the steps of the Lincoln Memorial in Washington D.C.  (Amended Complaint, ¶¶ 54-57.)

Plaintiffs' defamation claims against Warren arise from Warren's statements on her Twitter account that: "Omaha elder and Vietnam War veteran Nathan Phillips endured hateful taunts with dignity and strength, then urged us all to do better.  Listen to his words," followed by a link to a Splinter News post covering the incident, which identified the Plaintiffs individually by image. Each of the statements complained of herein was known by the friends, family and associates of each John Doe to be about them individually.  Indeed, they were individually identified as the subject of the statements complained of herein, causing death threats, hate mail, threatening phone calls, threatening emails, and other personal attacks on them each individually.  They were known to be the subject of the statements complained of herein as they were identified by photo image throughout the world, and each of the statements was interpreted by their friends, family and associates as about them personally.

Warren, a leading Democratic candidate for the Presidency and a sitting United States Senator, used her prominent public stature to tell her followers and the media that the Plaintiffs engage in morally abhorrent and hateful conduct.  However, Warren failed to disclose the factual basis for her statements, and told the world that her defamatory statements were the product of an informed investigation.  Critically, Warren omitted the true facts: that the Plaintiffs never interrupted an indigenous march, never stopped and blocked a Native American elder and Vietnam War veteran from continuous participation in that event, never surrounded him in a threatening manner, never taunted him as a native American elder, and never chanted "build the wall" at him to mock an elderly native American in the middle of an indigenous march.  Warren accused the Plaintiffs of criminal conduct, namely harassment as it is defined in Kentucky law.[1]  Warren had no factual basis of her opinion, but knew her status would give credibility to her statement, and

---

[1] Plaintiffs intend to file an additional Amended Complaint to add a claim of harassment under state law, pursuant to KRS 446.070.

that the facts she knew meant that these minors had committed a crime against a native American elder and Vietnam veteran. Warren could only get away with this lie by hiding the true facts about the minor, the fake veteran, and the staged nature of the video she linked to.

Warren's false tweet damaged Plaintiffs' reputation in the form of death threats, hate mail, threatening phone calls and emails and other personal attacks on them each individually. (*Ibid*.) Warren's tweet led a social media lynch mob that amplified and legitimized media coverage that hid the truth, which hurts the future prospects of these Plaintiffs, including future college admissions and future employment. In addition, it caused immediate harm in security costs incurred to protect their safety, and imposed shocking and scarring emotional injury. Each Plaintiff seeks only a modest damage sum from Warren, an amount that represents an estimation of the cost of four years tuition at the University of Kentucky, to fairly compensate for the harm. (Amended Complaint, pg. 3 and ¶ 91.)

## III.   STANDARD OF REVIEW

On a motion to dismiss under Rule 12, this Court must "construe the complaint in the light most favorable to the nonmoving party" and must also "accept the well-plead factual allegations as true." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 20017). A complaint states a "valid claim" if it contains either "direct" or "inferential allegations" under "some viable legal theory." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.,* 508 F.3d 327, 336 (6th Cir. 20017).

## IV.   ARGUMENT

Plaintiffs and Warren agree that this Court lacks the requisite jurisdiction to hear this case at all. This, however, is a problem created by Warren's unsupported removal. Consequently, Warren should summarily not be allowed to benefit from said removal to a court that lacks

jurisdiction by also having the case dismissed.  The case should be remanded to the Kenton County

Circuit Court, a court of competent general jurisdiction in Kentucky, where this motion to dismiss

should be heard and decided.  If this Court rejects remand and entertains Warren's motion to

dismiss, the motion to dismiss should be denied, and discovery commence.

Warren would have this Court believe that because she used a Twitter account with a blue

check by her name, there is essentially no court in the land that has any jurisdiction over her. She

argues that the First Amendment and the Due Process Clause would protect **any** words uttered,

typed, or in any other way communicated to her over 50 million followers, including tens of

thousands in Kentucky, regardless of their veracity or impact upon defenseless minors.  That is not

the law.

Regardless, in similar cases, due to emerging jurisprudence finally attempting to grapple

with problems created by the reach of social media, such as Twitter, courts have found that

communications, such as those at issue here, give courts authority where the harm occurred.  This

follows three decades of Supreme Court precedent.  Even Kentucky's long-arm statute, as admitted

by Warren, facially allows the acts or omissions of a non-resident defendant, committed either

outside or inside of the commonwealth that injures Kentuckians, to be hailed in a Kentucky court.

Warren relies on a base-level minimum contacts analysis to suggest that her Tweet that harmed

the Plaintiffs and exposed them to scorn and ridicule, here in Kentucky and elsewhere,

communicated to over 50 million followers, somehow fails to meet a legally relevant bar availing

her of this or the Kenton County Court's authority.  Senators are not above the law, even if she is

from Massachusetts.

Warren was sued under three categories, including a general defamation claims of both per

quad and per se, invasion of privacy, and infliction of emotional distress.  These causes of action

6

are clearly within the realm of the expanded protections afforded by Kentucky to her citizens.

### A.      Remand, Not Dismissal, Is Remedy for Lack of Subject Matter Jurisdiction

Plaintiff's Motion to Remand (Dkt. No. 34 – included herein by reference) discussed the

issues created by Warren's removal.   Warren now admits this court lacks subject matter

jurisdiction.   Remand, not dismissal, is the appropriate remedy for this Court's lack of subject

matter jurisdiction.

### B.      Personal Jurisdiction is Appropriate in Kentucky

Kentucky courts long acknowledge the right to bring suit for libel any place where the

defamatory statement was published.  *See Louisville Prss Co. v. Tennelly*, 49 S.W. 15 (1899).

As the Sixth Circuit recently reiterated, following thirty-five years of Supreme Court

precedent, a state has personal jurisdiction over any defendant whose speech causes harm to a

plaintiff in the forum state.  *See Power Invs., LLC v. SL EC, LLC* (6th Cir., 2019) (citing *Calder v.

Jones*, 465 U.S. 783, 789 (1984); *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 778

(1984).  That is precisely the case here, as all Plaintiffs reside here and suffered the brunt of harm

here.  This follows the Court's central jurisdictional case holding that a defendant can be sued for

speech-based torts when the "brunt of the harm" – emotional distress, reputational injury, or

economic loss – occurred in the forum state.  *Calder v. Jones*, 465 U.S. 783, 789 (1984).  This

conforms to the "effects" test of the due process clause for personal jurisdiction.  *Calder v. Jones*,

465 U.S. 783, 789 (1984).  In a libel case, defendants "must reasonably anticipate being haled into

court" in the state where "they knew the brunt of the injury would be felt," which is the state the

subject of the defamation resides.  *Calder v. Jones*, 465 U.S. 783, 790 (1984).  The court explicitly

"reject the suggestion that First Amendment concerns enter into the jurisdictional analysis."

*Calder v. Jones*, 465 U.S. 783, 790 (1984).

As the Supreme Court made clear, personal jurisdiction is very broad in libel cases.  *Keeton*

*v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984).  A state enjoys a substantive right to remedy wrongs that occur within their state. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984).  Libel "harm both the subject of the falsehood and the readers of that statement." *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 776 (1984).  A state "may rightly employ its libel laws to discourage the deception of its citizens." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984).  This alone "demonstrates the propriety of requiring respondent to answer to a multistate libel action" in any state where any injury occurred. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 778 (1984).

Here, the brunt of the harm to these minors occurred in Kentucky by speech made on a national platform that directly reached into Kentucky, targeting and concerning Kentucky children, and sent directly to tens of thousands of recipients in Kentucky.  This is even more Kentucky-connected conduct than the defendants in *Calder* and *Keeton,* where a unanimous court easily found personal jurisdiction appropriate and lawful.

## C.      Plaintiffs State Valid Claims for Defamation, Invasion of Privacy & Emotional Distress

Kentucky law recognizes multiple torts for illicit speech that harms another, including defamation (both per se and per quod), invasion of privacy (false light/intrusion on seclusion), and emotional distress (intentional/negligent).[2]  In this case, the Plaintiffs alleged these torts, including both forms of defamation (*per se* and *per quod*), both forms of invasion of privacy (false light and intrusion into seclusion), and the negligent infliction of emotional distress.  At this pleading stage of the case, where both the well-plead facts and all inferences from those facts must be accepted as true, and where any competing interpretation of the speech requires jury resolution, dismissal

---

[2] Again, harassment is a claim to come shortly.  In addition, the Kentucky Constitution recognizes that if a Kentucky citizen is harmed by the wrong of anyone, he or she shall have a remedy in Kentucky courts.  (Amended Complaint, ¶ 14.)

is unwarranted.  Warren lied and libeled these minor children, leading a social media lynch mob against them, in the kind of conduct this Court already considered legally suspect in another case (noting the newspapers did not engage in the social media scorn that is the subject of this suit).

### 1.      Plaintiffs' Complaint Adequately Alleges Defamation

Warren relies upon two primary arguments for claiming the complaint cannot, as a matter of law, state a claim under Kentucky law for either defamation *per se* or defamation *per quod*:  she claims she did not identify the Plaintiffs in her statements, and says even if she did, that her statements were protected pure opinion.  Neither holds.

First, under Kentucky law, a defendant need not name the plaintiff to be sued for defamation.  All that is required is the reader of the statement, as a friend, family member or fellow community member, acquainted with the plaintiff or the event, identify the statement as of and concerning the plaintiff.  That is precisely what the complaint alleges, all that is necessary at this pleading stage.  Indeed, how could the Plaintiffs be doxed and their lives threatened if no one could possibly know who Warren was talking about?

Second, only pure opinion is protected under Kentucky law, as the fair reporting privilege does not exist in Kentucky. Pure opinion requires two thresholds.  The statement must disclose all factual basis for its claim, and second, any facts it discloses must be true and accurate.  Here, Warren omitted the factual basis of her opinion, which she made appear to be the result of informed inquiry and investigation, and to the extent she implied any factual statements, she implied false factual statements.  As this Court already recognized in a recent case, statements accusing another of racist taunts would constitute defamatory opinions, and there is nothing in Warren's tweet that is even remotely related to her Senate position, or any legislative issues.  As such, Warren's defamatory words are unprotected as they were not pure opinions, but rather libel and lies, citing

9

as its source an article with multiple false statements of facts she implied were also true, including

false allegations of what would constitute criminal harassment in the state of Kentucky.  Lies about

minors are not permissible when a Senator says them outside of her legislative duties, which is

clearly the case herein.

### a.    Colloquium: Identification of Plaintiffs

As this Court acknowledged recently, Kentucky precedent holds "the plaintiff need not be

specifically identified in the defamatory matter itself" whenever "friends and acquaintances

familiar with the incident" understood the comment concerned the plaintiff.  *E.W. Scripps Co. v.*

*Cholmondelay*, 569 S.W.2d 700, 702 (Ky. Ct. App. 1978).

The seminal case on this aspect of Kentucky libel law is *Cholmondelay*.    There, the

defendant never identified the plaintiff by name or image.  The court held the plaintiff still had a

valid defamation claim.    The reason was simple—wherever anyone within the plaintiff's

community of friends or acquaintances recognized the statements as being about the plaintiff, that

sufficed for libel law, even though the defendant never named or identified the plaintiff, and those

unfamiliar with the incident or the individual would not have known the statements concerned the

plaintiff.

This is precisely what the Complaint alleges.  Indeed, as the Complaint details, the

Plaintiffs were so clearly identified as the subject of these statements that they were personally

threatened, their addresses doxed, and their reputations harmed to their personal economic

detriment.  How could that happen if they were not individually identified?  Warren seeks to apply

a summary judgment standard contesting what the facts will show, rather than the motion to

dismiss standard which requires the Court accept that fact as true at this stage.

Independently, the photos and video images of the Plaintiffs were exactly what Warren's

10

comments were about.   That is different than the Sandmann case, where this Court noted no allegation in the complaint that there was any "identifiable description of him" or any picture of him.

Last but not least, this Court acknowledged Kentucky law follows the Restatement, which makes clear that group statements are actionable when there is no effort by the speaker to distinguish among the group.  As the Court noted in a recent opinion, "the assertion that one man out of a group of 25 has stolen an automobile may not sufficiently defame any member of a group, while the statement that all but one of a group of 25 are thieves may cast a reflection upon each of them."  (Restatement of Torts 2d section 564A, comment c.)  The defendant did just that – accuse each of the plaintiffs of horrendous conduct.  Whenever a defendant references a group sufficiently small for a person to be individually identified, a defamation claim is valid.  I*n re New York Life Ins. Co. Agents' Class Claimants Solicitation Litig.*, 92 F.Supp.2d 564, 569 (E.D. La. 1997).  That, too, is the case here.  If nobody knew Warren's statements concerned the Plaintiffs, how did the Plaintiffs get doxed, defamed, and threatened personally from Warren's statements?  This warrants denial of the motion.

### b.     Warren's Statement Not Pure Opinion

Defamation *per se* includes any statement that would "tend to expose the plaintiff to public hatred, ridicule, contempt or disgrace, or to induce an evil opinion of him in the minds of right-thinking people, and to deprive him of their friendship, intercourse and society."  *See Disabled American Veterans, Dept. of Kentucky, Inc. v. Crabb*, 182 S.W. 3d 541 (Ky. App. 2005).  Defamation *per quod* includes contextual references and defamation by innuendo.  *See Disabled American Veterans, Dept. of Kentucky, Inc. v. Crabb*, 182 S.W. 3d 541 (Ky. App. 2005).

Only "pure opinion" is privileged and protected from suit.  Statements of opinion are not

11

pure opinion whenever the statement "implies the allegation of undisclosed defamatory facts as the basis for the opinion." *Yancey v. Hamilton*, 786 S.W.2d 854, 857 (Ky. 1989). All that is required is the statement has or implies "provably false factual connotation." *Milkovich v. Loraine Journal Co.*, 497 U.S. 1, 20 (1990).

Whenever a speaker makes a defamatory statement that "implies a knowledge of facts" which lead to a defamatory opinion, and those facts are not fully and accurately disclosed, then a claim for defamation exists, even as to statements of "opinion." *Cromity v. Meiners*, 494 S.W.3d 499, 503 (Ky. 2015). The alleged defamatory words must be measured by their natural and probable effect on the mind of the average lay reader and not be subjected to the critical analysis of the legal mind. *Digest Publishing Company v. Perry Publishing Co*., Ky., 284 S.W.2d 832 (1955). Of note, "when the words at issue are capable of bearing more than one meaning, the jury is tasked with deciding whether a reasonable recipient would attribute a defamatory meaning to the statement." *Cromity v. Meiners*, 494 S.W.3d 499, 503 (Ky. 2015).

For libel *per se*, "it is not necessary that the words imply a crime or impute a violation of laws, or involve moral turpitude or immoral conduct." *Digest Publ'g Co v. Perry Publ'g Co.*, 284 S.W.2d 832, 834 (Ky. 1955). All that libel *per se* requires is the statements "tend to expose the plaintiff to public hatred, ridicule, contempt or disgrace, or to induce an evil opinion of him in the minds of right-thinking people." *Digest Publ'g Co v. Perry Publ'g Co.*, 284 S.W.2d 832, 834 (Ky. 1955). Libel *per quod* covers a much broader range of defamatory statements, including those that are not inherently defamatory but defame by innuendo, whenever the plaintiff pleads special damages. *Disabled Am. Veterans, Dep't of Ky., Inc. v. Crabb*, 182 S.W.3d 541, 547 (Ky. Ct. App. 2005). The Plaintiffs have plead both forms of libel here.

In addition, there are four circumstances where a statement of opinion based on provable

12

facts can be libel:  1) when the writer failed to disclose the facts in support of that opinion; 2) when the writer failed to give a complete rendering of the facts; 3) when the writer disclosed incorrect facts; or 4) when the writer's opinion shows an erroneous assessment of the facts.  Whenever any opinion "creates a reasonable inference that it was justified by facts known to the opinion writer," then neither the First Amendment nor common law privilege protects the libeler.

Of note, this Court previously noted that scorn on social media could be actionable, but only those who engaged in it could be held accountable, not newspapers who did not engage in it. This Court acknowledged that statements saying someone "engaged in racist conduct" or made "racist taunts" could be actionable where such statements were specifically stated.  As this Court previously acknowledged, Kentucky precedent considered it per se defamatory to say someone had an "integrity issue"  (*Stringer v. Walmart*, 151 S.W.3d 781 (Ky. 2005)); for saying a lawyer could be a "better friend" to criminals (*Ball v. E.W. Scripps Co.,* 801 S.W.2d 684, 687-688 (Ky. 1990)); for saying a lawyer was good at "fixing" cases (*McCall*, 623 S.W.2d 882 (Ky. 1981)); for saying someone had engaged in a "sexual liaison" with a co-worker (*Crabb*, 182 S.W.3d at 547); for saying someone failed a drug test (*Shrout v. The TFE Group*, 161 S.W.3d 351, 355-357 (Ky. Ct. App. 2005)); for implying someone was involved in a robbery (*Columbia Sussex Corp. v. Hay*, 627 S.W.2d at 270, 272-73 (Ky. Ct. App. 1981)); for implying someone was too violent in a fight (*Cholmondelay*, 569 S.W.2d at 701-02); for calling a lawyer a "fee grabber" (*Smith v. Pure Oil Co.*, 128 S.W.2d 931, 932 (Ky. 1939); for implying the reason a taxicab driver lost his job was for drinking (*Louisville Taxicab & Transfer Co. v. Ingle*, 17 S.W.2d 709, 710 (Ky. 1929); calling a Judge a "graft" (*Dixon v. Chappell*, 118 S.W. 929, 930 (Ky. 1909); statements merely implying someone was not an honest tradesman (*Fred v. Taylor*, 72 S.W. 768 (Ky. 1903).

Here, Warren did reach a "conclusion about what occurred," was the author of the

13

scandalous social media statements, failed to disclose the false facts behind those statements, and the statements were known to be specific to these Plaintiffs by the friends and acquaintances of the plaintiffs. As Warren admits "[e]ven if read in the light most generous to Plaintiffs" as is required in a motion to dismiss "Senator Warren's tweet 'implied…that the kids interrupted an indigenous march…" (See: Dkt. No. 10-1, Pg. 12). That itself is a false factual statement. They were standing on the steps waiting for a bus to take them home. Because Warren failed to disclose the factual basis of her opinion, she implied, if not conveyed, false factual statements behind her statement that the Plaintiffs engaged in hateful taunting and conduct equal to criminal harassment in Kentucky. That constitutes libel *per se*. Read in a broader context of the innuendo it implied, and Warren's statements constituted libel *per quod*. Either way, her statements were not protected, and not privileged pure opinion, because she hid the factual basis of her defamatory claims. To the extent the statements can be read differently, then that is a question for discovery and the jury, not for dismissal at this early, pleading stage of the case.

### 2.     Plaintiffs' Complaint State a Claim for Invasion of Privacy

Kentucky law long recognized the fundamental right of private individuals to be free from being defamed, the right to control one's own public image against false light innuendos, and the right to be free from emotional distress arising from another's conduct. A tort protecting the right of privacy against all forms of invasion includes the right to seek redress for invasions of privacy. For almost a century, Kentucky law found "it is generally recognized as the right to be let alone, that is, the right of a person to be free from unwarranted publicity, or the right to live without unwarranted interference by the public about matters with which the public is not necessarily concerned." *Brents v. Morgan*, 299 S.W. 967, 989-990 (Ky. 1927).

Under Kentucky law, the right of privacy is invaded by: (1) unreasonable intrusion upon

14

the seclusion of another; (2) appropriation of the other's name or likeness; (3) unreasonable publicity given to the other's private life; or (4) publicity that unreasonably places the other in a false light before the public.  *Loftus v. Nazari*, 21 F. Supp. 3d 849 (E.D. Ky. 2014) (applying Kentucky law).

Whether denominated intrusion upon seclusion or false light, the invasion of privacy tort alleged here resounds in Kentucky law to protect a person from the publication of information concerning them that would be "highly offensive to a reasonable person."  How much more offensive could this be than what happened here – social media lynch mob led by a United States Senator against *kids*?

Kentucky law protects every citizen with the right to be free from unwarranted publicity, sometimes denominated as an intrusion upon seclusion claim and sometimes denominated as a false light claim.  Each reflects the same cause of action—invasion of privacy—and each remedies the same wrong—"unreasonable publicity."  Kentucky law protects private individuals with increased protections from defamations "because they lack easy access" to media afforded public figures and do not voluntarily expose themselves to public invasion of their privacy.  In 1981, the Kentucky Supreme Court specifically adopted the tort of false light invasion of privacy from the Restatement (Second) of Torts.  *See McCall v. Courier–Journal & Louisville Times Co*., 623 S.W.2d 882 (Ky.1981).  To sustain an action for false light invasion of privacy, a plaintiff must only plead:  (1) that the false light in which he was placed would be highly offensive to a reasonable person; and (2) that the statement placing the plaintiff in a false light was published with knowledge that the statements were false or in reckless disregard for the false light in which the statements placed the plaintiff.  *Yancey v. Hamilton*, 786 S.W.2d 854 (Ky.1990)

In addition, other courts hold that publishing true matters that only selectively publicize partial facts can constitute invasion of privacy by casting a person in a false light. *Krajewski v. Gusoff*, 53 A.3d 793, 806 (Penn. 2012). Equally, actions that constitute harassment under civil or criminal law also constitute invasion of privacy, as the defendant's home state reveals. *Com v. Johnson*, 21 N.E.3d 937, 948 (Mass. 2014).

Invasion of privacy can also occur even though a plaintiff is in a public place, as established in the seminal privacy case of *Nader v. General Motors Corp.*, 255 N.E.2d 765 (N.Y. 1970), where the court held targeting and harassing behavior of even a public figure can constitute invasion of privacy. Unlike libel law, a plaintiff need not prove a defamatory statement to constitute invasion of privacy. In order to state claim for "false light invasion of privacy," plaintiff need not prove that he has been defamed; rather it is enough that he is given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in false position. *Schuler v. McGraw-Hill Companies, Inc.*, 989 F. Supp. 1377, 25 Media L. Rep. (BNA) 2409 (D.N.M. 1997), judgment aff'd, 145 F.3d 1346 (10th Cir. 1998).

Targeting minor children as the leader of a social media lynch mob, using defamatory statements by spreading false factual smears from undisclosed false facts, is the kind of intrusion on seclusion the privacy laws protect against. Warren's statement triggered doxing of addresses, threats to person and property, and incurred expense for Plaintiffs in security protections and lost economic opportunity.

There is a significant factor distinguishing Warren's cases from the present; that is, the difference between the expectations of the privacy of adults and minors. Warren cites no cases where a minor is denied a right to privacy. In fact, this would be antithetical to the myriad of laws

16

that protect minor's heightened considerations of privacy[3].

### 3.    Plaintiffs' Complaint States a Claim for Infliction of Emotional Distress

Kentucky law recognizes torts for parties causing another emotional distress through their speech when that speech strays from the safe guards of the First Amendment.  As the Kentucky courts explained, "the essence of the tort was invasion of the right to be free from emotional distress arising from another's conduct."  *Craft v. Rice*, 671 S.W.2d 247, 250 (Ky. 1984).

The Plaintiffs suffered emotional distress due to Warren leading a social media lynch mob against a bunch of minor kids built of lies and libels, spreading life-ruining smears, that lead to personal, individual threats of physical assault, arson and death?

## V.    CONCLUSION

Warren's tweet had nothing to do with her job in the Senate.  It had nothing to do with the issues in the 2020 race for president.  Rather, it is simply the words of a vicious individual who made the decision to lie about the Plaintiffs and hold them up as hateful racists against Native Americans and Vietnam Vets.  Warren caused these high school kids, not to mention their parents and siblings, to suffer terribly.  She must be held accountable under Kentucky law.

No one is above the law—certainly not Elizabeth Warren.

Respectfully submitted,

*/s/ Kevin L. Murphy*
Kevin L. Murphy (KBA 50646)
Murphy Landen Jones PLLC
2400 Chamber Center Drive, Suite 200
Fort Mitchell, KY  41017-0534
Telephone: (859) 578-3060
Fax: (859) 258-3061
kmurphy@mljfirm.com
*Counsel for Plaintiffs*

---

[3] See: https://kycourts.gov/resources/legalforms/LegalForms/JV30.pdf

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of October, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.

*/s/ Kevin L. Murphy*
Kevin L. Murphy
