**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON**

| | |
|---|---|
| JOHN DOES 1 THROUGH 10, | **Case No. 2:19-cv-00117-WOB-CJS** |
| Plaintiffs, | |
| v. | Judge William O. Bertelsman |
| DEBORAH HAALAND, ANA VIOLETA, NAVARRO FLORES, ELIZABETH WARREN, MAGGIE HABERMAN, KATHY GRIFFIN, MATTHEW JOHN DOWD, REZA ASLAN, KEVIN M. KRUSE, JEFFREY SHAUN KING, ADAM EDELEN, CLARA JEFFERY, and JODI JACOBSON, | Magistrate Judge Candance J. Smith |
| | ORAL ARGUMENT REQUESTED |
| | *Filed Electronically* |
| Defendants. | |

**DEFENDANT CLARA JEFFERY'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Monica L. Dias (89173)
FROST BROWN TODD LLC
3330 Great American Tower
301 East Fourth Street
Cincinnati, OH 45202
(513) 651-6800 (Phone)
(513) 651-6981 (Fax)
mdias@fbtlaw.com

Michael E. Nitardy (91613)
FROST BROWN TODD LLC
7310 Turfway Road, Suite 210
Florence, Kentucky 41042
(859) 817-5914 (Phone)
(859) 283-5902 (Fax)
Email: mnitardy@fbtlaw.com

*Counsel for Defendant, Clara Jeffery*

*Of Counsel:*
James M. Chadwick*
Tenaya Rodewald*
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
379 Lytton Avenue
Palo Alto, CA 94301
(650) 815-2600 (Phone)
(650) 815-2601 (Fax)
jchadwick@sheppardmullin.com
trodewald@sheppardmullin.com

*Lead Counsel for Defendant Clara Jeffrey*
*\*Pro Hac Vice Application Pending*

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................1

II. BACKGROUND ................................................................................................2

III. PLAINTIFFS MUST ESTABLISH THAT THE COURT HAS PERSONAL JURISDICTION AND STATE A LEGALLY SUFFICIENT CLAIM ............................3

IV. THE COURT LACKS JURISDICTION AND PLAINTIFFS FAIL TO STATE A CLAIM AGAINST JEFFERY, SO THE AMENDED COMPLAINT MUST BE DISMISSED ................................................................................................4

   A. The Court Lacks Personal Jurisdiction Over Jeffery ...............................4

      1. Kentucky's Long-Arm Statute Does Not Authorize the Court to Exercise Personal Jurisdiction Over Jeffery in this Lawsuit .......................5

      2. Exercising Jurisdiction Over Jeffery Would Violate the Federal Due Process Clause. ..................................................................7

   B. Plaintiffs Fail to State a Claim Against Defendant Jeffery For Defamation ..........9

      1. Jeffery's Tweet Was Not About or Concerning Any Specific Plaintiff ...............................................................................10

      2. Jeffery's Tweet Is Not Defamatory Per Se, and Plaintiffs Fail to Adequately Plead Special Damages and so Do Not State a Claim of Defamation Per Quod ..........................................................11

      3. Jeffery's Tweet Expressed Opinions Based on Disclosed Facts ...............14

      4. The Statements Actually Contained in the Tweet Do Not Support a Defamation Claim ..................................................................15

   C. Plaintiffs Fail to State a Claim for Intrusion upon Seclusion or Negligent Infliction of Emotional Distress ................................................21

      1. The First Amendment bars Plaintiffs' Tort Claims ...................................21

      2. Plaintiffs Fail to Plead Any of the Essential Elements of Their Claims ..................................................................................22

V. CONCLUSION................................................................................................23

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                    Page(s)

*American Univ. of Antigua College of Med. v. Woodward*
   837 F. Supp. 2d 686 (E.D. Mich. 2011)..................................................16

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009).........................................................................4

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007).........................................................................4

*Beverly Enters. v. Trump*
   182 F.3d 183 (3d Cir. 1999)..............................................................18

*Binion v. O'Neal*
   95 F. Supp. 3d 1055 (E.D. Mich. 2015).............................................8, 9

*Binion v. O'Neal*
   No. 14-13454, 2015 U.S. Dist. LEXIS 43456, 2015 WL 3544518
   (E.D. Mich. Apr. 2, 2015)..................................................................18

*Brown v. Twentieth Century Fox Home Entm't*
   No. 6:14-CV-147-KKC, 2015 U.S. Dist. LEXIS 113560, 2015 WL 5081125
   (E.D. Ky. Aug. 27, 2015)....................................................................8

*Cadle Co. v. Schlichtmann*
   123 F. App'x 675 (6th Cir. 2005) .........................................................8

*Carter v. Paschall Truck Lines, Inc.*
   388 F. Supp. 3d 883 (W.D. Ky. 2019)...............................................3, 5

*CMI, Inc. v. Intoximeters, Inc.*
   918 F. Supp. 1068 (W.D. Ky. 1995)...................................................13

*Community Trust Bancorp, Inc. v. Community Trust Fin. Corp.*
   692 F.3d 469 (6th Cir. 2012) ...............................................................4

*Conn v. Zakharov*
   667 F.3d 705 (6th Cir. 2012) ...............................................................4

*D.E. v. John Doe*
   834 F.3d 723 (6th Cir. 2016) ...............................................................2

*Daimler AG v. Bauman*
   571 U.S. 117 (2014)...........................................................................7

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Dombrowski v. Pfister*
  380 U.S. 479 (1965)........................................................................................21

*Dorsey v. Nat'l Enquirer, Inc.*
  973 F.2d 1431 (9th Cir. 1992) ........................................................................21

*Dukes v. Mid-E. Athletic Conference*
  213 F. Supp. 3d 878 (W.D. Ky. 2016)............................................................22

*Goodyear Dunlop Tires Operations, S.A. v. Brown*
  564 U.S. 915 (2011)..........................................................................................7

*John Conti Coffee Co. v. MAPCO Express, Inc.*
  No. CV 13-39-GFVT, 2014 U.S. Dist. LEXIS 199901, 2014 WL 12648449
  (E.D. Ky. Jan. 2, 2014) ....................................................................................7

*Kerry Steel, Inc. v. Paragon Indus., Inc.*
  106 F.3d 147 (6th Cir. 1997) ........................................................................5, 7

*Lassiter v. Lassiter*
  456 F. Supp. 2d 876 (E.D. Ky. 2006) ............................................................15

*McKenzie v. Allconnect, Inc.*
  369 F. Supp. 3d 810 (E.D. Ky. 2019) ............................................................22

*Milligan v. United States*
  644 F. Supp. 2d 1020 (M.D. Tenn. 2009)......................................................16

*Modern Holdings, LLC v. Corning Inc.*
  No. 13-405-GFVT, 2015 U.S. Dist. LEXIS 41134, 2015 WL 1481457
  (E.D. Ky. Mar. 31, 2015).................................................................................22

*Murray v. Tarley*
  No. C2-01-693, 2002 WL 484537, 2002 U.S. Dist. LEXIS 28154
  (S.D. Ohio Feb. 20, 2002)...............................................................................18

*Neogen Corp. v. Neo Gen Screening, Inc.*
  282 F.3d 883 (6th Cir. 2002) ............................................................................3

*O'Brien v. Williamson Daily News*
  735 F. Supp. 218 (E.D. Ky. 1990) .................................................................10

*In re Omnicare, Inc. Sec. Litig.*
  769 F.3d 455 (6th Cir. 2014) ............................................................................3

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Patterson v. NBC Universal, Inc.*
No. 1:11-CV-68-R, 2012 U.S. Dist. LEXIS 124381, 2012 WL 3779118
(W.D. Ky. Aug. 31, 2012) ................................................................................................22

*Perkins v. Bennett*
No. 3:13-CV-695, 2013 U.S. Dist. LEXIS 160833, 2013 WL 6002761
(W.D. Ky. Nov. 12, 2013) ...................................................................................................6

*Philadelphia Newspapers, Inc. v. Hepps*
475 U.S. 767 (1986) ..........................................................................................16, 17, 19

*Reynolds v. Int'l Amateur Athletic Fed'n*
23 F.3d 1110 (6th Cir. 1994) ...............................................................................................9

*Roche v. Home Depot U.S.A.*
197 F. App'x 395 (6th Cir. 2006) .......................................................................................11

*Sandmann v. WP Co. LLC*
No. 2:19-cv-00019, 2019 U.S. Dist. LEXIS 125275, 2019 WL 3409881
(E.D. Ky. July 26, 2019) ........................................................................................ *passim*

*Snyder v. Phelps*
131 S. Ct. 1207 (2011) ......................................................................................................21

*Southern Machine Co. v. Mohasco Industries, Inc.*
401 F.2d 374 (6th Cir. 1968) ...............................................................................................8

*Stanley Warranty, LLC v. Universal Adm'rs Serv., Inc.*
No. 3:13-CV-513-JGH, 2014 U.S. Dist. LEXIS 135790, 2014 WL 4805669
(W.D. Ky. Sept. 26, 2014) ....................................................................................................6

*Turner v. Wells*
879 F.3d 1254 (11th Cir. 2018) .................................................................................17, 18

*Vangheluwe v. Got News, LLC*
365 F. Supp. 3d 850 (E.D. Mich. 2019) ..............................................................................8

*Weller v. Cromwell Oil Co.*
504 F.2d 927 (6th Cir. 1974) ...............................................................................................3

*Wilson v. Scripps-Howard Broad. Co.*
642 F.2d 371 (6th Cir. 1981) ..............................................................................16, 17, 19

# TABLE OF AUTHORITIES
(continued)

STATE CASES                                                                    Page(s)

*Bell v. Courier-Journal & Louisville Times Co.*
    402 S.W.2d 84 (Ky. 1966) ...........................................................................17

*Buchholtz v. Dugan*
    977 S.W.2d 24 (Ky. Ct. App. 1998) .............................................................16

*Caesars Riverboat Casino, LLC v. Beach*
    336 S.W.3d 51 (Ky. 2011) ......................................................................5, 7

*Dermody v. Presbyterian Church U.S.A.*
    530 S.W.3d 467 (Ky. Ct. App. 2017) .........................................13, 15, 16, 17, 19

*Doe v. Potter*
    225 S.W.3d 395 (Ky. Ct. App. 2006) .............................................................2

*Kentucky Fried Chicken of Bowling Green, Inc. v. Sanders*
    563 S.W.2d 8 (Ky. 1978) ......................................................................10, 11

*Osborne v. Kenney,*
    399 S.W.3d 1 (Ky. 2012) ........................................................................22

*Louisville Times v. Stivers*
    252 Ky. 843, 68 S.W.2d 411 (1934) .............................................................10

*Pierce v. Serafin*
    787 S.W.2d 705 (Ky. Ct. App. 1990) .............................................................6

*Rich for Rich v. Kentucky Country Day, Inc.*
    793 S.W.2d 832 (Ky. Ct. App. 1990) .............................................................13

*State v. Bennett*
    369 S.C. 219 (2006) ...............................................................................15

*Stringer v. Wal-Mart Stores, Inc.*
    151 S.W.3d 781 (Ky. 2004) .............................................................. *passim*

*Taylor v. Moseley*
    170 Ky. 592, 186 S.W. 634 (1916) ...............................................................13

*Toler v. Sud-Chemie, Inc.*
    458 S.W.3d 276 (Ky. 2014) .............................................................. *passim*

*Williams v. Riddle*
    145 Ky. 459, 140 S.W. 661 (1911) ...............................................................13

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Yancey v. Hamilton*
786 S.W.2d 854 (Ky. 1989) ...........................................................................14, 15, 16


**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

Federal Rules of Civil Procedure,
Rule 10(a) ...........................................................................................................2
Rule 12 ................................................................................................................2
Rule 12(b) ...........................................................................................................2
Rule 12(b)(2) ...............................................................................................2, 3, 4
Rule 12(b)(6) ........................................................................................2, 3, 4, 19
Rule 17(c) ............................................................................................................2

**STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

Kentucky Revised Statute
§ 454.210 .............................................................................................................5
§ 454.210(2)(a) .................................................................................................5, 7
§ 454.210(2)(a)(3) ...............................................................................................6
§ 454.210(2)(a)(4) .............................................................................................6, 7

## I.   INTRODUCTION

Plaintiffs travelled to Washington, D.C. to attend a political demonstration and, while there, they participated in encounters with others on the Capitol Mall near the Lincoln Memorial, including a Native American elder and Vietnam war veteran, Nathan Phillip, and members of a group known as the Black Hebrew Israelites (or BHI). The encounters were recorded in several videos, including a lengthy recording by a member of the Black Hebrew Israelites that was published online (the "BHI video"). These confrontations garnered widespread national attention and generated a wide variety of opinions and commentary. Among the innumerable people who commented on these events on social media was Mother Jones Editor-in-Chief Clara Jeffery, who posted a "tweet" on the Twitter social media platform. Plaintiffs brought this action against Jeffery and others who shared opinions about the confrontation, alleging defamation, intrusion upon seclusion, and negligent infliction of emotional distress.

Despite the fact that Jeffery resides and works in California and has no meaningful contacts with Kentucky (specific to this case or otherwise), Plaintiffs nevertheless seek to hale her into Kentucky court to defend against their allegations. But personal jurisdiction over Jeffery is not authorized by Kentucky's long-arm statute and, furthermore, it is not permitted under the federal Due Process Clause. Thus, the claims against Jeffery must be dismissed.

Furthermore, Plaintiffs fail to state a claim against Jeffery. With regard to the defamation claim, Jeffery's tweet was not about any particular plaintiff, so Plaintiffs cannot satisfy an essential element of their claim. Additionally, the tweet expressed opinions based on disclosed facts, and is therefore protected by the First Amendment and Kentucky law. Moreover, it contains no actionable statements. Plaintiffs' defamation claims also fail because none of Jeffery's statements are defamatory per se, and Plaintiffs do not adequately plead special damages, as is required for defamation per quod. Plaintiffs' intrusion upon seclusion and

1

negligent infliction of emotional distress claims are not properly alleged, and are barred by the First Amendment. In addition, Plaintiffs' intrusion upon seclusion claim fails because the tweet describes conduct that occurred while they were in public; indeed, there are few places more public than the steps of the Lincoln Memorial. Finally, the negligent infliction of emotional distress claim fails because, among other reasons, Plaintiffs have not alleged any of the essential elements of a claim. Accordingly, even if the Court could exercise personal jurisdiction over Jeffery (which it cannot), it would have to dismiss the amended complaint as to her for failure to state a claim.[1]

## II.    BACKGROUND

According to Plaintiffs' amended complaint, on January 18, 2019, Plaintiffs[2] travelled with a group of their classmates from Covington Catholic High School in Kentucky to Washington, D.C. to attend the March for Life. (Doc. 1-1 at 53 [¶ 15].) The students subsequently gathered at the Lincoln Memorial. (Doc. 1-1 at 53 [¶ 16].) While at the Lincoln Memorial, the students had interactions with members of the Black Hebrew Israelites and Nathan Phillips, a Native American activist. (Doc. 1-1 at 53-54 [¶¶ 16-18].) Plaintiffs' interaction with

---

[1] Jeffery reserves all rights to assert additional defenses and move for dismissal later on other grounds. Jeffery does not waive any argument, defense, or objection under Rule 12 by making a Rule 12(b)(6) motion or by joining it with her Rule 12(b)(2) motion. *See* Rule 12(b) ("No defense or objection is waived by joining it with one or more other defenses or objections . . . in a motion.").

[2] Plaintiffs are improperly proceeding under pseudonyms. There is no "Kentucky authority by statute, rule or caselaw, supporting the proposition that litigants may proceed anonymously" except under unusual circumstances. *Doe v. Potter*, 225 S.W.3d 395, 403 (Ky. Ct. App. 2006) (Knopf, J., concurring). The same is true in federal court, where the rules prescribe that "[t]he title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). Plaintiffs may seek a protective order to proceed pseudonymously if they can "articulate concerns that outweigh the presumption of openness in judicial proceedings." *D.E. v. John Doe*, 834 F.3d 723, 728 (6th Cir. 2016). However, Plaintiffs have made no effort to satisfy that burden. Furthermore, if Plaintiffs are in fact minors as they claim (Doc. 1-1, at 63 [¶ 40]), they must be represented by their (named) parents or guardians ad litem. Fed. R. Civ. P. 17(c). Their amended complaint should be dismissed on these grounds alone.

Phillips gained nationwide attention in news media and social media. (Doc. 1-1 at 54 [¶ 19].) A member of the BHI group made a video recording of both interactions (which Plaintiffs assert to be accurate) and posted it to the Internet.[3] (Doc. 1-1 at 54 [¶ 20].)

Clara Jeffery is the Editor-in-Chief of Mother Jones. (Doc. 1-1 at 61 [¶ 32].) Following the incident, she made a post on the Twitter social media platform (a "tweet") that read, in its entirety:

> The tapes that have emerged do show the BHI doing their usual end-times ranting. But they also show the Covington Catholic kids:
> *making caveman gestures at BHI
> *tomahawk chanting at Natives
> *taunting random women
> *chants of "build the wall" and "it's not rape if you enjoy it"

(Doc. 1-1 at 102 [Ex. N].)

## III. PLAINTIFFS MUST ESTABLISH THAT THE COURT HAS PERSONAL JURISDICTION AND STATE A LEGALLY SUFFICIENT CLAIM

"Under Rule 12(b)(2), the burden is on the Plaintiffs to show that personal jurisdiction exists as to each defendant." *Carter v. Paschall Truck Lines, Inc.*, 388 F. Supp. 3d 883, 887 (W.D. Ky. 2019); *accord Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974) ("The burden of proof to establish jurisdiction over . . . individuals [is] upon the plaintiff."). It is thus Plaintiffs' responsibility to demonstrate "'with reasonable particularity sufficient contacts between [Defendants] and the forum state to support jurisdiction.'" *Neogen Corp. v. Neo Gen*

---

[3] Jeffery requests that the Court take judicial notice of the BHI video, a copy of which is submitted on DVD concurrently with this motion, as Jeffery's **Exhibit 1**. Plaintiffs refer to the video in their amended complaint as "accurate" and assert that the video proves the falsity of Defendants' statements. (Doc. 1-1 at 54 [¶ 20].) Jeffery's tweet also referred to the video. (Doc. 1-1 at 102 [Ex. N] (citing "[t]he tapes that have emerged" and referring to BHI).) "[I]f a plaintiff references or quotes certain documents, . . . a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion . . . ." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014). *See also Sandmann v. WP Co. LLC*, No. 2:19-cv-00019 (WOB-CJS), 2019 U.S. Dist. LEXIS 125275, at *5-6, 2019 WL 3409881, at *2 (E.D. Ky. July 26, 2019).

*Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). When a "defendant has moved to dismiss the case under Rule 12(b)(2) for lack of personal jurisdiction and the district court rules on the motion without an evidentiary hearing," the court "consider[s] the pleadings in the light most favorable to the plaintiff." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012).

In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must assume the truth of all properly pleaded factual allegations and must construe them in the light most favorable to the plaintiff. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). But "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "[A] plaintiff's obligation to provide grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and brackets omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks and brackets omitted).

## IV. THE COURT LACKS JURISDICTION AND PLAINTIFFS FAIL TO STATE A CLAIM AGAINST JEFFERY, SO THE AMENDED COMPLAINT MUST BE DISMISSED

### A. The Court Lacks Personal Jurisdiction Over Jeffery

As admitted in the amended complaint, Jeffery is a resident of California. (Doc. 1-1 at 53 [¶ 13]; Jeffery Decl. ¶¶ 2-3.) Thus, a court in Kentucky may only exercise personal jurisdiction over her if Plaintiffs can prove that she is subject to personal jurisdiction as a nonresident. They cannot.

"'[P]ersonal jurisdiction over a defendant exists if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process.'" *Community Trust Bancorp, Inc. v. Community*

4

*Trust Fin. Corp.*, 692 F.3d 469, 471 (6th Cir. 2012); *accord Kerry Steel, Inc. v. Paragon Indus.,*

*Inc.*, 106 F.3d 147, 149 (6th Cir. 1997). As the Kentucky Supreme Court has explained:

> [T]he proper analysis of long-arm jurisdiction over a nonresident defendant consists of a two-step process. First, review must proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories. If not, then *in personam* jurisdiction may not be exercised. When that initial step results in a determination that the statute is applicable, a second step of analysis must be taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011); *accord Carter v.*

*Paschall Truck Lines, Inc.*, 388 F. Supp. 3d 883, 888 (W.D. Ky. 2019). In this case, personal

jurisdiction over Jeffery is defeated both by Kentucky's long arm statute and by the federal Due

Process Clause.

### 1.     Kentucky's Long-Arm Statute Does Not Authorize the Court to Exercise Personal Jurisdiction Over Jeffery in this Lawsuit

"[N]on-resident defendants whose activities fall outside the criteria of KRS 454.210 may

not be subjected to long-arm jurisdiction." *Caesars Riverboat*, 336 S.W.3d at 56. KRS

§ 454.210(2)(a) provides nine grounds on which a Kentucky court may exercise personal

jurisdiction over a non-resident. Only two of those grounds appear to have the potential to be

relevant in this case:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:
> . . .
> 3.     Causing tortious injury by an act or omission in this Commonwealth;
> 4.     Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth . . . .

KRS § 454.210(2)(a).

First, with regard to KRS § 454.210(2)(a)(3), courts "have rejected that an out-of-state person commits an 'act or omission in this Commonwealth' by sending a tortious communication into the state." *Stanley Warranty, LLC v. Universal Adm'rs Serv., Inc.*, No. 3:13-CV-513-JGH, 2014 U.S. Dist. LEXIS 135790, at *11-12, 2014 WL 4805669, at *5 (W.D. Ky. Sept. 26, 2014); *see also id.* ("The Mankovsky's allegedly tortious communications—initiated from their home state in New Jersey to Collins in Kentucky—were not 'act[s] or omission[s] in this Commonwealth' under KRS 454.210(2)(a)(3)."). Thus, even phone calls or emails specifically directed to a person in Kentucky do not create personal jurisdiction under this provision. *Perkins v. Bennett*, No. 3:13-CV-695, 2013 U.S. Dist. LEXIS 160833, at *18-20, 2013 WL 6002761, at *7 (W.D. Ky. Nov. 12, 2013) (concluding that emails and telephone calls from South Carolina received in Kentucky did not create "personal jurisdiction over Defendants pursuant to § 454.210(2)(a)(3)").[4] Thus, it is clear that Jeffery's Twitter post, which was not directed at any particular person in Kentucky, did not constitute "an act or omission in this Commonwealth."

As for KRS § 454.210(2)(a)(4), there is no allegation that Jeffery "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth." Jeffery does none of these things. (Jeffery Decl. ¶¶ 6-7.) Moreover, even if Jeffery did engage in these activities, Plaintiffs do not assert and cannot demonstrate that any injury they allege "arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial

---

[4] As the Kentucky Court of Appeals has explained, it would render KRS § 454.210(2)(a)(4) surplusage if KRS § 454.210(2)(a)(3) were held to apply to conduct occurring outside the state. *Pierce v. Serafin*, 787 S.W.2d 705, 706-07 (Ky. Ct. App. 1990); *accord Stanley Warranty*, 2014 U.S. Dist. LEXIS 135790, at *12-13, 2014 WL 4805669, at *5.

6

revenue within the Commonwealth." KRS § 454.210(2)(a)(4). As used in KRS § 454.210(2)(a), the term "arising" requires a "reasonable and direct nexus." *Caesars*, 336 S.W.3d at 59. There is no reasonable and direct nexus between the Twitter post and the activities listed in § 454.210(2)(a)(4), even if Jeffery did hypothetically engage in those activities (which, again, she did not). *John Conti Coffee Co. v. MAPCO Express, Inc.*, No. CV 13-39-GFVT, 2014 U.S. Dist. LEXIS 199901, at *2, *7-12, 2014 WL 12648449, at *1, *3-4 (E.D. Ky. Jan. 2, 2014) (holding that KRS § 454.210(2)(a) did not provide for personal jurisdiction over trademark defendant that transacted business and advertised in Kentucky, including through Twitter, because cause of action did not arise from in-state activities). Accordingly, the Court should dismiss Plaintiffs' claims against Jeffery because they fall outside Kentucky's long arm statute.

### 2. Exercising Jurisdiction Over Jeffery Would Violate the Federal Due Process Clause.

Even if Kentucky's long arm statute did encompass Plaintiffs' claims, personal jurisdiction over Jeffery in Kentucky courts is barred by the federal Due Process Clause.

> Personal jurisdiction comes in two flavors: "general" jurisdiction, which depends on a showing that the defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant, and "specific" jurisdiction, which exposes the defendant to suit in the forum state only on claims that "arise out of or relate to" a defendant's contacts with the forum.

*Kerry Steel*, 106 F.3d at 149. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011); *accord Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Jeffery is clearly not subject to general personal jurisdiction in Kentucky because she is not domiciled in Kentucky, but rather in California. (Jeffery Decl. ¶¶ 2-3.) Moreover, she has no meaningful contacts with Kentucky, much less continuous and systematic contacts. (*Id.*, ¶¶ 3-10.)

7

For a defendant to be subject to specific personal jurisdiction in a state, three requirements must be met:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968); *accord Brown v. Twentieth Century Fox Home Entm't*, No. 6:14-CV-147-KKC, 2015 U.S. Dist. LEXIS 113560, at *16-17, 2015 WL 5081125, at *6 (E.D. Ky. Aug. 27, 2015). Courts have repeatedly held that the distribution of social media posts and/or statements on informational websites that are not specifically directed at the forum state (in this case Kentucky) do not constitute "purposeful availment" and therefore do not provide a basis for exercising personal jurisdiction. *See, e.g.*, *Cadle Co. v. Schlichtmann,* 123 F. App'x 675, 678 (6th Cir. 2005); *Vangheluwe v. Got News, LLC*, 365 F. Supp. 3d 850, 857-58 (E.D. Mich. 2019); *Binion v. O'Neal*, 95 F. Supp. 3d 1055, 1059-60 (E.D. Mich. 2015).

For example, in one recent case a federal district court in Kentucky held as follows:

> [G]eneral internet communications or use of social media sites—including Facebook, Twitter, and YouTube—do[] not create a sufficient basis for personal jurisdiction. . . . Plaintiff contends that the Individual Defendants promoted [a movie] through various online resources, including Twitter and YouTube. Plaintiff does not assert that these communications specifically targeted Kentucky residents or were interactive to a degree that it is apparent that the Individual Defendants intended to avail themselves of the privilege of acting in Kentucky. The Individual Defendants' use of social media does not create contacts sufficient to support a finding of purposeful availment.

*Brown*, 2015 U.S. Dist. LEXIS 113560, at *19-20, 2015 WL 5081125, at *7. Thus, merely making social media posts, such as tweets, that are available to all of one's friends or followers does not support the exercise of personal jurisdiction. *See Vangheluwe*, 365 F. Supp. 3d at 857-

58 ("Thus, the foregoing cases appear to establish this rule: merely posting a defamatory statement about the plaintiff online is not enough to hale the poster into the state where the plaintiff resides; instead, the poster's conduct must have involved the plaintiff's state in some additional way."); *Binion*, 95 F. Supp. 3d at 1060 ("Although highly offensive, O'Neal's posts on Instagram and Twitter were little more than the posting of information on social media websites, which became accessible to users in Michigan and elsewhere. . . . O'Neal's posts were meant for a national or even international audience. Here, the only connection to Michigan is Plaintiff's injury. This, without "something more" is insufficient to establish personal jurisdiction . . . ."). Moreover, Jeffery's Twitter post described events that took place in Washington, D.C., not Kentucky. (Jeffery Decl. ¶ 11.) *See Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1120 (6th Cir. 1994) (finding no personal jurisdiction where "the press release concerned Reynolds' activities in Monaco, not Ohio").

Because Jeffery is alleged only to have made a Twitter post available to all of her followers without regard to where they lived, and because the post related to activities outside of Kentucky, the courts in this state lack personal jurisdiction over Jeffery. Thus, the Court should dismiss the claims against Jeffery.

**B.      Plaintiffs Fail to State a Claim Against Defendant Jeffery For Defamation**

"The requisite elements for a defamation claim are: '(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.'" *Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276, 281-82 (Ky. 2014). Plaintiffs' defamation claim against Jeffery fails for several reasons.

### 1.      Jeffery's Tweet Was Not About or Concerning Any Specific Plaintiff

To be actionable under Kentucky law, a statement must be about or concerning the plaintiff. *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2004), *overruled on other grounds by Toler*, 458 S.W.3d 276. "[T]he plaintiff need not be specifically identified in the defamatory matter itself so long as it was so reasonably understood by plaintiff's 'friends and acquaintances . . . familiar with the incident.'" *Stringer*, 151 S.W.3d at 793-94. However, "[t]o defame a class, the statement must be applicable to every member of the class, and if the words used contain no reflection upon any particular individual, no averment can make them defamatory." *Kentucky Fried Chicken of Bowling Green, Inc. v. Sanders*, 563 S.W.2d 8, 9 (Ky. 1978); *see also Louisville Times v. Stivers*, 252 Ky. 843, 68 S.W.2d 411, 412 (1934) ("[W]here defamatory statements are made against an aggregate body of persons, an individual member not specially imputed or designated cannot maintain an action.").

Jeffery's tweet does not refer to any Covington student in particular. Rather, it refers only generically to "the Covington Catholic kids." (Doc. 1-1 at 83, 102 [¶ 161, Ex. N].) It is not actionable because it refers to a class and contains no reflection on any individual member of the class. Thus, it does not concern any identifiable individual. *See Sanders*, 563 S.W.2d at 9 (affirming dismissal of defamation complaint where newspaper published Colonel Sanders' derogatory statements about KFC's gravy because "the Colonel did not have the Kentucky Fried Chicken of Bowling Green, Inc. or any other particular restaurant in mind" given that there was "nothing in the present article which identified" or made "direct reference to" the plaintiff's particular restaurant location); *Stivers*, 68 S.W.2d at 411-13 (holding that the plaintiff's defamation claim should have been dismissed because a statement that the "Stivers clan" had been involved in "fist fights and gun battles" was toward a group or class and not actionable as a matter of law); *O'Brien v. Williamson Daily News*, 735 F. Supp. 218, 220 (E.D. Ky. 1990)

(holding that "[g]roup libel actions require the libelous statements to be applicable to every member of the class, not merely to an aggregate body of persons" and dismissing claims of teachers not identified in an article that mentioned "teachers having affairs with students" because "the article refer[red] to no identifiable group member and [did] not impugn the reputation of any specific member.").

As this Court concluded in *Sandmann*, statements referring generally to the Covington students involved in the incident at the Lincoln Memorial "are clearly 'made against an aggregate body of persons,' and thus 'an individual member not specially imputed or designated cannot maintain an action.'" *Sandmann*, 2019 U.S. Dist. LEXIS 125275, at *13, 2019 WL 340981, at *6 (quoting *Stivers*, 68 S.W.2d at 412). No individual student is identified in Jeffery's tweet, so Plaintiffs' claims against Jeffery must be dismissed.

### 2. Jeffery's Tweet Is Not Defamatory Per Se, and Plaintiffs Fail to Adequately Plead Special Damages and so Do Not State a Claim of Defamation Per Quod

Kentucky recognizes two forms of defamation: defamation per se and defamation per quod. "[W]ritten or printed publications, which are false and tend to injure one in his reputation or to expose him to public hatred, contempt, scorn, obloquy, or shame, are libelous per se." *Stringer*, 151 S.W.3d at 795. A statement is defamatory per quod "if a comprehension of the defamatory nature of the written or spoken words requires extrinsic evidence of context or circumstances." *Id*. "'In determining whether a writing is libelous per se, courts must stay within the 'four corners' of the written communication. The words must be given their ordinary, natural meaning as defined by the average lay person. The face of the writing must be stripped of all innuendoes and explanations.'" *Roche v. Home Depot U.S.A.*, 197 F. App'x 395, 398 (6th Cir. 2006).

Plaintiffs' claims rely on just the sort of "innuendoes and explanations" that cannot support a claim of defamation per se. Many of the allegations Plaintiffs make about Jeffery's

statements are completely absent from her tweet and could only be inferred—if at all—from extrinsic evidence. Thus, if the statements are defamatory at all (and they are not), they could only be defamation per quod. The amended complaint alleges that Jeffery:

> implied the following facts were true in her statements and the links attached thereto with the gist of the false statements made about the plaintiffs was that the kids interrupted an indigenous march, stopped and blocked a Native American elder and Vietnam War veteran from continuous participation in that event, surrounded him in a threatening manner, and taunted him, as a native American elder, with chants of "build the wall" to mock an elderly native American in the middle of an indigenous march, and falsely accused the plaintiffs of threatening women with chants of "it's not rape if you enjoy it."

(Doc. 1-1 at 83 [¶ 161].) But the tweet neither says nor implies anything about an indigenous march, about an elder or veteran, about blocking anyone from doing anything, or about surrounding anyone in a threatening manner. (Doc. 1-1 at 102 [Ex. N].) The tweet indicates that Covington students recited the chant "build the wall"—a slogan popularized by the President of the United States—but it does not say that they used that chant "to mock an elderly native American in the middle of an indigenous march." Similarly, the tweet states that Covington students taunted women, and it separately indicates that one or more chanted "it's not rape if you enjoy it," but it does not state or imply that they "threaten[ed] women."[5] Moreover, although the amended complaint references "links attached" to Jeffery's statement, the tweet provided as an exhibit to the amended complaint contains no links. (Doc. 1-1 at 83, 102 [¶ 161, Ex. N].) Thus, even if linked information could be considered intrinsic to a tweet, there is no link present here.

Furthermore, as explained in greater detail below, none of the statements upon which Plaintiffs' claims against Jeffery are based could possibly be characterized as defamatory per se. As this Court has recognized in addressing many of the same statements or kinds of statements,

---

[5] The assertion about taunting women is clearly a separate assertion, and the structure of the tweet, the separate bullet points, and the intervening reference to "chants of 'build the wall'" make it clear that it does not refer to the statement "it's not rape if you enjoy it."

"[t]he statements here . . . are nothing like the words Kentucky courts have recognized as defamatory *per se*." *Sandmann*, 2019 U.S. Dist. LEXIS 125275, at *23-24, 2019 WL 3409881, at *10-11. None of them are such as to innately expose Plaintiffs to "public hatred, contempt, scorn, obloquy, or shame." *Stringer*, 151 S.W.3d at 795.

Plaintiffs must therefore state a claim for defamation per quod. In order to prevail on a defamation per quod claim, Plaintiffs must properly allege special damages. *Rich for Rich v. Kentucky Country Day, Inc.*, 793 S.W.2d 832, 837 (Ky. Ct. App. 1990). Plaintiffs may be attempting to plead special damages by claiming, in boilerplate language repeated throughout the amended complaint, that the Defendants' alleged conduct caused "special economic harm, including the increased cost of protecting their privacy and security," "endangered their college admissions' prospects," and "limited their economic prospects and future earning power as adults." (Doc. 1-1 at 84 [¶ 163].) However, these allegations do not adequately plead special damages. *Dermody v. Presbyterian Church U.S.A.*, 530 S.W.3d 467, 475 (Ky. Ct. App. 2017) (allegations of "adverse effects on [plaintiff's] future employment prospects and career, and . . . for the adverse effect on his future earnings and financial stability" were not sufficient to show special damages). Furthermore, it is well established that "[i]n an action for defamatory words not actionable per se, plaintiff cannot recover, unless the proof shows that the special damage alleged is the natural, immediate, and legal consequence of the charge, and due exclusively to the publication by defendant." *Williams v. Riddle*, 145 Ky. 459, 468-69, 140 S.W. 661, 664 (1911); *see also Taylor v. Moseley*, 170 Ky. 592, 598, 186 S.W. 634, 636 (1916) (special damages alleged must be "the natural, immediate, and legal consequence of the charge, and due exclusively to the publication by defendant"); *CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1083 (W.D. Ky. 1995) ("The pecuniary loss must be a direct and proximate result of

13

the defamation. Because CMI does not have evidence of a reasonably certain direct or proximate relationship between any communication of Defendants and lost profits by CMI, it cannot prove the essential elements of defamation *per quod.*" (citation omitted)). Plaintiffs have not alleged special damages at all, and in any event, in light of the innumerable comments regarding the conduct of the Covington students during the incident in Washington, D.C., they do not and cannot allege that any putative special damages they claim to have suffered are directly, proximately, and exclusively attributable to any statements by Jeffery. Thus, they fail to state a claim for defamation per quod.

### 3.     Jeffery's Tweet Expressed Opinions Based on Disclosed Facts

Under Kentucky law, expressions characterized as "pure opinion" are not actionable. "Pure opinion, which is absolutely privileged, occurs where the commentator states the facts on which the opinion is based, or where both parties to the communication know or assume the exclusive facts on which the comment is clearly based." *Yancey v. Hamilton*, 786 S.W.2d 854, 857 (Ky. 1989). All of the statements contained in Jeffery's tweet are privileged statements of opinion because they are conclusions based on disclosed facts.

Jeffery's tweet does not link to the videos on which it is based, but the tweet is expressly a summary of her conclusions based on "[t]he tapes that have emerged." (Doc. 1-1 at 102 [Ex. N].) It specifically refers to a video "show[ing] the BHI doing their usual end-times ranting," thus making it clear that her comments were based, at a minimum, on the BHI video. At the time of the tweet (and even today), the videos that had emerged, including the BHI video relied upon by Plaintiffs, were apparent to anyone who cared to look for them.[6] Jeffery's tweet does not imply the existence of any secret, unknown, or undisclosed videos (or other facts). Even if

---

[6] See https://www.youtube.com/watch?v=ObIYLTWfR20. As noted, a copy of the BHI video is submitted herewith. (Jeffery Ex. 1.)

Plaintiffs take the position that the conduct described in the tweet was engaged in by other people and should not have been attributed to Covington students, because the tweet was simply an expression of Jeffery's conclusions based on what the videos showed, and given that anyone could (and can) look at the videos and draw their own conclusions, the tweet is protected as "pure opinion." *Yancey*, 786 S.W.2d at 857; *Lassiter v. Lassiter*, 456 F. Supp. 2d 876, 881-882 (E.D. Ky. 2006), *aff'd* 280 F. App'x 503 (6th Cir. 2008).

### 4.    The Statements Actually Contained in the Tweet Do Not Support a Defamation Claim

In addition to failing for the reasons stated above, the amended complaint must be dismissed because the statements made in Jeffery's tweet do not support a defamation claim. They are not defamatory, not false, and/or protected as opinion or rhetorical hyperbole.

*Making caveman gestures at the BHI*

"[T]o satisfy the first element of a defamation claim, the language in question must 'be both false *and defamatory*. A statement that is false, but not defamatory is not actionable; a statement that is true is not actionable even if defamatory.'" *Sandmann*, 2019 U.S. Dist. LEXIS 125275, at *10, 2019 WL 3409881, at *5 (emphasis original), quoting *Dermody*, 530 S.W.3d at 472-73. Stating that a person made caveman gestures is not defamatory. Making caveman gestures is not inherently so bizarre or objectionable that it would be likely to result in harm to someone's reputation, and certainly does not qualify as defamatory per se. *See Stringer*, 151 S.W.3d at 795 (holding that in order to constitute defamation per se statement must expose plaintiff to "public hatred, contempt, scorn, obloquy, or shame."); *cf. State v. Bennett*, 369 S.C. 219, 233 (2006) (concluding prosecutor's comparison of criminal defendant with a "caveman" "was not inflammatory"). To the extent that Plaintiffs are taking the position that they believed they were making "Haka" gestures and not "Caveman" gestures, any such claim changes

15

nothing. The tweet's description of the gestures is a matter of opinion and constitutes non-actionable hyperbole. *Yancey*, 786 S.W.2d at 857. Indeed, this Court has recognized that a virtually identical description of the conduct of Covington students was non-actionable hyperbole. *Sandmann*, 2019 U.S. Dist. LEXIS 125275, at *36, 2019 WL 3409881, attachment item 28 ("'They were mocking my ancestors in a chant, one of them was ***jumping up and down like a cave man***," he [Banyaman] said.' — What constitutes 'mocking' is a matter of personal opinion. Statement is hyperbole. Not defamatory.") (emphasis added).

In any event, Jeffery's statement regarding these gestures is not false. The BHI video of the event, relied upon by the amended complaint as accurate (Doc. 1-1, at 54 [¶ 20]), shows that Covington students made such gestures (Jeffery Ex. 1, 1:09:48-1:10:37). Plaintiffs asserting claims of defamation based on statements regarding matters of public concern have the burden of proving falsity. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986); *American Univ. of Antigua College of Med. v. Woodward*, 837 F. Supp. 2d 686, 695 (E.D. Mich. 2011). *See also Wilson v. Scripps-Howard Broad. Co.,* 642 F.2d 371, 376 (6th Cir. 1981) ("As a matter of federal First Amendment law, the burden must be placed on the plaintiff to show falsity."); *Milligan v. United States*, 644 F. Supp. 2d 1020, 1033 n.9 (M.D. Tenn. 2009) (same). This Court has previously determined that commentary on the confrontations that are addressed by Jeffery's tweet are "inherently a matter of public concern." *Sandmann*, 2019 U.S. Dist. LEXIS 125275, at *9, 2019 WL 3409881, at *4. Furthermore, under Kentucky law "[t]ruth is always a complete defense to defamation." *Toler*, 458 S.W.3d 276, 289, fn. 55. *See also Dermody*, 530 S.W.3d at 473; *Buchholtz v. Dugan*, 977 S.W.2d 24, 27 (Ky. Ct. App. 1998) ("In Kentucky, truth is a complete defense for libel, even if the statements are libelous *per se*."). In addition, "[w]here the defendant is a newspaper, the rule is that it is not to be held to the exact facts or to the most

16

minute details of the transactions that it reports. What the law requires is that the publication be substantially true." *Bell v. Courier-Journal & Louisville Times Co.*, 402 S.W.2d 84, 87 (Ky. 1966) (citations omitted). Because this statement is true, it cannot support a claim of defamation.

*Tomahawk chanting at Natives*

It is not clear whether Plaintiffs allege this statement to be defamatory. (Doc. 1-1 at 83 [¶161].) Regardless, it is true that the Covington students made tomahawk gestures while engaging with Native Americans. This fact is confirmed by the BHI video of the event and conceded by the amended complaint. (Doc. 1-1 at 53-54 [¶ 18] (Some of the students "mirror[ed] the sports chant of the Florida State Seminoles and the Atlanta Braves, with their famous tomahawk chop."); Jeffery Ex. 1, 1:12:21-1:14:28.) Therefore, it is not actionable. *Hepps*, 475 U.S. at 776; *Wilson,* 642 F.2d at 376; *Toler*, 458 S.W.3d 276, 289, fn. 55; *Dermody*, 530 S.W.3d at 473.

Furthermore, to the extent the amended complaint alleges that this statement is actionable, asserting that someone engaged in "tomahawk chanting at Natives" is not inherently defamatory. Even if the statement implies that the students did not demonstrate adequate respect to Native American traditions, making a tomahawk gesture—which the amended complaint describes as a "famous" feature of a major league baseball team's cheer (Doc. 1-1 at 54 [¶18])—does not rise to the level of defamation per se. *Stringer*, 151 S.W.3d at 795. To the extent the amended complaint alleges that the tweet asserted that the Covington students had "taunted" a Native American (Doc. 1-1 at 83 [¶161]), as noted above, the tweet makes no such assertion, and, in any event, whether words or actions constitute taunting is a matter of opinion, and therefore not actionable. *Sandmann*, 2019 U.S. Dist. LEXIS 125275, at *15, 2019 WL 3409881, at *7. *See also Turner v. Wells*, 879 F.3d 1254, 1270 (11th Cir. 2018) (defamation

17

claim "fails because the Report's conclusion that [Plaintiff] engaged in homophobic taunting is a nonactionable opinion").

*Taunting random women*

Again, whether words or actions constitute taunting is a matter of opinion. *Sandmann*, 2019 U.S. Dist. LEXIS 125275, at *15, 2019 WL 3409881, at *7 ("[S]tatements [that] contain terms such as . . . 'taunting,' are all examples of 'loose, figurative,' 'rhetorical hyperbole' that is protected by the First Amendment because it is not 'susceptible of being proved true or false.'"); *Turner*, 879 F.3d at 1270. Moreover, the asserted conduct does not rise to the level of defamation per se as it does not expose someone to "public hatred, contempt, scorn, obloquy, or shame." *Stringer*, 151 S.W.3d at 795. While taunting women may be rude or unmannerly, the mere assertion that one has engaged in "taunting" is at most insulting or derogatory, and hence not actionable—much less defamatory per se. *See, e.g., Beverly Enters. v. Trump,* 182 F.3d 183, 187 (3d Cir. 1999) ("Although Trump's statements were undoubtedly offensive and distasteful, the law of defamation does not extend to mere insult."). *See also, e.g., Binion v. O'Neal*, No. 14-13454, 2015 U.S. Dist. LEXIS 43456, at *13-14, 2015 WL 3544518, at *6 (E.D. Mich. Apr. 2, 2015) ("insults and other derogatory comments on Internet message boards and similar communications" were non-actionable statements of opinion) (internal quotations omitted); *Murray v. Tarley*, No. C2-01-693, 2002 WL 484537, 2002 U.S. Dist. LEXIS 28154, at *25-26 (S.D. Ohio Feb. 20, 2002) ("There is a long recognized distinction between actionable defamation and mere obscenities, insults, and other verbal abuse.").

*Chants of "build the wall"*

As this Court previously held, "build the wall" is "a political statement on an issue of public debate and often associated with party affiliation." *Sandmann*, 2019 U.S. Dist. LEXIS

125275, at *22, 2019 WL 3409881, at *10. "Even if false, attributing to an individual 'membership in a political party in the United States that is a mainstream party and not at odds with the fundamental social order is not defamatory.'" *Id.* In other words, it is not defamatory to attribute to a person a position on a political issue held by the President of the United States and many of the members of his political party, even if that attribution is not accurate.

Additionally, Plaintiffs do not specifically allege the falsity of this statement. The amended complaint does not assert that Covington students did not chant "build the wall." Rather, it alleges only that the Covington students did not direct the chant "at Phillips," the Native American man involved in one of the confrontations. (Doc. 1-1, at 53 [¶ 17], 61 [¶ 32].) Jeffery's tweet does not assert that they directed the chant toward Phillips or any other particular person. The tweet merely asserts that they made the chant, which the amended complaint does not dispute. Because Plaintiffs do not allege that Jeffery's tweet is false, it is not actionable. *Hepps*, 475 U.S. at 776; *Wilson,* 642 F.2d at 376; *Toler,* 458 S.W.3d 276, 289, fn. 55; *Dermody*, 530 S.W.3d at 473.

> *Chants of . . . "it's not rape if you enjoy it"*

The amended complaint does not appear to allege that the attribution of this statement to one or more Covington students alone is defamatory. Rather, it asserts that Jeffery "falsely accus[ed] the teens of taunting women with the chant 'it's not rape if you enjoy it.'" (Doc. 1-1, at 61 [¶ 32].) However, Jeffery's tweet does not so state. It clearly separates the comment that the video shows students "taunting random women" from that describing the "chants." (Doc. 1-1 at 102 [Ex. N].) Thus, the tweet does not contain the implication on which the amended complaint is based, and therefore does not support this basis for Plaintiffs' claim.

To the extent Plaintiffs assert that Jeffery's tweet is defamatory merely for attributing this statement to one or more Covington students, they are wrong. First, while making such a statement might demonstrate questionable judgment on the part of the speaker, this position is not so far outside the mainstream that inaccurately attributing it to someone is defamatory, much less defamatory per se.[7] *Stringer*, 151 S.W.3d at 795. In an era when the parameters of sexual assault are intensely contested, asserting that a person made a statement such as this "on an issue of public debate," *Sandmann*, 2019 U.S. Dist. LEXIS 125275, at *22, 2019 WL 3409881, at *10, does not give rise to a defamation claim. Second, Plaintiffs fail to plead the essential element of "fault amounting at least to negligence on the part of the publisher." *Toler*, 458 S.W.3d at 282. Moreover, Plaintiffs fail to assert that Jeffery acted with ***any*** level of fault, and they fail to plead any facts establishing a plausible claim that Jeffery acted with negligence in making this statement (or any other). Videos show a young man who is repeatedly seen with other Covington students and who appears to be a Covington student making this very statement.[8] Hence, at least as of January 22, 2019, when Jeffrey posted her tweet, it would have been in no way negligent to ascribe this statement to a Covington student.

---

[7] As discussed above, Jeffrey's tweet does not attribute this or any other statement to any particular Covington student. Therefore, it is not about and concerning any of the Plaintiffs, and is not actionable for that reason alone.

[8] The statement can be heard in the background on the BHI video (Jeffery Ex. 1, at 1:19:50-1:19:53). A video recording showing a Covington student making it is available online. *See, e.g.,* https://twitter.com/MeloStreetVybz/status/1087549546404691969?ref_src=twsrc%5Etfw%7Ctw camp%5Etweetembed%7Ctwterm%5E1087549546404691969&ref_url=https%3A%2F%2Fww w.dailykos.com%2Fstory%2F2019%2F1%2F22%2F1828496%2F-Covington-students-caught-wearing-blackface-making-rape-jokes-in-addition-to-harassing-Omaha-elder. The Court may properly consider and take judicial notice of this video as well. *Sandmann*, 2019 U.S. Dist. LEXIS 125275, at *5-6, 2019 WL 3409881, at *2 ("Thus, 'if a plaintiff references or quotes certain documents, or if public records refute a plaintiff's claim, a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion.'").

Because none of the statements on which it is or may be based are actionable, the Court should dismiss Plaintiffs' defamation cause of action against Jeffery for failure to state a claim.

**C.      Plaintiffs Fail to State a Claim for Intrusion upon Seclusion or Negligent Infliction of Emotional Distress**

**1.      The First Amendment bars Plaintiffs' Tort Claims**

"The Free Speech Clause of the First Amendment . . . can serve as a defense in state tort suits" and mandates dismissal of any claims arising from speech on a matter of public concern, including the intrusion upon seclusion and negligent inflection of emotional distress claims asserted in the amended complaint. *Snyder v. Phelps*, 131 S. Ct. 1207, 1215 (2011). Because "[t]he chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure," *Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965), courts should strive to resolve such clams at the "earliest possible stage." *Dorsey v. Nat'l Enquirer, Inc*., 973 F.2d 1431, 1435 (9th Cir. 1992).

The First Amendment bars Plaintiffs' claims for intrusion upon seclusion and negligent infliction of emotional distress on their face. The United States Supreme Court has categorically declared that tort liability may not be imposed on speech about issues of public concern even if the speech is "upsetting or arouses contempt" or is "offensive or disagreeable." *Snyder*, 131 S. Ct. at 1219. "[T]he Constitution does not permit the government to decide which types of otherwise protected speech are sufficiently offensive to require protection . . . ." *Id*. at 1220.

In *Sandmann*, this Court held that the factual predicate for this case "concern[s] groups of citizens who were assembled in the nation's capital to support or oppose various causes of importance to them. This is inherently a matter of public concern." *Sandmann*, 2019 U.S. Dist. LEXIS 125275, at *9, 2019 WL 3409881, at *4. As in *Snyder*, Plaintiffs' tort claims should be dismissed as violating the First Amendment.

2.      **Plaintiffs Fail to Plead Any of the Essential Elements of Their Claims**

Even if the First Amendment did not bar Plaintiffs' claims, Plaintiffs fail to state a claim for intrusion upon seclusion or negligent infliction of emotional distress.

Under Kentucky law, Plaintiffs must plead and prove all of the following elements for intrusion upon seclusion: "(1) an intentional intrusion by the defendant, (2) into a matter that the plaintiff has a right to keep private, and (3) which is highly offensive to a reasonable person." *McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810, 819 (E.D. Ky. 2019). "There can be no invasion of privacy where a plaintiff engages in conduct in a public place." *Patterson v. NBC Universal, Inc.*, No. 1:11-CV-68-R, 2012 U.S. Dist. LEXIS 124381, at *16, 2012 WL 3779118, at *6 (W.D. Ky. Aug. 31, 2012). "A plaintiff cannot show that the defendant intruded into his or her private affairs for events that occurred while he or she appeared in public and expected to interact with others." *Dukes v. Mid-E. Athletic Conference*, 213 F. Supp. 3d 878, 884-85 (W.D. Ky. 2016). Here, it is undisputed that the events on which Jeffery commented occurred in a public place—the steps of the Lincoln Memorial—and were a matter of public concern. There simply is no possible liability here for intrusion upon seclusion.

To succeed on a claim for negligent infliction of emotional distress, Plaintiffs "must establish the basic elements of negligence: '(1) the defendant owed a duty of care to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury.'" *Modern Holdings, LLC v. Corning Inc.*, No. 13-405-GFVT, 2015 U.S. Dist. LEXIS 41134, at *46, 2015 WL 1481457, at *16 (E.D. Ky. Mar. 31, 2015) (quoting *Osborne v. Keeney*, 399 S.W.3d 1, 17 (Ky. 2012)). Each Plaintiff must show that he suffered serious or severe emotional injury. *Id.*

Plaintiffs fail to plead the essential elements of duty and breach. (Doc. 1-1, at 84-85 [¶¶ 168-170].) Plaintiffs do not plead that Jeffery owed them a duty of care, or any facts

establishing a duty, or any breach of such duty. (*Id*.) They fail to plead that they suffered serious or severe emotional injury as a result of Jeffery's tweet. (*Id*. [¶ 169, pleading only emotional distress, anxiety, fear for their safety, and "effected [sic] their educational activities"].). As a result, Plaintiffs fail to state a claim for negligent infliction of emotional distress.

## V.    CONCLUSION

For the foregoing reasons, Jeffery respectfully requests that the Court dismiss Plaintiffs' claims against her with prejudice.

Dated: October 14, 2019                     Respectfully submitted,

                                            /s/ Monica L. Dias
*Of Counsel:*                               Monica L. Dias (89173)
James M. Chadwick*                          FROST BROWN TODD LLC
Tenaya Rodewald*                            330 Great American Tower
SHEPPARD, MULLIN, RICHTER &                 301 Fourth Street
HAMPTON LLP                                 Cincinnati, OH 45202
379 Lytton Avenue                           (513) 651-6800 (Phone)
Palo Alto, CA 94301                         (513) 651-6981 (Fax)
(650) 815-2600 (Phone)                      mdias@fbtlaw.com
(650) 815-2601 (Fax)
jchadwick@sheppardmullin.com                Michael E. Nitardy (91613)
trodewald@sheppardmullin.com                FROST BROWN TODD LLC
                                            7310 Turfway Road, Suite 210
*Lead Counsel for Defendant Clara Jeffrey*  Florence, Kentucky 41042
*\*Pro Hac Vice Application Pending*        (859) 817-5914 (Phone)
                                            (859) 283-5902 (Fax)
                                            Email: mnitardy@fbtlaw.com

                                            *Counsel for Defendant Clara Jeffrey*

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2019, a copy of the foregoing document was filed electronically.  Service of this filing will be made on all ECF-registered parties by operation of the Court's electronic filing system, and that I have provided courtesy copies of Exhibit 1 of the Memorandum to Counsel for Plaintiffs' and to the court via DVD.  Copies will be provided upon request to any defendant who wishes to have a copy of the DVD.  Copies of the Motion to Dismiss and Memorandum in Support have been served via U.S. mail, postage prepaid, to the following non-ECF parties, who may also request a copy of Exhibit 1:

Matthew John Dowd *(via U.S. Mail)*
307 W. Monroe Street
Austin, TX 78704-3023

*Pro Se Defendant*

Reza Aslan *(via U.S. Mail)*
1954 Pinehurst Road
Los Angeles, CA 90068-3730

*Pro Se Defendant*

Ana Violeta Navarro Flores *(via U.S. Mail)*
2907 Columbus Blvd.
Coral Gables, FL 33134

*Pro Se Defendant*

Jeffrey Shaun King *(via U.S. Mail)*
214 Duffield Street
Brooklyn, NY 11201-5339

*Pro Se Defendant*

*/s/ Monica L. Dias*
Frost Brown Todd LLC (89173)

0143148.0724904   4820-8542-5321v1

24