**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION AT COVINGTON**

| | | |
|---|---|---|
| JOHN DOES 1 THROUGH 10, | : | |
| | : | Case No. 2:19-cv-00117-WOB-CJS |
| | : | |
| Plaintiffs, | : | Judge William O. Bertelsman |
| | : | |
| v. | : | Magistrate Judge Candace J. Smith |
| | : | |
| | : | |
| DEBORAH HAALAND, et al., | : | FILED ELECTRONICALLY |
| | : | |
| Defendants. | : | **MEMORANDUM IN SUPPORT OF** |
| | : | **DEFENDANT MAGGIE HABERMAN'S** |
| | : | **MOTION TO DISMISS PLAINTIFFS'** |
| | : | **AMENDED COMPLAINT FOR LACK** |
| | : | **OF PERSONAL JURISDICTION AND** |
| | : | **FAILURE TO STATE A CLAIM UPON** |
| | : | **WHICH RELIEF CAN BE GRANTED** |
| | : | |
| | : | **ORAL ARGUMENT REQUESTED** |

Monica L. Dias (89173)
FROST BROWN TODD LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
513-651-6800 (phone)
513-651-6981 (fax)
mdias@fbtlaw.com

Michael E. Nitardy (91613)
FROST BROWN TODD LLC
310 Turfway Road, Suite 210
Florence, Kentucky 41042
(859) 817-5914 (phone)
(859) 283-5902 (fax)
mnitardy@fbtlaw.com

*Attorneys for Defendant Maggie Haberman*

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................... 1

II.     STATEMENT OF FACTS ........................................................................................ 2

III.    STANDARD OF REVIEW ..................................................................................... 4

IV.    ARGUMENT ........................................................................................................... 5

    A.    Plaintiffs' Claims Should Be Dismissed For Lack Of Personal Jurisdiction. ............................... 5

      1.   The long-arm statute does not confer jurisdiction over Haberman. ................................. 6

      2.   Haberman does not have sufficient minimum contacts with Kentucky to permit the exercise of personal jurisdiction under due process. ........................ 7

    B.    Plaintiffs' Tort Claims Should Be Dismissed For Failure To State A Claim .............................. 11

      1.   Plaintiffs Fail To State A Claim Against Haberman For Defamation. ........................... 14

        a.   The Challenged Tweets Are Not Defamatory ........................................... 15

        b.   The challenged tweets are not "of and concerning" Plaintiffs. ................................. 17

        c.   The Challenged Statements Are Non-Actionable Opinions. ................................ 19

        d.   The Challenged Statements Are True. ................................. 22

        e.   Plaintiffs Fail To Allege The Essential Element Of Fault. ................................. 23

      2.   Plaintiffs Fail To State A Claim For Intrusion Upon Seclusion and Negligent Infliction Of Emotional Distress. ........................... 23

        a.   The First Amendment bars Plaintiffs' tort claims. ................................. 23

        b.   Plaintiffs fail to plead any of the essential elements of their claims. ..................... 24

V.     CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328 (D.C. Cir. 2015) ........................................ 16

*Air Products & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544 (6th Cir. 2007) ................ 4, 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................... 4, 5

*Ayyadurai v. Floor64, Inc. d/b/a Techdirt*, 270 F. Supp.3d 343 (D. Mass. 2017) ...................... 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................. 4, 5

*Biro v. Conde Nast*, 171 A.D.3d 463 (N.Y. App. Div. 2019) ...................................................... 12

*Brown v. Twentieth Century Fox Home Entm't*, No. 6:14-cv-147-KKC, 2015 WL 5081125 (E.D. Ky. Aug. 27, 2015) ........................................................................................................ 5, 8

*Cadle Co. v. Schlichtmann,* 123 F. App'x 675 (6th Cir. 2005) .......................................... 9, 10, 11

*Caesar's Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51 (Ky. 2011) ................................... 5, 6

*Calder v. Jones*, 465 U.S. 783 (1984) ............................................................................... 9, 10

*Carter v. Paschall Truck Lines, Inc.*, 388 F. Supp.3d 883 (W.D. Ky. 2019) ................................ 5

*Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993) ................................................ 16

*Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630 (6th Cir. 2005) .................................... 19

*Clark v. Viacom Int'l, Inc.*, 617 F. App'x 495 (6th Cir. 2015) ......................................... 12, 22

*Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270 (Ky. Ct. App. 1981) ...................................... 17

*Compuware Corp. v. Moody's Inv'rs Servs.*, 499 F.3d 520 (6th Cir. 2007) ................................ 19

*Dermody v. Presbyterian Church (U.S.A.)*, 530 S.W.3d 467 (Ky. Ct. App. 2017) .......... 13, 16, 17

*Digest Publ'g Co. v. Perry Publ'g Co.*, 284 S.W.2d 832 (Ky. Ct. App. 1955) ........................... 15

*Doe v. Porter*, 370 F.3d 558 (6th Cir. 2004) .......................................................................... 19

*Doe v. Potter*, 225 S.W.3d 395 (Ky. Ct. App. 2006) ............................................................... 19

*Dombrowski v. Pfister*, 380 U.S. 479 (1965) .......................................................................... 23

*Dorsey v. Nat'l Enquirer, Inc.*, 973 F.2d 1431 (9th Cir. 1992) ................................................ 23

*Dukes v. Mid-E. Athletic Conference*, 213 F. Supp.3d 878 (W.D. Ky. 2016) ............................ 24

*Edwards v. Schwartz*, 378 F. Supp.3d 468 (W.D. Va. 2019) ...................................................... 8

*Fields v. Twitter, Inc.*, 200 F.Supp.3d 964 (N.D. Cal. 2016) ................................................... 14

*Guangzhou Consortium Display Prod. Co., Ltd. v. PNC Bank, Nat'l Ass'n*, 924 F. Supp.2d 800 (E.D. Ky. 2013) ...................................................................................................................... 7

*Hall v. Rag-O-Rama*, 359 F. Supp.3d 499 (E.D. Ky. 2019) ...................................................... 5

*Haynes v. McConnell*, 642 S.W.2d 902 (Ky. Ct. App. 1982) ................................................... 20

*Hill v. Evans*, 258 S.W.2d 917 (Ky. Ct. App. 1953) ............................................................... 16

*Hinners v. Robey*, 336 S.W.3d 891 (Ky. 2011) ........................................................................ 8

iii

*In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917 (6th Cir. 2014) .................... 5

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)................................................................ 7

*Jones v. Dirty World Ent. Recordings, LLC*, 755 F.3d 398 (6th Cir. 2014)................................. 13

*Kentucky Fried Chicken, Inc. v. Sanders*, 563 S.W.2d 8 (Ky. 1978)................................... 18, 19

*LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293 (6th Cir. 1989) *cert. denied*, 494 U.S. 1056 (1990) ........ 8

*Lassiter v. Lassiter*, 456 F. Supp.2d 876 (E.D. Ky. 2006), *aff'd*, 280 F. App'x 503 (6th Cir. 2008) ......... 19

*Lauren Eirk Enters., LLC v. Bryant-Cunha*, No. 3:12-CV-127, 2013 WL 163433 (W.D. Ky. Jan. 15, 2013) ............................................................................................................................ 10

*Life Designs Ranch, Inc. v. Sommer*, 364 P.3d 129 (Wash. App. 2015), *review denied*, 369 P.3d 500 (2016) ............................................................................................................................ 12

*Loftus v. Nazari*, 21 F. Supp.3d 849 (E.D. Ky. 2014)......................................................... 19

*Louisville Times v. Stivers*, 252 Ky. 843, 68 S.W.2d 411 (1934) .................................... 17, 18

*Martin v. Candle Queen Candles, LLC*, No. 3:12-CV-00125-H, 2012 WL 2952542 (W.D. Ky. July 19, 2012) .............................................................................................................. 10

*McCall v. Courier-Journal and Louisville Times Co.*, 623 S.W.2d 882 (Ky. 1981), *cert. denied*, 456 U.S. 975 (1982).................................................................................................. 15

*McKenzie v. Allconnect, Inc.*, 369 F. Supp.3d 810 (E.D. Ky. 2019) .......................................... 24

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) .................................................. 19, 20

*Modern Holdings, LLC v. Corning Inc.*, No. 13-405-GFVT, 2015 WL 1481457 (E.D. Ky. Mar. 31, 2015) ......................................................................................................... 25

*Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883 (6th Cir. 2002) ................................... 4

*O'Brien v. Williamson Daily News*, 735 F. Supp. 218 (E.D. Ky. 1990), *aff'd*, 931 F.2d 893 (6th Cir. 1991) ............................................................................................................ 18

*Osborne v. Keeney*, 399 S.W.3d 1 (Ky. 2012).................................................................... 25

*Patterson v. NBC Universal, Inc.*, No. 1:11-CV-68-R, 2012 WL 3779118 (W.D. Ky. Aug. 31, 2012) ....24

*Perkins v. Bennett*, No. 3:13-CV-695, 2013 WL 6002761 (W.D. Ky. Nov. 12, 2013) ............................. 7

*Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986).................................................. 22

*Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting*, No. GLR-16-2974, 2017 WL 2778825 (D. Md. June 26, 2017) ............................................................................................. 9

*Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110 (6th Cir. 1994), *cert. denied*, 513 U.S. 962 (1994)............................................................................................................. 11

*Roche v. Home Depot U.S.A.*, 197 F. App'x 395 (6th Cir. 2006) ............................................ 15

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374 (6th Cir. 1968) ........................................ 7

*Salyer v. S. Poverty Law Ctr., Inc.*, 701 F. Supp.2d 912 (W.D. Ky. 2009) ............................ 11, 12

*Sandmann v. WP Co. LLC*, No. 2:19-00019, 2019 WL 3409881 (July 26, 2019)..........................passim

*Seaton v. TripAdvisor LLC*, 728 F.3d 592 (6th Cir. 2013)...................................................... 20

*Slozer v. Slattery,* No. 2566 EDA 2014, 2015 WL 7282971 (Pa. Super. Ct. Nov. 18, 2015).................... 13

iv

*Snyder v. Phelps*, 562 U.S. 443, 131 S. Ct. 1207 (2011) ...................................................... 20, 23

*Stanley Warranty, LLC v. Universal Adm'rs Serv., Inc.*, No. 3:13-CV-513-JGH, 2014 WL 4805669
(W.D. Ky. Sept. 26, 2014) ............................................................................................................ 7

*Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781 (Ky. 2004) ............................................. 16

*Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276 (Ky. 2014) ......................................... 14, 16, 23

*U.S. ex rel. Klein v. Omeros Corp.*, 897 F. Supp.2d 1058 (W.D. Wash. 2012) ........................ 12

*Vazquez v. Buhl*, 90 A.3d 331 (Conn. Ct. App. 2014) ............................................................. 14

*V-Soft Consulting Grp., Inc. v. Logic Corp.*, No. 3:16-cv-425-DJH, 2017 WL 1228402 (W.D. Ky.
Mar. 31, 2017) .............................................................................................................................. 8

*Welch v. Am. Publ'g Co.*, 3 S.W.3d 724 (Ky. 1999) ............................................................... 20

*Yancey v. Hamilton*, 786 S.W.2d 854 (Ky. 1989) .................................................................. 20

## Statutes

47 U.S.C. § 230(c)(1) .................................................................................................................. 13

47 U.S.C. § 230(f)(3) ................................................................................................................... 13

KRS § 454.210(2)(a) ...................................................................................................................... 6

KRS § 454.210(2)(a)(4) .................................................................................................................. 7

KRS § 454.210(2)(b) ...................................................................................................................... 6

## Other Authorities

Communications Decency Act § 230 .............................................................................................. 2

Kentucky Constitution § 1 ............................................................................................................ 19

Twitter Help Center, Retweet FAQs ............................................................................................... 3

## Rules

Fed. R. Civ. P. 10(a) ................................................................................................................... 19

Fed. R. Civ. P. 12(b) ...................................................................................................................... 2

Fed. R. Civ. P. 12(b)(2) ................................................................................................................. 1

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 1, 4, 11, 18

Fed. R. Civ. P. 9(g) ...................................................................................................................... 16

KY ST RCP Rule 9.06 ................................................................................................................... 16

## I.    INTRODUCTION

Plaintiffs' claims against Defendant Maggie Haberman arise from two tweets she posted from New York in which she offered innocuous comments about highly publicized events in Washington, D.C. that were undoubtedly a matter of nationwide public concern.  In creating and posting the challenged tweets, Haberman, a reporter for The New York Times who is domiciled in New York and works in New York and Washington, D.C., did not travel to Kentucky, did not interview anyone in Kentucky, and did not otherwise have any contacts with Kentucky. Plaintiffs' only asserted basis for suing Haberman in Kentucky is that Plaintiffs live in Kentucky. Plaintiffs' residence in Kentucky is insufficient as a matter of law to establish personal jurisdiction over an out-of-state defendant.   Kentucky's long-arm statute does not reach Haberman's conduct in creating and posting the tweets, and, even if it did, Haberman lacks the constitutionally required minimum contacts with Kentucky.  Thus, under Rule 12(b)(2), the Amended Complaint should be dismissed as to Haberman.

Even if personal jurisdiction in Kentucky were proper, dismissal of Plaintiffs' defamation, invasion of privacy and negligent infliction of emotional distress claims against Haberman is appropriate under Rule 12(b)(6).  Indeed, Plaintiffs assert nothing more than conclusory statements without pleading sufficient facts establishing a plausible claim for any of the asserted torts.

Plaintiffs fail to state a claim for defamation as a matter of law for multiple reasons. First, Plaintiffs complain that Haberman retweeted or hyperlinked to allegedly defamatory material that she did not write.  Even if anything in the retweeted or hyperlinked material were false and defamatory about Plaintiffs, retweeting or linking to allegedly defamatory material is not republication of that material as a matter of law and is protected by Section 230 of the

Communications Decency Act.  Therefore, Haberman is not liable for any allegedly false and defamatory content in the retweet or hyperlinks.

Second, Haberman's tweets are not defamatory as a matter of law.  Haberman is not liable for comments that third parties may have made, and the Court must evaluate Haberman's tweets on their own merits, not as part of the cumulative criticism of the events in Washington, D.C.  Haberman's brief and innocuous comments, alone, cannot plausibly elicit the kind of public hatred and contempt required to sustain a defamation action.

Third, Haberman's tweets are not "of and concerning" Plaintiffs, all of whom are proceeding anonymously.  Fourth, the two tweets are non-actionable expressions of opinion. Fifth, Plaintiffs do not and cannot identify a single false statement in Haberman's two tweets. Finally, Plaintiffs fail to plead the essential element of fault.

Plaintiffs' claims for intrusion and negligent infliction of emotional distress are equally without merit and should be dismissed because Plaintiffs fail to allege essential elements of the torts and because the First Amendment renders those claims non-actionable.[1]

## II.    STATEMENT OF FACTS

The underlying facts are well-known to this Court.  Plaintiffs were among at least dozens of students who attended the March for Life in Washington, D.C. on January 18, 2019.  (Doc. 1-1 at 53, ¶ 15); *Sandmann v. WP Co. LLC*, No. 2:19-00019 (WOB-CJS), 2019 WL 3409881, at *1 (July 26, 2019). While the students waited for their bus ride home on the steps of the Lincoln Memorial, "a group of men from an organization called the Black Hebrew Israelites began yelling racial epithets and threats of violence toward them."  *Sandmann*, 2019 WL 3409881, at

---

[1] Haberman reserves all rights to assert additional defenses and move for dismissal later on other grounds. Haberman does not waive any argument under Rule 12 by making a Rule 12(b)(6) motion. *See* Rule 12(b) ("No defense or objection is waived by joining it with one or more other defenses or objections . . . in a motion.").

*1.  "Native Americans who had been attending the Indigenous Peoples March on the National Mall that day [] began approaching the students, singing and dancing, and recording a video." *Id*. Native American activist Nathan Phillips approached the students, beating a drum and singing. *Id*.

Some students "engaged in school cheers," performed the "Haka dance," and some performed the "tomahawk chop."  (Doc. 1-1 at 53-54, ¶18).  As this Court noted, Kaya Taitano, who participated in the Indigenous Peoples March, posted two videos that evening showing portions of the interaction between the students and Phillips.  *Sandmann*, 2019 WL 3409881, at *1.  The videos quickly went viral on Twitter and other social media platforms: "In this age of social media, the events quickly became the subject of posts, squares, tweets, online videos and – pertinent here – statements published by major media outlets." *Id*.

On January 19, 2019, Haberman posted two tweets.  (Doc. 1-1 at 92, Ex. D, and at 96, Ex. H).  The first commented, "*When adults stand by and say nothing*…." and retweeted a tweet by Andrew Ujifusa.  (Doc. 1-1 at 92, Ex. D.)  Ujifusa's tweet linked to a blogs.edweek.org article he wrote and showed part of the article's headline: "Video of Boys Mocking Native American Vet, Unchecked by Adults, . . ." (*Id*. at 93, Ex. E.)  Haberman's Twitter profile alerted viewers that anything she retweeted did not imply that she agreed with such content.  (*Id*. at 92, Ex. D: "RTs don't imply agreement.")[2]

Haberman's second tweet commented further: "*There are dozens of students laughing and egging on the behavior.  Will be interesting to see if anyone is actually expelled, as officials suggest is possible.*"  (Id. at 96, Ex. H.)  The second tweet linked to a New York Times online article, which included an embedded video attributed to Kaya Taitano, and which reported the

---

[2] "RTs" is a common abbreviation for "retweets."  *See, e.g.* https://help.twitter.com/en/using-twitter/retweet-faqs  ("'RT' . . . . signifies that they are quoting another person's Tweet.").

statement of the Diocese of Covington and Covington Catholic High School that the episode was

being investigated and students could face punishment, up to and including expulsion.[3]

Haberman created and posted the tweets from Brooklyn, New York. (Haberman Dec. ¶ 12.) Haberman is a resident of New York City. (Doc. 1-1 at 52, ¶ 6.) Employed by The New York Times, Haberman works in New York and Washington, D.C. (Haberman Dec. ¶¶3, 5.)

## III.   STANDARD OF REVIEW

Plaintiffs bear the burden of establishing personal jurisdiction over Haberman and must make a prima facie showing that their claims are properly before the court. *Air Products & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007); *Neogen Corp. v. Neo Gen Screening, Inc*., 282 F.3d 883, 887 (6th Cir. 2002). To do so, they must "establish[] with reasonable particularity sufficient contacts between [the nonresident defendant] and the forum state to support jurisdiction." *Neogen Corp*., 282 F.3d at 887 (citation omitted). Plaintiffs cannot meet their burden, and their claims against Haberman should be dismissed with prejudice.

Plaintiffs' claims also should be dismissed under Rule 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must plead sufficient facts to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a complaint must assert facts sufficient to "raise a right to relief above the speculative level" and must assert "more than labels and conclusions."

---

[3] The New York Times online article is attached hereto as **Exhibit 1.** The Kaya Taitano video embedded in the New York Times article is attached hereto as **Exhibit 2.** Because Haberman's second tweet, which is attached as Exhibit H to the Amended Complaint, linked to the New York Times online article and the Kaya Taitano video embedded in the article, the Court may consider the online article and video in ruling on a motion to dismiss under Rule 12(b)(6). *See Sandmann*, 2019 WL 3409881, at *2. The New York Times article with embedded video is also available at https://www.nytimes.com/2019/01/19/us/covington-catholic-high-school-nathan-phillips.html. Because The New York Times online article with the embedded Kaya Taitano video is behind a paywall, Haberman attaches the online article and embedded video as a courtesy to the Court.

*Twombly*, 550 U.S. at 545, 555.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal,* 556 U.S. at 678.  The Court must accept well-pleaded facts as true, but need not accept conclusory allegations as true.  *Id.* at 678-79.  *See In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014) ("The mere fact that someone believes something to be true does not create a plausible inference that it is true.").

## IV. ARGUMENT

### A. Plaintiffs' Claims Should Be Dismissed For Lack Of Personal Jurisdiction.

A Kentucky court can exercise specific jurisdiction over a nonresident defendant only to the extent permitted by Kentucky's long-arm statute, and only if it comports with federal due process rights.[4]  *See, e.g., Carter v. Paschall Truck Lines, Inc*., 388 F. Supp.3d 883, 888 (W.D. Ky. 2019).  Because the Kentucky Supreme Court has held that Kentucky's long-arm statute does not reach the outer limits of the Due Process Clause, this Court's analysis must follow two steps: (1) determine whether the long-arm statute authorizes jurisdiction and (2) determine whether the court's exercise of jurisdiction comports with federal due process rights.  *Caesar's Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011); *Hall v. Rag-O-Rama*, 359 F. Supp.3d 499, 505 (E.D. Ky. 2019).  Plaintiffs cannot establish jurisdiction under either step.

---

[4] Plaintiffs do not allege that this Court has general jurisdiction over Haberman, because it does not. "General jurisdiction grants a court the authority to hear causes of action against a defendant even when the cause of action does not arise out of or relate to the nonresident defendant's activities within the forum State."  *Brown v. Twentieth Century Fox Home Entm't*, No. 6:14-cv-147-KKC, 2015 WL 5081125, at *5 (E.D. Ky. Aug. 27, 2015).  "A court may exercise general jurisdiction over defendants who are 'at home' in the forum State."  *Id.*  It is undisputed that Haberman is not "at home" in Kentucky.  (Doc. 1-1 at 52, ¶ 6.)  She resides in Brooklyn, New York and intends to remain there.  (Haberman Dec. ¶ 4.)  She works in New York and Washington, D.C. (Id. ¶ 5.)

1.  **The long-arm statute does not confer jurisdiction over Haberman.**

Under Kentucky's long-arm statute, "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, *as to a claim arising from* the person's":

1.  Transacting any business in this Commonwealth;

2.  Contracting to supply services or goods in this Commonwealth;

3.  Causing tortious injury by an act or omission in this Commonwealth;

4.  Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth . . . .

KRS § 454.210(2)(a) (emphasis added). The statute is clear that "only a claim arising from acts enumerated in [§454.210(2)(a)] may be asserted against" Haberman.  KRS § 454.210(2)(b). Thus, "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction" is required.  *Beach*, 336 S.W.3d at 59.

Plaintiffs do not allege that Haberman transacted any business in Kentucky or contracted to supply services or things in Kentucky related to the challenged tweets; nor did she.[5] (Haberman Dec. ¶¶ 14, 17.)  She did not interview any sources in Kentucky to create or post the challenged tweets. (*Id*. ¶ 13.)  Nor did she travel to Kentucky or make any phone calls to anyone in Kentucky in creating or posting the tweets, which she created and posted from Brooklyn, New

---

[5] Likewise, Plaintiffs do not allege that Haberman regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in Kentucky; nor does she.  (Haberman Dec. ¶ 18.)

York.  (*Id.* ¶¶ 12, 15-16.)[6]  As courts have repeatedly held, making a phone call or sending an

email to a person in Kentucky does not amount to an "act" or "omission" occurring in Kentucky.

*See, e.g.*, *Stanley Warranty, LLC v. Universal Adm'rs Serv., Inc.*, No. 3:13-CV-513-JGH, 2014

WL 4805669, at *5 (W.D. Ky. Sept. 26, 2014); *Perkins v. Bennett*, No. 3:13-CV-695, 2013 WL

6002761, at *6 (W.D. Ky. Nov. 12, 2013); *see also Guangzhou Consortium Display Prod. Co.,*

*Ltd. v. PNC Bank, Nat'l Ass'n*, 924 F. Supp.2d 800, 810 (E.D. Ky. 2013).  As these decisions

demonstrate, even phone calls and emails are insufficient to establish personal jurisdiction, much

less tweets posted from New York about events occurring in Washington, D.C.  Thus, creating

and posting the challenged tweets from outside Kentucky cannot confer personal jurisdiction

over Haberman under the long-arm statute.  *See* KRS § 454.210(2)(a)(4).  Plaintiffs' claims

against her should be dismissed for lack of personal jurisdiction on this basis alone.

### 2. Haberman does not have sufficient minimum contacts with Kentucky to permit the exercise of personal jurisdiction under due process.

Even if Haberman were subject to the long-arm statute, federal due process bars the

exercise of jurisdiction over her.  The due process analysis asks whether Haberman has sufficient

minimum contacts with Kentucky such that requiring her to defend this case in Kentucky would

not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*,

326 U.S. 310, 316 (1945).  The analysis consists of three requirements.  "First, the defendant

must purposefully avail [herself] of the privilege of acting in the forum state or causing a

consequence in the forum state."  *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th

Cir. 1968).  "Second, the cause of action must arise from the defendant's activities there."  *Id.* at

---

[6] Haberman has been in Kentucky once, when she covered the vice-presidential debate between then-candidates Joe Biden and Paul Ryan in 2012 at Centre College.  (*Id.* ¶ 8.)

381.  Finally, the exercise of jurisdiction must be reasonable.  *Id.*  Ultimately, the question is whether Haberman purposefully availed herself of the forum state.

Haberman's tweets to a nationwide audience about events that occurred in Washington, D.C. do not demonstrate purposeful availment.  (Haberman Dec. ¶ 11.)  Kentucky law is clear that a defendant does not purposefully avail herself of a forum by merely posting something on the Internet with knowledge that it might be viewed by individuals in Kentucky.  *See Hinners v. Robey*, 336 S.W.3d 891, 899 (Ky. 2011) ("Obviously, by merely posting his eBay advertisement with knowledge that it might attract potential bidders from Kentucky, [defendant] did not in the traditional sense 'purposefully avail' himself of the privilege of acting in Kentucky.").  Nor is it sufficient to allege that Haberman knew Plaintiffs "were from Covington, Kentucky."  (Doc. 1-1 at 72, ¶ 96.)  *See LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1301 (6th Cir. 1989) ("Mere awareness that [the plaintiff's predecessor in interest] and its legal counsel were from Michigan clearly was not enough [for a finding of purposeful availment]."), *cert. denied*, 494 U.S. 1056 (1990); *V-Soft Consulting Grp., Inc. v. Logic Corp.*, No. 3:16-cv-425-DJH, 2017 WL 1228402, at *9 (W.D. Ky. Mar. 31, 2017) ("These ties demonstrate nothing more than the fact that [defendant] was aware that [plaintiff] was located in Louisville, Kentucky, which the Sixth Circuit has held is insufficient to establish purposeful availment.").  Courts have held that tweets not specifically directed to a forum state are insufficient to satisfy due process.  *See Brown*, 2015 WL 5081125, at *7 ("[G]eneral internet communications or use of social media sites – including Facebook, Twitter, and YouTube – does not create a sufficient basis for personal jurisdiction."); *Edwards v. Schwartz*, 378 F. Supp.3d 468, 492 (W.D. Va. 2019) ("[P]osting defamatory statements on social media, without more, does not constitute purposeful availment." (citation omitted)); *Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting*, No. GLR-16-2974, 2017

WL 2778825, at *10 (D. Md. June 26, 2017) (finding three tweets and four emails sent from California on two or three different days to be insufficient to establish jurisdiction in Maryland).

In a separate brief filed with the Court in this case,[7] Plaintiffs argue that the "effects" test in *Calder v. Jones*, 465 U.S. 783 (1984) confers personal jurisdiction over out-of-state defendants because Plaintiffs live in Kentucky, but *Calder* does not reach that far. In *Calder*, the Court held that a California court could exert jurisdiction over a National Enquirer reporter and editor in Florida who wrote and edited an allegedly libelous article about the plaintiff because the article relied on California sources and plaintiff suffered the "brunt of the harm" in California, where she lived. 465 U.S. at 788-89. Under those circumstances, the Court found that California was the "focal point" of the article and of the harm suffered, and that the defendants' actions were "expressly aimed" at California. *Id*. at 789.

The Sixth Circuit has applied *Calder* narrowly. "[T]he mere allegation of intentional tortious conduct which has injured a forum resident does not, by itself, always satisfy the purposeful availment prong." *Air Products & Controls*, 503 F.3d at 552. In *Cadle Co. v. Schlichtmann*, the Sixth Circuit found no purposeful availment and therefore no personal jurisdiction in Ohio over a defendant website owner who made allegedly defamatory statements about the plaintiff online. 123 F. App'x 675, 678-80 (6th Cir. 2005). The website specifically referred to the plaintiff's activities in Massachusetts and did not directly discuss the plaintiff's activities in Ohio. *Id.* at 679. "[W]hile the 'content' of the publication was about an Ohio resident, it did not concern that resident's Ohio activities." *Id.* "Furthermore, nothing on the website specifically target[ed] or [was] even directed at Ohio readers, as opposed to the residents of other states." *Id.* The court rejected the plaintiff's argument that "if [the defendant's] goal was only to reach Massachusetts readers, then he should have used only local media, not the

---

[7] *See* Plaintiff's Mem. in Opp. to Sen. Warren's motion to dismiss (Doc. 46 at 7).

internet," explaining that "[t]he law does not require that people avoid using the internet altogether in order to avoid availing themselves of the laws of every state." *Id.*

Moreover, "[t]o fulfill the *Calder* 'effects test,' an out-of-state defendant must have purposefully directed intentional tortious conduct toward the forum state; **it is not enough that a defendant could have foreseen that an injury would occur in the forum state**." *Lauren Eirk Enters., LLC v. Bryant-Cunha*, No. 3:12-CV-127, 2013 WL 163433, at *6 (W.D. Ky. Jan. 15, 2013) (emphasis added) (finding no jurisdiction in Kentucky when the defendant "created a website that was generally accessible to anybody in the world for the purpose of advertising her film and related services and products, not to cause an effect in Kentucky."). *See also Martin v. Candle Queen Candles, LLC*, No. 3:12-CV-00125-H, 2012 WL 2952542, at *3 (W.D. Ky. July 19, 2012) (holding that "posting an image on the Internet cannot be interpreted as purposefully directing an intentional tort toward Kentucky" where "[t]he principal act of the alleged copyright infringement took place in Kansas, and its subsequent Internet presence was neither exaggerated in nor exclusive to Kentucky" and "th[e] forum bore no relationship to Defendants' act" "[a]side from the fact that Plaintiff is a Kentucky resident").

Consistent with *Lauren Eirk Enters.*, *Schlichtmann* and *Martin*, there are no grounds for exercising personal jurisdiction over Haberman.  Her Twitter page is available to a national audience.  (Haberman Dec. ¶ 9.)  The challenged tweets commented on widely reported events in Washington, D.C., and did not concern any activity in Kentucky.  (Doc. 1-1 at 92, Ex. D, and at 96, Ex. H; *see also* Haberman Dec. ¶¶ 10-11.) The tweets were made to a nationwide audience and were not specifically directed toward a Kentucky audience.  (Haberman Dec. ¶ 11.)  Indeed, Kentucky bears no relationship to Haberman's tweets aside from the fact that Plaintiffs are Kentucky residents. (Id. ¶¶ 9-18.) As such, the *Calder* effects test does not apply.  Even if

Haberman could foresee that the tweets would have an effect in Kentucky, this is insufficient to establish jurisdiction over her.  *See Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1120 (6th Cir. 1994) ("The fact that the [defendant] could foresee that the [allegedly defamatory] report would be circulated and have an effect in Ohio is not, in itself, enough to create personal jurisdiction."), *cert. denied*, 513 U.S. 962 (1994).

Put simply, the law does not require Haberman to avoid tweeting to avoid being haled into court in Kentucky or any other state.  *Schlictmann*, 123 F. App'x at 679.  As a result, Plaintiffs' claims against Haberman must be dismissed for lack of personal jurisdiction.

**B.  Plaintiffs' Tort Claims Should Be Dismissed For Failure To State A Claim.**

Even if personal jurisdiction in Kentucky were proper, dismissal of Plaintiffs' claims against Haberman is appropriate under Rule 12(b)(6).  As an initial matter, the Court should limit Plaintiffs' claims against Haberman to the three statements Haberman made in her tweets:

(i.) **"When adults stand by and say nothing…."** (Doc. 1-1 at 92, Ex. D.)

(ii.) **"There are dozens of students laughing and egging on the behavior."**  (Doc. 1-1 at 96, Ex. H.)

(iii.) **"Will be interesting to see if anyone is actually expelled, as officials suggest is possible.**  (Id.)

Haberman cannot be liable for statements she did not make.  Plaintiffs go beyond the four corners of Haberman's tweets and assert that she is responsible for any statements made by Andrew Ujifusa in his tweet and in the hyperlink[8] to his article at blogs.edweek.org.  (Doc. 1-1 at 57, 72, 92-93, ¶¶ 25, 95, Exs. D & E.)  Likewise, Plaintiffs assert that Haberman is responsible for any statements made in the New York Times article (bearing the byline of Sarah Mervosh)

---

[8] A hyperlink "allows the reader of the new article to simply click on the link and immediately be taken to the referenced article."  *Salyer v. S. Poverty Law Ctr., Inc.*, 701 F. Supp.2d 912, n.1 (W.D. Ky. 2009).

hyperlinked to Haberman's second tweet.  (Doc. 1-1 at 58, 72, 96, ¶¶28, 95, Ex. H.)  Plaintiffs broadly allege that Haberman, by retweeting and hyperlinking content she did not create, "implied the following facts were true":

> . . . the kids interrupted an indigenous march, stopped and blocked a Native American elder and Vietnam War veteran from continuous participation in that event, surrounded him in a threatening manner, and taunted him, as a native American elder, with chants of "build the wall" to mock an elderly native American in the middle of an indigenous march.

(Doc. 1-1 at 57, 58-59 ¶¶ 25, 28; *see also id.* at 72, ¶ 95 (similar allegations).)

Courts have held consistently that hyperlinking to an allegedly defamatory article is not defamation.  *See, e.g., Life Designs Ranch, Inc. v. Sommer*, 364 P.3d 129, 134, 137-38 (Wash. App. 2015) (finding that hyperlinking to an allegedly defamatory website did not constitute republication of that defamatory content and noting that "a hyperlink is more like a reference than a separate publication"), *review denied*, 369 P.3d 500 (2016); *U.S. ex rel. Klein v. Omeros Corp.*, 897 F. Supp.2d 1058, 1074 (W.D. Wash. 2012) (a hyperlink to allegedly defamatory material "is not a publication of the contents of the materials referred to"); *Salyer*, 701 F. Supp.2d at 918 (hyperlinking is not a republication for purposes of determining the statute of limitations because the links "did not restate the allegedly defamatory statements and did not alter the substance of that [hyperlinked] article in any manner"); *Biro v. Conde Nast*, 171 A.D.3d 463, 464 (N.Y. App. Div. 2019) (holding New Yorker magazine not liable for defamation when it sent subscribers an email that included a hyperlink to an allegedly defamatory article); *Clark v. Viacom Int'l, Inc.,* 617 F. App'x 495, 506 (6th Cir. 2015) (using a hyperlink to direct readers to a previously published article is not "republication" for purposes of triggering a new statute of limitations period); *Dermody v. Presbyterian Church (U.S.A.),* 530 S.W.3d 467, 473 (Ky. Ct.

App. 2017) ("Referring someone to a website link is not actionable as libel without allegation of what that link says.").

Courts also hold that hyperlinking to defamatory content is protected from tort liability under the Communications Decency Act ("CDA"), which provides: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  Immunity from tort claims under Section 230 extends only to "information provided by another information content provider." 47 U.S.C. § 230(c)(1).  An "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3).

Under the CDA, while "users or providers of interactive computer services remain liable for their own speech, including speech that they are 'responsible, in whole or in part, for the creation or development of,'" they are not responsible for hyperlinked or re-posted material created by someone else.  *Ayyadurai v. Floor64, Inc. d/b/a Techdirt*, 270 F. Supp.3d 343, 367-68 (D. Mass. 2017).  In *Ayyadurai*, the court found the author of an online article was not liable for third-party comments that he hyperlinked to his article.  *Id*. at 368.  The court held that "'merely taking action that is necessary to the display of allegedly illegal content,' including republishing and commenting upon user generated content, does not constitute 'creation or development.'" *Ayyadurai*, 270 F. Supp.3d at 368 (*quoting Jones v. Dirty World Ent. Recordings*, *LLC*, 755 F.3d 398, 410 (6th Cir. 2014)).  "Republishing an already-existing user-submitted comment, without altering the content of that comment, does not materially contribute to its allegedly defamatory nature."  *Id*.  *See also, Slozer v. Slattery,* No. 2566 EDA 2014, 2015 WL 7282971, at *6-7 (Pa. Super. Ct. Nov. 18, 2015) (finding that a defendant who posted on Facebook a link to defamatory

13

content and "liked" the link, did not "republish" the allegedly defamatory content and was not liable for defamation); *Vazquez v. Buhl*, 90 A.3d 331, 344 (Conn. Ct. App. 2014) (holding that NBCUniversal was not liable for defamation when its website, www.cnbc.com, hyperlinked to defamatory online articles created by a third party and finding that "[i]t is immaterial whether the defendant amplified, endorsed, or adopted the defamatory statements, **because the defendant played no role in their composition**.") (Emphasis added.)

Twitter is undisputedly an "interactive computer service." *See, e.g., Fields v. Twitter, Inc.*, 200 F.Supp.3d 964, 969 (N.D. Cal. 2016). Plaintiffs do not assert that Haberman created or developed Mr. Ujifusa's tweet or the article hyperlinked in his tweet, nor can they assert that Haberman wrote the New York Times article, which bears another person's byline. *See* attached Ex. 1. Accordingly, Haberman is not liable for any content in Mr. Ujifusa's tweet or hyperlinked article or in the hyperlinked New York Times article.

### 1.  Plaintiffs Fail To State A Claim Against Haberman For Defamation.

Under Kentucky law, Plaintiffs must plead and prove all of the following essential elements of defamation: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Sandmann*, 2019 WL 3409881, at *3 (*citing Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276, 282 (Ky. 2014)). Plaintiffs' Amended Complaint fails to plead any of the essential elements of a defamation claim and should be dismissed.

### a. *The Challenged Tweets Are Not Defamatory.*

None of the challenged statements in Haberman's tweets conveys a defamatory meaning. Indeed, Haberman's tweets are so innocuous that they cannot possibly rise to the level of defamation. A statement is defamatory only if it "tends to (1) bring a person into public hatred, contempt or ridicule; (2) cause him to be shunned or avoided; or (3) injure him in his business or occupation." *McCall v. Courier-Journal and Louisville Times Co.*, 623 S.W.2d 882, 884 (Ky. 1981), *cert. denied*, 456 U.S. 975 (1982). The allegedly defamatory statements must be construed as a whole and "must be measured by their natural and probable effect on the mind of the average lay reader and not be subjected to the critical analysis of the legal mind." *Id*. at 884. The Court must analyze the challenged tweets "in [their] entirety and determine if [their] gist or sting is defamatory." *Id*. (alteration added). If the natural effect of the statement is *not* to bring a person into public hatred, then the statement cannot be characterized as defamatory. *Id*.

Plaintiffs allege that Haberman's tweets are defamation per se. (Doc. 1-1 at 87, ¶183.) "To be libelous per se the defamatory words must be of such a nature that courts can presume as a matter of law that they do tend to degrade or disgrace the defendant, or hold him up to public hatred, contempt or scorn." *Digest Publ'g Co. v. Perry Publ'g Co.*, 284 S.W.2d 832, 834 (Ky. Ct. App. 1955). This is not a low bar; mere criticism is not actionable. The words "must be more than annoying, offensive, or embarrassing." *Sandmann*, 2019 WL 3409881, at *5. In determining whether a statement is libelous per se, courts must stay within the four corners of the written communication, and "[t]he face of the writing must be stripped of all innuendos and explanations." *Roche v. Home Depot U.S.A.*, 197 F. App'x 395, 398 (6th Cir. 2006). Therefore, any statements made by third parties are irrelevant in assessing whether Haberman's tweets are defamatory. Furthermore, an "unreasonable construction" of the challenged statements does not render the statements defamatory. *Sandmann*, 2019 WL 3409881, at *10.

15

The statements at issue do not come close to meeting that standard.   Here, when construed as a whole within the context of the highly publicized public debate and within the context of the Taitano video embedded in the hyperlinked New York Times article and the videos embedded in the hyperlinked Ujifusa article (*see infra,* n.10 and attached Exhibits 2, 4, 5), none of the challenged statements conveys a defamatory meaning about anyone, much less these unnamed Plaintiffs.   Rather, when viewed as a whole and in context, the "natural and probable effect on the mind of the average lay reader" is merely that Haberman was making innocuous observations about the events and directing readers' attention to certain true facts.   On its face, "[w]hen adults stand by and say nothing" simply highlighted the fact that no adults appeared to have intervened in events depicted in the videos.   On its face, "[w]ill be interesting see if anyone is actually expelled, as officials suggest is possible," commented on the statement released by Diocesan and school officials.   Asking a question or expressing "interest" in the outcome of events is not defamatory. *See Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1338 (D.C. Cir. 2015) ("[A] question, 'however embarrassing or unpleasant to its subject, is not accusation.'") (*quoting Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1094 (4th Cir. 1993)).   On its face, the tweet "[t]here are dozens of students laughing and egging on the behavior" conveys no defamatory meaning.   Laughing is a common activity.   The phrase "egging on" is the same as saying "encouraging."   These words do not expose anyone to hatred, ridicule, shame, disgrace or scorn. The challenged tweets are not defamatory as a matter of law.[9]

---

[9] Because Haberman's tweets are not defamation per se, Plaintiffs must state a claim for defamation per quod, meaning "one must resort to 'extrinsic evidence of context or circumstances' in order to comprehend the defamatory nature of the written words." *Sandmann*, 2019 WL 3409881, at n.9 (citations omitted).   A claim of defamation *per quod* requires Plaintiffs to plead and prove special damages with specificity.  *See Hill v. Evans*, 258 S.W.2d 917, 918 (Ky. Ct. App. 1953); *Toler*, 458 S.W.3d at 282; *Dermody*, 530 S.W.3d at 475; *Stringer v. Wal-Mart Stores, Inc*., 151 S.W.3d 781, 794-95 (Ky. 2004), *overruled on other grounds by Toler*, 458 S.W.3d at 287; KY ST RCP Rule 9.06; Fed. R. Civ. P. 9(g).   "Special damages are those beyond mere embarrassment which support *actual economic loss*; general

Plaintiffs broadly assert that Haberman "called for kids to be named and shamed, doxxed and expelled, and invited public retaliation against these minors . . . ." (Doc.1-1 at 51.)  Plaintiffs assert that Haberman's tweets led to lifetime labels of Plaintiffs as "display of hate, disrespect and intolerance," "heartbreaking," "decency decayed," "racist," "cried for America," "infamous," "gall," "shameful," "darker chapters," "compared to genocide," "hurtful behavior," "awful," "caveman gestures," "taunting," "harassing," "stalking," "mocking," "bullies who should be doxed, named and shamed," and that they should be "expelled from school, denied admission to college, be punched in the face, and their lives ruined."  (Doc. 1-1 at 87, ¶183.) Haberman did not make any of those statements. To the extent that Plaintiffs assert that these statements are implied in Haberman's tweets, that argument fails because the asserted implication cannot reasonably flow from Haberman's tweets.

### b.  The challenged tweets are not "of and concerning" Plaintiffs.

Plaintiffs fail to plausibly assert that the challenged tweets are "of and concerning" them. "[W]here defamatory statements are made against an aggregate body of persons, an individual member not specially imputed or designated cannot maintain an action." *Sandmann*, 2019 WL 3409881, at *3 (*citing Louisville Times v. Stivers*, 252 Ky. 843, 68 S.W.2d 411, 412 (1934)). Further, "[a]s the size of the group increases, it becomes more and more difficult for the plaintiff to show he was the one at whom the article was directed, and presently it becomes impossible." *Stivers*, 68 S.W.2d at 412.

---

damages relate to humiliation, mental anguish, etc." *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 274 (Ky. Ct. App. 1981) (emphasis added).  Plaintiffs fail to plead special damages.  They vaguely reference increased cost of security, endangered college admission prospects, limited future earnings, and limited economic prospects.  (Doc. 1-1 at 73, ¶ 97.)  These are the types of general damages that the Kentucky Court of Appeals found insufficient to support a claim for defamation per quod.  *See Dermody*, 530 S.W.3d at 475.  Plaintiffs' defamation claim against Haberman should be dismissed with prejudice for this reason as well.

The challenged tweets consist of general comments that do not identify any individual.[10] As such, the burden is on Plaintiffs to demonstrate that the tweets apply to them specifically. In *Sandmann*, this Court recognized that "[f]or an individual plaintiff to bring a defamation action based on such comments, the Kentucky Supreme Court has instructed that 'the statement must be applicable to every member of the class, and if the words used contain no reflection upon any particular individual, no averment can make them defamatory.'" *Sandmann*, 2019 WL 3409881, at *4 (*citing Kentucky Fried Chicken, Inc. v. Sanders*, 563 S.W.2d 8, 9 (Ky. 1978)).

In determining that the statements at issue in *Sandmann* were not "of and concerning" Sandmann, this Court analogized the *Sandmann* case to similar facts in *Stivers*, *Sanders*, and *O'Brien v. Williamson Daily News*, 735 F. Supp. 218, 220 (E.D. Ky. 1990), *aff'd*, 931 F.2d 893 (6th Cir. 1991). *See Sandmann*, 2019 WL 3409881, at *6. In those cases, the courts determined that the defamatory statements were about groups in the aggregate, not the plaintiffs. *See O'Brien*, 735 F. Supp. at 220; *Sanders*, 563 S.W.2d at 9; and *Stivers*, 68 S.W.2d at 412.

Accordingly, in *Sandmann* this Court likened the references to "hat wearing teens"; "the teens"; "teens and other apparent participants"; "A few people"; "those who should listen most

---

[10] To the extent Plaintiffs allege Haberman's retweet of Mr. Ujifusa's tweet is "of and concerning" Plaintiffs, such claim fails. (Doc. 1-1 at 57, ¶ 25.) Mr. Ujifusa's tweet says: "*In another video from this now-infamous incident involving a Native American Vietnam vet, a young person scoffs at the idea of stolen land. 'And y'all stole it from the aboriginals. ... Land gets stolen. That's how it works. It's the way of the world.*'" (Id. at 57, 93, ¶25 and Ex. E.) Mr. Ujifusa's tweet includes a link to his article at blogs.edweek.org, which is attached hereto as **Exhibit 3**. His article includes two videos – a video titled "Indigenous Peoples March Washington D.C." (attached hereto as **Exhibit 4**) and a 59-second video (hyperlinked in the article at "Phillips urges the crowd" and attached hereto as **Exhibit 5**) that shows the young person making the statement in Mr. Ujifusa's tweet (*see* Ex. 5 at 0:51 seconds). **That young person is wearing an Owensboro Catholic shirt.** Thus, Mr. Ujifusa's statement cannot be "of and concerning" Plaintiffs. Because Mr. Ujifusa's tweet with the hyperlink to his article is attached to the Amended Complaint, the Court may consider Mr. Ujifusa's article at blogs.edweek.org and its embedded and hyperlinked videos in ruling on a motion to dismiss under Rule 12(b)(6). *See supra*, n.3. Mr. Ujifusa's tweet with the link to the blogs.edweek.org article with the embedded videos is also available at https://twitter.com/AndrewUjifusa/status/1086753849321373696. His article at blogs.edweek.org is available at https://blogs.edweek.org/edweek/rulesforengagement/2019/01/native-american-vietnam-veteran-abuse-teens-adults-uproar.html.

closely"; and "They[]" to the reference to "teachers" in *O'Brien*, the "Stivers clan" in *Stivers*, and the KFC restaurants in *Sanders*.  2019 WL 3409881, at *6.  This Court concluded that "because 'the words used contain no reflection upon any particular individual, no averment can make them defamatory.'"  *Id*. at *6 (*quoting Sanders*, 563 S.W.2d at 9).

As Haberman's tweets "contain no reflection upon any particular individual, no averment can make them defamatory." *Sanders*, 563 S.W.2d at 9. Therefore, as in *Sandmann*, Plaintiffs fails to state a claim as a matter of law. The Amended Complaint should be dismissed.[11]

### c.   The Challenged Statements Are Non-Actionable Opinions.

As this Court recently held, "[f]ew principles of law are as well-established as the rule that statements of opinion are not actionable in libel actions."  *Sandmann*, 2019 WL 3409881, at *7; *see also Loftus v. Nazari*, 21 F. Supp.3d 849, 853-54 (E.D. Ky. 2014); *Lassiter v. Lassiter*, 456 F. Supp.2d 876, 881-82 (E.D. Ky. 2006), *aff'd*, 280 F. App'x 503 (6th Cir. 2008).  As this Court further held, "a defamation claim against a media defendant cannot derive from a statement of opinion relating to matters of public concern [that] does not contain a provably false factual connotation unless the challenged statement connotes **actual, objectively verifiable facts**."  *Sandmann*, 2019 WL 3409881, at *3 (alteration in original) (emphasis in original) (internal quotations omitted) (quoting *Compuware Corp. v. Moody's Inv'rs Servs*., 499 F.3d 520, 529 (6th Cir. 2007), *quoting Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)).  Section 1 of the Kentucky Constitution  also protects statements of opinion ("All men are, by nature, free

---

[11] Plaintiffs are improperly proceeding anonymously.  There is no "Kentucky authority by statute, rule or caselaw, supporting the proposition that litigants may proceed anonymously" except under unusual circumstances.  *Doe v. Potter*, 225 S.W.3d 395, 403 (Ky. Ct. App. 2006) (Knopf, J., concurring).  The same is true in federal court, where the rules prescribe that "[t]he title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). When a plaintiff fails to comply with Rule 10(a), "'the federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them.'" *Citizens for a Strong Ohio v. Marsh,* 123 F. App'x 630, 637 (6th Cir. 2005) (citation omitted).  Plaintiffs have not asked the Court's permission to proceed anonymously or demonstrated that "privacy interests *substantially outweigh* the presumption of open judicial proceedings." *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) (emphasis added).  Their amended complaint should be dismissed on these grounds alone.

and equal, and have certain inherent and inalienable rights, among which may be reckoned: . . . The right of freely communicating their thoughts and opinions."); *see Haynes v. McConnell*, 642 S.W.2d 902, 904 (Ky. Ct. App. 1982) (finding statement of opinion absolutely privileged under the First Amendment and the Kentucky Constitution "may well establish the same principle.").

Statements that "contain language that defies precise definition" are protected expressions of opinion. *Welch v. Am. Publ'g Co.*, 3 S.W.3d 724, 730 (Ky. 1999) (*citing Milkovich*, 497 U.S. at 19-20). Likewise, "loose, figurative" statements and "rhetorical hyperbole" are non-actionable because such statements are not "susceptible of being proved true or false." *Sandmann*, 2019 WL 3409881, at *7 (*quoting Milkovich*, 497 U.S. at 17, 21; *citing Seaton v. TripAdvisor LLC*, 728 F.3d 592, 597 (6th Cir. 2013)). Furthermore, opinion statements are protected "where the commentator states the facts on which the opinion is based, or where both parties to the communication know or assume the exclusive facts on which the comment is clearly based." *Yancey v. Hamilton*, 786 S.W.2d 854, 857 (Ky. 1989).

Here, the statements at issue are non-actionable opinion:

> (i) **"When adults stand by and say nothing…."** (Doc. 1-1 at 92, Ex. D);
>
> (ii) **" . . . egging on the behavior."** (*Id*. at 96, Ex. H);
>
> (iii) **"Will be interesting to see if anyone is actually expelled, as officials suggest is possible."** (*Id*.)

This Court held that the events underlying Haberman's tweets are "inherently a matter of public concern." *Sandmann*, 2019 WL 3409881, at *4, n.6 (*quoting Snyder v. Phelps*, 562 U.S. 443, 453, 131 S. Ct. 1207 (2011) ("Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community or when it is a subject of legitimate news interest; that is, a subject of general interest and of

value and concern to the public.")).  The three statements undoubtedly relate to issues of public concern.

Furthermore, the three statements are incapable of precise definition and, therefore, cannot be proven true or false.  It is impossible to verify as true the statements, "When adults stand by and say nothing….," "egging on the behavior," and "Will be interesting to see if anyone is actually expelled, as officials suggest is possible."   All of these statements are the type of "loose, figurative" "rhetorical hyperbole" and "inherently subjective" speech that is non-actionable opinion speech.  *Sandmann*, 2019 WL 3409881, at *7 (finding statements such as "ugly," "swarmed," "taunting," "disrespect," "ignored," "aggressive," "physicality," and "rambunctious" to be protected opinions because they are incapable of being proved true or false).  Indeed, the statement, "When adults stand by and say nothing . . ." trails off mid-thought, rendering its meaning impossible to pinpoint.  This is the hallmark of opinion speech.

Moreover, Haberman's tweets disclosed the facts on which her opinions were based.  Her first tweet, "When adults stand by and say nothing….," retweeted Andrew Ujifusa's tweet, which in turn linked to an article written by Mr. Ujifusa titled "Video of Boys Mocking Native American Vet, Unchecked by Adults, Sparks Uproar."  (Doc. 1-1 at 92-93, Exs. D & E); *see also* attached Ex. 3.  The article included a video of the events at the Lincoln Memorial, and Mr. Ujifusa's description of the video: "During the video, which lasts for roughly three minutes and 45 seconds, no adults appear to defuse the situation, reprimand the children, or apologize to Phillips." (*See* attached Ex. 3.)  Thus, Haberman disclosed all of the underlying facts informing the opinion statement in her first tweet.

Likewise, Haberman's second tweet disclosed the underlying facts for her opinions.  That tweet linked to a New York Times article that included the Taitano video, which provided the

underlying facts for Haberman's opinion statement "egging on the behavior." (*See* attached Exs. 1, 2.) The article included the following information: "The episode was being investigated and the students could face punishment, up to and including expulsion, their school said in a statement on Saturday afternoon." (Ex. 1.) Thus, the basis for Haberman's opinion, "Will be interesting to see if anyone is actually expelled, as officials suggest is possible," was disclosed. It is undisputed that officials released such a statement. *Sandmann*, 2019 WL 3409881, *11.

### d.   The Challenged Statements Are True.

The First Amendment requires Plaintiffs to plead and prove the falsity of each factual statement about which they complain. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986); *Clark*, 617 F. App'x. at 508-509 ("[T]he federal Constitution requires that a defamation plaintiff plead and prove that a statement on a matter of public concern . . . is false."). Because this Court has held that the events underlying Haberman's tweets are "inherently a matter of public concern," Plaintiffs bear the burden of pleading and proving falsity. *Sandmann*, 2019 WL 3409881, at *4; *Hepps*, 475 U.S. at 776.

To the extent the challenged statements made factual statements, such are true:

    (i)    **"There are dozens of students laughing . . ."** (Doc. 1-1 at 96, Ex. H);

    (ii)    **"as officials suggest is possible."** (*Id*.)

It is undisputed that dozens of students were present and video of the event captures laughter. *See* attached Ex. 2 (Taitano video embedded in New York Times article to which Haberman's second tweet hyperlinked); *see* attached Ex. 4 (video embedded in Mr. Ujifusa's blogs.edweek.org article). It is also undisputed that officials released a statement suggesting that expulsion was possible. (*See* attached Ex. 1.) Accordingly, to the extent Plaintiffs' defamation claim is based on the above statements, the claim fails as a matter of law because the statements are true. Plaintiffs' defamation claim against Haberman should be dismissed.

*e.   Plaintiffs Fail To Allege The Essential Element Of Fault.*

Plaintiffs fail to plead the essential element of "fault amounting at least to negligence on the part of the publisher." *Toler*, 458 S.W.3d at 282. Plaintiffs fail to assert that Haberman acted with **any** level of fault, and they fail to plead any facts establishing a plausible claim that Haberman acted with negligence. As a result, the Amended Complaint against Haberman fails as a matter of law and should be dismissed with prejudice.

**2.   Plaintiffs Fail To State A Claim For Intrusion Upon Seclusion and Negligent Inflection Of Emotional Distress.**

*a.   The First Amendment bars Plaintiffs' tort claims.*

"The Free Speech Clause of the First Amendment . . . can serve as a defense in state tort suits" and mandates dismissal of any claims arising from speech on a matter of public concern, including the intrusion upon seclusion and negligent inflection of emotional distress claims asserted in the Amended Complaint. *Snyder v. Phelps*, 562 U.S. 443, 453, 131 S. Ct. 1207, 1215 (2011). Because "[t]he chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure," *Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965), courts should strive to resolve such clams at the "earliest possible stage." *Dorsey v. Nat'l Enquirer, Inc.*, 973 F.2d 1431, 1435 (9th Cir. 1992).

The First Amendment bars Plaintiffs' claims for intrusion upon seclusion and negligent infliction of emotional distress on their face. The United States Supreme Court has categorically declared that tort liability may not be imposed on speech about issues of public concern even if the speech is "upsetting or arouses contempt" or is "offensive or disagreeable." *Snyder*, 562 U.S. 443, 131 S. Ct. at 1219. "[T]he Constitution does not permit the government to decide which types of otherwise protected speech are sufficiently offensive to require protection . . . ." *Id.* at

23

1220. In *Sandmann*, this Court held that the factual predicate for this case "concern[s] groups of citizens who were assembled in the nation's capital to support or oppose various causes of importance to them. *This is inherently a matter of public concern*." *Sandmann*, 2019 WL 3409881, at *4. As in *Snyder*, Plaintiffs' tort claims should be dismissed as violating the First Amendment.

### b. Plaintiffs fail to plead any of the essential elements of their claims.

Even if the First Amendment did not bar Plaintiffs' claims, Plaintiffs fail to state a claim for intrusion upon seclusion or negligent infliction of emotional distress.

Under Kentucky law, Plaintiffs must plead and prove all of the following elements for intrusion upon seclusion: "(1) an intentional intrusion by the defendant, (2) into a matter that the plaintiff has a right to keep private, and (3) which is highly offensive to a reasonable person." *McKenzie v. Allconnect, Inc.*, 369 F. Supp.3d 810, 819 (E.D. Ky. 2019). "There can be no invasion of privacy where a plaintiff engages in conduct in a public place." *Patterson v. NBC Universal, Inc.,* No. 1:11-CV-68-R, 2012 WL 3779118, at *6 (W.D. Ky. Aug. 31, 2012). "A plaintiff cannot show that the defendant intruded into his or her private affairs for events that occurred while he or she appeared in public and expected to interact with others." *Dukes v. Mid-E. Athletic Conference*, 213 F. Supp.3d 878, 884-85 (W.D. Ky. 2016). Here, it is undisputed that the events on which Haberman commented occurred in a public place – the steps of the Lincoln Memorial – and were a matter of public concern. There simply is no liability here for intrusion upon seclusion.

To succeed on a claim for negligent infliction of emotional distress, Plaintiffs "must establish the basic elements of negligence: '(1) the defendant owed a duty of care to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury.'" *Modern Holdings, LLC v. Corning Inc.*, No. 13-405-GFVT,

24

2015 WL 1481457, at *16 (E.D. Ky. Mar. 31, 2015) (*quoting Osborne v. Keeney,* 399 S.W.3d 1, 17 (Ky. 2012)).  Each Plaintiff must show that he suffered serious or severe emotional injury. *Id.*

Plaintiffs fail to plead the essential elements of duty and breach.  (Doc. 1-1 at 73, ¶¶ 103-104.)  Plaintiffs do not plead that Haberman owed them a duty of care, or any facts establishing a duty, or any breach of such duty.  *Id.*  They fail to plead that they suffered serious or severe emotional injury as a result of Haberman's tweets. (Id. ¶103) (pleading only emotional distress, anxiety, fear for their safety, and "effected [sic] their educational activities."). As a result, Plaintiffs fail to state a claim for negligent infliction of emotional distress.

## V.   CONCLUSION

For all the foregoing reasons, the Amended Complaint should be dismissed with prejudice for lack of personal jurisdiction over Defendant Maggie Haberman and for failure to state a claim.

Dated: October 15, 2019                    Respectfully submitted,

                                           */s/ Monica L. Dias*
                                           Monica L. Dias (89173)
                                           FROST BROWN TODD LLC
                                           3300 Great American Tower
                                           301 East Fourth Street
                                           Cincinnati, Ohio 45202
                                           513-651-6800 (phone)
                                           513-651-6981 (fax)
                                           mdias@fbtlaw.com

                                           and

                                           Michael E. Nitardy (91613)
                                           FROST BROWN TODD LLC
                                           310 Turfway Road, Suite 210
                                           Florence, Kentucky 41042
                                           (859) 817-5914 (phone)
                                           (859) 283-5902 (fax)
                                           mnitardy@fbtlaw.com

                                           *Attorneys for Defendant Maggie Haberman*

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2019, a copy of the foregoing document was filed electronically.  Service of this filing will be made on all ECF-registered parties by operation of the Court's electronic filing system, and that I have provided courtesy copies of Exhibits 2, 4, and 5 of the Memorandum to counsel for Plaintiffs' counsel and to the court via DVD.  Copies will be provided upon request to any defendant who wishes to have a copy of the DVD.  Copies of the Motion to Dismiss and Memorandum in Support have been served via U.S. mail, postage prepaid, to the following non-ECF parties, who may also request a copy of Exhibits 2, 4, and 5:

Matthew John Dowd *(via U.S. Mail)*
307 W. Monroe Street
Austin, TX 78704-3023

*Pro Se Defendant*

Reza Aslan *(via U.S. Mail)*
1954 Pinehurst Road
Los Angeles, CA 90068-3730

*Pro Se Defendant*

Ana Violeta Navarro Flores *(via U.S. Mail)*
2907 Columbus Blvd.
Coral Gables, FL 33134

*Pro Se Defendant*

Jeffrey Shaun King *(via U.S. Mail)*
214 Duffield Street
Brooklyn, NY 11201-5339

*Pro Se Defendant*

*/s/ Monica L. Dias*
Frost Brown Todd LLC (89173)
*Counsel for Defendant Maggie Haberman*

0126193.0723884   4832-5183-8889v1

26