**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**COVINGTON DIVISION**

| | |
|---|---|
| JOHN DOES 1 THROUGH 10,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>DEBORAH HAALAND, ANA VIOLETA NAVARRO FLORES, ELIZABETH WARREN, MAGGIE HABERMAN, KATHY GRIFFIN, MATTHEW JOHN DOWD, REZA ASLAN, KEVIN M. KRUSE, JEFFREY SHAUN KING, ADAM EDELEN, CLARA JEFFERY, and JODI JACOBSON,<br><br>　　　　Defendants. | No. 2:19-cv-00117-WOB-CJS |

**REPLY IN SUPPORT OF DEFENDANT SENATOR ELIZABETH WARREN'S MOTION TO DISMISS**

Marc E. Elias*
Uzoma N. Nkwonta*
John M. Geise*
Christina A. Ford**
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
unkwonta@perkinscoie.com
jgeise@perkinscoie.com
christinaford@perkinscoie.com

Daniel J. Canon, PSC (Ky. 92048)
1205 E. Washington St., Suite 111
Louisville, KY 40206
dan@dancanonlaw.com

*Counsel for Defendant, Senator Elizabeth Warren*
*\*Admitted Pro Hac Vice*
*\*\*Pro Hac Vice Application Forthcoming*

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................................ 1

II.   ARGUMENT ...................................................................................................................... 2

    A. Exercising Personal Jurisdiction Over Senator Warren Would Violate Binding Sixth Circuit and Supreme Court Precedent Because Senator Warren Has No Legally Relevant Contacts With Kentucky. ................................................................................. 3

        1. Kentucky's long-arm statute does not allow this court to exercise personal jurisdiction over Senator Warren. ............................................................................... 3

        2. This Court cannot exercise personal jurisdiction over Senator Warren in a manner consistent with the Due Process Clause. ..................................................................... 4

    B. Plaintiffs Fail to State a Claim for Defamation Against Senator Warren ........................... 7

        1. Senator Warren's tweet expressed an opinion and is not provably false .................... 7

        2. Senator Warren's tweet did not identify any individual plaintiff or any distinguishable group. ................................................................................................. 8

        3. Senator Warren's tweet is not defamatory per se. ..................................................... 11

    C. Plaintiffs Fail to State a Claim for Intrusion Upon Seclusion, False Light Invasion of Privacy, and Negligent Infliction of Emotional Distress. ................................................. 11

III.   CONCLUSION ................................................................................................................ 14

**CASES**

*Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*,
    503 F.3d 544 (6th Cir. 2007) ............................................................................................... 6

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ............................................................................................................. 6

*Calder v. Jones*,
    465 U.S. 783 (1984) ..................................................................................................... 4, 5, 6

*Cromity v. Meiners*,
    494 S.W.3d 499 (Ky. Ct. App. 2015) ................................................................................ 13

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*,
    326 U.S. 310 (1945) ............................................................................................................. 6

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984) ......................................................................................................... 4, 5

*Ky. Fried Chicken of Bowling Green, Inc. v. Sanders*,
    563 S.W.2d 8 (Ky. 1978) .................................................................................................... 9

*Marten v. Godwin*,
    499 F.3d 290 (3d Cir. 2007) ................................................................................................ 7

*McCall v. Courier-Journal & Louisville Times Co.*,
    623 S.W.2d 882 (Ky. 1981) .............................................................................................. 12

*McKenzie v. Allconnect, Inc.*,
    369 F. Supp. 3d 810 (E.D. Ky. 2019) ............................................................................... 12

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990) ................................................................................................................ 7

*Morgan Distrib. Co. v. Unidynamic Corp.*,
    868 F.2d 992 (8th Cir. 1989) ............................................................................................ 13

*O'Brien v. Williamson Daily News*,
    735 F. Supp. 218 (E.D. Ky. 1990), *aff'd*, 931 F.2d 893 (6th Cir. 1991) ........................ 9, 10

*Osborne v. Keeney*,
    399 S.W.3d 1 (Ky. 2012) ............................................................................................ 13, 14

*Pearce v. Whitenack*,
    440 S.W.3d 392 (Ky. Ct. App. 2014) .......................................................................... 11, 12

*Pelfrey v. Chambers*,
    43 F.3d 1034 (6th Cir. 1995) .............................................................................................. 2

*Revell v. Lidov*,
  317 F.3d 467 (5th Cir. 2002) ..................................................................................................6

*Reynolds v. Int'l Amateur Athletic Fed'n*,
  23 F.3d 1110 (6th Cir. 1994) ..................................................................................................6

*Sandmann v. WP Co. LLC*,
  No. 2:19-00019, 2019 WL 3409881 (E.D. Ky. 2019) ............................................................7

*Stanley Warranty, LLC v. Universal Adm'rs Serv., Inc.*,
  No. 3:13-CV-513-JGH, 2014 WL 4805669 (W.D. Ky. Sept. 25, 2014) .................................4

*Stringer v. Wal-Mart Stores, Inc.*,
  151 S.W.3d 781 (Ky. 2004), *overruled on other grounds by Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276 (Ky. 2014).................................................................................11

*Walden v. Fiore*,
  571 U.S. 277 (2014)................................................................................................................6

*Welch v. Am. Publ'g Co.*,
  3 S.W.3d 724 (Ky. 1999) ........................................................................................................7

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980)................................................................................................................6

*Yancey v. Hamilton*,
  786 S.W.2d 854 (Ky. 1989) ....................................................................................................8

*Young v. New Haven Advocate*,
  315 F.3d 256 (4th Cir. 2002) ...............................................................................................6, 7

**STATUTES**

Federal Tort Claims Act............................................................................................................2

Ky. Rev. Stat. Ann. § 454.210(2) (2019)...................................................................................3

Ky. Rev. Stat. Ann. § 454.210(2)(a)(4) .....................................................................................4

## I.  INTRODUCTION

In the wake of a public and highly publicized confrontation between students from Covington Catholic High School and Native American elder Nathan Phillips on the steps of the Lincoln Memorial, Plaintiffs maintain that a single tweet from Senator Elizabeth Warren's official Senate Twitter account—among the millions of other tweets sent in the hours and days following the incident—"led a social media lynch mob" against Plaintiffs. Pls.' Opp. to Mot. to Dismiss ("Pls.' Opp."), ECF No. 46 at 1. Senator Warren's tweet, which forms the sole basis of all of Plaintiffs' claims against the Senator, simply states: "Omaha elder and Vietnam War veteran Nathan Phillips endured hateful taunts with dignity and strength. Listen to his words." Am. Compl., Ex. I, ECF No. 1-1. Despite the fact that the Lincoln Memorial incident went viral and received extensive media coverage around the country, Plaintiffs (who remain anonymous) allege that the tweet (which does not identify a single Plaintiff, or any person other than Mr. Phillips) damaged their reputations and caused emotional injuries for which they seek payment in an amount that they claim is roughly equivalent to "four years of tuition at the University of Kentucky." Pls.' Opp. at 5.

As highlighted in Senator Warren's Motion to Dismiss, this lawsuit suffers from several legal defects for which Plaintiffs have offered no credible response. First, Plaintiffs do not dispute that Senator Warren is an out-of-state defendant with no legally-relevant contacts in Kentucky; they suggest instead that this Court can exercise personal jurisdiction over anyone as long as the defendant injured a Kentucky resident, an argument that contradicts basic principles of personal jurisdiction, as well as binding Sixth Circuit and Supreme Court precedent. Thus, the claims against Senator Warren should be dismissed for lack of personal jurisdiction.

On the merits, Plaintiffs stretch defamation law beyond its breaking point by asking the Court to find that a tweet that identified no one other than Mr. Phillips, and expressed an opinion

(protected by the First Amendment) about a widely-publicized event, somehow defamed a large group of anonymous high schoolers and resulted in emotional and reputational harm, notwithstanding the fact that Plaintiffs do not trace their injuries to Senator Warren's tweet rather than the millions of other tweets and news stories which covered the same highly-publicized incident. Finally, Plaintiffs offer no substantive response to Senator Warren's argument that they failed to exhaust their administrative remedies under the Federal Tort Claims Act, as is required when suing a federal officer for acts within the scope of her federal office.[1]

Because Plaintiffs filed this action in the wrong forum, challenged constitutionally-protected speech that cannot support a defamation claim, and sought damages for vaguely-asserted injuries that are not attributable to Senator Warren's tweet—the substance of which does not match Plaintiffs' rhetoric—all claims against Senator Warren should be dismissed.

## II.  ARGUMENT

Senator Warren's Motion to Dismiss presented several independent grounds for dismissal, none of which Plaintiffs adequately refute. First, the Court should grant the Senator's Motion to Dismiss because Plaintiffs have not and cannot meet their burden of establishing personal jurisdiction. In the alternative, this Court should dismiss Plaintiffs' defamation claim against the Senator because it expressed an opinion that is protected by the First Amendment and Plaintiffs fail to show how it defamed any individual Plaintiff. Finally, this Court should dismiss the

---

[1] In response to this argument, Plaintiffs simply conclude that Senator Warren is not entitled to sovereign immunity because she was not explicitly sued in her official capacity. As Senator Warren explained in her Motion to Dismiss, because the basis of Plaintiffs' claims against her arise from her communications with her constituents on her official Senate Twitter account, Plaintiffs have sued her based on acts or omissions within the scope of her federal office. *See* ECF No. 10-1 at 21-23. And where a plaintiff's claim against a federal officer is "ambiguous," the Sixth Circuit presumes such "ambiguous complaint[s] [to assert claims] against the officers in their official capacities." *See Pelfrey v. Chambers*, 43 F.3d 1034, 1038 (6th Cir. 1995).

2

remaining ancillary tort claims against the Senator because Plaintiffs have not adequately pled legal causation or damages.

**A.    Exercising Personal Jurisdiction Over Senator Warren Would Violate Binding Sixth Circuit and Supreme Court Precedent Because Senator Warren Has No Legally Relevant Contacts With Kentucky.**

This Court cannot exercise personal jurisdiction over Senator Warren consistent with either Kentucky's long-arm statute or the Due Process Clause because Plaintiffs have not identified—or even attempted to identify—any legally relevant contacts that Senator Warren has with the Commonwealth of Kentucky.

**1.    Kentucky's long-arm statute does not allow this court to exercise personal jurisdiction over Senator Warren.**

Kentucky's long-arm statute enumerates nine categories of conduct that may subject an out-of-state defendant to personal jurisdiction, so long as the plaintiff's claim "arises from" those activities. *See* Ky. Rev. Stat. Ann. § 454.210(2) (2019). As Senator Warren explained in her Motion to Dismiss, the Senator's tweet does not plausibly meet any of them. *See* ECF No. 10-1 at 7-9. Plaintiffs make no meaningful effort to connect their allegations to the long-arm statute's categories of conduct (nor do they acknowledge the "arising from" requirement) but instead theorize that a Kentucky court may exercise jurisdiction over any out-of-state defendant who commits "acts or omissions . . . either outside or inside the commonwealth that injure[] Kentuckians." *See* ECF No. 46 at 6. This novel construction, however, bears no resemblance to the actual language of the statute. Under § 454.210(2), Kentucky may exercise jurisdiction over an out-of-state defendant for an "act or omission outside this Commonwealth *if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth . . .*" and the

3

plaintiff's claim arises from those activities. Ky. Rev. Stat. Ann. § 454.210(2)(a)(4) (emphasis added).

Plaintiffs have not alleged that Senator Warren engages in any of the above-referenced activities set forth in § 454.210(2)(a)(4); thus, she cannot be haled into a Kentucky court for an "act or omission" committed outside the Commonwealth. And as Senator Warren explained in her Motion to Dismiss, *see* ECF No. 10-1 at 7-9, a tweet cannot be considered "an act or omission occurring *in* this Commonwealth" under § 454.210(2)(a)(3) because Kentucky courts have repeatedly held that an out-of-state defendant does not commit an "act or omission in this Commonwealth" simply by "sending a tortious communication into the state." *See, e.g.*, *Stanley Warranty, LLC v. Universal Adm'rs Serv., Inc.*, No. 3:13-CV-513-JGH, 2014 WL 4805669, at *5 (W.D. Ky. Sept. 25, 2014). Plaintiffs make no effort to dispute this point.

> 2. **This Court cannot exercise personal jurisdiction over Senator Warren in a manner consistent with the Due Process Clause.**

While the failure to establish personal jurisdiction under Kentucky's long-arm statute is dispositive, Plaintiffs also fail to present any viable theory that would allow Kentucky to exercise personal jurisdiction over Senator Warren in a manner consistent with the Due Process Clause. They erroneously argue that Kentucky courts enjoy personal jurisdiction over any defendant in a libel case whenever the subject of the alleged defamation suffers injury in the state. But the two cases they rely on, *Calder v. Jones*, 465 U.S. 783 (1984) and *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), make no such claim.

Neither *Calder* nor *Keeton* stand for the proposition that an out-of-state defendant may be sued in a defamation action in the forum state simply because a resident suffered injury in that state. In *Calder*, the Supreme Court held that California could exercise personal jurisdiction over an out-of-state defendant, the National Enquirer, after it published an allegedly defamatory article

4

about a California resident. *See Calder*, 465 U.S. at 785. At the time of the suit, the Enquirer sold more magazines in California than it did in any other state. *Id.* at 784-85. The Enquirer was ultimately subject to personal jurisdiction in California because their "actions were expressly aimed at California"—not, as Plaintiffs urge, merely because the brunt of the harm occurred in California. *Id.* at 789. *Keeton*, decided the same day as *Calder*, took a similar approach. In *Keeton*, the Supreme Court held that New Hampshire could exercise personal jurisdiction over Hustler Magazine in a defamation action because the magazine had "continuously and deliberately exploited the New Hampshire market" to an extent that it should have reasonably anticipated being sued there. *See Keeton*, 465 U.S. at 781. The sole basis for personal jurisdiction in *Keeton* was thus the defendant's "regular circulation of magazines in the forum State"—not, as Plaintiffs imply, an injury to the plaintiff in the forum state. *Id.* at 773.

*Calder* and *Keeton* are thus easily distinguishable from the present case. In both cases, the defendants conducted extensive business in, and directed their activities toward, the forum state, exposing each to the risk that they would be sued in those states on the basis of those activities. *Calder*, in particular, bears little resemblance to the present dispute. The defendant's defamatory article in *Calder* had pervasive contacts to the forum state: The article singled out a California resident, was drawn from California sources, concerned the resident's California activities, and was physically printed and distributed in more than half a million magazines across California. *Calder*, 465 U.S. at 788-89. Senator Warren's tweet, in contrast, has nothing to do with the Commonwealth of Kentucky. Even accepting Plaintiffs' unsupported claims, the tweet at best indirectly *implicated*—but did not even name—Kentucky residents, and the tweet concerned activities occurring in Washington, D.C., not in Kentucky.

5

Plaintiffs' theory, which focuses on where the plaintiff resides and was injured, is ultimately inconsistent with the Supreme Court's entire body of case law on personal jurisdiction, which looks to the *defendant's* connections to the forum state—not the plaintiff's. *See, e.g.*, *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310 (1945); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985). The Sixth Circuit, moreover, has expressly "narrowed the application of the *Calder* 'effects test,'" and has explained that a plaintiff does not satisfy the purposeful availment prong with the "mere allegation of intentional tortious conduct which has injured a forum resident." *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc*., 503 F.3d 544, 552 (6th Cir. 2007); *see also Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110 (6th Cir. 1994) (holding that a press release that injured the plaintiff—an Ohio resident—in Ohio was insufficient to establish minimum contacts because the press release lacked an "Ohio focus").

In sum, it is well-settled, both in the Sixth Circuit and other federal courts, that mere injury to a forum resident and harm in the forum state are insufficient to establish personal jurisdiction. *See Walden v. Fiore*, 571 U.S. 277, 290 (2014) ("*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum. . . . The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."); *Young v. New Haven Advocate,* 315 F.3d 256, 262-63 (4th Cir. 2002) (holding that *Calder*'s "effects test" is not satisfied in an internet defamation context unless "the out-of-state defendant's Internet activity is expressly targeted at or directed to the forum state" and explaining that "placing information on the Internet" about a resident of another state is insufficient to establish personal jurisdiction); *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002) (holding that Texas could not exercise personal jurisdiction over an out-of-state

6

defendant who posted an allegedly defamatory article on an internet bulletin board because the article did not discuss Texas-related activities or otherwise target Texas readers over general internet readers); *Marten v. Godwin*, 499 F.3d 290 (3d Cir. 2007) (holding that Pennsylvania could not exercise personal jurisdiction over an out-of-state defendant who sent allegedly defamatory emails that concerned and injured a Pennsylvania resident because the defendant had not expressly targeted his communications towards Pennsylvania). Under Plaintiffs' theory, any "person placing information on the Internet would be subject to personal jurisdiction in every State, and the traditional due process principles governing a State's jurisdiction over persons outside of its borders would be subverted." *Young*, 315 F.3d at 263 (internal quotation marks and citation omitted). That outcome would fundamentally undermine the notions of fair play and substantial justice that the Due Process Clause demands. Plaintiffs' claims against Senator Warren should therefore be dismissed.

**B.    Plaintiffs Fail to State a Claim for Defamation Against Senator Warren**

**1.    Senator Warren's tweet expressed an opinion and is not provably false.**

Plaintiffs fail to contend with the fatal flaw of their defamation claim against Senator Warren—the fact that Senator Warren's tweet expressed an opinion on a matter of public concern, which is fully protected by the First Amendment. It is well-settled law that statements on matters of public concern must be provably false before a defendant can be liable for defamation, *see Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), and Kentucky courts have adhered to this standard. *See*, *e.g.*, *Welch v. Am. Publ'g Co.*, 3 S.W.3d 724, 730 (Ky. 1999).

Whether Mr. Phillips "endured hateful taunts" is a matter of opinion protected by the First Amendment because it is not capable of being proved false. *See, e.g.*, *Sandmann v. WP Co. LLC*, No. 2:19-00019 (WOB-CJS), 2019 WL 3409881, at *7 (E.D. Ky. 2019) (holding terms such as "ugly," "taunting," and "disrespect" to be examples of loose, figurative, rhetorical hyperbole

7

protected by the First Amendment). Plaintiffs readily admit that some students engaged in tomahawk chops near Mr. Phillips. *See* Am. Compl. ¶ 18 ("Several of the students joined with Phillips, and some did so by mirroring the sports chant of the Florida State Seminole[s] and the Atlanta Braves, with their famous tomahawk chop."). What Plaintiffs consider to be a sports cheer, for example, others may consider to be an offensive taunt—a fundamental difference of opinion, which is exactly the point. *See* Mot. to Dismiss, ECF No. 10-1 at 1 n.1.

In Kentucky, a statement of opinion is actionable only if the speaker implies that there are undisclosed facts upon which the speaker's opinion was based. *See Yancey v. Hamilton*, 786 S.W.2d 854, 857 (Ky. 1989). Plaintiffs continue to insist that Senator Warren's opinion is not protected because she "omitted the true facts" of what happened that day at the Lincoln Memorial. But Senator Warren's tweet did nothing more than comment on a highly publicized and viral confrontation—and nothing in Senator Warren's tweet implied that the Senator based her opinion on facts that were known to her but not known to the public at large; in fact, the tweet commented on an interview that she disclosed through a link *in her tweet*. *See* Am. Compl. ¶ 29, Ex. I.

Finally, Kentucky law does not require that speakers set forth every possible factual basis for their opinion before their opinion is protected; it instead requires that speakers do not mislead the public by implying that an opinion is based on undisclosed information. *See Yancey*, 786 S.W.2d at 857 (holding that opinions are actionable only if the speaker creates a reasonable inference that the opinion was justified by undisclosed defamatory facts). Senator Warren's tweet clears that bar.

### 2. Senator Warren's tweet did not identify any individual plaintiff or any distinguishable group.

Plaintiffs also cannot sustain a valid defamation claim against Senator Warren because the tweet at issue was neither "about" nor "concerning" any individual plaintiff—a long-standing

8

requirement of defamation under Kentucky law. *See O'Brien v. Williamson Daily News*, 735 F. Supp. 218, 224 (E.D. Ky. 1990), *aff'd*, 931 F.2d 893 (6th Cir. 1991). While it is theoretically possible for a defendant to defame an individual without specifically naming them, Plaintiffs' attempt to link Senator Warren's tweet to 10 anonymous Covington Catholic High School students misses an essential point: An individual cannot bring a defamation action over a statement referencing a group or class of persons unless that group is so small and distinct that the statement clearly defames *every member* of the group. *See Ky. Fried Chicken of Bowling Green, Inc. v. Sanders*, 563 S.W.2d 8, 9 (Ky. 1978) ("To defame a class, the statement must be applicable to every member of the class."); Restatement (Second) of Torts § 564A (1977) ("One who publishes defamatory matter concerning a group or class of persons is subject to liability to an individual member of it if, but only if . . . the group or class is so small that the matter can reasonably be understood to refer to the member."). Because Senator Warren's tweet does not even refer to a distinguishable group, it is impossible for her tweet to have defamed every member of that group. And the video linked to the tweet, which refers to "high schoolers," "the chanting crowd," and "that mass of young men," similarly refers to no distinguishable group.

Plaintiffs—who have chosen to remain anonymous[2]—have made no effort to explain how the group to which they belong is distinct enough to maintain a group libel action. They suggest that the personal threats they received, and the reputational harm that they allegedly suffered, somehow provides evidence that Senator Warren's tweet identified the unnamed plaintiffs. Pls. Opp. at 10. This circular argument assumes that the perpetrators of the personal threats, or the friends and acquaintances who learned of the incident, saw and were guided specifically by Senator

---

[2] Defamation law exists so that plaintiffs who allege damage to their reputation can seek public vindication of that reputation. The idea that a large class of plaintiffs claiming group defamation can remain anonymous throughout this litigation is contrary to the most basic purpose of defamation law.

9

Warren's tweet; that is quite the logical leap given that the Covington students' confrontation with Nathan Phillips went viral and received extensive media coverage nationwide, while Senator Warren's tweet does not identify anyone other than Mr. Phillips.

Even if the Senator's tweet had singled out "Covington Catholic students"—which it did not—that group would be too large to sustain a defamation action. Over 500 students attend Covington Catholic High School,[3] and more than 100 Covington Catholic students traveled to Washington, D.C. to participate in the March for Life event that later led to the incident at the Lincoln Memorial.[4] While the Restatement does not set a "definite limit" for the size of a group that can be defamed, the Restatement explicitly notes that recovery is traditionally limited to groups of twenty-five people or fewer. *See* Restatement (Second) of Torts § 564A cmt. b (1977).

The Eastern District of Kentucky has, notably, dismissed defamation claims by groups much smaller and more distinct than the Plaintiffs currently present for consideration. In *O'Brien*, for example, the Court refused to allow a group of twenty-seven high school teachers to maintain a group libel claim after a local newspaper alleged that "Phelps High School teachers" engaged in misconduct with students. 735 F. Supp. at 222-23. As the court explained, the size of the group of teachers was generally too large to support a defamation action, especially when the allegedly defamatory statement was not applicable to every member of the class, did not refer to any identifiable group member, and did not impugn the reputation of any specific member. *Id*. at 220. The same is true of the Senator's tweet.

---

[3] *See* COVINGTON CATHOLIC HIGH SCHOOL, *Facts & Figures*, https://www.covcath.org/admissions/why-cch/facts-figures.

[4] *See id*. (advertising that "hundreds" of Covington Catholic students attend the March for Life rally in Washington, D.C. each year); *see also* Scott Wartman, *Covington Catholic Parent: 'Nothing the Chaperones Could Have Done Differently*,' COURIER JOURNAL, https://www.newspapers.com/clip/29428117/the_courierjournal/ (reporting that 240 Covington Catholic students attended the March for Life event).

### 3. Senator Warren's tweet is not defamatory per se.

Plaintiffs' defamation claim suffers from a final, related flaw: Because the Senator's tweet cannot be understood to refer to the Plaintiffs without resorting to contextual circumstances outside of the tweet itself, it cannot constitute libel per se. When a statement requires "extrinsic evidence of context or circumstances" for a reader to understand the statement to be defamatory against an individual, it is, by definition, considered libel per quod—not libel per se.[5] *See Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 794–95 (Ky. 2004), *overruled on other grounds by Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276 (Ky. 2014). Plaintiffs respond by citing a string of cases in which courts have found libel per se, none of which remotely compare to the present circumstances. *See* ECF No. 46 at 13. In each of the cases cited by the Plaintiffs, the defamatory statement at issue either *individually named* and directly accused the plaintiff of a serious crime, or *individually named* and directly alleged that the plaintiff was unfit for their business or trade, both of which are classic and undisputed categories of libel per se.

Here, Plaintiffs ask this Court to find that a tweet that identifies no one other than Mr. Phillips and expresses an opinion about a widely-publicized event constitutes defamation or libel per se against a large group of anonymous high schoolers. This Court should refuse to entertain such a claim that has no basis in Kentucky law.

### C. Plaintiffs Fail to State a Claim for Intrusion Upon Seclusion, False Light Invasion of Privacy, and Negligent Infliction of Emotional Distress.

Plaintiffs cannot sustain an action for intrusion upon seclusion against Senator Warren for commenting upon an incident that occurred in a public place—here, on the steps of the Lincoln Memorial. *See Pearce v. Whitenack*, 440 S.W.3d 392, 401 (Ky. Ct. App. 2014). Plaintiffs, who

---

[5] For the reasons discussed in Senator Warren's Motion to Dismiss, Plaintiffs did not adequately plead libel per quod because Plaintiffs failed to plead special damages. *See* ECF No. 10-1 at 13-14.

appear to have recently realized this, abandoned that claim in their memorandum opposing Senator Warren's Motion to Dismiss. *See* ECF No. 46 at 14-16. Changing course, Plaintiffs have attempted to refashion their claim for intrusion upon seclusion into a previously unpled claim for false light invasion of privacy.

Intrusion upon seclusion and false light invasion of privacy are substantively different torts with different elements under Kentucky law, and one cannot be simply substituted for the other. In Kentucky, a claim for intrusion upon seclusion requires the plaintiff to demonstrate: "(1) an intentional intrusion by the defendant, (2) into a matter that the plaintiff has a right to keep private, and (3) which is highly offensive to a reasonable person." *McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810, 819 (E.D. Ky. 2019). False light invasion of privacy, on the other hand, requires the plaintiff to demonstrate: (1) that the false light in which the plaintiff was placed would be highly offensive to a reasonable person, and (2) that the publisher had knowledge of, or acted in reckless disregard as to the falsity of, the publicized matter and the false light in which the plaintiff was placed. *See McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 888 (Ky. 1981). Intrusion upon seclusion thus requires the plaintiff to show that the defendant intruded into the plaintiff's private affairs, while false light invasion of privacy requires no such showing. *See Pearce*, 440 S.W.3d at 401. Conversely, the truth of the statement has no relevance in a claim for intrusion upon seclusion, while it is "essential" that "the matter published concerning the plaintiff is not true" to sustain an action for false light invasion of privacy. *See* Restatement (Second) of Torts § 652E cmt. a (1977).

Because Plaintiffs did not plead false light invasion of privacy in their Amended Complaint and have not subsequently amended that Complaint, this Court need not consider this claim. It is well settled "that a complaint may not be amended by the briefs in opposition to a motion to

dismiss. To hold otherwise would mean that a party could unilaterally amend a complaint at will, even without filing an amendment, and simply by raising a point in a brief." *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (citation and internal quotation marks omitted).

In any event, Plaintiffs cannot sustain a claim for false light invasion of privacy based both on the allegations in the Complaint and as a matter of law. As the Restatement makes clear, Plaintiffs can recover for false light invasion of privacy only if the defendant's statement *is not true*. *See* Restatement (Second) of Torts § 652E cmt. a (1977). But as Senator Warren has thoroughly explained, whether Nathan Phillips endured "hateful taunts" is a matter of opinion that is not provably false. *See* ECF No. 10-1 at 22-24. Plaintiffs additionally have not alleged, and cannot prove, that Senator Warren published the tweet with knowledge or reckless disregard of the falsity of the statement—first, because the statement was not false, and second, because Plaintiffs alleged only that the Senator "omitted the true facts" from her statement, not that the Senator actually knew or acted in reckless disregard as to the falsity of the statement. *See*, *e.g.*, *Cromity v. Meiners*, 494 S.W.3d 499, 505 (Ky. Ct. App. 2015) (dismissing the plaintiff's false light claim because the defendant's statement could not be proven false and thus the plaintiff "would be unable to prove knowledge of, or a reckless disregard for, the falsity of [the] statement[]").

Nor do Plaintiffs state a claim for negligent infliction of emotional distress. The Complaint fails to allege (1) an adequate injury and (2) legal causation between Senator Warren's tweet and any injury, both of which are pre-requisites to state a claim under Kentucky law. *See Osborne v. Keeney*, 399 S.W.3d 1, 17 (Ky. 2012). Moreover, a plaintiff in Kentucky may not recover for general emotional anguish; instead, plaintiffs must demonstrate emotional distress that is so severe that a reasonable person could not be expected to "adequately manage it." *See id.* at 17 n.59.

"Distress that does not significantly affect the plaintiffs' everyday life or require significant treatment will not suffice." *Id.* at 17. Plaintiffs' Complaint alleges only general emotional harm, and thus does not present an injury sufficient to sustain a cause of action for negligent infliction of emotional distress.

Finally, Plaintiffs have failed to allege legal causation because they have not identified any injury that resulted specifically from Senator Warren's tweet, rather than from the widespread media coverage of the Lincoln Memorial incident. Plaintiffs instead rely on conclusory allegations of causation that are insufficient to survive a motion to dismiss. *See* Am. Compl. ¶ 92 ("Defendant Warren's actions caused the Plaintiffs emotional distress"). And because Plaintiffs' memorandum opposing Senator Warren's Motion to Dismiss makes no substantive effort to respond to these inadequacies, their Complaint should be dismissed.

### III. CONCLUSION

For the reasons discussed, Senator Warren respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice.

October 23, 2019               Respectfully submitted,

/s/ *Uzoma N. Nkwonta*
Marc E. Elias*
Email: melias@perkinscoie.com
Uzoma N. Nkwonta*
Email: unkwonta@perkinscoie.com
John M. Geise*
Email: jgeise@perkinscoie.com
Christina A. Ford**
Email: christinaford@perkinscoie.com
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959

14

Daniel J. Canon, PSC (Ky. 92048)
1205 E. Washington St, Suite 111
Louisville, KY 40206
dan@dancanonlaw.com

*Counsel for Defendant, Senator Elizabeth Warren*
*\*Admitted Pro Hac Vice*
*\*\*Pro Hac Vice Application Forthcoming*

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2019, I filed a copy of the foregoing Reply in Support of Senator Warren's Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Uzoma N. Nkwonta*
Counsel for Defendant,
Senator Elizabeth Warren