**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON**

| | |
|---|---|
| JOHN DOES 1 THROUGH 10,<br><br>   Plaintiffs,<br><br> *vs.*<br><br>DEBORAH HAALAND, ANA VIOLETA<br>NAVARRO FLORES, ELIZABETH WARREN,<br>MAGGIE HABERMAN, KATHY GRIFFIN,<br>MATTHEW JOHN DOWD, REZA ASLAN,<br>KEVIN M. KRUSE, JEFFREY SHAUN KING,<br>ADAM EDELEN, CLARA JEFFERY, and<br>JODI JACOBSON,<br><br>   Defendants. | Case No. 2:19-CV-00117-WOB-CJS<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT KATHY GRIFFIN'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT
FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM
UPON WHICH RELIEF CAN BE GRANTED**

GRAYDON HEAD & RITCHEY, LLP
J. Stephen Smith (86612)
2400 Chamber Center Drive, Suite 300
Fort Mitchell, Kentucky  41017
Telephone:  (859) 578-3070
ssmith@graydon.law

John C. Greiner (*pro hac vice*)
312 Walnut Street, Suite 1800
Cincinnati, Ohio  45202
Telephone:  (513) 629-2734
jgreiner@graydon.law

GREENBERG TRAURIG, LLP
Michael J. Grygiel (*pro hac vice* application
   forthcoming)
Cynthia E. Neidl (*pro hac vice* application forthcoming)
Katie L. Birchenough (*pro hac vice* application
   forthcoming)
54 State Street, 6th Floor
Albany, New York  12207
Telephone:  (518) 689-1400
grygielm@gtlaw.com
neidlc@gtlaw.com
kbirchenough@gtlaw.com


GREENBERG TRAURIG, LLP
Adam Siegler (*pro hac vice* application forthcoming)
1840 Century Park East, Suite 1900
Los Angeles, California  90067
Telephone:  (310) 586-7700
sieglera@gtlaw.com

*Attorneys for Defendant Kathy Griffin*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ..................................................................................... 5

    A.    The Parties. ...................................................................................... 5

    B.    The March for Life Incident at the Lincoln Memorial. ......................................... 5

    C.    Ms. Griffin's Tweets. ............................................................................ 5

ARGUMENT ................................................................................................ 6

POINT I      TO SURVIVE A MOTION TO DISMISS, THE AMENDED
             COMPLAINT MUST PLEAD SPECIFIC FACTS ESTABLISHING A
             PLAUSIBLE CLAIM TO RELIEF ....................................................................... 6

POINT II     THE COURT LACKS PERSONAL JURISDICTION OVER
             MS. GRIFFIN ................................................................................... 7

    A.    Ms. Griffin is Not Subject to Kentucky Long-Arm Jurisdiction. ............................. 8

    B.    Exercising Jurisdiction Over Ms. Griffin Would Offend Due Process. ............... 10

POINT III    THE AMENDED COMPLAINT'S DEFAMATION CLAIM SHOULD
             BE DISMISSED BECAUSE THE CHALLENGED TWEETS ARE NOT
             "OF AND CONCERNING" THE ANONYMOUS PLAINTIFFS .................... 11

POINT IV    THE AMENDED COMPLAINT'S DEFAMATION CLAIM SHOULD
             BE DISMISSED BECAUSE THE CHALLENGED TWEETS FAIL TO
             CONVEY A DEFAMATORY MEANING ........................................................ 13

POINT V     THE AMENDED COMPLAINT'S DEFAMATION CLAIM SHOULD
             BE DISMISSED BECAUSE THE COMMENTS COMPLAINED OF
             ARE NONACTIONABLE OPINION ................................................................. 15

    A.    The Constitutional Opinion Privilege Immunizes Ms. Griffin's
          Commentary From Liability. ................................................................. 15

    B.    The Comments Complained of Are Classic, Nonactionable "Pure
          Opinion" Based on Information Reported In the Public Domain. .................... 18

    C.    The Use of Exaggerated, Figurative Language Clearly Signals Protected
          Opinion. ........................................................................................ 21

i

     (1)   Considered In Its Full Context As Required Under Kentucky Law, the Expressly Speculative Nature of the First Tweet Confirms It Is Nonactionable Opinion. ............................................................ 22

POINT VI    THE COMPLAINT FAILS TO STATE A CLAIM FOR DEFAMATION BASED ON ANY UNSTATED IMPLICATION ALLEGEDLY CONVEYED ............................................................................ 24

    A.    Libel by Implication Claims Are Subject to Rigorous First Amendment Scrutiny. ................................................................................ 24

    B.    The Challenged Tweets Do Not Reasonably Convey, or Endorse, the Implications Alleged by Plaintiffs. ........................................... 26

POINT VII   PLAINTIFFS' ANCILLARY TORT CLAIMS  ARE DEFECTIVE AS A MATTER OF LAW ................................................................ 27

    A.    Plaintiffs' Intrusion Upon Seclusion Claim Fails as a Matter of Law. ................ 29

    B.    Plaintiffs' Negligent Infliction of Emotional Distress Claim Fails as a Matter of Law. .................................................................... 29

    C.    Plaintiffs' Harassment Claim Fails as a Matter of Law. ....................................... 30

CONCLUSION ................................................................................... 30

# TABLE OF AUTHORITIES

**Federal Cases** **Page**

*Afshari v. Ellig*,
 2017 U.S. Dist. LEXIS 148859 (E.D. Ky. 2017)........................................................9

*Archey v. AT&T Mobility, LLC*,
 2017 WL 6614106 (E.D. Ky. Dec. 26, 2017) .........................................................29

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)............................................................................................6,

*Barker v. Patrick Collins, Inc.*,
 2013 U.S. Dist. LEXIS 158022 (W.D. Ky. 2013) ..................................................9

*Bayou City Exploration, Inc. v. Consumer Advocate Services Enters., LLC*,
 2015 U.S. Dist. LEXIS 87541 (W.D. Ky. 2015) ..................................................10

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007)..............................................................................................6

*Biro v. Condé Nast*,
 883 F. Supp. 2d 441 (S.D.N.Y 2012), *aff'd*, 807 F.3d 541 (2d Cir. 2015) ............24

*Biro v Condé Nast*,
 963 F. Supp. 2d 255 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015) .............7

*Brouillette v. Board of Directors of Merged Area IX*,
 519 F.2d 126 (8th Cir. 1975) .............................................................................12

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462 (1985)............................................................................................11

*Cadle Co. v. Schlictmsnn*,
 123 F. App'x 675 (6th Cir. 2005) .........................................................................7

*Chapin v. Knight-Ridder, Inc.*,
 993 F.2d 1087 (4th Cir. 1993) ...........................................................................25

*Cheatham v. Paisano Publications*,
 891 F. Supp. 381 (W.D. Ky. 1995)......................................................................28

*Clark v. Viacom International*, Inc.,
 617 F. App'x 495 (6th Cir. 2015) ................................................................15, 16

*Commercial Money Ctr., Inc. v. Illinois Union Insurance Co.*,
 508 F.3d 327 (6th Cir. 2007) ...............................................................................6

*Compuware Corp. v. Moody's Investers Services, Inc.*,
 499 F.3d 520 (6th Cir. 2007) ..........................................................15, 23, 25, 26

*Doe v. Porter*,
 370 F.3d 558 (6th Cir. 2004) .............................................................................12

*Doe v. Smith*,
   429 F.3d 706 (7th Cir. 2005) ........................................................................12

*Dukes v. Mid-Eastern Athletic Conference*,
   213 F. Supp. 3d 878 (W.D. Ky. 2016)...........................................................29

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
   472 U.S. 749 (1985).......................................................................................20

*Emekekwue v. Offor*,
   26 F. Supp. 3d 348 (M.D. Pa. (2014)) ..........................................................21

*Fiore v. Southern Poverty Law Ctr., Inc.*,
   2009 U.S. Dist. LEXIS 82455 (E.D. Ky. 2009)..............................................9

*Gahafer v. Ford Motor Co.*,
   328 F.3d 859 (6th Cir. 2003) ........................................................................15

*Garrison v. Louisiana*,
   379 U.S. 64 (1964).........................................................................................20

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974).......................................................................................15

*Grace v. Armstrong Coal Co.*,
   2009 U.S. Dist. LEXIS 11315 (W.D. Ky. 2009) ...........................................27

*Greenspan v. Random House, Inc.*,
   859 F. Supp. 2d 206 (D. Mass. 2012) ...........................................................23

*Higgins v. Kentucky Sports Radio, LLC*,
   2019 U.S. Dist. LEXIS 45535 (E.D. Ky. 2019)........................................27, 29

*Hustler Magazine, Inc. v. Falwell*,
   485 U.S. 46 (1988).........................................................................................20

*International Shoe Co. v. Washington*,
   326 U.S. 310 (1945).......................................................................................10

*J. McIntyre Machinery, Ltd. v. Nicastro*,
   564 U.S. 873 (2011).......................................................................................10

*Janklow v. Newsweek, Inc.*,
   788 F.2d 1300 (8th Cir. 1986) ......................................................................23

*Kahl v. Bureau of National Affairs, Inc.*,
   856 F.3d 106 (D.C. Cir. 2017) ........................................................................7

*Kerry Steel, Inc. v. Paragon Industries, Inc.*,
   106 F.3d 147 (6th Cir. 1997) ..........................................................................7

*Kulko v. Superior Court of Cal., City and County of San Francisco*,
   436 U.S. 84 (1978).........................................................................................11

*Lassiter v. Lassiter*,
   456 F. Supp. 2d 876 (E.D. Ky. 2006) .............................................16, 17, 18, 20

*Lattanzio v. Brunacini*,
   2018 U.S. Dist. LEXIS 45415 (E.D. Ky. 2018)....................................................................7

*Levinsky's, Inc. v. Wal-Mart Stores, Inc.*,
   127 F.3d 122 (1st Cir. 1997) .............................................................................................117

*Loftus v. Nazari*,
   21 F. Supp. 3d 849 (E.D. Ky. 2014) ...............................................................13, 18, 20, 22

*Marcus & Millichap Real Estate Inv. Brokerage Co. v. Skeeters*,
   395 F. Supp. 2d 541 (W.D. Ky. 2005)................................................................................23

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990)....................................................................................................15, 18, 21

*Mirage Entertainment, Inc. v. FEG Entretenimientos S.A.*,
   326 F. Supp. 3d 26 (S.D.N.Y. 2018)..................................................................................19

*Moldea v. New York Times Co.*,
   15 F.3d 1137 (D.C. Cir. 1994) ...........................................................................................18

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964)........................................................................................................7, 20

*Nichols v. Moore*,
   477 F.3d 396 (6th Cir. 2007) ..............................................................................................26

*O'Brien v. Williamson Daily* News,
   735 F. Supp. 218 (E.D. Ky. 1990), *aff'd*, 931 F.2d 893 (6th Cir. 1991).............................12

*Obsidian Fin. Group, LLC v. Cox*,
   812 F. Supp. 2d 1220 (D. Or. 2011) ...................................................................................23

*Ogle v. Hocker*,
   279 F. App'x 391 (6th Cir. 2008) .....................................................................................121

*Parks v. LaFace Records*,
   329 F.3d 437 (6th Cir. 2003) ..............................................................................................15

*Peavey v. Univ. of Louisville*,
   2011 WL 2746810 (W.D. Ky. Jul. 13, 2011) .....................................................................23

*Philadelphia Newspapers, Inc. v. Hepps*,
   475 U.S. 767 (1986)............................................................................................................20

*Reed v. Gulf Coast Enterprises*,
   2016 WL 79998 (W.D. Ky. Jan. 6, 2016)...........................................................................29

*Roche v. Home Depot U.S.A.*,
   197 F. App'x 395 (6th Cir. 2006) .......................................................................................13

*Saenz v. Playboy Enters., Inc.*,
   841 F.2d 1309 (7th Cir. 1988) ............................................................................................25

*Sandmann v. WP Co.*,
   2019 U.S. Dist. LEXIS 125275 (E.D. Ky. Jul. 26, 2019)............................................. *passim*

v

*Smith v. Tipton Cnty. Bd. of Educ.*,
    916 F.3d 548 (6th Cir. 2019) ................................................................6

*Snyder v. Phelps*,
    562 U.S. 443 (2011)......................................................................2, 27

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002)...........................................................................4

*Thornhill v. Alabama*,
    310 U.S. 88 (1940) ............................................................................1

*Walden v. Fiore*,
    571 U.S. 277 (2014)..........................................................................10

*White v. Bourbon Community Hospital, LLC*,
    2016 U.S. Dist. LEXIS 5113 (E.D. Ky. 2016)....................................27

*White v. Fraternal Order of Police*,
    707 F. Supp. 579 (D.D.C. 1989), *aff'd*, 909 F.2d 512 (D.C. Cir. 1990)................................25

*White v. Fraternal Order of Police*,
    909 F.2d 512 (D.C. Cir. 1990) ....................................................24, 25

*Zerman v. Sullivan & Cromwell*,
    677 F. Supp. 1316 (S.D.N.Y. 1988)..................................................23

**State Cases**

*Biber v. Duplicator Sales & Serv., Inc.*,
    155 S.W.3d 732 (Ky. Ct. App. 2004) ..............................13, 15, 16, 20

*Buchholtz v. Dugan*,
    977 S.W.2d 24 (Ky. Ct. App. 1998) ..................................................20

*Caesars Riverboat Casino, LLC v. Beach*,
    336 S.W.3d 51 (Ky. Sup. Ct. 2011) ....................................................8

*Cromity v. Meiners*,
    494 S.W.3d 499 (Ky. Ct. App. 2015) ................................................15

*Dermody v. Presbyterian Church U.S.A.*,
    530 S.W.3d 467 (Ky. Ct. App. 2017) ...........................................13, 14

*Grzyb v. Evans*,
    700 S.W.2d 399 (1985)......................................................................29

*Haynes v. McConnell*,
    642 S.W.2d 902 (Ky. Ct. App. 1982) ................................................17

*Hays v. Clear Channel Communications, Inc.*,
    2006 WL 3109132 (Ky. Ct. App. Nov. 3, 2006) ...........................17, 18

*In re Dole Food Co.*,
    256 S.W.3d 851 (Tx. Ct. App. 2008).................................................21

*Kentucky Fried Chicken, Inc. v. Sanders*,
   563 S.W.2d 8 (Ky. 1978) ................................................................................12

*Kimball v. Courier Journal, Inc.*,
   2009 WL 3321380 (Ky. Ct. App. Oct. 16, 2009) ...........................................13

*Krinsky v. Doe 6*,
   159 Cal. App. 4th 1154 (Ca. Ct. App.2008) ...................................................21

*Louisville Times v. Stivers*,
   68 S.W.2d 411 (Ky. 1934)..............................................................................11

*McCall v. Courier-Journal & Louisville Times Co.*,
   623 S.W.2d 882 (Ky. 1981) ...........................................................................28

*Pearce v. Whitenack*,
   440 S.W.3d 392 (Ky. Ct. App. 2014) .............................................................28

*Pierce v. Serafin*,
   787 S.W.2d 705 (Ct. App. Ky. 1990) ...........................................................8, 9

*Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.*,
   495 N.W.2d 392 (Mich. App. Ct. 1992) .........................................................26

*Shields v. Booles*,
   38 S.W.2d 677 (Ky. 1931)..............................................................................14

*Stringer v. Wal-Mart Stores, Inc.*,
   151 S.W.3d 781 (Ky. 2004), overruled on other grounds, *Toler v. Süd-Chemie,
   Inc.*, 458 S.W.3d 276 (Ky. 2014) ...................................................................11

*Wampler v. Higgins*,
   93 Ohio St. 3d 111 (2001)..............................................................................21

*Yancey v. Hamilton*,
   786 S.W.2d 854 (Ky. 1990) ...............................................................16, 17, 22

## Statutes, Rules and Other Authorities

U.S. Const. amend I ...................................................................................... *passim*

U.S. Const. amend XVI ......................................................................................5, 8

Kentucky Revised Statutes § 446.070 ................................................................29

Kentucky Revised Statutes § 454.210 ..................................................................8

Kentucky Revised Statutes § 454.210(2)(a) ..........................................................8

Kentucky Revised Statutes § 454.210(2)(a)(3)...................................................8, 9

Kentucky Revised Statutes § 454.210(2)(a)(4)...................................................8, 9

Federal Rule Civil Procedure 10(a) ....................................................................12

*David J.* Leibson, *13 KENTUCKY PRACTICE (TORT LAW), § 15.2 (1995)* .........16

Restatement (Second) of Torts § 563, cmt. c ......................................................14

Restatement (Second) of Torts § 566 (1977) .................................................................................16

Restatement (Second) of Torts, § 566, cmt. e ...............................................................................20

Restatement (Second) of Torts § 652A ..........................................................................................28

SACK ON DEFAMATION, § 4.4.1 (Volume 1, Third Edition 2003) ........................................18

SACK ON DEFAMATION, § 4.4.2 (Volume 1, Third Edition 2003) ........................................18

## PRELIMINARY STATEMENT

*"Freedom of discussion, if it would fulfill its historic function in this nation, must embrace all issues about which information is needed or appropriate to enable the members of society to cope with the exigencies of their period." Thornhill v. Alabama, 310 U.S. 88, 102 (1940).*

Defendant Kathy Griffin respectfully submits this memorandum of law in support of her motion pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) to dismiss the Amended Complaint as a matter of law.

This Court is well acquainted with this free speech litigation, which arises out of a highly controversial and widely publicized incident in which Plaintiffs, students attending Covington Catholic High School in Kentucky, encountered a Native American elder at the Lincoln Memorial following the March for Life in Washington, D.C., in January of this year. As the first page of the Complaint acknowledges, the incident went viral and sparked protest on social media platforms, including by "our Senators, most-famous celebrities, and widely read journalists." As the Court described in dismissing the defamation claims of Plaintiffs' schoolmate, Nicholas Sandmann, arising out of the incident, "[i]n this age of social media, the events quickly became the subject of posts, squares, tweets, online videos, and – pertinent here – statements published by major media outlets."[1]

This action – which Plaintiffs have no right to bring in the Eastern District of Kentucky – represents a transparent and cynical attempt to retaliate against Ms. Griffin for tweeting comments critical of their conduct during the Lincoln Memorial incident and calling for them to be shamed, rather than seeking redress of any legitimate injury. Their defamation claim collides with the established principle that "'speech on public issues occupies the highest rung of the

---

[1] *Sandmann v. WP Co.*, 2019 U.S. Dist. LEXIS 125275, *1 (E.D. Ky. July 26, 2019) (Bertelsman, J.).

hierarchy of First Amendment values, and is entitled to special protection.'" *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quoting *Connick v. Myers*, 461 U.S. 138, 145 (1983)).  The Amended Complaint's theories, if accepted, would erode the strong protection derived from those fundamental values, restrict the "breathing space" constitutionally afforded the commentary at issue, and abandon the First Amendment by placing off limits speech addressing a matter of unquestioned public concern and importance.   Simply put, Plaintiffs' claims would deny Ms. Griffin – and anyone else choosing to exercise their right to freedom of speech in the course of taking issue with Plaintiffs' conduct – the protections guaranteed by the United States Constitution.

Even before reaching the substance of Plaintiffs' claims, their Amended Complaint should be dismissed for lack of personal jurisdiction over Ms. Griffin, a resident of California. That she published comments accessible to anyone who uses Twitter does not offer Plaintiffs jurisdictional refuge in this District to complain about her statements.  Neither Kentucky's long-arm statute nor the Constitution's Due Process clause permits this Court to exercise personal jurisdiction over Ms. Griffin for her out-of-state publishing activity.  As numerous courts have held, the use of an electronic communications platform to publish information, absent more, is insufficient to establish personal jurisdiction in any forum where an online statement allegedly defames someone.  This Court should affirm the basic principles underlying the limits of personal jurisdiction by dismissing the Amended Complaint's claims against Ms. Griffin.

On the merits, Plaintiffs' claims are also defective.  First, Plaintiffs cannot establish that Ms. Griffin's tweets are "of and concerning" them, a threshold barrier to their defamation claim. Without obtaining leave from this Court, and in violation of the Federal Rules of Civil

Procedure, Plaintiffs have filed their Amended Complaint anonymously, apparently hoping to resurrect the group libel doctrine long interred as a matter of Kentucky law.

Second, it is a defamation plaintiff's burden plausibly to allege a defamatory meaning flowing from a purportedly false statement. The Amended Complaint fails to do so. When given (as they must be) their ordinary meaning as understood by the reasonable reader in the full context of their publication, the tweets complained of are simply not defamatory. Plaintiffs may not manufacture or distort the meaning of non-defamatory statements in attempting to render them actionable. Longstanding defamation rules governing this case flatly prohibit such a result.

Third, even as alleged, the tweets complained of are classic examples of rhetorical hyperbole and expressions of "pure" opinion based on information extensively reported in the public domain, not actionable assertions of fact. They are therefore fully protected forms of speech and cannot provide the basis of a defamation claim. As set forth more fully below, Plaintiffs' real quarrel with the tweets at issue is not with any supposedly false statements made by Ms. Griffin of objective, verifiable facts; it is instead with what they apparently think are unfair criticisms and remonstrations concerning their dubious interaction with a Native American activist at the Lincoln Memorial. Plaintiffs are, of course, entitled to take issue with those opinions critical of their judgment and conduct in the course of a school-sponsored event. As the Amended Complaint makes clear, they have done just that. What they are not entitled to do, however, is to maintain a lawsuit against Ms. Griffin over them. Her statements are subjective evaluations based on information widely disseminated in the public domain – statements of opinion, rather than fact, which are not actionable as a matter of constitutional principle.

Fourth, Plaintiffs' defamation claim is based less on the actual words Ms. Griffin tweeted, and more on an improbable litany of purportedly defamatory implications arising from

her speech.  However, Ms. Griffin's commentary says what it says; it does not say something else; and it is protected under the First Amendment.  Plaintiffs may not treat Ms. Griffin's tweets as the social media equivalent of a modern Rosetta stone to which they can erroneously impute various meanings in an effort to salvage their unsupportable defamation claim.

Fifth, Plaintiffs' collateral claims for intrusion upon seclusion, negligent inflection of emotional distress, and harassment should be dismissed because Plaintiffs fail to plead necessary elements of those torts and the claims are prohibited by the First Amendment.

In the final analysis, this lawsuit blatantly disregards that the First Amendment's core values protect the free flow of ideas on matters of public interest and concern.  The Amended Complaint proceeds on theories of recovery that subvert constitutional free speech principles by threatening to confine discussion of Plaintiffs' questionable behavior within rigid boundaries of acceptable (as deemed by Plaintiffs) language and by shifting critical evaluation of that behavior out of the marketplace of public discourse and into the courtroom.  For the reasons presented below, the Amended Complaint – nothing more than a vehicle for harassment inimical to the exercise of Ms. Griffin's First Amendment rights – should be dismissed with prejudice for failure to satisfy the requirements of Rules 12(b)(2) and 12(b)(6) because the Court lacks personal jurisdiction over the Defendant, and Plaintiffs' defamation and collateral tort claims fail to state a cause of action.

## STATEMENT OF FACTS[2]

**A.    The Parties.**

Plaintiffs are minors who attend Covington Catholic High School ("CCHS") and reside in the vicinity of Covington, Kentucky.  (Am. Compl. ¶¶ 1-2)

Defendant Kathy Griffin is a resident of California.  (Am. Compl. ¶ 7)

**B.    The March for Life Incident at the Lincoln Memorial.**

On January 18, 2019, Plaintiffs participated in a March for Life in Washington, D.C. After the March, Plaintiffs encountered Native American activist Nathan Phillips at the Lincoln Memorial.  During this encounter, CCHS students engaged in school cheers and the "Haka dance that celebrates the tribal traditions of the Maori tribe."  Several of the students "mirror[ed] the sports chant of the Florida State Seminole [*sic*] and the Atlanta Braves, with their famous tomahawk chop."  (Am. Compl. ¶¶ 15-18)

The incident at the Lincoln Memorial was a topic of discussion by "prominent politicians, journalists with big-pedigree publications, and social celebrities with large social media platforms and public followings."  (Am. Compl. ¶ 19)

**C.    Ms. Griffin's Tweets.**

On January 20, 2019, Ms. Griffin stated the following on her Twitter account, @kathygriffin:

> *"Ps.  The reply from the school was pathetic and impotent.  Name these kids.  I want NAMES.  Shame them.  If you think these fuckers wouldn't dox you in a heartbeat, think again."  (Am. Compl. ¶¶ 30, 68 and Ex. J)*

---

[2] This section is derived from the factual allegations of the Amended Complaint dated August 14, 2019, which Defendant Kathy Griffin accepts as true for the limited purpose of the instant motion.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002).

This tweet linked to a *ThinkProgress* website news article that included video footage from the Lincoln Memorial incident, and also linked to a tweet from Fox television host Laura Ingraham supporting the student March for Life participants.  (Ex. J. to Am. Compl.)

On the same date, Ms. Griffin also tweeted the following:

> *"Names please.  And stories from people who can identify them and vouch for their identity.  Thank you."*  (Am. Compl. ¶¶ 30, 68 and Ex. K)

## ARGUMENT

### POINT I

### TO SURVIVE A MOTION TO DISMISS, THE AMENDED COMPLAINT MUST PLEAD SPECIFIC FACTS ESTABLISHING A PLAUSIBLE CLAIM TO RELIEF

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead facts sufficient to establish every element of the claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Sandmann v. WP Co.*, 2019 U.S. Dist. LEXIS 125275, *5 (E.D. Ky. Jul. 26, 2019) (Bertelsman, J.) ("To state a valid claim, a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory.") (quoting *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007)).  Notably, legal conclusions and naked assertions "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.  The allegations in a complaint "must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  If the facts alleged by the plaintiff, taken as true, fail to "state a claim to relief that is plausible on its face," the action must be dismissed.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. 544, 556).  In turn, "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 663; *Smith v. Tipton Cnty. Bd. of Educ.*, 916 F.3d 548, 552 (6th Cir. 2019). "The plausibility standard is not akin to a 'probability

6

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

Because this case unquestionably implicates Ms. Griffin's First Amendment right to comment on the news (and particularly news about a highly charged issue of public interest), in evaluating this motion, the Court must "consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).  In furtherance of this principle, and to protect public debate and safeguard freedom of the press, federal courts have recognized the " 'particular value' in resolving defamation claims at the pleading stage, 'so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms.' "  *Biro v Condé Nast*, 963 F.Supp.2d 255, 264 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015) (internal citation omitted); *see also*, *e.g.*, *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017) ("To preserve First Amendment freedoms and give reporters, commentators, bloggers, and tweeters (among others) the breathing room they need to pursue the truth, the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits.").

On the facts alleged, such prompt relief is plainly warranted in this case.

## POINT II

## THE COURT LACKS PERSONAL JURISDICTION OVER MS. GRIFFIN

On a motion to dismiss pursuant to Rule 12(b)(2), a plaintiff bears the burden of establishing personal jurisdiction over the defendant.  *See Cadle Co. v. Schlictmsnn*, 123 Fed. App'x 675, 677 (6th Cir. 2005) (holding use of the Internet alone does not constitute purposeful availment of the laws in every state); *Lattanzio v. Brunacini*, 2018 U.S. Dist. LEXIS 45415, *7

(E.D. Ky. 2018) (dismissing plaintiff's defamation case pursuant to Rule 12(b)(2) where plaintiff "failed to satisfy the burden of setting forth specific facts establishing that [defendant's] conduct fit[ ] within any of the categories enumerated in Kentucky's long-arm statute").  To establish jurisdiction over an out-of-state defendant, plaintiffs must satisfy both Kentucky's long-arm statute and the Due Process Clause of the Fourteenth Amendment.  *See Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997); *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. Sup. Ct. 2011).

Here, Ms. Griffin resides in California and has no connection to Kentucky.  Yet, the ten unnamed plaintiffs seek to hale Ms. Griffin into a federal court in Kentucky based solely on two tweets allegedly made by Ms. Griffin, via her personal Twitter account, to the public at large, in response to events which unfolded on the steps of the Lincoln Memorial in Washington, D.C. Under well-settled law, Plaintiffs cannot establish personal jurisdiction over Ms. Griffin.

A.     **Ms. Griffin is Not Subject to Kentucky Long-Arm Jurisdiction.**

Under Kentucky's long-arm statute, an out-of-state defendant may be subject to Kentucky jurisdiction under certain delineated categories of conduct, so long as the plaintiff's claim "arises from" such conduct.  Ky. Rev. Stat. §454.210 (2019); *see Caesars Riverboat Casino, LLC*, 336 S.W.3d at 55 (emphasizing that "even though the statute identifies nine particular instances of conduct upon which personal jurisdiction over a nonresident may be predicated, the first sentence of subsection 2(a) imposes a critical limitation on the statute's operation: the cause of action must 'aris[e] from' the identified conduct").  Reading the Amended Complaint in a light most favorable to Plaintiffs, only subparts (3) and (4) of Section 454.210(2)(a) bear any possible relation to Plaintiffs' claims.  However, neither of these provisions is applicable.

Pursuant to Section 454.210(2)(a)(3) of Kentucky's long-arm statute, a court sitting in Kentucky may assert jurisdiction over a foreign defendant only if the defendant has caused "tortious injury by an act or omission *in* this Commonwealth." Ky. Rev. Stat. §454.210(2)(a)(3) (emphasis added). Courts specifically reject the application of this provision where, as here, a defendant's act or omission occurs outside of Kentucky, even if the act allegedly "cause[s] 'a consequence' in Kentucky." *Pierce v. Serafin*, 787 S.W.2d 705, 706 (Ct. App. Ky. 1990) (holding court lacked jurisdiction over out-of-state physician who had mailed plaintiff's medical records to her treating physician in Kentucky); *see, e.g., Barker v. Patrick Collins, Inc.*, 2013 U.S. Dist. LEXIS 158022, *6 (W.D. Ky. 2013) (holding defendants' maintenance of a website accessed on a regular basis by Kentucky residents does not satisfy Section 454.210(2)(a)(3)). Because Plaintiffs cannot allege that Ms. Griffin's two tweets were published from Kentucky, Section 454.210(2)(a)(3) of Kentucky's long-arm statute is inapplicable.

Section 454.210(2)(a)(4) allows Kentucky "to assume personal jurisdiction over a nonresident tort-feasor whose activities outside the state result in injury in this state *only if* that tort-feasor regularly does or solicits business within the state or has other substantial connection to the Commonwealth." *Pierce*, 787 S.W.2d at 707 (emphasis added); *see* Ky. Rev. Stat. §454.210(2)(a)(4); *see also Fiore v. Southern Poverty Law Ctr., Inc.*, 2009 U.S. Dist. LEXIS 82455, *7 (E.D. Ky. 2009) (finding Section 454.210(2)(a)(4) inapplicable to plaintiff's defamation claim because plaintiff's alleged injury did not arise out of defendant doing or soliciting business in Kentucky or from a persistent course of conduct in Kentucky).

Here, Plaintiffs do not and cannot allege that Ms. Griffin solicits business, engages in a persistent course of conduct, or derives substantial revenue within Kentucky, and Plaintiffs' purported injuries arise from Griffin's out-of-state tweets, not any of the foregoing conduct.

9

Accordingly, Section 454.210(2)(a)(4) is no more applicable than Section 454.210(2)(a)(3).  *See Afshari v. Ellig*, 2017 U.S. Dist. LEXIS 148859, *7 (E.D. Ky. 2017) (holding plaintiff failed to establish jurisdiction over defendant based on a single allegedly defamatory email sent from Montana where defendant did not regularly do or solicit business, engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed or services rendered in Kentucky).

Plaintiffs cannot satisfy Kentucky's long-arm statute, and therefore dismissal is appropriate for lack of personal jurisdiction.

**B.**     **Exercising Jurisdiction Over Ms. Griffin Would Offend Due Process.**

Even if jurisdiction were appropriate under Kentucky's long-arm statute, the exercise of jurisdiction over Ms. Griffin would be inconsistent with the Due Process Clause of the Fourteenth Amendment.  In order to satisfy due process, the plaintiff must establish "sufficient contacts" between an out-of-state defendant and the forum such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)); *accord, Bayou City Exploration, Inc. v. Consumer Advocate Servs. Enters., LLC*, 2015 U.S. Dist. LEXIS 87541, at *16 (W.D. Ky. 2015) (holding plaintiffs must "establish with reasonable particularity sufficient minimum contacts with Kentucky so that the exercise of jurisdiction over [defendant] would not offend traditional notions of fair play and substantial justice") (internal quotations omitted).

The only conduct on the part of Ms. Griffin alleged in the Amended Complaint are her two tweets, issued from California.  Her tweets did not concern any events occurring in Kentucky, nor were her tweets aimed at Kentucky or its citizens.  To the contrary, the tweets arose from events occurring at a national public rally in the District of Columbia, and were

10

aimed at a national audience.  (Am. Compl ¶¶15, 19)  The only connection between Ms. Griffin and Kentucky is that Plaintiffs reside in the Commonwealth and were allegedly harmed there. However, it is well-established that this connection is insufficient.  *Walden v. Fiore*, 571 U.S. 277, 290 (2014) ("[M]ere injury to a forum resident is not a sufficient connection to the forum.").

As the Supreme Court has continually reaffirmed, the minimum contacts analysis must consider the contacts between the *defendant and the forum*, not the plaintiff and the defendant, nor the plaintiff and the forum state.  *See id.* at 285 (emphasizing the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there"); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ([i]f the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."); *Kulko v. Superior Court of Cal., City and Cnty. of San Francisco*, 436 U.S. 84, 93 (1978) (finding plaintiff's residence in the state of California was insufficient to establish personal jurisdiction over defendant).

Plaintiffs' disappointment with the negative national attention they received as a result of their behavior in Washington, D.C. does not permit them to dart back to their home state and seek redress against Ms. Griffin there.  The Court should dismiss the Amended Complaint as against Ms. Griffin.

POINT III

**THE AMENDED COMPLAINT'S DEFAMATION CLAIM SHOULD BE DISMISSED BECAUSE THE CHALLENGED TWEETS ARE NOT "OF AND CONCERNING" THE ANONYMOUS PLAINTIFFS**

As a fundamental element of their defamation claim, Plaintiffs must establish that the challenged tweets are "of and concerning" them – that is to say, "about" them.  *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2004), *overruled on other grounds*, *Toler v. Süd-*

11

*Chemie, Inc.*, 458 S.W.3d 276 (Ky. 2014).  As this Court recently observed, "where defamatory statements are made against an aggregate body of persons, an individual member not specially imputed or designated cannot maintain an action."  *Sandmann v. WP Co.*, 2019 U.S. Dist. LEXIS 125275, at *8 (quoting *Louisville Times v. Stivers*, 68 S.W.2d 411, 412 (Ky. 1934)).  In defiance of these principles, Plaintiffs have brought this lawsuit anonymously, a pleading choice that precludes them from showing, as required by the First Amendment, that any of the purportedly defamatory statements are about them as individuals.[3]

The statements disputed by the Amended Complaint do not identify or reference a single Covington Catholic student by name, let alone any particular plaintiff.  To the contrary, Ms. Griffin is calling for "these kids" – she does not know who they are – to be named by people who can "vouch for their identity." (Compl. ¶ 68 and Exs. J-K)  Her tweets reflect merely general comments that do not identify or apply to any individual.  *O'Brien v. Williamson Daily News,* 735 F.Supp. 218, 220 (E.D. Ky. 1990) ("the article refers to no identifiable group member and does not impugn the reputation of any specific member"), *aff'd*, 931 F.2d 893 (6th Cir. 1991).  As such, "[t]hese statements are not actionable because they are not about" Plaintiffs.  *Sandmann*, 2019 U.S. Dist. LEXIS 125275, at *13.

---

[3] In an independent but related action, Ms. Griffin has been sued in this Court as the sole Defendant by ten Plaintiffs who "were Covington Catholic High School ("CCH") minor students . . . present at the Lincoln Memorial incident." *Blessing, et al. v. Griffin*, Case No.: 2:19-cv-00126-WOB-CJS [Dkt. No. 1, Compl. ¶ 2].  By concealing their identities in the instant lawsuit, Plaintiffs have prevented Ms. Griffin from determining whether they have also joined the separate lawsuit against her, and more fundamentally, from defending herself against anonymous allegations of reputational harm in violation of her due process rights. *See, e.g., Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005) ("[Plaintiff] has denied [defendant] the shelter of anonymity -- yet it is [defendant], and not the plaintiff, who faces disgrace if the complaint's allegations can be substantiated. And if the complaint's allegations are false, then anonymity provides a shield behind which defamatory charges may be launched without shame or liability."); *Brouillette v. Bd. of Dirs. of Merged Area IX*, 519 F.2d 126, 128 (8th Cir. 1975) (recognizing due process requires both the names of those who have made allegations against the individual and the specific nature and factual basis for the charges).  By proceeding anonymously, Plaintiffs have also violated federal procedural rules, which require that "[t]he title of the Complaint must name all the parties."  Fed.R.Civ.P. 10(a).  Plaintiffs have not even deigned to demonstrate that their privacy interests somehow overcome the constitutional presumption of open judicial proceedings (*Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004)), another reason for dismissal of their Amended Complaint.

In *Sandmann*, this Court rejected the Complaint as pleaded, relying on established authority similarly dismissing defamation claims about groups in the aggregate, rather than individual plaintiffs. *Id.*, citing *Kentucky Fried Chicken, Inc. v. Sanders*, 563 S.W.2d 8, 9 (Ky. 1978) (rejecting as defamatory a statement "discussing Kentucky Fried Chicken generally" that did not identify a particular restaurant "as the object of the remarks"); *Stivers*, 68 S.W.2d at 411-12 (statement that the "Stivers clan" had been involved in "fist fights and gun battles" concerned a group or class and was therefore not actionable as a matter of law); *O'Brien*, 735 F.Supp.at 220 (dismissing defamation claims of teachers not identified in news article that mentioned "teachers having affairs with students"); *see also Loftus v. Nazari*, 21 F.Supp.3d 849, 854 (E.D. Ky. 2014) (Bertelsman, J.) ("a member of a class has no claim against someone defaming the class as a whole"). As in these cases, because "the words used" by Ms. Griffin "contain no reflection upon any particular individual, no averment can make them defamatory." *Sanders*, 563 S.W.2d at 9. Therefore, as in *Sandmann*, the Complaint's seventh cause of action sounding in defamation fails as a matter of law and should be dismissed. 2019 U.S. Dist. LEXIS 125275, at *13-14.

POINT IV

**THE AMENDED COMPLAINT'S DEFAMATION CLAIM SHOULD
BE DISMISSED BECAUSE THE CHALLENGED TWEETS FAIL
TO CONVEY A DEFAMATORY MEANING**

The Complaint challenges statements made by Ms. Griffin that cannot support a libel claim for the fundamental reason that they fail to convey a defamatory meaning. *Dermody v. Presbyterian Church U.S.A.*, 530 S.W.3d 467, 472 (Ky. Ct. App. 2017) ("[a] statement that is false, but not defamatory is not actionable"). According to Kentucky law, a statement is defamatory "if it tends to (1) bring a person into public hatred, contempt or ridicule; (2) cause him to be shunned or avoided; or, (3) injure him in his business or occupation." *Kimball v. Courier Journal, Inc.*, 2009 WL 3321380, *2 (Ky. Ct. App. Oct. 16, 2009) (citation omitted).

13

The determination of defamatory meaning requires an analysis of the full context of a publication. *Biber v. Duplicator Sales & Serv., Inc.*, 155 S.W.3d 732, 738 (Ky. Ct. App. 2004). The court must then "analyze the article in its entirety and determine if its gist or sting is defamatory." *Sandmann*, 2019 U.S. Dist. LEXIS 125275, at *20. "The face of the writing must be stripped of all innuendoes and explanations." *Roche v. Home Depot U.S.A.*, 197 F. App'x 395, 398 (6th Cir. 2006) (citations and internal quotations omitted). Further, "[t]he words must be given their ordinary, natural meaning as defined by the average lay person." *Dermody*, 530 S.W.3d at 475.

This Court has recently emphasized what the "Restatement and Kentucky law make clear: if individuals, 'by an unreasonable construction' attach a 'derogatory meaning,' this 'does not render the language defamatory.'" *Sandmann,* 2019 U.S. Dist. LEXIS 125275, at *21 (quoting Rest. 2d § 563 cmt. c)). When given their ordinary meaning and construed in the entirety of their publication, as they must be, Ms. Griffin's tweets are not reasonably susceptible of a defamatory meaning. They merely reflect her observation that the response of Plaintiffs' high school was (in her view) sorely inadequate, while calling for Plaintiffs to be identified in order to be held accountable for their conduct. There is simply no basis from which the ordinary reader could draw a defamatory inference from these statements. *Shields v. Booles*, 38 S.W.2d 673, 684-85 (Ky. 1931) (a "statement [that] had no inherent tendency to affect [plaintiff's] character or reputation" is "not a libel of [plaintiff], even though the statement was not true"). That Plaintiffs may have found them "annoying, offensive, or embarrassing" is of no moment. *Sandmann*, 2019 U.S. Dist. LEXIS 125275, at *10. To conclude otherwise would require the Court to strain to place a particular interpretation upon the statements at issue without any reasonable basis for concluding that they are defamatory. *Id.* at *21 ("it is unreasonable to

14

construe the article as meaning that Sandman 'engaged in racist conduct'") (internal citation omitted).

The Complaint's attempt to transform the statements at issue into the basis of a defamation claim should be rejected as a strained and artificial construction of language not reasonably susceptible of a defamatory meaning.  That Ms. Griffin summoned the emotive force of profanity does not in any way imbue her comments with a defamatory meaning the words otherwise fail to convey.  *Gahafer v. Ford Motor Co.,* 328 F.3d 859, 863 (6th Cir. 2003) ("foulness" of profanities cannot "change the very substance and meaning" of underlying non-defamatory statements).  The challenged tweets are not defamatory as a matter of law.

POINT V

**THE AMENDED COMPLAINT'S DEFAMATION CLAIM SHOULD BE DISMISSED BECAUSE THE COMMENTS COMPLAINED OF ARE NONACTIONABLE OPINION**

**A.     The Constitutional Opinion Privilege Immunizes Ms. Griffin's Commentary From Liability.**

Under the First Amendment, only statements that are demonstrably false are actionable. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-20 (1990) (only provable false assertions of fact can provide basis for defamation action); *Clark v. Viacom Int'l, Inc.*, 617 F. App'x 495, 508 (6th Cir. 2015); *Cromity v. Meiners*, 494 S.W.3d 499, 503-04 (Ky. Ct. App. 2015).   In contrast, "an expression of opinion, as opposed to a defamatory statement of fact, is entitled to an absolute privilege." *Biber*, 155 S.W.3d at 737.  This Court recently reaffirmed that "[f]ew principles of law are as well-established as the rule that statements of opinion are not actionable in libel actions." *Sandmann*, 2019 U.S. Dist. LEXIS 125275, at *14.  As the Court elaborated, "a defamation claim against a media defendant cannot derive from a statement of opinion relating to matters of public concern [that] does not contain a provably false factual connotation unless the challenged statement connotes **actual, objectively verifiable facts.**" *Id.* at *7 *(citing*

15

*Compuware Corp. v. Moody's Inv'rs Servs., Inc.*, 499 F.3d 520, 529 (6th Cir. 2007)) (emphasis in original) (internal quotations omitted); *Parks v. LaFace Records*, 329 F.3d 437, 462 (6th Cir. 2003).

The rule that "a statement of opinion is not actionable protects freedom of speech and press guaranteed by the First Amendment." *Sandmann*, 2019 U.S. Dist. LEXIS 125275, at *27. The principles animating the absolute constitutional protection provided to expressions of opinion were identified more than four decades ago in *Gertz v. Robert Welch, Inc.*:

> Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.

418 U.S. 323, 339-40 (1974).

In determining the constitutional protection for statements of opinion, the dispositive inquiry under Kentucky law is whether they "may reasonably be understood to imply the assertion" of undisclosed defamatory facts as the basis of the opinion.[4] *Yancey v. Hamilton*, 786 S.W.2d at 857 (citing *Restatement (Second) of Torts* § 566 (1977)); *Lassiter v. Lassiter*, 456 F.Supp.2d 876, 881 (E.D. Ky. 2006) (Bertelsman, J.). Further, the "[a]lleged defamatory statements must be construed in the context of the entire communication."[5] *Biber*, 155 S.W.3d at 738; *Yancey*, 786 S.W.2d at 857 (whether statement is protected opinion must be considered "in the whole context of its publication"); *Lassiter*, 456 F.Supp.2d at 881 (application of opinion privilege requires evaluation of context). The principal reason for interpreting statements in

---

[4] The question of whether a particular publication qualifies as protected opinion is a legal question for the Court to determine. *Yancey v. Hamilton*, 786 S.W.2d 854, 857 (Ky. 1989).

[5] As a leading treatise emphasizes, "what the trial court must decide in 'opinion cases' is whether a reasonable person reading the statement in the context of the whole [publication] would believe it is based upon alleged facts, which, if untrue, would be defamatory." *David J. Leibson*, 13 KENTUCKY PRACTICE (TORT LAW), § 15.2, at 449 (1995).

context is to protect free speech, not suppress it by hypertechnically parsing individual statements in order to strip them of the protection afforded by the opinion privilege.

Plaintiffs dispute public comments that are clearly not actionable by virtue of the opinion privilege because they are "[in]capable of being proved objectively incorrect." *Clark v. Viacom Int'l.*, 617 Fed. App'x. 495, 508. In alleging that the following tweet is defamatory, the Complaint's seventh cause of action is constitutionally deficient because of its refusal "to segregate casually used words, no matter how tastelessly couched, from fact-based accusations." *Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 128 (1st Cir. 1997).

- "Ps. The reply from the school was pathetic and impotent. . . . Shame them. If you think these fuckers wouldn't dox you in a heartbeat, think again." (Am. Compl. ¶ 68 and Ex. J)

Considered in context, the above statements could only be understood by readers as spontaneous and impassioned criticism of Plaintiffs' conduct as reported in intensive media coverage, and as Ms. Griffin's personal ruminations concerning the impropriety and insensitivity of that conduct. In making plain that she intended to call out the students' in the public arena, Ms. Griffin was clearly communicating her personal disagreement with both their "shame[ful]" behavior and their school's response thereto. Thus, the reasonable reader of the allegedly defamatory comments would therefore recognize that they represented opinion, expressed as part of an ongoing public controversy and designed primarily to persuade. Whether right or wrong, informative or misguided, constructive or meanspirited, Ms. Griffin's attempt to chastise the unidentified Plaintiffs is the stuff of opinion protected under the First Amendment and the Kentucky State Constitution. *See, e.g., Haynes v. McConnell*, 642 S.W.2d 902, 904 (Ky. Ct. App. 1982) (holding statement of opinion absolutely protected under First Amendment and noting Kentucky Construction "may well establish the same principle").

17

**B.**     **The Comments Complained of Are Classic, Nonactionable "Pure Opinion" Based on Information Reported In the Public Domain.**

The above comments are protected under both the First Amendment and Section 8 of the Kentucky Constitution because they are statements of "pure opinion" based on information which was fully disclosed to the public. In Kentucky, pure opinions are "absolutely privileged" and will not support an action for defamation as a matter of law. *Yancey*, 786 S.W.2d at 857; *Lassiter*, 456 F.Supp.2d at 882; *Hays v. Clear Channel Commc'ns, Inc.,* 2006 WL 3109132, *4 (Ky. Ct. App. Nov. 3, 2006). A pure expression of opinion occurs "where the commentator states the facts on which the opinion is based, or where both parties to the communication know or assume the exclusive facts on which the comment is based." *Id.*; *Lassiter*, 456 F.Supp.2d at 881. The rule's justification is that, when the facts are disclosed, "[t]he reader of the postings may decide for himself or herself whether the opinions should be accepted[.]" *Loftus v. Nazari,* 21 F.Supp.3d 849, 853 (E.D. Ky. 2014) (Bertelsman, J.); *see also Moldea v. New York Times Co.*, 15 F.3d 1137, 1144-45 (D.C. Cir. 1994) ("Because the reader understands that such supported opinions represent the writer's interpretation of the facts presented, and because the reader is free to draw his or her own conclusion based upon those facts, this type of statement is not actionable in defamation.").

Classic examples of such "pure" opinions are those issued where the underlying facts are available in the public domain.[6] Thus, in *Lassiter*, this Court ruled that the defendant's statements accusing the plaintiff of an adulterous affair were immunized from defamation

---

[6] As a prominent commentator has noted, the modern constitutional protection afforded "pure opinion" derives from the fair comment privilege, which was established at common law "primarily to protect public debate by sheltering communications about matters of public concern." SACK ON DEFAMATION,§ 4.4.1 at 4-59 (Volume 1, Third Edition 2003) (footnote omitted). *See also Milkovich*, 497 U.S. at 13 ("due to concerns that unduly burdensome defamation laws could stifle valuable public debate, the privilege of 'fair comment' was incorporated into the common law as an affirmative defense to an action for defamation"). The fair comment privilege "extends . . . to comments on facts that are common knowledge or readily accessible to the reader," and "protects continuing commentary on matters with which the reader is likely already to be familiar, such as headline news, without requiring the publisher to repeat on each occasion the details of the event." SACK ON DEFAMATION, § 4.4.2 at 4-61 (footnote omitted).

18

liability because "[t]he facts on which [defendant] based the conclusion were disclosed in the book," placing "[t]he reader in as good a position as the author to judge whether the conclusion she reached – that adultery had been committed – was correct." 476 F.Supp.2d at 882; *see also Hays v. Clear Channel Commc'ns*, 2006 WL 3109132, at *3-4 (held, allegedly defamatory statements made on radio talk show protected as statements of opinion where based on facts disclosed to listening audience).

The same can certainly be said with respect to Ms. Griffin's tweets here. It is undisputed that Covington Catholic High School officials released a statement addressing the possible punishment of the students (presumably including Plaintiffs) who were involved in the incident at the Lincoln Memorial, "up to and including expulsion." Further, Ms. Griffin's first tweet (Ex. J) linked to a news report on the *Think Progress* website with video footage depicting the encounter between Covington Catholic students and a Native American military veteran in connection with the annual "March for Life" on the National Mall,[7] and also retweeted a post by conservative television host Laura Ingraham that contained a photo of and expressed support for student anti-abortion protestors participating in the event[8]. Thus, it was clear to any reader that her commentary was based on and must be understood in the context of the linked-to news coverage. The tweet is therefore not actionable because it conveys an opinion based on facts disclosed to the audience. *Mirage Ent., Inc. v. FEG Entretenimientos S.A.,* 326 F.Supp.3d 26, 38

---

[7] The video is available at @thinkprogress, TWITTER, (Jan. 19, 2019, 3:31 PM), https://twitter.com/thinkprogress/status/1086722839225516032; *see also* Frank Dale, *Video Shows 'March For Life' Students in MAGA Apparel Mocking Native American Veteran*, THINKPROGRESS (Jan. 19, 2019, 3:30 PM), https://thinkprogress.org/march-for-life-native-american-military-veteran-make-america-great-again-kentucky-students-bf0b6ffa68ae/

[8] This photo is available at @IngrahamAngel, TWITTER, (Jan. 18, 2019, 2:12 PM), https://twitter.com/IngrahamAngle/status/1086340626004799488.

(S.D.N.Y. 2018) (holding that tweet to underlying article disclosed facts necessary to support defendant's opinion privilege defense);

Here, Ms. Griffin's tweets linked to contemporaneous news reports "concern[ing] groups of citizens who were assembled in the nation's capital" (*Sandmann*, 2019 U.S. Dist. LEXIS 125275, at *9) on which they were based.  Her comments can therefore only plausibly be construed as her personal viewpoint based on information in the public domain.  The premise is explicit, and the reader is by no means required to accept either her characterization of the school's response as inadequate or her conclusion that the students' conduct warranted shaming. *Lassiter*, 456 F.Supp.2d at 882; *Loftus*, 21 F.Supp.3d at 853.  As in the above cases, readers could interpret Ms. Griffin's comments and decide for themselves whether her opinions were appropriate or justified in this instance, thereby contributing to public discussion on a matter of public concern.[9] They did not rest on any undisclosed facts; to the contrary, Ms. Griffin's tweets "spelled out precisely" the basis for her exhortations.  *Buchholtz v. Dugan*, 977 S.W.2d 24, 28 (Ky. Ct. App. 1998).  This is the essence of pure opinion, which Plaintiffs may not stifle through the instant litigation, no matter how offensive or disagreeable they find the statements at issue.  *Biber*, 155 S.W.3d at 738 ("Although the label offends him, it is based on truthful facts and is not actionable.").

---

[9] This Court has already ruled that the subject of Ms. Griffin's tweets "is inherently a matter of public concern." *Sandmann*, 2019 U.S. Dist. LEXIS 125275, at *9 (footnote omitted).  The U.S. Supreme Court has repeatedly emphasized that, where discussion of public affairs is concerned, the protection of free speech is at its zenith.  *See generally Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 778 (1986) ("speech of public concern is at the core of the First Amendment's protections") (*citing Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758-59 (1985)); *Garrison v. Louisiana*, 379 U.S. 64, 74-5 (1964) ("speech concerning public affairs is more than self-expression; it is the essence of self government").  Thus, the "'breathing space'" which "'freedoms of expression require in order to survive,'" *Hepps*, 475 U.S. at 772 (*quoting New York Times Co. v. Sullivan*, 376 U.S. 254, 272 (1964)), mandates protection for the imaginative expression intrinsic to "the free flow of ideas and opinions on matters of public interest and concern" that is at "the heart of the First Amendment."  *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988).

## C.     The Use of Exaggerated, Figurative Language Clearly Signals Protected Opinion.

Further, the tenor and content of Ms. Griffin's commentary show that it is nothing more than exaggerated rhetoric, and was obviously understood as such.  Far from making verifiable factual assertions, Ms. Griffin expressed her views in emotionally charged language "laden with rhetorical hyperbole" (*Sandmann*, 2019 U.S. Dist. LEXIS 125725, at \*25) – *i.e.*, that the school's response was "pathetic and impotent," and that the students were "fuckers" who would dox you "in a heartbeat."   *Welch*, 3 S.W.3d at 730 ("[m]any of the phrases are figurative, and they employ rhetorical exaggeration to accomplish their intended purpose"); *Restatement (Second) of Torts*, § 566, cmt. e ("There are some statements that are in form statements of opinion, or even of fact, which cannot reasonably be understood to be meant literally and seriously and are obviously mere vituperation and abuse.").  This is the "sort of loose, figurative, [and] hyperbolic language which would negate the impression" that Ms. Griffin was expressing anything other than strong disagreement with and disapproval of the students' conduct.  *Milkovich*, 497 U.S. at 21.  As courts have held time and time again, the use of such hyperbolic and inflated expression signals to the reader that what is being expressed is opinionated advocacy, not fact.  *Sandmann*, 2019 U.S. Dist. LEXIS 125275, at \*15; *Ogle v. Hocker*, 279 F.App'x 391, 397 (6th Cir. 2008) ("[S]tatements of . . . hyperbole, or rhetorical exaggeration will receive First Amendment protection.") (citation omitted).

The characterizations of the school's response as "pathetic and impotent," and of the students' conduct as "shame[ful]," do not contain provably false factual connotations and cannot reasonably be interpreted as stating actual facts.  *Sandmann*, 2019 U.S. Dist. LEXIS 125275, at \*15.  They are instead imprecise, value-laden, and "inherently subjective" assessments that are not actionable because they are incapable of verification.  *Id.* (internal quotations and citation omitted).  Indeed, courts have repeatedly dismissed on the basis of the constitutional opinion privilege

21

similarly pejorative characterizations using the specific language in suit. *Emekekwue v. Offor*, 26 F.Supp.3d 348, 355 (M.D. Pa. (2014)) (holding defendant's statement "It's ***pathetic*** that he wants to gain financially from her death" constitutes non-actionable opinion) (emphasis supplied); *Wampler v. Higgins*, 93 Ohio St. 3d 111, 132 (2001) (holding defendant's description of plaintiff's actions as "***pathetic***" qualified as protected opinion) (emphasis supplied); *Krinsky v. Doe 6*, 159 Cal.App.4th 1154, 1177 (Ca. Ct. App.2008) (holding statement "bunch of ***pathetic*** losers" opinionated expression protected under First Amendment) (emphasis supplied); *In re Dole Food Co.*, 256 S.W.3d 851, 856 (Tx. Ct. App. 2008) (rejecting defamation claim based on statement plaintiff had been shown "***impotent*** and incapable to win") (emphasis supplied).

### (1) Considered In Its Full Context As Required Under Kentucky Law, the Expressly Speculative Nature of the First Tweet Confirms It Is Nonactionable Opinion.

Here, the parties were involved in a raging public controversy that played out virally on social media stemming from a public demonstration at the Lincoln Memorial associated with one of the most polarizing issues in our body politic. When viewed in context, "statements made as part of an acknowledged heated debate often negate the impression that the defendant was asserting an objective fact." *Obsidian Fin. Group, LLC v. Cox*, 812 F.Supp.2d 1220, 1223 (D. Or. 2011). In fact, the very purpose of the disputed speech was to protest the unacceptability (according to Ms. Griffin) of both the students' conduct and their school's response. Accordingly, the setting confirms that Ms. Griffin was voicing a highly partisan point of view that is the stuff of opinion. In addition, her observations were issued on Twitter, a haven for polemics, invective, and cajoling dedicated to uninhibited and often intemperate expressions of opinion. This, too, counsels in favor of finding them opinionated advocacy. *Loftus v. Nazari*, 21 F.Supp.3d at 854 ("Further, it must be taken into account that the statements by [defendant]

22

were posted on opinion websites; therefore, the natural tendency would be to infer that they are opinion.").

Notably, the Supreme Court of Kentucky has instructed that, in determining whether a challenged statement qualifies as protected opinion, the sequence of sentences in which the statement is presented is "critical" in evaluating the publication's context. *Yancey*, 786 S.W.2d at 858. That imperative compels a finding that the comment the students depicted in the *Think Progress* video would "dox you in a heartbeat" is a matter of opinion. Its openly speculative nature − *i.e.*, as a prediction of the students' future behavior embedded with imprecise and non-verifiable criticism of their conduct – demonstrates its privileged status as opinion. It represents "a predictive opinion, dependent on a subjective and discretionary" evaluation of what the students were prone to do going forward. *Compuware*, 499 F.3d at 529. Because of its "inherently subjective nature" there is no basis to conclude that it "communicates any provably false factual connotation." *Id.* It is a *subjective* assessment of the conduct of "these kids" in general; it is not a statement of *objective* fact that any kid had doxed anyone. Expressing these remarks as to what she "felt at the time suggests that the statement made was an opinion rather than [a] defamatory statement." *Marcus & Millichap Real Estate Inv. Brokerage Co. v. Skeeters*, 395 F.Supp.2d 541, 554 (W.D. Ky. 2005). Moreover, it necessarily implicates the students' intent and state of mind, matters not readily verifiable and intrinsically unsuitable as a foundation for libel. *Zerman v. Sullivan & Cromwell*, 677 F.Supp. 1316, 1320 (S.D.N.Y. 1988); *Janklow v. Newsweek, Inc.*, 788 F.2d 1300, 1303-04 (8th Cir. 1986); *Greenspan v. Random House, Inc.*, 859 F.Supp.2d 206, 224 (D. Mass. 2012) (holding statement concerning Plaintiff's motives implied no assertion of undisclosed fact and could not be objectively proven as true or false).

23

In the final analysis, whether the student's conduct merited condemnation or condonation, and whether their sectarian high school's disciplinary response was proportionate or inappropriate, is in the proverbial eye of the beholder and falls "into the arena of opinion rather than fact." *Peavey v. Univ. of Louisville*, 2011 WL 2746810, *7 (W.D. Ky. Jul. 13, 2011).

POINT VI

**THE COMPLAINT FAILS TO STATE A CLAIM FOR DEFAMATION BASED ON ANY UNSTATED IMPLICATION ALLEGEDLY CONVEYED**

**A.**   <u>**Libel by Implication Claims Are Subject to Rigorous First Amendment Scrutiny.**</u>

Unable to point to any false statement of fact in Ms. Griffin's tweets, Plaintiffs strain to assert a claim based on unstated implications allegedly conveyed by her observations. According to the Amended Complaint, Ms. Griffin "omitted the true facts, and instead *implied*" that "the kids interrupted an indigenous march, stopped and blocked a Native American elder and Vietnam War veteran from continuous participation in that event, surrounded him in a threatening manner, and taunted him, as a Native American elder, with chants of 'build the wall' to a Native American elder to taunt him."  (Am. Compl. ¶ 68; emphasis supplied)  That is a mouthful to draw out of Ms. Griffin's abbreviated tweets, and is nowhere to be found in what she actually wrote.[10]  Plaintiffs' allegations flout the principle that "courts must be vigilant not to allow an implied defamatory meaning to be manufactured from words not reasonably capable of sustaining such a meaning."  *White v. Fraternal Order of Police*, 909 F.2d 512, 519 (D.C. Cir. 1990).

---

[10] Even if Ms. Griffin had expressly tweeted the statements posited in paragraph 68 of the Amended Complaint, this Court has already determined that they are not actionable as a matter of constitutional law because non-defamatory and/or protected opinion.  *Sandmann*, 2019 U.S. Dist. LEXIS 125275, at *14-24.  The Court's *Sandmann* ruling *a fortiori* requires dismissal of the Amended Complaint to the extent it relies on these allegations to prop up an implausible defamation by implication claim against Ms. Griffin.

24

In predicating their defamation claim on what was allegedly *implied* by Ms. Griffin's commentary (*see* Am. Compl. ¶¶ 19, 30), rather than on the actual printed words of the tweets, Plaintiffs are proceeding on the disfavored theory known as libel by implication. *Biro v. Condé Nast*, 883 F.Supp.2d at 464 ("A defamatory implication may be based on a combination of individual statements which in themselves may not be defamatory, but which might lead the reader to draw an inference that is damaging to the plaintiff.") (internal quotations and citation omitted) (noting that implication claims require an "especially rigorous showing" to withstand constitutional scrutiny).  However, the Complaint's seventh cause of action must be evaluated on the basis of what Ms. Griffin actually tweeted rather than on the basis of unarticulated "implications" alleged to be defamatory.   Given the substantial constitutional interest in protecting free speech on public issues, defamation claims premised on unstated implications – which by their very nature are amorphous, vague, and subjective – must be carefully constrained. Emphasizing that implication claims must be subjected to exacting scrutiny under the First Amendment, this Circuit requires a plaintiff to satisfy a rigorous two-part test[11]: that the defendant (1) "intended or knew of the implied messages [the plaintiff] attributes" to the challenged publication, and (2) "an objective reader of the [publication] might discern these hidden implications."   *Compuware*, 499 F.3d at 529 (applying test to reject defamation by implication claim).

The Amended Complaint's implausible contention that Ms. Griffin's tweets are defamatory by implication faces insurmountable barriers imposed by the First Amendment.

---

[11] Several additional federal appellate courts have adopted the same stringent standard in evaluating defamation-by-defamation implication claims.  *See White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990); *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092-93 (4th Cir. 1993); *Saenz v. Playboy Enters., Inc.*, 841 F.2d 1309, 1318 (7th Cir. 1988).

**B.   The Challenged Tweets Do Not Reasonably Convey, or Endorse, the Implications Alleged by Plaintiffs.**

Plaintiffs' fundamental objection is to statements they read to convey *implicit* accusations of wrongdoing, even though Ms. Griffin's tweets make no such accusations *explicitly*. It bears emphasis that the threshold question presented here is whether the challenged commentary *reasonably* conveys the defamatory assertions alleged by Plaintiffs, not whether such an interpretation of the tweets is possible. In the law of defamation, "what meaning a communication is *capable* of bearing" is a very different inquiry from identifying "the inferences that can *reasonably* be drawn from it." *White v. Fraternal Order of Police*, 707 F. Supp. 579, 589 n. 12 (D.D.C. 1989) (emphasis supplied), *aff'd*, 909 F.2d 512 (D.C. Cir. 1990).

Getting within sight of the elastic interpretation indulged in by Plaintiffs requires not only a leap of logic, but the presumption of extensive extraneous information not stated by Ms. Griffin. The implications alleged in the Amended Complaint are not only unreasonable, but absurd. They transmogrify Ms. Griffin's statements into a fanciful string of far-fetched allegations and, in doing so, enlarge (and distort) their meaning beyond recognition. Indeed, Plaintiffs attribute the identical set of concocted defamatory implications to each and every defendant in this lawsuit. *See* Am. Compl. ¶¶ 21-34, 46, 57, 68, 84, 95, 106, 117, 128, 138, 149, 161, 172. According to Plaintiffs, apparently any time a prominent commentator, journalist, or political figure criticized their involvement in the Lincoln Memorial incident – no matter what was actually said, or how or where it was said – it somehow morphed into the implausible litany of unfounded implications repeated mantra-like throughout the Amended Complaint.

As the Amended Complaint's allegations confirm, "only a 'strained reading'" of Ms. Griffin's tweets "would permit the inferences" Plaintiffs "would have [the Court] draw" in order to stave off dismissal of their defamation claim. *Compuware*, 499 F.3d at 529. Further,

26

Plaintiffs have failed to allege anything on the face of Ms. Griffin's tweets suggesting that she intended to convey the purported implications.  As a matter of law, a defamation defendant "is not responsible for every defamatory implication a reader might draw from h[er] report of true facts, absent evidence that [s]he *intended* the defamatory implication."  *Nichols v. Moore*, 477 F.3d 396, 402 (6th Cir. 2007) (emphasis supplied) (quoting *Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.*, 495 N.W.2d 392, 396 (Mich. App. Ct. 1992)).  Plaintiffs are therefore unable to satisfy this Circuit's strict standard governing the Amended Complaint's alleged defamatory implications.  Their seventh cause of action should be dismissed.

POINT VII

**PLAINTIFFS' ANCILLARY TORT CLAIMS
ARE DEFECTIVE AS A MATTER OF LAW**

Plaintiffs' remaining claims for intrusion upon seclusion, negligent infliction of emotional distress, and harassment fail for numerous reasons and should be dismissed.  As a starting point, Kentucky law prohibits Plaintiffs from duplicating the subject matter of their defamation claim with other ancillary tort claims.  *See White v. Bourbon Cmty. Hosp., LLC*, 2016 U.S. Dist. LEXIS 5113, *31 (E.D. Ky. 2016) (finding plaintiff's defamation and intentional infliction of emotional distress to be duplicative theories of recovery); *Grace v. Armstrong Coal Co.*, 2009 U.S. Dist. LEXIS 11315, *10 (W.D. Ky. 2009) (holding plaintiff's intentional infliction of emotional distress claim to be inappropriate when based on "coterminous" facts underlying his defamation and wrongful discharge claims).

Moreover, Plaintiffs may not attempt to circumvent the protections of the First Amendment in seeking to hold Ms. Griffin liable under collateral tort theories for public statements regarding matters of public concern.  *See Snyder v. Phelps*, 562 U.S. at 458 (shielding defendants from plaintiff's claims for intrusion upon seclusion and intentional infliction of

27

emotional distress because the Constitution protects "speech on public issues to ensure that we do not stifle public debate").  This is true even to the extent Plaintiffs allege damages stemming from "a social media lynch mob" purportedly "advanced" by Defendants (Am. Compl. ¶19).  *See Higgins v. Ky. Sports Radio, LLC*, 2019 U.S. Dist. LEXIS 45535, *40-41 (E.D. Ky. 2019) (holding, notwithstanding plaintiffs' damages, that the First Amendment provides special protection to speech on matters of public concern, and dismissing plaintiffs' tort claims).

For instance, in *Higgins*, the plaintiffs claimed that a local radio company and others "intentionally fanned the flames of discord and indirectly recruited and incentivized an army of upset fans to attack the [p]laintiffs in retribution for perceived poor officiating [of an NCAA basketball game]." *Id.*  While noting that perhaps "some individuals listening to [d]efendants' programming may have felt emboldened or encouraged to publicly express their anger toward [the official]," the court stopped short of holding the defendants liable on plaintiffs' invasion of privacy and intentional infliction of emotional distress claims because to hold defendants "responsible for these third-party actions would potentially quell open debate and commentary on public events and issues." *Id.*

Similarly here, Ms. Griffin's two tweets complained of were issued as part of a contentious national dialogue concerning events as they unfolded at a public rally on the steps of the Lincoln Memorial (*see* Am. Compl. ¶¶15-19).  For a court to permit recovery from a small group of Defendants, selectively culled by Plaintiffs out of thousands of individuals who participated in the fractious and polarizing debate regarding how Plaintiffs conducted themselves in a quintessential public forum at the heart of our nation's capital, would ultimately stifle certain voices from contributing to the marketplace of ideas, solely because Plaintiffs were displeased with how they were perceived by others who may hold views different from their own.

Therefore, Plaintiffs' remaining tort claims should be dismissed — "[t]o hold otherwise would pose a threat to free and robust debate of public issues." *Higgins*, 2019 U.S. Dist. LEXIS 45535, at *49.

A. **Plaintiffs' Intrusion Upon Seclusion Claim Fails as a Matter of Law.**

Kentucky has adopted the *Restatement (Second) of Torts* for intrusion upon seclusion claims, allowing liability to attach to a defendant "who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, . . . if the intrusion would be highly offensive to a reasonable person." *Pearce v. Whitenack*, 440 S.W.3d 392, 400-401 (Ky. Ct. App. 2014) (citing *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 887 (Ky. 1981)); *see also Restatement (Second) of Torts* § 652A.

Here, Plaintiffs' eighth cause of action fails as a matter of law. Plaintiffs had no "reasonable expectation of seclusion" with respect to their actions during a public political rally at the National Mall. *Pearce*, 440 S.W.3d at 401; *see Cheatham v. Paisano Publications*, 891 F. Supp. 381, 385 (W.D. Ky. 1995) (finding a reproduced photograph of plaintiff in suggestive outfit did not constitute a claim for intrusion upon seclusion because photograph was taken of plaintiff at a public event); *Dukes v. Mid-Eastern Ath. Conf.*, 213 F.Supp.3d 878, 885 (W.D. Ky. 2016) ("[a] plaintiff cannot show that the defendant intruded into his or her private affairs for events that occurred while he or she appeared in public and expected to interact with others").

B. **Plaintiffs' Negligent Infliction of Emotional Distress Claim Fails as a Matter of Law.**

Plaintiffs' claim for negligent infliction of emotion distress ("NIED") is similarly deficient. To state an NIED claim, Plaintiffs were required to allege facts demonstrating: "(1) the defendant owed a duty of care to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury." *Archey v. AT&T Mobility, LLC*, 2017 WL 6614106, *3 (E.D. Ky. Dec. 26, 2017) (dismissing

29

NIED claim where plaintiff failed to allege facts demonstrating serious or severe emotional injury); *see also Reed v. Gulf Coast Enters.*, 2016 WL 79998, *15 (W.D. Ky. Jan. 6, 2016) (dismissing NIED claim; "conclusory statements without supporting factual allegations will not withstand a motion to dismiss").

Here, Plaintiffs' allegation that Ms. Griffin's tweets have caused them "emotional distress, including but not limited to anxiety, fear for their safety, and effected their educational activities" (Am. Compl. ¶ 76) is conclusory and fails to suggest severe and pervasive injury caused by Ms. Griffin's tweets.  Indeed, Plaintiffs' reiterate the same boilerplate with respect to each defendant.  *See id.* ¶¶ 54, 65, 92, 103, 114, 125, 135, 146, 158, 169, and 181.

### C.     Plaintiffs' Harassment Claim Fails as a Matter of Law.

Plaintiffs' claim for harassment is also defective.  Kentucky Revised Statutes §446.070 provides civil recovery when a violated "statute is penal in nature, or where by its terms the violated statute does not prescribe the remedy for its violation."  *Grzyb v. Evans*, 700 S.W.2d 399, 401 (1985).  However, Plaintiffs have not even identified any penal law Ms. Griffin purportedly violated, much less alleged facts that plausibly indicate a violation.  Moreover, Ms. Griffin's tweets consisted of commentary on matters of public interest, are protected by the First Amendment, and in no way could be deemed "harassment" of Plaintiffs.

### CONCLUSION

Based on the foregoing reasons and authority, Defendant Kathy Griffin respectfully requests that the Court grant her motion and enter an order dismissing the Amended Complaint's Seventh, Eighth, Ninth and Tenth Causes of Action, with prejudice, together with such other and further relief as the Court deems just and proper.

Dated:  October 24, 2019

Respectfully submitted,

GRAYDON HEAD & RITCHEY, LLP


By: /s/ John C. Greiner
    J. Stephen Smith (86612)
    2400 Chamber Center Drive, Suite 300
    Fort Mitchell, Kentucky  41017
    Telephone:  (859) 578-3070
    ssmith@graydon.law

    John C. Greiner (*pro hac vice*)
    312 Walnut Street, Suite 1800
    Cincinnati, Ohio  45202
    Telephone:  (513) 629-2734
    jgreiner@graydon.law


GREENBERG TRAURIG, LLP
Michael J. Grygiel (*pro hac vice* application forthcoming)
Cynthia E. Neidl (*pro hac vice* application forthcoming)
Katie L. Birchenough (*pro hac vice* application
    forthcoming)
54 State Street, 6th Floor
Albany, New York  12207
Telephone:  (518) 689-1400
grygielm@gtlaw.com
neidlc@gtlaw.com
kbirchenough@gtlaw.com


GREENBERG TRAURIG, LLP
Adam Siegler (*pro hac vice* application forthcoming)
1840 Century Park East, Suite 1900
Los Angeles, California  90067
Telephone:  (310) 586-7700
sieglera@gtlaw.com

*Attorneys for Defendant Kathy Griffin*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing Memorandum In Support of Motion to Dismiss was mailed this 24th day of October, 2019, by First Class Mail to the following non-ECF registered parties:

Ana Violeta Navarro Flores
2907 Columbus Blvd.
Coral Gables, FL  33134

Matthew John Dowd
307 W. Monroe Street
Austin, TX  78704-3023

Reza Aslan
1954 Pinehurst Road
Los Angeles, CA  90068-3730

Jeffrey Shaun King
214 Duffield Street
Brooklyn, NY  11201-5339

/s/ John C. Greiner
John C. Greiner (*pro hac vice*)

32