UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

| | |
|---|---|
| JOHN DOES 1 THROUGH 10,<br><br>     Plaintiffs,<br><br>v.<br><br>DEBORAH HAALAND, et al.<br><br>     Defendants. | Case No. 2:19-CV-00117-WOB-CJS<br><br>Judge William O. Bertelsman<br><br>Magistrate Judge Candace J. Smith<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT JACOBSON AND KRUSE'S MOTION TO DISMISS** |

The Plaintiffs, through counsel, respectfully submit the following Memorandum in Opposition to Defendants Jacobson and Kruse's Motion to Dismiss ("Jacobson and Kruse"). Defendants' arguments all fail as a matter of law. Plaintiffs reiterate that their motion for remand should first be granted, with any and all motions to dismiss being heard by the state court. However, should the Court entertain this motion, it should be denied.

**I.     INTRODUCTION**

Jacobson and Kruse followed in the footsteps of a social media lynch mob, which includes other named defendants in this case, against children from Covington Catholic High School. Using the internet to spread smears against them, which triggered threats of violence and irreparably harming their reputation, Plaintiffs properly brought suit in Kenton County state court. Elizabeth Warren removed the case to federal court, and Plaintiffs have moved for a remand.

Jacobson and Kruse suggest that because the Plaintiffs are anonymous, that should somehow taint the current proceedings. Of course, that is false, given that they are minors. This approach is unavailing to a dismissal, but it is at least novel. Regardless, a state enjoys personal jurisdiction over any defendant in a libel case where the subject of the defamation suffers injury

in that state.

Kentucky law protects each of her citizens with the right to be free from unwarranted publicity, and the right to live without unwarranted interference. Kentucky allows an expanded definition of defamation that protects Kentuckians from any statement that would tend to expose them to public hatred, ridicule, contempt or disgrace. If multiple interpretations are possible, then the jury must decide if a statement is defamatory. As the complaint details, the Jacobson and Kruse's statements were identified by friends and acquaintances as concerning them individually (proven by the fact the statements led to personal threat against them individually), placed the Plaintiffs in a position of scorn or ridicule from within their community, caused economic special damages to the minors, placed their name in a false light, contorted and converted these minors' lives from private seclusion to public scorn, and inflicted real and severe emotional distress of the kind of scarring shock that lasts a lifetime.

## II.    FACTUAL BACKGROUND

Plaintiffs filed their lawsuit on August 1, 2019. On August 14, 2019, Plaintiffs filed an Amended Complaint (the "Amended Complaint"), alleging causes of action for defamation and several state law claims against all. (Amended Complaint, attached as "Exhibit 1" and incorporated herein by reference.) Plaintiffs are all minors attending the Covington Catholic School in Kentucky. (Amended Complaint, ¶¶ 1-2.)

On August 28, 2019, Elizabeth Warren filed a Notice of Removal to the United States District Court for the Eastern District of Kentucky, Covington Division, claiming that the conduct alleged against her in the Amended Complaint qualified for removal under 28 U.S.C. § 1442(a).

On September 20, 2019, Jodi Jacobson, the president and editor-in-chief of the website Rewire.News, and Kevin Kruse, a professor of history at Princeton University, filed a Motion to

2

Dismiss to the United States District Court for the Eastern District of Kentucky, Covington Division, for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

Alternatively, Jacobson and Kruse's motion to dismiss moved this Court to dismiss Plaintiffs' claims pursuant to Rule 10(a) of the Federal Rules of Civil Procedure, arguing that Plaintiffs' anonymous pleading cannot survive. Further, Jacobson and Kruse moved for dismissal for failure to state a claim on the remaining defamation and tort claims.

Plaintiff responded on September 26 with a motion to remand back to Kenton County state court.

Plaintiffs' allegations against Jacobson and Kruse involve published statements about the Plaintiffs' involvement in a claimed confrontation with Nathan Phillips, a "Native American elder" and "Vietnam War veteran," that took place on the steps of the Lincoln Memorial in Washington D.C. (Amended Complaint, ¶¶ 54-57.)

Plaintiffs' defamation claims against Jacobson arise from an article published on Rewire.News titled "White-Washing White Supremacy: Media Rushes to Excuse Covington Catholic Students."



COMMENTARY  MEDIA

# White-Washing White Supremacy: Media Rushes to Excuse Covington Catholic Students

Jan 22, 2019, 1:45pm  Jodi Jacobson

In another incident of white-washing white supremacy, white journalists are rushing to excuse a clearly racist incident involving white teens from Covington Catholic school in Kentucky, in part by discounting the testimony of a Native elder and former U.S. Marine.



Jacobson's article erroneously claimed Covington boys wore blackface to caricature black students. Jacobson incorrectly said the students harassed young women at the Lincoln Memorial (claiming they chanted, "it's not rape if you enjoy it"), and she falsely said the Covington boys ridiculed the Native American elder for the purposes of harassment.

Jacobson omitted the true facts, and instead implied the following facts were true in her statements and the links attached thereto, with the gist of the false statements made about the Plaintiffs being that the minors interrupted an indigenous march, stopped and blocked a Native American elder and Vietnam War veteran from continuous participation in that event, surrounded him in a threatening manner, and taunted him, as a Native American elder, with chants of "build the wall," while also falsely accusing the teens of taunting women with the chant "it's not rape if you enjoy it."

Each of the statements complained of herein was known by the friends, family and associates of each John Doe to be about them individually. Indeed, they were individually identified as the subject of the statements complained of herein that they received death threats,

hate mail, threatening phone calls, threatening emails, and other personal attacks on them each individually. They were known to be the subject of the statements complained of herein as they were identified by photo image throughout the world, and each of the statements was interpreted by their friends, family and associates as about them personally.

Similarly, Plaintiffs' defamation claims against Kruse arise from Kruse's tweet on Tuesday Jan. 22: "No, the accusation was that this kid and his friends mocked an elderly Native American war veteran and, hey, they did. They also taunted women and shouted "it's not rape if you enjoy it" but sure, they're the real victims. According to his PR firm anyway."



Kevin M. Kruse
@KevinMKruse

Replying to @JayCaruso

No, the accusation was that this kid and his friends mocked an elderly Native American war veteran and, hey, they did.

They also taunted women and shouted "it's not rape if you enjoy it" but sure, they're the real victims. According to his PR firm anyway.

5:23 PM · Jan 22, 2019 · Twitter for iPhone

Kruse's tweet erroneously claimed Covington boys mocked Phillips and harassed young women at the Memorial (claiming they chanted, "it's not rape if you enjoy it.")

Each of the statements complained of herein was known by the friends, family and associates of each John Doe to be about them individually. Indeed, they were individually identified as the subject of the statements complained of herein that they received death threats,

5

hate mail, threatening phone calls, threatening emails, and other personal attacks on them each individually. They were known to be the subject of the statements complained of herein as they were identified by photo image throughout the world, and each of the statements was interpreted by their friends, family and associates as about them personally.

### III.   STANDARD OF REVIEW

On a motion to dismiss under Rule 12, this Court must "construe the complaint in the light most favorable to the nonmoving party" and must also "accept the well-plead factual allegations as true." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 20017). A complaint states a "valid claim" if it contains either "direct" or "inferential allegations" under "some viable legal theory." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.,* 508 F.3d 327, 336 (6th Cir. 20017).

### IV.   ARGUMENT

Despite Jacobson and Kruse's arguments to the contrary, personal jurisdiction is appropriate in Kentucky and due process does not suggest otherwise. Plaintiffs state facially valid claims for defamation, invasion of privacy & emotional distress. Identification of plaintiffs is not required. Plaintiffs are private citizens -- not limited-purpose public figures. Jacobson and Kruse's statements are not pure opinion, and Plaintiffs' complaint states a claim for infliction of emotional distress. Jacobson and Kruse are no more above the law than their fellow Defendant, Elizabeth Warren.

####   A.   Personal Jurisdiction is Appropriate in Kentucky

Jacobson and Kruse published their tortious comments in Kentucky, to Kentuckians, about Kentuckians, causing the most harm in Kentucky, yet claim Kentucky has no authority over them. The law does not so hold.

Simply put, for well over 100 years, Kentucky courts have long acknowledged the right to bring suit for libel any place where the defamatory statement was published. *See Louisville Prss Co. v. Tennelly*, 49 S.W. 15 (1899). Similarly, and following thirty-five years of unquestioned Supreme Court precedent, the Sixth Circuit recently reiterated that a state has personal jurisdiction over any defendant whose speech causes harm to a plaintiff in the forum state. *See Power Invs., LLC v. SL EC, LLC* (6th Cir., 2019) (citing *Calder v. Jones*, 465 U.S. 783, 789 (1984); *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 778 (1984).

Contrary to Jacobson and Kruse's wishful assertions, jurisdiction is very broad in libel cases, because a state enjoys a substantive right to remedy wrongs that occur within their state. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984). Libel "harm[s] both the subject of the falsehood and the readers of that statement." *Id at* 776. A state "may rightly employ its libel laws to discourage the deception of its citizens." *Ibid.* This alone "demonstrates the propriety of requiring respondent to answer to a multistate libel action" in any state where any injury occurred. *Id at* 778.

All Plaintiffs reside in Kentucky. All Plaintiffs suffered the brunt of harm in Kentucky. This is extremely important, as a jurisdictional analysis focuses on whether the "brunt of the harm" – emotional distress, reputational injury, or economic loss – occurred in the forum state. *Calder v. Jones*, 465 U.S. 783, 789 (1984). This analysis conforms to the "effects" test of the due process clause for personal jurisdiction. *Ibid.* In a libel case, defendants "must reasonably anticipate being hailed into court" in the state where "they knew the brunt of the injury would be felt," which is the state the subject of the defamation resides. *Id. at 790.* The Court explicitly "**reject[s] the suggestion that First Amendment concerns enter into the jurisdictional analysis**." (emphasis added). *Ibid.* Here, the brunt of the harm occurred when speech made on a national platform

7

reached into Kentucky, sent directly to tens of thousands of followers in Kentucky, targeting and concerning Kentucky children. The instant case is even more "Kentucky connected conduct" than the defendants in *Calder* and *Keeton* where a *unanimous* court easily found personal jurisdiction appropriate and lawful.

> **B.  Plaintiffs State Valid Claims for Defamation, Invasion of Privacy & Emotional Distress**

Kentucky law recognizes three torts for illicit speech that harms another: defamation (both *per se* and *per quod*), invasion of privacy (false light/intrusion on seclusion), and emotional distress (intentional/negligent).[1] In this case, Plaintiffs allege all three, including both forms of defamation (*per se* and *per quod*), both forms of invasion of privacy (false light and intrusion into seclusion), and the infliction of emotional distress. At this pleading stage of the case, where both the well-plead facts and all inferences from those facts must be accepted as true, and where any competing interpretation of the speech requires jury resolution, dismissal is unwarranted.

Jacobson's untrue accusations that the Covington boys wore blackface as a racist caricature of black people and Jacobson and Kruse's false statements that the boys taunted female passersby with jokes about rape are defamatory *per se* and *per quod*. Equally, a myriad of laws protect minors' heightened considerations of privacy, so Jacobson and Kruse's decision to join a social media lynch mob and expose the Covington boys to false light innuendos is a clear invasion of the boys' privacy and right to be left alone, rights that have been recognized for almost a century under Kentucky law. Concomitantly, for intentional/negligent infliction of emotional distress, Jacobson and Kruse helped lead a social media lynch mob against a bunch of minor kids built from lies and libel, spreading life-ruining smears that lead to personal, individual threats of physical assault,

---

[1] Further research shows that Jacobson and Kruse are also liable for harassment under Kentucky law, and Plaintiffs intend to amend to add such a claim.

arson and death.

### 1. Plaintiffs' Amended Complaint Adequately Alleges Defamation

Jacobson and Kruse rely upon two primary arguments for claiming the complaint cannot, as a matter of law, state a claim under Kentucky law for either defamation *per se* or defamation *per quod.* They claim they did not identify the Plaintiffs in their statements, and state even if they did, that their statements were protected pure opinion. Neither is true.

First, under Kentucky law, a defendant need not name the plaintiff to be sued for defamation. All that is required, as this Court previously noted in another case, is the reader of the statement, as a friend, family member or fellow community member, acquainted with the plaintiff or the event, identify the statement as of and concerning the plaintiff. That is precisely what the complaint alleges, which is all that is necessary at this pleading stage. Indeed, how could the Plaintiffs' identities be exposed and their lives threatened if no one could possibly know who Jacobson and Kruse were talking about?

Second, only pure opinion is protected under Kentucky law, as the fair reporting privilege does not exist in Kentucky. Pure opinion requires two thresholds: first, the statement disclose all factual basis for its claim; and second, any facts it discloses must be true and accurate. Here, Jacobson and Kruse omitted the factual basis of their opinion, which they made appear to be the result of informed inquiry and investigation. Importantly, to the extent they implied any factual statements, they implied false factual statements. As this Court already recognized in a recent case, statements accusing another of racist taunts would constitute defamatory opinions. As such, Defendant Kruse's and Jacobson's defamatory opinions are unprotected as they were not pure opinions, but libels and lies.

9

### a. Identification of Plaintiffs.

As this Court acknowledged recently, Kentucky precedent holds "the plaintiff need not be specifically identified in the defamatory matter itself" whenever "friends and acquaintances familiar with the incident" understood the comment concerned the plaintiff. *E.W. Scripps Co. v. Cholmondelay*, 569 S.W.2d 700, 702 (Ky. Ct. App. 1978).

The seminal case on this aspect of Kentucky libel law is *Cholmondelay*. There, the defendant never identified the plaintiff by name or image, yet the court held the plaintiff still had a valid defamation claim. The reason was simple—wherever anyone within the plaintiffs' community of friends or acquaintances recognized the statements as being about the plaintiff, that sufficed for libel law, even though the defendant never named or identified the plaintiff, and those unfamiliar with the incident or the individual would not have known the statements concerned the plaintiff.

This is precisely what the complaint alleges. Indeed, as the complaint details, the Plaintiffs were so clearly identified as the subject of these statements, they were personally threatened, their addresses doxed, and their reputations harmed to their personal economic detriment. How could that happen if they were not individually identified? Jacobson and Kruse seek to apply a summary judgment standard contesting what the facts will show, rather than the motion to dismiss standard which requires the Court accept that fact as true at this stage.

Independently, the Plaintiffs in this case were identified by photo and video images the Defendant was making her statements about. That is different than the Sandmann case, where this Court noted no allegation in the complaint that there was any "identifiable description of him" or any picture of him.

This Court acknowledged that Kentucky law follows the Restatement, which makes clear

10

that group statements are actionable when there is no effort by the speaker to distinguish amongst the group. *See* REST. 2d sec. 564A. The defendants did just that – accuse each of the plaintiffs of horrendous conduct. *See* e.g., *Doe v. Hagar*, 765 F.3d 855, 862 (8th Cir. 2014); *Ball v. Taylor*, 416 F.3d 915, 917 (8th Cir. 2005). Whenever a defendant references a group sufficiently small for a person to be individually identified, a defamation claim is valid. *See In re New York Life Ins. Co. Agents' Class Claimants Solicitation Litig.*, 92 F.Supp.2d 564, 569 (E.D. La. 1997); *see also Elias v. Rolling Stone, LLC*, 872 F.3d 97, 102 (2d Cir. 2017).

That is the case here. Unless it is "impossible" to identify the individual among the group defamed, then the individual has a claim for small group defamation. *See Louisville Times v. Stivers*, 68 S.W.2d 411, 412 (Ky. 1934). If nobody knew the Jacobson and Kruse's statements concerned the Plaintiffs, how did the Plaintiffs get doxed, defamed, and threatened personally from Jacobson and Kruse's statements?

As if the Plaintiffs identities were not already damaged enough, Jacobson and Kruse continue to bully by insisting that the Plaintiffs cannot continue to remain anonymous in the legal documents. This case was filed in the Kenton County Circuit Court and then removed to the United States District Court over the objections of the Plaintiff. It should be observed that there is no prohibition against the case proceeding with unnamed plaintiffs in the Kentucky Courts of general jurisdiction. Indeed, while Jacobson and Kruse are correct that proceeding with anonymous plaintiffs is unusual and disfavored in federal courts, party anonymity is a discretionary determination made by the trial court. *See James v. Jacobson,* 6 F.3d 233, 242 (4th Cir.1993). The ultimate test for deciding if a plaintiff should proceed anonymously is whether plaintiff "has a substantial privacy right which outweighs the 'customary and Constitutionally-embedded presumption of openness in judicial proceedings.'" *Doe v. Frank,* 951 F.2d 320, 323

(11th Cir.1992) (quoting *Doe v. Stegall,* 653 F.2d 180, 186 (5th Cir. Unit A 1981)).  If the Court finds that remand is improper, the Plaintiffs should be allowed to remain anonymous as they have already suffered enough harm being thrust into the forefront of a vicious public controversy they did not create.  In any event, any issue created by the Plaintiffs being unnamed in this Court should not be fatal to their case and could, in the interest of justice, be solved with leave to amend should the court so rule.

### b. Plaintiffs Are Private Citizens, Not Limited-Purpose Public Figures.

Jacobson and Kruse insist that the Plaintiffs must be limited-purpose public figures, and therefore the they are protected by the standard of "actual malice".  (Dkt. No 26, Pg. 20).  This is a facially incorrect reading of the seminal case of *Gertz v. Robert Welch, Inc.* and its interpretation in the Sixth Circuit.  The Sixth Circuit developed a two-part inquiry for determining whether a defamation plaintiff is a limited-purpose public figure.  First, was there a "public controversy" that gave rise to the alleged defamation?  Second, was the nature and extent of the plaintiffs' participation in that particular controversy sufficient to justify "public figure" status? *See Clark v. American Broadcasting Cos*., 684 F.2d 1208, 1218 (6th Cir. 1982).

In *Thomas M. Cooley Law School v. Kurzon Straus, LLP.*, 759 F.3d 522 (6th Cir. 2014), the Sixth Circuit clearly provided a framework from which to analyze the instant situation.  First, a public controversy must be a "real dispute" the outcome of which affects the general public or some segment of it in an appreciable way and the "court must isolate the specific public controversy related to the defamatory remarks".  *Ibid* citing *Waldbaum v. Fairchild Pub., Inc.,* 627 F.2d 1287, 1296 (D.C. Cir. 1980) and *World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1137 (10th Cir. 2006), respectively.  Second, the Court must determine three factors: 1) the extent to which the participation in the controversy is voluntary; 2) the extent to which there

is access to channels of effective communication in order to counteract false statements; and 3) the prominence of the role played in the public controversy. *Ibid* citing *Gertz and Wolston v. Reader's Digest Assoc., Inc.*, 443 U.S. 157, 165-68, 99 S.Ct. 2701 (1979). Importantly, the Court has held that the simple association or involvement in a controversy is not necessarily enough, that "[p]rivate persons can become public figures by 'thrusting themselves to the forefront of particular public controversy giving rise to the defamation". *See Ogle v. Hocker*, 279 Fed. Appx. 391 (6th Cir. 2008) citing *Wolston, Gertz*.

Jacobson and Kruse claim that the Plaintiffs, by "voluntarily" travelling to "Washington, D.C. to participate in a public rally" (Dkt. No. 26, P. 21) have satisfied the voluntary prong equating to "thrusting themselves to the forefront of a particular public controversy". This is categorically false. The rally was over and quite a bit of time elapsed before the event at issue. These minor children were simply waiting on a bus. That does not voluntarily thrust them into the "vortex" of an existing public issue. Rather, the so-called public controversy was created by the Defendants, and was done so to create adverse public opinion against these minors for the personal gain of Jacobson and Kruse, who now cannot claim that those minors entered the spotlight willingly. Again, they were *waiting on a bus*, much like anyone would at a bus stop anywhere in Covington.

### c. Defendants' Statement Are Not Pure Opinion

Defamation per se includes any statement that would "tend to expose the plaintiff to public hatred, ridicule, contempt or disgrace, or to induce an evil opinion of him in the minds of right-thinking people, and to deprive him of their friendship, intercourse and society." *See Disabled American Veterans, Dept. of Kentucky, Inc. v. Crabb*, 182 S.W. 3d 541 (Ky. App. 2005). Defamation per quod includes contextual references and defamation by innuendo. See *Disabled*

*American Veterans, Dept. of Kentucky, Inc. v. Crabb*, 182 S.W. 3d 541 (Ky. App. 2005).

Only "pure opinion" is privileged and protected from suit. Statements of opinion are not pure opinion whenever the statement "implies the allegation of undisclosed defamatory facts as the basis for the opinion." *Yancey v. Hamilton*, 786 S.W.2d 854, 857 (Ky. 1989). All that is required is the statement has or implies "provably false factual connotation." *Milkovich v. Loraine Journal Co.*, 497 U.S. 1, 20 (1990).

Whenever a speaker makes a defamatory statement that "implies a knowledge of facts" which lead to a defamatory opinion, and those facts are not fully and accurately disclosed, then a claim for defamation exists, even as to statements of "opinion." *Cromity v. Meiners*, 494 S.W.3d 499, 503 (Ky. 2015). The alleged defamatory words must be measured by their natural and probable effect on the mind of the average lay reader and not be subjected to the critical analysis of the legal mind. *Digest Publishing Company v. Perry Publishing Co.*, Ky., 284 S.W.2d 832 (1955). Of note, "when the words at issue are capable of bearing more than one meaning, the jury is tasked with deciding whether a reasonable recipient would attribute a defamatory meaning to the statement." *Cromity v. Meiners*, 494 S.W.3d 499, 503 (Ky. 2015).

For libel *per se*, "it is not necessary that the words imply a crime or impute a violation of laws, or involve moral turpitude or immoral conduct." *Digest Publ'g Co v. Perry Publ'g Co.*, 284 S.W.2d 832, 834 (Ky. 1955). All that libel *per se* requires is the statement "tends to expose the plaintiff to public hatred, ridicule, contempt or disgrace, or to induce an evil opinion of him in the minds of right-thinking people." *Digest Publ'g Co v. Perry Publ'g Co.*, 284 S.W.2d 832, 834 (Ky. 1955). Libel *per quod* covers a much broader range of defamatory statements, including those that are not inherently defamatory but defame by innuendo, whenever the plaintiff pleads special damages. *Disabled Am. Veterans, Dep't of Ky., Inc. v. Crabb*, 182 S.W.3d 541, 547 (Ky. Ct. App.

2005). The plaintiff has plead both forms of libel here.

There are four circumstances where a statement of opinion based on provable facts can be libel: 1) when the writer failed to disclose the facts in support of that opinion; 2) when the writer failed to give a complete rendering of the facts; 3) when the writer disclosed incorrect facts; or 4) when the writer's opinion shows an erroneous assessment of the facts. Whenever any opinion "creates a reasonable inference that it was justified by facts known to the opinion writer," then neither the First Amendment nor common law privilege protects the libeler.

This court previously noted that scorn on social media could be actionable, but only those who engaged in it could be held accountable, not newspapers who did not engage in it. This court acknowledged that statements someone "engaged in racist conduct" or made "racist taunts" could be actionable where such statements were specifically stated. As this court previously acknowledged, Kentucky precedent considers it *per se* defamatory to say someone had an "integrity issue" (*Stringer*, 151 S.W.3d ay 793); for saying a lawyer could be a "better friend" to criminals (*Ball v. E.W. Scripps Co.,* 801 S.W.2d 684, 687-688 (Ky. 1990); for saying a lawyer was good at "fixing" cases (*McCall*, 623 S.W.2d at 885); for saying someone had engaged in a "sexual liaison" with a co-worker (*Crabb*, 182 S.W.3d at 547); for saying someone failed a drug test (*Shrout v. The TFE Group*, 161 S.W.3d 351, 355-357); for implying someone was involved in a robbery (*Columbia Sussex Corp.*, 627 S.W.2d at 272-73); for implying someone was too violent in a fight (*Cholmondelay*, 569 S.W.2d at 701-02); for calling a lawyer a "fee grabber" (*Smith v. Pure Oil Co.*, 128 S.W.2d 931, 932 (Ky. 1939); for implying the reason a taxicab driver lost his job was for drinking (*Louisville Taxicab & Transfer Co. v. Ingle*, 17 S.W.2d 709, 710 (Ky. 1929); calling a Judge a "graft" (*Dixon v. Chappell*, 118 S.W. 929, 930 (Ky. 1909); statements merely implying someone was not an honest tradesman (*Fred v. Taylor*, 72 S.W. 768 (Ky. 1903).

By contrast to the Sandmann case, these defendants did reach a "conclusion about what occurred," did make the scandalous social media statements, failed to disclose the false facts behind those statements, and the statements were known to be specific to these plaintiffs by the friends and acquaintances of the plaintiffs.

### 2. Plaintiffs' Complaint State a Claim for Invasion of Privacy

Kentucky law long recognized the fundamental right of private individuals to be free from being defamed, the right to control one's own public image against false light innuendos, and the right to be free from emotional distress arising from another's conduct. A tort protecting the right of privacy against all forms of invasion includes the right to seek redress for invasions of privacy. For almost a century, Kentucky law found "it is generally recognized as the right to be let alone, that is, the right of a person to be free from unwarranted publicity, or the right to live without unwarranted interference by the public about matters with which the public is not necessarily concerned." *Brents v. Morgan*, 299 S.W. 967, 989-990 (Ky. 1927).

Under Kentucky law, the right of privacy is invaded by: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of the other's name or likeness; (3) unreasonable publicity given to the other's private life; or (4) publicity that unreasonably places the other in a false light before the public. Loftus v. Nazari, 21 F. Supp. 3d 849 (E.D. Ky. 2014) (applying Kentucky law).

Whether denominated intrusion upon seclusion or false light, the invasion of privacy tort alleged here resounds in Kentucky law to protect a person from the publication of information concerning them that would be "highly offensive to a reasonable person." How much more offensive could this be than what happened here–a social media mob led by multiple defendants, including Kruse and Jacobson against minor children?

Kentucky law protects every citizen with the right to be free from unwarranted publicity, sometimes denominated as an intrusion upon seclusion claim and sometimes denominated as a false light claim. Each reflects the same cause of action – invasion of privacy – and each remedies the same wrong – "unreasonable publicity." Kentucky law protects private individuals with increased protections from defamations because they lack "easy access" to media afforded public figures and do not voluntarily expose themselves to public invasion of their privacy. In 1981, the Kentucky Supreme Court specifically adopted the tort of false light invasion of privacy from the Restatement (Second) of Torts. *See McCall v. Courier–Journal & Louisville Times Co.*, 623 S.W.2d 882 (Ky.1981). To sustain an action for false light invasion of privacy, a plaintiff must only plead: (1) that the false light in which he was placed would be highly offensive to a reasonable person; and (2) that the statement placing the plaintiff in a false light was published with knowledge that the statements were false or in reckless disregard for the false light in which the statements placed the plaintiff. *Yancey v. Hamilton*, 786 S.W.2d 854 (Ky.1990)

Other courts concur that publishing true matters that selectively publicize partial facts can constitute invasion of privacy by casting a person in a false light. *Krajewski v. Gusoff*, 53 A.3d 793, 806 (Penn. 2012). Equally, actions that constitute harassment under civil or criminal law also constitute invasion of privacy, as Senator Warren's home state reveals. *Com v. Johnson*, 21 N.E.3d 937, 948 (Mass. 2014).

Invasion of privacy can also occur even though a plaintiff is in a public place, as established in the seminal privacy case of *Nader v. General Motors Corp.*, 255 N.E.2d 765 (N.Y. 1970), where a defendant targeting and harassing behavior of even a public figure can constitute invasion of privacy. Unlike libel law, a plaintiff need not prove a defamatory statement to constitute invasion of privacy. In order to state claim for "false light invasion of privacy," plaintiff need not prove that

17

he has been defamed; rather it is enough that he is given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before public in false position. Schuler v. McGraw-Hill Companies, Inc., 989 F. Supp. 1377, 25 Media L. Rep. (BNA) 2409 (D.N.M. 1997), judgment aff'd, 145 F.3d 1346 (10th Cir. 1998).

Targeting minor children as leaders of a social media lynch mob using defamatory statements by spreading false factual smears from undisclosed false facts is the kind of intrusion on seclusion the privacy laws protect against.  Jacobson and Kruse's statements triggered doxxing of addresses, threats to person and property, and incurred expense for plaintiffs in security protections and lost economic opportunity.

There is a significant factor distinguishing Jacobson and Kruse's cases from the present, the difference between the expectations of the privacy of adults and minors.  Jacobson and Kruse cite no cases where a minor is denied a right to privacy.  In fact, this would be antithetical to the myriad of laws that protect minor's heightened considerations of privacy[2].

### 3. Plaintiffs' Complaint States a Claim for Infliction of Emotional Distress

Kentucky law recognizes torts for parties causing another emotional distress through their speech when that speech strays from the safeguards of the First Amendment.  As the Kentucky courts explained, "the essence of the tort was invasion of the right to be free from emotional distress arising from another's conduct." *Craft v. Rice*, 671 S.W.2d 247, 250 (Ky. 1984).

What better example of infliction of emotional distress is there than a Princeton professor and the editor-in-chief of a prominent website joining a social media lynch mob against a bunch of minor kids built of lies and libels, spreading life-ruining smears, that lead to personal, individual threats of physical assault, arson and death?

---

[2] See: https://kycourts.gov/resources/legalforms/LegalForms/JV30.pdf

## V.    CONCLUSION

Let the law live, and the libels die.  Jacobson and Kruse's motion to dismiss should be denied.

Respectfully submitted,

*/s/ Kevin L. Murphy*
Kevin L. Murphy (KBA 50646)
Murphy Landen Jones PLLC
2400 Chamber Center Drive, Suite 200
Fort Mitchell, KY  41017-0534
Telephone: (859) 578-3060
Fax: (859) 258-3061
kmurphy@mljfirm.com
*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of October, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.

*/s/ Kevin L. Murphy*
Kevin L. Murphy