UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

| | |
|---|---|
| JOHN DOES 1 THROUGH 10, | Case No. 2:19-CV-00117-WOB-CJS |
| Plaintiffs, | Judge William O. Bertelsman |
| v. | Magistrate Judge Candace J. Smith |
| DEBORAH HAALAND, et al. | **MEMORANDUM IN OPPOSITION TO DEFENDANT EDELEN'S MOTION TO DISMISS** |
| Defendants. | |

The Plaintiffs, through counsel, respectfully submit the following Memorandum in Opposition to Defendant Adam Edelen's ("Edelen") Motion to Dismiss. Edelen claims his failure to identify the facts behind his statements somehow immunizes his false statements about the Plaintiffs from legal responsibility. The law says just the opposite. Slanderous statements about minor children that hide the factual basis for that opinion and imply false facts about minor children is precisely what the law forbids. Plaintiffs respectfully submit that the motion to remand should first be granted, and the motion to dismiss heard by the state court. However, if this Court entertains the motion to dismiss, that motion should be denied.

**I.  INTRODUCTION**

Edelen followed in the footsteps of a social media lynch mob led by certain other named Defendants in this case against children from Covington, Kentucky, using the internet to spread smears against them. This triggered threats of violence, and irreparably harmed their reputation. Plaintiffs brought suit in Kenton County, Kentucky state court. Elizabeth Warren removed this matter to state court, raising a litany of legal issues with the other Defendants.

Kentucky law protects each of her citizens with the right to be free from unwarranted publicity, and the right to live without unwarranted interference. Kentucky allows an expanded

definition of defamation that protects Kentuckians from any statement that would tend to expose them to public hatred, ridicule, contempt or disgrace. If multiple interpretations are possible, then the jury must decide if a statement is defamatory. As the complaint details, the Defendant's statements were identified by friends and acquaintances as concerning them individually, and placed the Plaintiffs in a position of scorn or ridicule from within their community. It led to personal threats, caused economic special damages to the minors, and placed their name in a false light. It converted these minors' lives from private seclusion to public scorn, and inflicted real and severe emotional distress. It is precisely because statements made by the Defendant failed to disclose a true factual basis for their statements that make such statements subject to legal remedy in a court of law.

## II. FACTUAL BACKGROUND

Plaintiffs filed their lawsuit on August 1, 2019. On August 14, 2019, Plaintiffs filed an Amended Complaint (the "Amended Complaint"), alleging causes of action for defamation and several state law claims against all Defendants. (Amended Complaint, attached as "Exhibit 2" and incorporated herein by reference.) Plaintiffs are all minors attending the Covington Catholic School in Kentucky. (Amended Complaint, ¶¶ 1-2.)

On August 28, 2019, Warren filed a Notice of Removal to the United States District Court for the Eastern District of Kentucky, Covington Division, claiming that the conduct alleged against her in the Amended Complaint qualified for removal under 28 U.S.C. § 1442(a).

On September 27, 2019, Edelen filed a Motion to Dismiss to the United States District Court for the Eastern District of Kentucky, Covington Division, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiffs have failed to state a claim.

Edelen's Motion to Dismiss also argues that Edelen's tweet does not reference any

Plaintiff, that it only expresses opinions and that it is not defamatory. Edelen's motion further argues that Plaintiffs fail to state a claim against Edelen for intrusion upon seclusion and negligent infliction of emotional distress and that the First Amendment bars Plaintiffs' remaining claims.

Plaintiffs' allegations against Edelen involve published statements about the Plaintiffs' involvement in a claimed confrontation with a "Native American elder" and "Vietnam War veteran" named Nathan Phillips, taking place on the steps of the Lincoln Memorial in Washington D.C. (Amended Complaint, ¶¶ 54-57.)

Plaintiffs' defamation claims against Edelen arise from Edelen's statement about the Covington boys on his Twitter account that: "This is outrageous and abhorrent behavior. I hope part of any punishment is to ensure they read a history book on how America's indigenous people have been treated. The parents and school that produced these boys need to do some serious soul-searching," followed by a link to an Associated Press article on the website of a Kentucky TV news station, WHAS-11. Edelen did not witness the interaction between Plaintiffs and Nathan Phillips. Edelen's statements were false and omitted the true facts of that interaction. Edelen failed to disclose the factual basis for his opinion, and implied false facts about the Plaintiffs. This includes that they had trespassed onto an indigenous march; interfered with that march; harassed marchers; taunted them with racial attacks; blocked their ability to even physically move; falsely imprisoned them by surrounding them in the middle of their march; and intended to inflict harm upon them. None was factually true.

Edelen's false tweet damaged Plaintiffs' reputation in the form of death threats, hate mail, threatening phone calls and emails and other personal attacks on them each individually. *Id*. Security measures and other economic costs were incurred due to Defendant's conduct. Edelen's tweet amplified and legitimized media coverage that gave an inaccurate picture of what occurred,

3

which hurts the prospects of the Plaintiffs, including college admissions and future employment. There is no diversity jurisdiction herein, and Plaintiffs' Motion to Remand should obviate the need for this Court to rule on Edelen's motion.

### III.     STANDARD OF REVIEW

On a motion to dismiss under Rule 12, this Court must "construe the complaint in the light most favorable to the nonmoving party" and must also "accept the well-plead factual allegations as true." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). A complaint states a "valid claim" if it contains either "direct" or "inferential allegations" under "some viable legal theory." *Commercial Money, supra*. Thus, if any "inferential allegations" within the complaint could possibly support a claim, when viewed solely in the light most favorable to the Plaintiff, then the motion at this early stage of the case must be denied.

### IV.     ARGUMENT

Edelen, a former candidate for the Governorship of the Commonwealth of Kentucky and a resident of Lexington, believes that minor school children of his state he helped injure are just "disgruntled," and dismisses the harm he helped perpetuate against these children as simply being "upset at the treatment they received from the media." As such, Edelen says the minors should be afforded "no recourse under the law."[1] In fact, Edelen believes that his lies and libel are afforded "complete protection" by Kentucky Law and that our system of government would be "crippled if every upset person could come to court and complain about the opinions of others" because he only "sent a single tweet." Edelen is misguided and, like many politicians, apparently averse to personal responsibility. Once he knew he made false statements, Edelen made no effort to delete his tweet, correct his commentary, nor issue any apology.

---

[1] Kentucky's constitution says just the opposite.

The Plaintiffs, all minors, were irreparably and deeply harmed by his words, as well as the words of the other Defendants. The Plaintiffs state facially valid claims for defamation, invasion of privacy and emotional distress. Edelen cannot hide behind false and damaging statements just because he declares they are pure opinion, when he failed to disclose the false facts his statements clearly implied. Nor can he avoid liability because he did not name any individual by name, when the Plaintiffs' friends and family knew these statements concerned them personally, as evident in the personal death threats they received related to Defendant's actions.

### A. Plaintiffs' Amended Complaint Adequately Alleges Defamation

Edelen relies upon two primary arguments for claiming the complaint cannot, as a matter of law, state a claim under Kentucky law for either defamation *per se* or defamation *per quod*. First, he is mistaken that defamation is permissible if a defendant avoids using a person's name directly. He is also mistaken when he says that statements which hide the factual basis for the statements are immune from liability. The law directly contradicts both defenses.

First, under Kentucky law, a Defendant need not name the Plaintiff to be sued for defamation. *E.W. Scripps Co. v. Cholmondelay*, 569 S.W.2d 700, 702 (Ky. Ct. App. 1978). All that is required, as this court previously noted, is the reader of the statement, as a friend, family member or fellow community member, acquainted with the Plaintiff or the event, identify the statement as of and concerning the Plaintiff. *Id.*; *see also Sandmann v. WP Co., LLC, d/b/a The Washington Post*, No. 2:19-00019, 2019 WL 3409881, *3 (E.D. Ky. July 26, 2019). That is precisely what the complaint alleges, and all that is necessary at this pleading stage. Indeed, how could the Plaintiffs' identities be exposed, and their lives threatened, if no one could possibly know who Edelen was talking about?

Second, only pure opinion is protected under Kentucky law. Pure opinion requires two

5

thresholds: first, the statement discloses all factual basis for its claim; and second, any facts it discloses must be true and accurate. Edelen, like the other Defendants, omitted the factual basis of his opinion, which made it appear to be the result of informed inquiry and investigation. Importantly, to the extent he implied any factual statements, he implied false factual statements. As such, Defendant's defamatory opinions are unprotected as they were not pure opinions, but rather lies and falsehoods.

### 1. Identification of Plaintiffs.

Kentucky precedent clearly holds that "the plaintiff need not be specifically identified in the defamatory matter itself" whenever "friends and acquaintances familiar with the incident" understood that the comment concerned the plaintiff. *See E.W. Scripps Co., supra at \*702*.

In *Cholmondelay*, the defendant never identified the plaintiff by name or image. The court held the plaintiff still had a valid defamation claim. The reason was simple—wherever anyone within the plaintiffs' community of friends or acquaintances recognized the statements as being about the plaintiff, that sufficed for libel law. This is true even though the defendant never named or identified the plaintiff, and those unfamiliar with the incident or the individual would not have known the statements concerned the plaintiff. This is precisely what the complaint alleges. Indeed, as the complaint details, the Plaintiffs were so clearly identified as the subject of these statements, they were personally threatened, their addresses doxxed, and their reputations harmed to their personal economic detriment. How could that happen if they were not individually identified?

Independently, the Plaintiffs in this case were identified by photo and video images, which were tied to Edelen's statements, a key fact this Court recognized in the factually similar *Sandmann* case pending before this Court.

Finally, this Court acknowledged Kentucky law follows the Restatement, which makes

6

clear that group statements are actionable when there is no effort by the speaker to distinguish among the group. *See* REST. 2d sec. 564A. The Defendants did just that—accuse each of the Plaintiffs of horrendous conduct. *See* e.g., *Doe v. Hagar*, 765 F.3d 855, 862 (8th Cir. 2014); *Ball v. Taylor*, 416 F.3d 915, 917 (8th Cir. 2005). Whenever a defendant references a group sufficiently small for a person to be individually identified, a defamation claim is valid. *See In re New York Life Ins. Co. Agents' Class Claimants Solicitation Litig.*, 92 F.Supp.2d 564, 569 (E.D. La. 1997); *see also Elias v. Rolling Stone, LLC*, 872 F.3d 97, 102 (2d Cir. 2017). Unless it is "impossible" to identify the individual among the group defamed, then the individual has a claim for small group defamation. *See Louisville Times v. Stivers*, 68 S.W.2d 411, 412 (Ky. 1934). Again, if nobody knew the Edelen's statements concerned the Plaintiffs, how did the Plaintiffs get doxxed, defamed, and threatened personally from Edelen's statements? The group defamation claim exists exactly for cases like Plaintiffs.

### 2.     Defendants' Statement Are Not Pure Opinion

Defamation *per se* includes any statement that would "tend to expose the plaintiff to public hatred, ridicule, contempt or disgrace, or to induce an evil opinion of him in the minds of right-thinking people, and to deprive him of their friendship, intercourse and society." Defamation *per quod* includes contextual references and defamation by innuendo. *See Disabled American Veterans, Dept. of Kentucky, Inc. v. Crabb*, 182 S.W. 3d 541 (Ky. App. 2005).

Only "pure opinion" is privileged and protected from suit. Statements of opinion are not pure opinion whenever the statement "implies the allegation of undisclosed defamatory facts as the basis for the opinion." *Yancey v. Hamilton*, 786 S.W.2d 854, 857 (Ky. 1989). All that is required is the statement has or implies "provably false factual connotation." *Milkovich v. Loraine Journal Co.*, 497 U.S. 1, 20 (1990).

7

Whenever a speaker makes a defamatory statement that "implies a knowledge of facts" which lead to a defamatory opinion, and those facts are not fully and accurately disclosed, then a claim for defamation exists, even as to statements of "opinion." *Cromity v. Meiners*, 494 S.W.3d 499, 503 (Ky. 2015). The alleged defamatory words must be measured by their natural and probable effect on the mind of the average lay reader and not be subjected to the critical analysis of the legal mind. *Digest Publishing Company v. Perry Publishing Co.*, Ky., 284 S.W.2d 832 (1955). Of note, "when the words at issue are capable of bearing more than one meaning, the jury is tasked with deciding whether a reasonable recipient would attribute a defamatory meaning to the statement." *Cromity v. Meiners*, 494 S.W.3d 499, 503 (Ky. 2015).

For libel *per se*, "it is not necessary that the words imply a crime or impute a violation of laws, or involve moral turpitude or immoral conduct." *Digest Publ'g Co. v. Perry Publ'g Co.*, 284 S.W.2d 832, 834 (Ky. 1955). All that libel *per se* requires is the statement "tend to expose the plaintiff to public hatred, ridicule, contempt or disgrace, or to induce an evil opinion of him in the minds of right-thinking people." *Digest Publ'g Co., supra*. Libel *per quod* covers a much broader range of defamatory statements, including those that are not inherently defamatory but defame by innuendo, whenever the plaintiff pleads special damages. *Disabled Am. Veterans, Dep't of Ky., Inc. v. Crabb*, 182 S.W.3d 541, 547 (Ky. Ct. App. 2005). The Plaintiffs have pleaded both forms of libel here.

There are four circumstances where a statement of opinion based on provable facts can be libel: 1) when the writer failed to disclose the facts in support of that opinion; 2) when the writer failed to give a complete rendering of the facts; 3) when the writer disclosed incorrect facts; or 4) when the writer's opinion shows an erroneous assessment of the facts. Whenever any opinion "creates a reasonable inference that it was justified by facts known to the opinion writer," then

8

neither the First Amendment nor common law privilege protects the wrongdoer.

This Court previously noted that scorn on social media could be actionable, but only those who engaged in it could be held accountable, not newspapers who did not engage in it. This Court acknowledged that a statement someone made that "engaged in racist conduct" or made "racist taunts" could be actionable where such statements were specifically stated. *See Sandmann v. Washington Post*. The claims here are much stronger herein. As this Court previously acknowledged, Kentucky precedent considered it *per se* defamatory to say someone had an "integrity issue" (*Stringer*, 151 S.W.3d ay 793); for saying a lawyer could be a "better friend" to criminals (*Ball v. E.W. Scripps Co.,* 801 S.W.2d 684, 687-688 (Ky. 1990); for saying a lawyer was good at "fixing" cases (*McCall*, 623 S.W.2d at 885); for saying someone had engaged in a "sexual liaison" with a co-worker (*Crabb*, 182 S.W.3d at 547); for saying someone failed a drug test (*Shrout v. The TFE Group*, 161 S.W.3d 351, 355-357); for implying someone was involved in a robbery (*Columbia Sussex Corp.*, 627 S.W.2d at 272-73); for implying someone was too violent in a fight (*Cholmondelay*, 569 S.W.2d at 701-02); for calling a lawyer a "fee grabber" (*Smith v. Pure Oil Co.*, 128 S.W.2d 931, 932 (Ky. 1939); for implying the reason a taxicab driver lost his job was for drinking (*Louisville Taxicab & Transfer Co. v. Ingle*, 17 S.W.2d 709, 710 (Ky. 1929); calling a Judge a "graft" (*Dixon v. Chappell*, 118 S.W. 929, 930 (Ky. 1909); statements merely implying someone was not an honest tradesman (*Fred v. Taylor*, 72 S.W. 768 (Ky. 1903). By contrast to the *Sandmann* case, these Defendants did reach a "conclusion about what occurred," did make the scandalous social media statements, failed to disclose the false facts behind those statements, and the statements were known to be specific to these Plaintiffs by the friends and acquaintances of the Plaintiffs.

Indeed, it is precisely the failure to cite the factual basis for the statements, and the

9

implication of false facts within the statements, that make the statements actionable under the law.

### B. Plaintiffs' Complaint States a Claim for Invasion of Privacy

Kentucky law long recognized the fundamental right of private individuals to be free from being defamed, the right to control one's own public image against false light innuendos, and the right to be free from emotional distress arising from another's conduct. A tort protecting the right of privacy against all forms of invasion includes the right to seek redress. For almost a century, Kentucky law found "it is generally recognized as the right to be left alone, that is, the right of a person to be free from unwarranted publicity, or the right to live without unwarranted interference by the public about matters with which the public is not necessarily concerned." *Brents v. Morgan*, 299 S.W. 967, 989-990 (Ky. 1927).

Under Kentucky law, the right of privacy is invaded by: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of the other's name or likeness; (3) unreasonable publicity given to the other's private life; or (4) publicity that unreasonably places the other in a false light before the public. *Loftus v. Nazari*, 21 F. Supp. 3d 849 (E.D. Ky. 2014) (applying Kentucky law).

Kentucky law protects every citizen with the right to be free from unwarranted publicity, sometimes denominated as an intrusion upon seclusion claim and sometimes denominated as a false light claim. Each reflects the same cause of action—invasion of privacy—and each remedies the same wrong—"unreasonable publicity." Kentucky law protects private individuals with increased protections from defamations because they lack "easy access" to media afforded public figures and do not voluntarily expose themselves to public invasion of their privacy. In 1981, the Kentucky Supreme Court specifically adopted the tort of false light invasion of privacy from the Restatement (Second) of Torts. *See McCall v. Courier–*

*Journal & Louisville Times Co.*, 623 S.W.2d 882 (Ky.1981). To sustain an action for false light invasion of privacy, a plaintiff must only plead: (1) that the false light in which he was placed would be highly offensive to a reasonable person; and (2) that the statement placing the plaintiff in a false light was published with knowledge that the statements were false or in reckless disregard for the false light in which the statements placed the plaintiff. *Yancey v. Hamilton*, 786 S.W.2d 854 (Ky.1990). Since this claim is properly pled, the Motion to Dismiss must be denied.

Other courts concur that publishing true matters that selectively publicize partial facts can constitute invasion of privacy by casting a person in a false light. *Krajewski v. Gusoff*, 53 A.3d 793, 806 (Penn. 2012). Equally, actions that constitute harassment under civil or criminal law also constitute invasion of privacy. *Com v. Johnson*, 21 N.E.3d 937, 948 (Mass. 2014).

Invasion of privacy can also occur even though a plaintiff is in a public place, as established in the seminal privacy case of *Nader v. General Motors Corp.*, 255 N.E.2d 765 (N.Y. 1970), wherein the court held that a defendant's harassing behavior of even a public figure can constitute invasion of privacy. Unlike libel law, a plaintiff need not prove a defamatory statement to constitute invasion of privacy. In order to state claim for "false light invasion of privacy," plaintiff need not prove that he has been defamed; rather, it is enough that he is given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position. See also *Schuler v. McGraw-Hill Companies, Inc.*, 989 F. Supp. 1377, 25 Media L. Rep. (BNA) 2409 (D.N.M. 1997), judgment aff'd, 145 F.3d 1346 (10th Cir. 1998).

Targeting minor children as leaders of a social media lynch mob and using defamatory statements by spreading false factual smears is the kind of intrusion on seclusion the privacy laws

protect against.[2] Edelen's statements triggered doxxing of addresses, threats to person and property, and caused expense in security protection and lost economic opportunity. There is a significant factor distinguishing Edelen's cases from the present, and that is the difference between the expectations of the privacy of adults and minors. Edelen cites no cases where a minor is denied a right to privacy. In fact, this would be antithetical to the myriad of laws that protect minor's heightened considerations of privacy[3]. Whether called intrusion upon seclusion or false light, the invasion of privacy tort alleged here resounds in Kentucky law to protect a person from the publication of information concerning them that would be "highly offensive to a reasonable person." How much more offensive could this be than what happened here – a social media lynch mob led by politicians and others, included Edelen.

### C. Plaintiffs' Complaint States a Claim for Infliction of Emotional Distress

Kentucky law recognizes a cause of action when a wrongdoer causes emotional distress through their speech, when that speech strays from the safeguards of the First Amendment. As the Kentucky courts explained, "the essence of the tort was invasion of the right to be free from emotional distress arising from another's conduct." *Craft v. Rice*, 671 S.W.2d 247, 250 (Ky. 1984).

What better example of infliction of emotional distress is there than a former Governor of Kentucky candidate joining a social media lynch mob spewing lies against a bunch of minor kids which led to personal, individual threats of physical assault, arson and death?

### V. CONCLUSION

The time is now for courts to address the wrongful notion that social media somehow gives vicious people the unfettered right to ruin a person's life through lies. In this case, we are dealing

---

[2] It also constitutes harassment, and Plaintiffs plan to amend shortly to add that claim.
[3] See: https://kycourts.gov/resources/legalforms/LegalForms/JV30.pdf.

with children who were simply waiting on a bus, being intimidated by adults of highly questionable character.

Kentucky guarantees a remedy when a citizen of the Commonwealth is wronged, and that same constitution guarantees a remedy and access to the courts. The Court should deny this motion.

          Respectfully submitted,

          */s/ Kevin L. Murphy*
          Kevin L. Murphy (KBA 50646)
          Murphy Landen Jones PLLC
          2400 Chamber Center Drive, Suite 200
          Fort Mitchell, KY  41017-0534
          Telephone: (859) 578-3060
          Fax: (859) 258-3061
          kmurphy@mljfirm.com
          *Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of November, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.

*/s/ Kevin L. Murphy*
Kevin L. Murphy
